Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
LAW OFFICES OF MARC TOBEROFF, PLC
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

**ORIGINAL**

FILED
CLERK, U.S. DISTRICT COURT

OCT 18 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JOANNE SIEGEL, an individual;
and LAURA SIEGEL LARSON, an
individual,

        Plaintiffs,

    vs.

WARNER BROS.
ENTERTAINMENT INC., a
corporation; TIME WARNER INC.,
a corporation; DC COMICS, a
general partnership; and DOES 1-
10,

        Defendants.

Civil Case No. CV 04-8400 RSWL (RZx)

**FIRST AMENDED COMPLAINT FOR:**

[1] DECLARATORY RELIEF RE:
TERMINATION,
17 U.S.C. §304(c);
[2] DECLARATORY RELIEF RE:
PROFITS;
[3] DECLARATORY RELIEF RE:
USE OF "S" CREST;
[4] ACCOUNTING FOR PROFITS;
[5] WASTE OF JOINTLY OWNED
COPYRIGHTS;
[6] VIOLATION OF LANHAM ACT
15 U.S.C. § 1125;
[7] VIOLATION OF CALIFORNIA
BUSINESS AND
PROFESSIONS CODE
§§ 17200 *ET SEQ.*

<u>DEMAND FOR JURY TRIAL</u>

DOCKETED ON CM

OCT 26 2005

BY _____ 002

1

LODGED



SCANNED

DC COMICS,

        Counterclaimant,

    vs.

JOANNE SIEGEL, an individual;
and LAURA SIEGEL LARSON, an
individual,

        Counterclaim Defendants

Plaintiffs JOANNE SIEGEL and LAURA SIEGEL LARSON (hereinafter the "Plaintiffs"), by and through their attorneys of record, hereby allege as follows:

## JURISDICTION AND VENUE

1.      This is a civil action seeking declaratory relief, accounting for profits, remedies for violations of the Lanham Act and violations of California unfair competition laws and related claims arising out of Plaintiffs' termination of prior grants of copyright in and to the original character and work known as "Superman" and subsequent "Superman" works pursuant to the United States Copyright Act of 1976, 17 U.S.C. § 304(c), and defendants' willful misconduct with respect thereto.

2.      This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to the United States Copyright Act (hereinafter, the "Copyright Act"), 17 U.S.C. § 101 *et al.*, pursuant to the Lanham Act, 15 U.S.C. §§ 1121 and 1125(a) and (c) and 28 U.S.C. §§ 1331, 1332, 1338(a) and (b).

3.      This Court has supplemental jurisdiction over the related state claims herein under 18 U.S.C. § 1367 in that these claims form part of the same case and controversy as the federal claims herein.

2

4.    This Court has personal jurisdiction over the defendants in that defendants are regularly doing business in the State of California and in this District, and because a substantial part of the relevant acts complained of herein occurred in the State of California and this District.

5.    Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because a substantial part of the wrongful acts that give rise to the claims herein below occurred in this district and because WARNER BROS. ENTERTAINMENT INC. has its principal place of business in this district.

## PARTIES

6.    Plaintiff JOANNE SIEGEL (hereinafter "Joanne Siegel") is an individual and citizen of and resides in the State of California, in the County of Los Angeles, and is and at all times has been a citizen of the United States. Joanne Siegel is the widow of famed comic book creator Jerome (a.k.a. "Jerry") Siegel.

7.    Plaintiff LAURA SIEGEL LARSON (hereinafter "Laura Siegel") is an individual and a citizen of and resides in the State of California, in the County of Los Angeles, and is and at all times has been a citizen of the United States. Laura Siegel is the daughter of Jerome Siegel.

8.    Plaintiffs are informed and believe and based thereon allege that defendant WARNER BROS. ENTERTAINMENT INC. (hereinafter "Warner Bros.") is a corporation organized and existing under the laws of the State of Delaware, which has its principal place of business in Los Angeles County, California.  Warner Bros. is a wholly owned subsidiary of Defendant TIME WARNER INC.

9.    Plaintiffs are informed and believe and based thereon allege that Defendant DC COMICS (hereinafter "DC") is a general partnership organized and existing under the laws of the State of New York, which has its principal

3

place of business in the State of New York; and that DC regularly conducts

significant business in the State of California and in the County of Los Angeles.

DC is also a wholly owned subsidiary of defendant Warner Bros.

10.    Plaintiffs are informed and believe and based thereon allege that on

or about September 30, 1946, the New York corporations, Detective Comics,

Inc., Superman, Inc., All American Comics, Inc., Jolaine Publications, Inc.,

Wonderwoman Publishing, Inc., Hop Harrigan Enterprise, Inc., Gainlee

Publishing Co., Inc., J.R. Publishing Co., Inc., Worlds Best Comics, Inc. and

Trafalgar Printing Co., Inc. were consolidated into the New York corporation

National Comics Publications, Inc., the name of which was later changed to

National Periodical Publications, Inc., and eventually to DC Comics, Inc.; and

further that DC, Warner Bros. and Time Warner, and/or each of them, are the

alleged successor(s)-in-interest to National Periodical Publications, Inc.

11.    Plaintiffs are informed and believe and based thereon allege that

Defendant TIME WARNER INC. (hereinafter "Time Warner") is a corporation

organized and existing under the laws of the State of Delaware, which has its

corporate headquarters in the State of New York, and that Time Warner

regularly conducts significant ongoing business in the State of California and in

the County of Los Angeles. Time Warner is the parent company of both Warner

Bros. and DC. (Time Warner, Warner Bros. and DC are sometimes collectively

referred to hereinafter as the "Defendants;" and each reference to Defendants

shall also refer to each Defendant).

12.    Plaintiffs are informed and believe and based thereon allege that

Defendant DC never, or rarely, exploits "Superman," independently of its

controlling parent company, Warner Bros.; that even relatively linear functions

such as "Superman" licensing are not handled directly by DC, but are exploited

exclusively through Warner Bros.; that the agreements and other arrangements

between Defendants Warner Bros. and DC regarding "Superman" are not "arms

4

SCANNED

1  length" agreements, serve primarily Warner Bros.' interests, and thus, do not
2  reflect the appropriate market values of the copyrights to "Superman," at issue
3  herein.

4      13.   Plaintiffs are informed and believe and based thereon allege that
5  Defendants Time Warner, Warner Bros. and DC are, and at all times material
6  hereto were, the alter-egos of each other and there exists and has existed at all
7  times material hereto a unity of interest and ownership among such Defendants
8  such that any separateness has ceased to exist in that Defendants, and/or each of
9  them, used assets of the other Defendants, and/or each of them, for its and/or
10  their separate, individual purposes, and caused valuable assets, property, rights
11  and/or interests to be transferred to each other without adequate consideration.

12      14.   Plaintiffs are informed and believe and based thereon allege that the
13  fictitiously named Defendants captioned hereinabove as Does 1 through 10,
14  inclusive, and each of them, were in some manner responsible or legally liable
15  for the actions, damages, events, transactions and circumstances alleged herein.
16  The true names and capacities of such fictitiously named defendants, whether
17  individual, corporate, associate, or otherwise are presently unknown to
18  Plaintiffs, and Plaintiffs will amend this Complaint to assert the true names and
19  capacities of such fictitiously named Defendants when the same have been
20  ascertained.  For convenience, each reference herein to a named Defendant shall
21  also refer to the Doe Defendants and each of them.

22      15.   Plaintiffs are informed and believe and based thereon allege that
23  each of the Defendants was the agent, partner, servant, employee, or employer of
24  each of the other Defendants herein, and that at all times herein mentioned, each
25  of the Defendants was acting within the course and scope of such employment,
26  partnership and/or agency and that each of the Defendants is jointly and
27  severally responsible for the damages hereinafter alleged.

28

5

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

16.   In 1933 Jerome Siegel conceived the original idea of a cartoon strip featuring a unique man of superhuman strength and powers who would perform feats of great importance for the public good.  Siegel conceived, in essence, the first "superhero" -- an original concept which embodied our nation's ideals at the Worlds' darkest hour, became a cultural icon and spawned, what is today, a booming industry.  Jerry Siegel entitled his character -- "Superman."

17.   In or about 1934, Jerome Siegel authored twenty-four days (four weeks) of "Superman" comic strips intended for newspaper publication, a synopsis of comic strips for weeks two, three and four, a paragraph previewing future "Superman" exploits and a nine page synopsis covering approximately two months of daily "Superman" newspaper comic strips (at six days per week). Plaintiffs are informed and believe and based thereon allege that these works, though originally unpublished were thereafter included or incorporated in the early "Superman" comic strips thereafter published from on or about April 18, 1938 to April 13, 1943 (collectively, referred to hereinafter as the "Initially Unpublished Works").

18.   In or about 1934, Jerome Siegel and the artist, Joe Shuster (hereinafter collectively, "Siegel and Shuster") co-authored *fifteen* daily "Superman" comic strips, consisting of one week (six days) of completely inked daily "Superman" comic strips and three additional six day weeks of "Superman" comic strips in penciled form (the "1934 Superman Comic Strip"). "Superman" was submitted by Siegel and Shuster to numerous publishers over the next few years.

19.   Although "Superman" was not picked up for publication for some time, Siegel and Shuster did get other features they created into print with the Nicholson Publishing Company including "Henri Duval" and "Dr. Occult."  In a letter dated October 4, 1935, the company's owner Malcolm Wheeler-

6

1  Nicholson, wrote to Mr. Siegel expressing an interest in publishing "Superman"

2  in comic book form but Siegel and Shuster rejected his offer. Nicholson became

3  involved with a new comic magazine company, Detective Comics, Inc.

4  (hereinafter, "Detective Comics") and two Siegel and Shuster features, "Slam

5  Bradley" and "Spy," which appeared in "Detective Comics No. 1."

6      20.   On or about December 4, 1937, Siegel and Shuster, as independent

7  contractors, entered into an agreement with Detective Comics (the "1937

8  Agreement") to continue to produce the comic magazine features, "Slam

9  Bradley" and "The Spy," which agreement provided, in part, that any new and

10  additional features which Siegel and Shuster produced for use in a comic

11  magazine were to be first submitted to Detective Comics which reserved the

12  right to accept or reject same within sixty days.

13      21.   One of the early entities to which Siegel had submitted "Superman"

14  was The McClure Newspaper Syndicate. In or about early 1938, the head of the

15  syndicate sought Siegel's permission to forward Siegel and Shuster's 1934

16  Superman Comic Strip material to Detective Comics for potential publication in

17  its contemplated new magazine, "Action Comics." By this time, "Superman"

18  and his miraculous powers had already been completely developed by Siegel and

19  Shuster.

20      22.   In or about January–February 1938, when Detective Comics

21  expressed interest to Siegel and Shuster in publishing their 1934 Superman

22  Comic Strip in a magazine, Siegel and Shuster cut and pasted their

23  aforementioned 1934 Superman Comic Strip into more than ninety separate

24  panels ("Revised 1934 Superman Comic Strip"), so as to render their newspaper

25  strip more suitable for a magazine layout.

26      23.   The "Superman" material described hereinabove, which was the

27  independent, original creation of Siegel and Shuster, contained virtually all of

28  the signature elements and characters of the "Superman" mythology and

7

---

constituted the formula for the continuing "Superman" series to come.  It depicted and narrated the origin of the "Superman" character, and contained a complete delineation of the literary and pictorial representation of "Superman," including without limitation, his habits, character, superhuman powers, appearance, costume, secret identity and attributes, and the sphere of public good "Superman" was to enhance.

24.    By an instrument dated March 1, 1938 (hereinafter, the "1938 Grant"), which had been prepared by Detective Comics, Siegel and Shuster agreed to the publication of their Revised 1934 Superman Comic Strip by Detective Comics in consideration for the sum of $10 per page for this thirteen page installment equal to a total of $130.

25.    Thereafter, Detective Comics published Siegel and Shuster's "Revised 1934 Superman Comic Strip" in the "June, 1938" issue of "Action Comics No. 1," which was issued for sale on April 18, 1938.

26.    Action Comics No. 1 and the predecessor materials created solely by Siegel and Shuster contained the essential elements of "Superman" which continue to this day, including without limitation, Superman's origin from the distant planet, his "back-story" (sent to Earth as an infant in a spaceship by his scientist father), his core physical and mental traits, his mission as a champion of the oppressed to use his great powers to benefit humankind, his secret identity as newspaper reporter, "Clark Kent," his relationship with other key characters such as the newspaper editor from whom he takes his assignments and his romantic interest in Lois, who rebuffs Clark as a coward, while romantically inclined towards "Superman."

27.    Action Comics No. 1 was followed by further issues published at regular intervals, with each subsequent issue containing additional "Superman" material created by Siegel and Shuster.

8

28.    Between on or about March, 1938 and on or about September, 1938, Siegel and Shuster continued to create "Superman" strips, stories and continuities.

29.    On or about September 22, 1938, Detective Comics, Siegel and Shuster entered into an agreement with The McClure Newspaper Syndicate (hereinafter, the "1938 McClure Agreement") regarding the newspaper syndication of a "Superman" comic strip.

30.    On or about September 22, 1938, Detective Comics and Siegel and Shuster therefore entered into an agreement (hereinafter, the "1938 Agreement") which for the first time provided that Detective Comics would thereby "employ and retain" Siegel and Shuster to do the "artwork and continuity" for five comic strips, including "Superman."

31.    Prior to September 22, 1938, Siegel and Shuster solely created six comic book issues of "Superman," published as Action Comics Nos. 1 through 6. Of these, Action Comics Nos. 1 through 5 had been published prior to September 22, 1938; and Action Comics No. 6 was published four days later on September 26, 1938.

32.    Action Comics No. 1 is not a "work made for hire." Action Comics Nos. 2-6, which were thereafter created by Siegel and Shuster prior to their entering into the 1938 Agreement, are also not "works made for hire."

33.    On or about December 19, 1939, Detective Comics and Siegel and Shuster entered into a supplemental agreement (hereinafter, the "1939 Agreement") which raised Siegel and Shuster's per page compensation rate for the increasingly popular "Superman" comic strip.

34.    Plaintiffs are informed and believe and thereon allege that the "Superman" works created by Siegel and Shuster after they entered into the 1938 Agreement with Detective Comics were also not "works made for hire." The 1938 Agreement for the first time used the term "employ and retain" with

9

1 respect to Siegel and Shuster's subsequent work on "Superman," yet Siegel and

2 Shuster were never employees of Detective Comics.  Siegel and Shuster

3 operated their own independent comic book production business.  Without

4 limitation, Siegel and Shuster were not paid a salary, but were consistently paid

5 on a "per page" basis, and only for materials actually delivered by them to

6 Detective Comics and published by Detective Comics.  Plaintiffs are further

7 informed and believe and thereon allege that in compensating Siegel and

8 Shuster, Detective Comics did not withhold or deduct payroll, social security

9 and other taxes normally deducted from employee salaries; Detective Comics

10 did not provide employee benefits to Siegel and Shuster; Siegel and Shuster

11 worked from their own premises (not Detective Comic's premises); determined

12 their own hours and days of work; supplied, used and paid for their own

13 instrumentalities, tools and materials; and hired and paid for their own

14 employees who worked at Siegel and Shuster's instance and expense, under

15 Siegel and Shuster's direction and full control.

16      35.   In or about 1947, Siegel and Shuster filed an action in the Supreme

17 Court of the State of New York, County of Westchester against National Comics

18 Publications, Inc. (hereinafter, the "1947 Action" ) to determine the validity of

19 the contracts between National Comics Publications, Inc.'s predecessors–in–

20 interest and Siegel and Shuster with respect to "Superman."  Pursuant to a

21 stipulation of the parties the action was referred for decision to an Official

22 Referee of the New York Supreme Court.  After trial of the action the Official

23 Referee rendered an opinion dated November 1, 1947.  On April 12, 1948, the

24 Official Referee signed detailed findings of fact and conclusions of law and

25 entered an interlocutory judgment upholding the contracts in some respects, to

26 which notices of appeal were filed by all said parties.  Settlement negotiations

27 ensued, resulting in a stipulation of settlement between said parties executed on

28

First Amended Complaint for Declaratory Relief, Accounting, Lanham Act Violations & Unfair Competition

or about May 19, 1948 (hereinafter, the "1948 Stipulation"), and the entry in the
New York Supreme Court of a final consent judgment dated May 21, 1948.

36.     In or about the early 1970's, a dispute arose between Siegel and
Shuster and National Periodical Publications, Inc. regarding the renewal
copyright to "Superman," resulting in Siegel and Shuster's filing of an action
against National Periodical Publications, Inc. in the United States District Court
for the Southern District of New York for a declaration that Siegel and Shuster
were entitled to the renewal copyright to "Superman."  The District Court held
in <u>Jerome Siegel and Joseph Shuster v. National Periodical Publications, Inc. et
al.</u>, 364 F. Supp. 1032 (1973) that the initial "Superman" comic strip, published
in Action Comics No. 1, is a "work for hire" within the meaning of the
Copyright Act, 17 U.S.C. § 26, and that, in any event, the various agreements
between the parties, prior to the action, transferred the renewal copyright in this
material to Detective Comics.

37.     On appeal, the United States Court of Appeals for the Second
Circuit held in <u>Jerome Siegel and Joseph Shuster v. National Periodical
Publications, Inc. et al.</u>, 509 F.2d 909 (2nd Cir. 1974), that the District Court
erred in finding that Superman was a "work for hire" under the Copyright Act,
17 U.S.C. § 26, and that "Superman" and his miraculous powers were created by
Siegel and Shuster long before any employment relationship with Detective
Comics.  The Second Circuit nonetheless held that the Official Referee's
determination in the 1947 Action that Siegel and Shuster had transferred all
rights in "Superman" to Detective Comics implicitly included a determination
that Siegel and Shuster had transferred the renewal copyright in "Superman" to
Detective Comics; and that this determination was binding under the doctrine of
*res judicata*.

38.     On or about December 23, 1975, Siegel and Shuster entered into an
agreement with Warner Communications Inc. (hereinafter the "1975

11

Agreement") the alleged parent company of National Periodical Publications, Inc., which provided for (i) annual payment of $20,000 to Siegel and Shuster each for their respective lifetimes, plus medical benefits to Siegel and Shuster each; and (ii) that Siegel and Shuster would be given credit on certain "Superman" publications and derivative works as the "creators" of Superman, in exchange for Siegel and Shuster's acknowledgement that Warner Communications, Inc. was the exclusive owner of all right, title and interest in and to "Superman." (The 1937 Agreement, the 1938 Grant, the 1938 McClure Agreement, the 1938 Agreement, the 1939 Agreement, the 1948 Stipulation and the 1975 Agreement described hereinabove are hereinafter sometimes referred to collectively as the "Alleged Grants.")

39.    On April 3, 1997, Plaintiffs, Joanne Siegel and Laura Siegel, served by first class mail, postage prepaid, notices of termination, as permitted by the Copyright Act, 17 U.S.C. § 304(c) (hereinafter, the "Termination Notices") on each of the Defendants and a number of their subsidiaries, licensees and affiliates, terminating the Alleged Grants of the renewal copyright to (i) the copyrightable "Superman" character, (ii) the 1934 Superman Comic Strip and the Revised 1934 Superman Comic Strip, both published as/in Action Comics No. 1, (iii) the material published as/in Action Comics Nos. 1-6 (statutory copyright to Action Comics No. 6 was secured on September 26, 1938), (iv) the material published as/in Action Comics Nos. 7- 61 (statutory copyright to Action Comics No. 61 was secured on April 13, 1943), and/or (v) subsequent works involving "Superman," all as set forth in the Notices of Termination (hereinafter sometimes referred to collectively as the "Works").

40.    Plaintiffs are informed and believe and based thereon allege the Initially Unpublished Works set forth in the Termination Notices were incorporated or included in Works published thereafter, to which the Termination applies.

12

41.    Plaintiffs are further informed and believe and based thereon allege that the copyrights to all the Works were duly renewed.

42.    The Notices of Termination were drafted, served on Defendants and filed with the United States Copyright Office, all in full compliance with the Copyright Act, 17 U.S.C. 304(c), and the regulations promulgated thereunder by the Register of Copyrights, 37 C.F.R. § 201.10 (2003).  (Plaintiffs' aforesaid exercise of their termination rights under 17 U.S.C. § 304(c) regarding "Superman" is sometimes hereinafter referred to as the "Termination").

43.    As the original co-author of each Work Jerome Siegel owned an undivided fifty percent (50%) of the copyright of each Work prior to any alleged transfer or assignment of any such Work pursuant to any Alleged Grant.

44.    The Notices of Termination terminated on April 16, 1999 (hereinafter, the "Termination Date") all prior grants or purported grants of the renewal copyrights in and to each and/or all the Works for their extended renewal terms (hereinafter, sometimes referred to individually and collectively as the "Recaptured Copyrights"), including, but not limited to, the Alleged Grants.

45.    On April 16, 1999, the Termination Date, Plaintiffs re-gained ownership to Jerome Siegel's undivided fifty percent (50%) copyright interest in and to each and/or all the Works for their extended renewal terms.  In accordance with 17 U.S.C. 304(c), and as set forth in the Notices of Termination, Jerome Siegel's surviving son, Michael Siegel, is also entitled to share in the proceeds from this recaptured interest.

46.    Defendants have acknowledged that the Notices of Termination are effective.  Defendants have further admitted that Plaintiff's thereby co-own the copyright(s) to at least the original "Superman" elements authored by Siegel and Shuster; and that Defendants have a duty to account to Plaintiffs for Defendants' exploitation of such copyright(s).

13

47.   On April 16, 1997, in response to the service of the Notices of Termination, John A. Schulman, Executive Vice President and General Counsel of Defendant Warner Bros. wrote a letter to Joanne Siegel, stating in relevant part:

> "As to the Notices of Termination, I wasn't surprised
> at their arrival...After the effective date of the
> termination, there will still remain 14 years of
> copyright protection left to the joint copyright holders
> of the original Superman elements.  Those are what we
> should share."

48.   Similarly, on October 10, 1997, Paul Levitz, President and Publisher of Defendant DC Comics, wrote a letter to Plaintiffs, stating in relevant part:

> "The [Superman] rights involved are non-exclusive;
> they are shared with DC.  Since both you and DC
> would have these rights, we would each have the
> obligation to pay the other for using those rights if you
> did not re-grant them to DC."

49.   Yet, on April 15, 1999, one day before the Termination Date, Defendant DC, by its attorneys (Fross Zelnick, *et al*) sent a letter to the Plaintiffs' attorney, Arthur J. Levine, frivolously denying the validity of the termination with respect to *any* "Superman" copyrights, stating in relevant part:

> "[Y]ou are hereby put on notice that DC Comics
> rejects both the validity and scope of the notices and
> will vigorously oppose any attempt by your clients to
> exploit or authorize the exploitation of any copyrights,
> or indeed, any rights at all, in Superman."

14

50.    Defendant DC's April 15, 1999 letter constituted a thinly veiled threat that if Plaintiffs ever attempted to exploit *any* of their recaptured copyright interests in "Superman," Defendants would engage in a campaign of intimidation, including, but not limited to, instituting frivolous litigation against Plaintiffs and using Defendants' enormous market power to restrict Plaintiffs' ability to exploit their Recaptured Copyright interests.  Given that Time Warner is one of the largest media companies in the world with over $38 billion in annual revenues, Defendants' threats had a devastating and chilling effect on Plaintiffs' freedom to exploit the copyright interests they had properly regained under the Copyright Act, 17 U.S.C. § 304(c), thereby damaging Plaintiffs and causing them great emotional distress.

51.    In the nearly 6 ½ years since the Termination Date, none of the Defendants has ever accounted to the Plaintiffs for any proceeds or profits whatsoever from their ongoing exploitation of "Superman" and the jointly owned Recaptured Copyrights.

## FIRST CLAIM FOR RELIEF

(Declaratory Relief Re:  Termination, 17 U.S.C. § 304(c) - Against All Defendants)

52.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 51 inclusive, as though fully set forth herein.

53.    By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between Plaintiffs and Defendants under Federal copyright law, 17 U.S.C. §§ 101 *et seq.*, concerning their respective rights and interests in and to the copyright to various "Superman" works, for which Plaintiffs desires a declaration of rights.

54.    Plaintiffs contend and Defendants deny that:

a.    The Notices of Termination terminated on April 16, 1999 all prior grants, assignments or transfers of copyrights for the extended renewal

15

1  term in and to each and/or all of the Works (as defined in paragraph 39

2  hereinabove) to any of the Defendants and other parties duly served with the

3  Notices of Termination, including their predecessors-in-interest;

4          b.    As of the effective Termination Date, April 16, 1999,

5  Plaintiffs owned and continue to own an undivided fifty percent (50%) of the

6  Recaptured Copyrights to each and/or all the Works for their renewal terms;

7          c.    By reason of the foregoing, Plaintiffs are entitled to fifty

8  percent (50%) of any and all proceeds, compensation, monies, profits, gains and

9  advantages from the exploitation of, or attributable to, in whole or in part, any

10  aspect of the Recaptured Copyrights (hereinafter, sometimes referred to as

11  "Profits"); and

12          d.    By reason of the foregoing, Defendants own or control only

13  fifty percent (50%) of the Recaptured Copyrights, and thus, as of the

14  Termination Date, had and have no authority to confer exclusive licenses or

15  grants with respect to any element of the "Superman" mythology protected by

16  the Recaptured Copyrights.

17      55.    A declaration of the Court is necessary pursuant to the Declaratory

18  Judgment Act, 28 U.S.C. §§ 2201 et seq., so that the parties may know their

19  respective rights and obligations with respect to the Termination and the

20  copyright interests thereby recaptured by Plaintiffs.

21                      **SECOND CLAIM FOR RELIEF**

22      (Declaratory Relief Re:  Profits from Recaptured Copyrights - Against All

23                          Defendants)

24      56.    Plaintiffs re-allege and incorporate by reference paragraphs 1

25  through 55 inclusive, as though fully set forth herein.

26      57.    By reason of the foregoing facts, an actual and justiciable

27  controversy has arisen and now exists between Plaintiffs and Defendants

28  concerning how Profits from Recaptured Copyrights should be defined for

1  purposes of Defendants and Plaintiffs accounting to one another as joint owners

2  of the Recaptured Copyrights.

3      58. Plaintiffs contend and Defendants deny that:

4      a.   Profits include Defendants' revenues from the post - April

5  16, 1999 exploitation of the Recaptured Copyrights in foreign territories, when

6  such exploitation results from the predicate exercise *in the United States* of any

7  right(s) under the Recaptured Copyrights by any Defendant, their licensees or

8  assigns;

9      b.   There should be no *apportionment* of Profits since Plaintiffs

10  are entitled to fifty percent (50%) of such Profits as *joint owners* of the

11  Recaptured Copyrights;

12      c.   Alternatively, *apportionment*, if any, should apply only to

13  profits from the exploitation of the Recaptured Copyrights in *derivative works*

14  *created by a Defendant*, but not to profits from mere *licensing* of the Recaptured

15  Copyrights.  Any such apportionment should weigh heavily in Plaintiffs' favor,

16  since the value of the "Superman" franchise exploited by the Defendants

17  ("Superman Franchise") is largely attributable to the unique "Superman"

18  mythology protected by the Recaptured Copyrights.  The Superman Franchise

19  capitalizes on the success of, and is hardly distinguishable from, the underlying

20  Recaptured Copyrights co-owned by Plaintiffs;

21      d.   Profits include profits from any merchandise or other

22  derivative works created, produced or manufactured on or after the Termination

23  Date, April 16, 1999, notwithstanding that the underlying licensing agreement

24  for such exploitations may have been executed prior thereto;

25      e.   Profits are not limited to the Profits of Defendant DC,

26  Warner Bros.' wholly owned subsidiary, but include the Profits of Defendants

27  Warner Bros. and Time Warner, as well; and

28

17

1           f.     In determining Profits, deductible costs should include only

2 reasonable costs directly attributable to the exploitation of the Recaptured

3 Copyrights, of the type customarily deducted in arms' length agreements to

4 exploit copyrights of comparable value, all in compliance with Generally

5 Accepted Accounting Principles ("GAAP").

6        59.     A declaration of the Court is necessary pursuant to the Declaratory

7 Judgment Act, 28 U.S.C. §§ 2201 *et seq.* so that the parties may know their

8 respective rights and obligations with respect to Profits from the exploitation of

9 the Recaptured Copyrights after the Termination Date.

10                     **THIRD CLAIM FOR RELIEF**

11 (Declaratory Relief Re: Use of the "Superman" Crest - Against All Defendants)

12        60.     Plaintiffs re-allege and incorporate by reference paragraphs 1

13 through 59 inclusive, as though fully set forth herein.

14        61.     By reason of the foregoing facts, an actual and justiciable

15 controversy has arisen and now exists between Plaintiffs and Defendants

16 concerning whether Plaintiffs are entitled, after the Termination Date, to

17 commercially exploit the "Superman" crest comprised of a large red "S"

18 centered on a broad triangular yellow field, first appearing (as part of

19 "Superman's" costume, centered on and highlighting Superman's "V" shaped

20 muscular chest) in the 1934 Superman Comic Strip and the 1934 Revised

21 Superman Comic Strip created by Siegel and Shuster and published as Action

22 Comics No. 1, and in only slightly revised form in subsequent Works

23 (hereinafter the "Superman Crest"); and whether Defendants' duty to account, as

24 non-exclusive joint owners of such Recaptured Copyrights, includes Profits from

25 the licensing of this crest.

26        62.     Defendants allege a trademark interest in a "Superman" shield

27 (hereinafter the "Superman Shield" and/or "Superman Trademark") which is

28 also comprised of a large red "S" on a broad triangular yellow field, first

appearing in later Works, as part of "Superman's" costume, centered on and highlighting Superman's "V" shaped muscular chest, with the upper corners of the triangular crest slightly cropped.

63.    Plaintiffs contend and Defendants deny that:

a.    The Recaptured Copyrights include the copyright to the "Superman" crest comprised of a large red "S" centered on a broad triangular yellow field, first appearing as part of "Superman's" costume, centered on and highlighting Superman's "V" shaped muscular chest, in the 1934 Superman Comic Strip and the Revised 1934 Superman Comic Strip published as Action Comics No. 1, and appeared in subsequently published Works in only slightly revised form (hereinafter the "Superman Crest").

b.    Defendants' alleged Superman Trademark design arose directly from, and is substantially identical to, Siegel and Shuster's copyrighted Superman Crest;

c.    Defendants receive significant proceeds and value from the utilization and copying of the Superman Crest and/or substantially identical Superman Shield for which Defendants must account to Plaintiffs;

d.    In turn, Plaintiffs should likewise be allowed to exercise their rights under copyright with respect to the Superman Crest, including without limitation the right to commercially exploit the Superman Shield in merchandise;

e.    Defendants, in any event, cannot use the alleged Superman Trademark or any other purported trademark interest regarding "Superman" to prevent, hinder or restrain Plaintiffs' use, exercise or exploitation of their rights under the Copyright Act in any of the jointly owned Recaptured Copyrights.

64.    A declaration of the Court is necessary pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, so that the parties may know their

19

respective rights and obligations with respect to the Superman Crest and the Superman Shield.

### FOURTH CLAIM FOR RELIEF

(Accounting for Profits - Against All Defendants)

65.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 64 inclusive, as though fully set forth herein.

66.   On or after the Termination Date, April 16, 1999, Defendants and/or each of them have licensed and/or commercially exploited and will continue to license or exploit the Recaptured Copyrights, including without limitation, *via* merchandising, publishing, and derivative motion picture and television programming.

67.   As result of such licensing and/or commercial exploitation of the Recaptured Copyrights on or after April 16, 1999, Defendants and/or each of them have received and will continue to receive substantial Profits, fifty percent (50%) of which is payable to Plaintiffs as the joint owner of the Recaptured Copyrights.

68.   Defendant Warner Bros. has acted and continues to act in most instances as the effective joint-owner and licensor (as opposed to licensee) of the Recaptured Copyrights; and, as such, Warner Bros., along with the other Defendants, owes a duty to account to Plaintiffs.

69.   To date, the Profits received by Defendants and/or each of them from such licensing and/or commercial exploitation on or after April 16, 1999 is estimated to be in excess of $50 million, however the exact sums actually received and to be received by Defendants and/or each of them, are unknown to Plaintiffs at this time, for these amounts can be properly determined only by an accounting.

70.   Plaintiffs have demanded an accounting by Defendants on a continuing basis of all amounts received by them and/or payable to them from

20

1 | such licensing and other commercial exploitation on or after April 16, 1999, and
2 | that Defendants pay Plaintiffs their fifty percent (50%) share of all such Profits.

3 | 71.    In nearly 6 ½ years since the Termination Date, Defendants have,
4 | nonetheless, never accounted to or paid any Profits whatsoever to Plaintiffs.

5 | 72.    Plaintiffs at no time waived their rights to receive their share of
6 | such Profits, nor have Plaintiffs at any time consented to the use and exploitation
7 | of the Recaptured Copyrights in the United States or any foreign territories.

8 | 73.    Plaintiffs are entitled to an ongoing accounting from Defendants
9 | regarding all amounts received, realized by or payable to Defendants on or after
10 | April 16, 1999 from the licensing and any other commercial exploitation of the
11 | Recaptured Copyrights and "Superman Franchise," and to the payment by
12 | Defendants to Plaintiffs of fifty percent (50%) of all such Profits.

13 | **FIFTH CLAIM FOR RELIEF**
14 | (Waste of Co-Owned Copyright - Against All Defendants)

15 | 74.    Plaintiffs re-allege and incorporate by reference paragraphs 1
16 | through 73 inclusive, as though fully set forth herein.

17 | 75.    On or about April 16, 1999, Plaintiffs became and currently are the
18 | co-owners, as tenants in common, with Defendants of an undivided fifty percent
19 | (50%) of the Recaptured Copyrights.

20 | 76.    The April 15, 1999 letter from Defendant DC's attorneys alleged
21 | hereinabove baselessly denied the validity of the Termination with respect to *any*
22 | and all "Superman" copyrights and threatened to take action against Plaintiffs if
23 | they attempted to exploit *any* of their Recaptured Copyrights.

24 | 77.    In so threatening Plaintiffs, DC, and by extension DC's parent
25 | companies, Warner Bros. and Time Warner, asserted exclusive ownership and
26 | control of "Superman" and effectively controlled the Recaptured Copyrights,
27 | notwithstanding the Termination.

28 |

78. Plaintiffs are informed and believe and thereon allege that in light of Defendants' adverse claims, resources, power and ubiquitous presence in the marketplace, virtually no parties would dare to license the Recaptured Copyrights from Plaintiffs.

79. Plaintiffs are informed and believe and thereon allege that since the Termination Date, Defendants and/or each of them have caused injury to the Recaptured Copyrights by committing waste thereon. Plaintiffs are informed and believe and thereon allege that such waste includes, without limitation, Defendants under-utilization of the Recaptured Copyrights, non "arms length" contracts between wholly owned subsidiaries and/or divisions, self-serving accounting practices and the improper allocation of revenues, costs and profits with respect to the Recaptured Copyrights, and the overall weakening of the Superman Franchise due to Defendants relatively marginal exploitation thereof in a period when market opportunities for such a superhero franchise has been and continues to be at an all time high.

80. The ongoing waste by Defendants has caused and continues to cause great irreparable injury to Plaintiffs as co-owners of the Recaptured Copyrights, and such damages are particularly acute given that the Recaptured Copyrights are of limited duration.

81. By reason of the foregoing, Defendants have committed waste on the Recaptured Copyrights, and as a direct and proximate result thereof, have damaged Plaintiffs in an amount not yet ascertained, but which will be assessed at the time of trial.

82. Plaintiffs are informed and believe and thereon allege that Defendants' frivolous denial of the validity of the Termination with respect to any "Superman" copyrights; Defendants' threats to bring suit against Plaintiffs if they attempted to exploit any of their recaptured copyright interest; and Defendants willful failure to account and improper accounting practices, after

22

1   the Termination Date, were conducted in an intentional, malicious, calculated

2   and oppressive manner in conscious disregard for Plaintiffs' rights, health and

3   feelings, and knowingly and intentionally injured and damaged Plaintiffs, which

4   conduct constituted oppression and malice as defined by California Civil Code §

5   3294.  In accordance with California Civil Code § 3294, Plaintiffs are entitled to

6   punitive damages in an amount sufficient to punish Defendants, to be assessed at

7   trial.

8                    **SIXTH CLAIM FOR RELIEF**

9        (Violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125

10                    - Against All Defendants)

11       83.   Plaintiffs re-allege and incorporate by reference paragraphs 1

12   through 82 inclusive, as though fully set forth herein.

13       84.   Plaintiffs are informed and believe and thereon allege that

14   Defendants have in connection with tangible goods and products embodying the

15   original "Superman" elements co-owned by Plaintiffs ("Superman Goods")

16   misrepresented in commercial advertising and promotion that they are the

17   *exclusive* owner of such goods and/or all rights underlying such goods and that

18   based upon such false claims, representations and wrongful omissions have

19   induced others to enter into improper agreements with them, including but not

20   limited to agreements to *exclusively* exploit such Superman Goods.

21       85.   Defendant DC and Warner Bros. Consumer Products (a wholly

22   owned division of Defendant Warner Bros.) regularly render licensing services

23   with respect to Superman Goods.  Plaintiffs are informed and believe and

24   thereon allege that Defendants have misrepresented in their commercial

25   advertising and promotion of such services that they have the right to grant

26   *exclusive* licenses to "Superman" and that based upon such false claims,

27   representations and wrongful omissions have induced others to enter into

28

23

1 agreements with them, including but not limited to agreements to *exclusively*

2 exploit Superman Goods.

3      86.    Plaintiffs are informed and believe and thereon allege such false

4 claims, representations and wrongful omissions misrepresented in commercial

5 advertising and promotion the nature, characteristics and qualities of such

6 Superman Goods, Defendants' licensing services or commercial activities.

7      87.    Plaintiffs are informed and believe and thereon allege such false

8 claims, representations and wrongful omissions were conducted by Defendants

9 or each of them with a willful intention to mislead buyers or potential buyers.

10      88.    Plaintiffs are informed and believe and thereon allege that

11 Defendants used such false or misleading descriptions, representations and

12 omissions of fact regarding such Superman Goods, Defendants' licensing

13 services or commercial activities in interstate commerce to induce others to enter

14 into improper contracts or other forms of business arrangements with

15 Defendants to exploit Superman Goods.

16      89.    Such use of false or misleading descriptions or representations of

17 fact in interstate commerce is in opposition to the protection of the public

18 interest.

19      90.    Defendants wrongful conduct has proximately caused and will

20 continue to cause Plaintiffs substantial injury and damage including, without

21 limitation, loss of customers, dilution of goodwill, injury to their business

22 reputation, lost profits and diminution of the value of their interests in

23 "Superman," derivative products and commercial activities.

24      91.    The ongoing harm this wrongful conduct will cause to Plaintiffs is

25 both imminent and irreparable, and the amount of damage sustained by Plaintiffs

26 will be difficult to ascertain if such wrongful conduct is allowed to continue

27 unabated.

28

24

92. By reason of the foregoing, Defendants have violated and continue to violate the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

93. Plaintiffs are entitled to an injunction, during the pendency of this action, and permanently, restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from misrepresenting in connection with Superman Goods, Defendants' licensing services and commercial activities that they own *exclusive* rights to "Superman" and from engaging in any further violations of the Lanham Act.

94. Plaintiffs have no adequate remedy at law with respect to these ongoing violations.

95. Plaintiffs are further entitled to recover from Defendants under 15 U.S.C. § 1117(a) up to three times the damages they sustained and will sustain and any income, gains, profits, and advantages obtained by Defendants as a result of their wrongful acts and omissions alleged hereinabove, plus reasonable attorneys' fees and costs, in an amount which cannot yet be fully ascertained, but which shall be assessed at the time of trial.

## SEVENTH CLAIM FOR RELIEF

(Violation of California Business and Professions Code, §§ 17200 *et seq.*; Unfair Competition - Against All Defendants)

96. Plaintiffs re-allege and incorporate herein by reference the allegations set forth in paragraphs 1 through 95, inclusive, as though fully set forth herein.

97. Plaintiffs are informed and believe and thereon allege that since the Termination Date, in addition to the wrongful acts and omissions alleged hereinabove and incorporated herein, Warner Bros.' and its parent, Time Warner, have intentionally omitted from Time Warner's Annual Reports on Form 10-K, Quarterly Reports on Form 10-Q, Current Reports on Form 8-K and other publicly reported documents any and all mention of the Termination, even

25

1   though it drastically reduces their ownership interest in "Superman" -- one of

2   their most valuable intellectual properties. Such systematic public

3   misrepresentations by omission are likely to deceive, cause confusion and

4   mistake and are an affront to the public interest.

5         98.   Defendants' wrongful conduct, acts, and omissions alleged

6   hereinabove constitute unlawful, unfair business practices and unfair

7   competition under California Business and Professions Code §§ 17500 *et seq.*,

8   and under the common law.

9         99.   As a direct and proximate result of Defendants' conduct, acts, and

10  omissions as alleged hereinabove, Plaintiffs are entitled to recover their share of

11  any income, gains, compensation, profits and advantages obtained, received or

12  to be received by Defendants, or any of them, arising from the licensing and any

13  other exploitation of the Recaptured Copyrights; and are entitled to an order

14  requiring Defendants, jointly and severally, to render an accounting to ascertain

15  the amount of such proceeds.

16        100.  As a direct and proximate result of Defendants' wrongful conduct,

17  acts and omissions pleaded hereinabove, Plaintiffs have been damaged, and

18  Defendants have been unjustly enriched, in an amount that shall be assessed at

19  trial for which damages and/or restitution and disgorgement is appropriate. Such

20  damages and/or restitution and disgorgement should include a declaration by this

21  Court that Defendants are jointly and severally the constructive trustee for the

22  benefit of Plaintiffs and an order that Defendants convey to Plaintiffs fifty

23  percent (50%) of all proceeds and other compensation received or to be received

24  by Defendants that are attributable the licensing or exploitation on or after the

25  Termination Date of the Recaptured Copyrights.

26        101.  Defendants' wrongful conduct, acts, omissions have proximately

27  caused and will continue to cause Plaintiffs substantial injury and damage

28  including, without limitation, loss of customers, dilution of goodwill, injury to

26

---

1 Plaintiffs' reputation, and diminution of the value of Plaintiffs' joint ownership

2 interest in the Recaptured Copyrights. The harm this wrongful conduct will

3 cause to Plaintiffs is both imminent and irreparable, and the amount of damage

4 sustained by Plaintiffs will be difficult to ascertain if such wrongful conduct is

5 allowed to continue without restraint.

6     102.   Plaintiffs are entitled to an injunction, during the pendency of this

7 action, and permanently, restraining Defendants, their officers, agents and

8 employees, and all persons acting in concert with them, from *exclusively*

9 licensing or granting rights to any element of the Superman Franchise protected

10 by the Recaptured Copyrights

11     103.   Plaintiffs are entitled to an injunction, during the pendency of this

12 action, and permanently, restraining Defendants, their officers, agents and

13 employees, and all persons acting in concert with them, from engaging in any

14 such further unlawful conduct, and requiring Defendants to include Plaintiffs'

15 names on all copyright notices relating to the Recaptured Copyrights.

16     104.   Plaintiffs have no adequate remedy at law with respect to such

17 ongoing unlawful conduct.

18     WHEREFORE, Plaintiffs pray for relief as follows:

19     **PRAYER FOR RELIEF**

20     <u>ON THE FIRST CLAIM FOR RELIEF</u>

21     105.   For a declaration as follows:

22     a.   That pursuant to the Copyright Act, 17 U.S.C.§ 304(c),

23 Plaintiffs validly terminated on April 16, 1999 all prior grants, assignments or

24 transfers to any of the Defendants and any of their predecessors-in-interest, of

25 the renewal copyrights in and to each and/or all of the Works;

26     b.   That, as of the Termination Date, Plaintiffs owned and

27 continue to own fifty percent (50%) of the aforesaid Recaptured Copyrights;

28

1          c.     That Defendants control only fifty percent (50%) of the

2 Recaptured Copyrights, and thus, as of the Termination Date, had/have no

3 authority to confer *exclusive* licenses or grants with respect to any element of the

4 "Superman" mythology protected by the Recaptured Copyrights; and

5          d.     That Plaintiffs are entitled to fifty percent (50%) of any and

6 all Profits from the exploitation of, or attributable to, in whole or in part, any

7 aspect of the Recaptured Copyrights.

8                     ON THE SECOND CLAIM FOR RELIEF

9     106.   For a declaration as follows:

10        a.     That as joint owners of the Recaptured Copyrights, Plaintiffs

11 are entitled to an accounting for Profits received or payable to the Defendants;

12        b.     That Profits include Defendants' revenues from the post -

13 April 16, 1999 exploitation of the Recaptured Copyrights in territories outside of

14 the United States whenever such exploitation is based on the predicate exercise

15 *in the United States* of any right(s) in and to the Recaptured Copyrights by any

16 Defendant, their licensees or assigns;

17        c.     That there should be no *apportionment* of Profits since

18 Plaintiffs are entitled to fifty percent (50%) of such Profits as joint owners of the

19 Recaptured Copyrights;

20        d.     Alternatively, that apportionment should apply only to profits

21 from the exploitation of the Recaptured Copyrights in *derivative works created*

22 *by a Defendant*, but not to profits from *licensing* of the Recaptured Copyrights;

23        e.     That apportionment, if any, should weigh strongly in

24 Plaintiff's favor, since the value of the Superman Franchise is largely

25 attributable to the unique "Superman" character and other elements created by

26 Siegel and Shuster and protected by the Recaptured Copyrights, in a percentage

27 that the court may deem just and proper;

28

f.      That Profits include profits from any merchandise or other derivative works created, produced or manufactured on or after the Termination Date, April 16, 1999, notwithstanding that underlying licensing for such exploitation may have occurred prior thereto;

g.      That Profits include the Profits of Defendants DC, Warner Bros. and Time Warner, their subsidiaries and divisions; and

h.      That in determining Profits, only reasonable costs directly attributable to the exploitation of the Recaptured Copyrights, of the type customarily deducted in arms' length agreements to exploit copyrights of comparable value to the Recaptured Copyrights, should be deducted from gross revenues, all in compliance with GAAP.

## ON THE THIRD CLAIM FOR RELIEF

107.    For a declaration as follows:

a.      That by the Termination, Plaintiffs recaptured a fifty percent (50%) interest in the copyright to the Superman Crest created by Siegel and Shuster;

b.      That Defendants' Superman Shield design arose directly from, and is substantially identical to, the copyrighted Superman Crest created by Siegel and Shuster;

c.      That Defendants must account to Plaintiffs for fifty percent (50%) of the proceeds they receive from the licensing or other exploitation of the Superman Crest and/or Superman Shield;

d.      That Plaintiffs, as co-owners of the copyright in and to the Superman Crest, likewise are permitted to license or otherwise exploit the Superman Crest, subject to a duty to account to Defendants for any such exploitation; and

e.      That Defendants cannot use their alleged trademark in the Superman Shield or any other alleged trademark interest with respect to

29

1  "Superman" to prevent, hinder or restrain Plaintiffs' use, exercise or exploitation

2  of Plaintiffs' rights under the Copyright Act in the jointly owned Recaptured

3  Copyrights.

4  <u>ON THE FOURTH CLAIM FOR RELIEF</u>

5      108.   For an accounting by the Defendants, jointly and severally, of any

6  and all proceeds from the licensing and any other exploitation of the Recaptured

7  Copyrights or Superman Franchise on or after the Termination Date, April 16,

8  1999;

9      109.   For 50% of any and all proceeds from the licensing and any other

10  exploitation of the Recaptured Copyrights or "Superman Franchise" on or after

11  April 16, 1999 pursuant to such accounting; and

12      110.   For the imposition of a constructive trust for the benefit of Plaintiffs

13  on all sums received and to be received by the Defendants, jointly or severally,

14  derived from the licensing and any other exploitation of the Recaptured

15  Copyrights or "Superman Franchise" on or after April 16, 1999.

16  <u>ON THE FIFTH CLAIM FOR RELIEF</u>

17      111.   For compensatory and consequential damages according to proof as

18  shall be determined at trial; and

19      112.   For punitive damages as may be awarded at trial.

20  <u>ON THE SIXTH CLAIM FOR RELIEF</u>

21      113.   For an order preliminarily and thereafter permanently enjoining

22  Defendants from making such false or misleading descriptions, representations

23  and omissions of fact in connection with Superman Goods, Defendants' services

24  and commercial activities and from engaging in any further violations of the

25  Lanham Act;

26      114.   For up to three times the damages Plaintiffs sustained and will

27  sustain and any income, gains, profits, and advantages obtained by Defendants

28

1 | as a result of their violations of the Lanham Act in an amount which cannot yet

2 | be fully ascertained, but which shall be assessed at the time of trial; and

3 | 115.   For such other and further relief and remedies available under the

4 | Lanham Act, 15 U.S.C. §§ 1125 and 1117 which the Court may deem just and

5 | proper.

6 | ## ON THE SEVENTH CLAIM FOR RELIEF

7 | 116.   For an accounting of all Profits;

8 | 117.   For the imposition of a constructive trust on all Profits received and

9 | to be received;

10 | 118.   For restitution to Plaintiffs of Defendants' unlawful proceeds;

11 | 119.   For an order preliminarily during the pendency of this action and

12 | thereafter, permanently, (i) enjoining Defendants, their officers, agents,

13 | employees, licensees and assigns, and all persons acting in concert with them,

14 | from engaging in such further unfair business practices and unfair competition

15 | under California Business and Professions Code §§ 17500 *et seq.*, and/or under

16 | the common law, as alleged hereinabove; and (ii) requiring Defendants to

17 | properly designate Plaintiffs as the co-owner of the Recaptured Copyrights in

18 | "Superman" publications, products, advertising and promotional materials;

19 | 120.   For compensatory and consequential damages according to proof as

20 | shall be determined at trial;

21 | 121.   For such other and further relief and remedies available under

22 | California Business and Professions Code, §§ 17200 *et seq.* and/or the common

23 | law, which the Court may deem just and proper.

24 | ## ON ALL CLAIMS FOR RELIEF

25 | 122.   For Plaintiffs' costs of suit;

26 | 123.   For interest at the highest lawful rate on all sums awarded Plaintiffs

27 | other than punitive damages;

28 | 124.   For reasonable attorneys' fees; and

31

125.   For such other and further relief as the Court may deem just and proper.

DATED:  October 17, 2005          LAW OFFICES OF MARC TOBEROFF, PLC

By: _____
                    Marc Toberoff

Attorneys for Plaintiffs and Counterclaim
Defendants JOANNE SIEGEL and
LAURA SIEGEL LARSON

32

## JURY TRIAL DEMANDED

Plaintiffs hereby request a trial by jury on each claim for relief alleged in
the Complaint for which trial by jury is allowable.

DATED: October 17, 2005        LAW OFFICES OF MARC TOBEROFF, PLC


By: _____
                Marc Toberoff

Attorneys for Plaintiffs and Counterclaim
Defendants JOANNE SIEGEL and
LAURA SIEGEL LARSON

33

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is:  1999 Avenue of the Stars, Suite 1540, Los Angeles, California 90067.

On October 17, 2005, I served the attached documents described as **FIRST AMENDED COMPLAINT** on all interested parties in this action by placing __ the original _X_ a true copy thereof enclosed in sealed envelope(s) addressed as follows:

David L. Burg
Weissmann Wolff Bergman Coleman Grodin & Evall
9665 Wilshire Blvd., Ninth Floor
Beverly Hills, CA 90212

[X]  :<u>BY MAIL</u>:

As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on October 17, 2005, in Los Angeles, California.

Nicholas C. Williamson