

# PRIORITY SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-08400-SGL (RZx)                          Date:  October 23, 2007

Title:      JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -v- WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS INC., a corporation; and DOES 1-10

==================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                                        None Present
        Courtroom Deputy Clerk                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

None present                                     None present

PROCEEDINGS:   ORDER DENYING PLAINTIFFS' OCTOBER 4, 2007, <u>EX PARTE</u> APPLICATION (IN CHAMBERS)

      The Court has received and reviewed plaintiffs' October 4, 2007, <u>ex parte</u> application for an order compelling defendants' compliance with the Court's September 17, 2007, discovery order, and defendants' opposition thereto. The basic subject matter of the <u>ex parte</u> application concerns defendants' production of its internal profit projections (commonly referred to in the entertainment industry as "ultimates") for, among other things, its movie <u>Superman Returns</u> and the television series <u>Smallville</u>, as well as the turnover of documentation regarding a reserve account defendants purportedly created in anticipation of the parties' settlement of the present dispute, such documentation being referred to by the parties as the "settlement reserve account documents."

      Before addressing each of the production issues, some prefatory remarks are in order. From reviewing the parties' correspondence it is apparent to the Court that the source of the parties' dispute stems from the parties' divergent understanding of both the scope and extent of the document production required by the Court's September 17, 2007, Order, a proper understanding of which turns on the impact the Court's earlier August 13, 2007, discovery order had on plaintiffs' then existing motions to compel, which themselves encompassed the same subject matter as the production issues in the present <u>ex parte</u> request. It is to that earlier

MINUTES FORM 90                                                Initials of Deputy Clerk __jh__
CIVIL -- GEN                                        1



discovery order that the Court turns.

On August 13, 2007, the Court conducted a hearing regarding, among other things, plaintiffs' still unresolved April 23, 2007, motions to compel. Among the document requests at issue in those motions were the "ultimates" as well as the "settlement reserve account." At the conclusion of the hearing, the Court issued an order allowing plaintiffs to conduct a "damages-related audit" of defendants' businesses. As to the remaining matters contained in plaintiffs' motion to compel, the Court denied the motions in favor of requiring the parties to engage in a meet and confer process to see whether these matters could be resolved without further intervention by the Court. It was in this sense that the Court "**GRANTED** in part and **DENIED** in part" the "first and second motions" to compel. Toward that end, the Court ordered the parties to "meet and confer in person on or before August 24, 2007, to identify, and attempt in good faith to resolve, any outstanding discovery disputes related to these two motions" and, if no such resolution was reached, granted the parties "leave to file with this Court a Joint Stipulation . . . identifying any outstanding discovery disputes related to these two motions," with "[s]aid Joint Stipulation . . . to be filed before this Court . . . on or before September 21, 2007."

Plaintiffs' apparent belief that their earlier filed motions to compel define the boundaries of defendants' document production obligations under the Court's August 13, 2007, and September 17, 2007, discovery orders is manifestly mistaken. Outside of allowing a damages-related audit of defendants' businesses, the Court <u>denied</u> those motions in favor of the parties returning to the meet and confer process to see what they could agree to and what remained for the Court to resolve; such remaining outstanding matters to be the subject of a Joint Stipulation to be filed with the Court by September 21, 2007. That is to say, the Court returned the parties to square one insofar as the outstanding discovery matters were concerned.

No such Joint Stipulation was ever filed with the Court. Admittedly, some of this was due to the fact that the parties essentially argued and the Court ruled upon their still outstanding discovery disputes during the September 17 hearing (which occurred before the time to file a Joint Stipulation had passed). Nonetheless, lacking any such joint stipulation, defendants' discovery obligations in this matter are limited to what the parties' agreed to during the subsequent meet and confer process as well as the arguments of counsel during the September 17, 2007, hearing. This idea was expressed by the Court during the September 17, 2007, hearing itself: "It's been represented in the papers, I think by both sides, that this is the final discovery dispute; that all of the other matters that had been briefed before Judge Zarefsky [i.e., the issues dealt with in plaintiffs' April 23, 2007, motions to compel,] and that [the remainder] you have subsequently met and conferred on have been resolved."

Having defined the boundaries of defendants' obligations under the September 17 Order, the Court now turns to the production issues themselves.

A.    <u>Ultimates</u>

The Court's September 17, 2007, discovery order required defendants to produce, by

MINUTES FORM 90                                                 Initials of Deputy Clerk __jh_____
CIVIL -- GEN                                       2

September 21, 2007, "all requested 'ultimates' as referenced in the September 14, 2007, Declaration of Steven Sills at ¶¶ 10-11." Steven Sills is plaintiffs' forensic accountant expert who, by earlier order of this Court, was given leave to conduct a damages-related audit of defendants Time Warner, Inc., Warner Bros Entertainment, Inc., Warner Bros Television Production, Inc., and DC Comics. The time for Mr. Sills to complete his damages-related audit was extended by the Court's September 17, 2007, Order from September 17, 2007, to October 9, 2007. Plaintiffs complain that defendants have not complied with the September 17, 2007, Order because they have furnished only the "current" ultimates (meaning only ongoing future projections for the properties in question) as opposed to the "historic" ultimates for those properties (meaning what defendants had projected in the past the properties would make)

As noted above, the earlier August 13, 2007, Order of the Court is important as it served to limit the parties then-outstanding discovery disputes, notably plaintiffs' April 23, 2007, motion to compel the production of certain documents from defendants, including that of the demand for both the current and historic ultimates for the <u>Superman Returns</u> movie and the <u>Smallville</u> television series. Instead of addressing the substance of the various document requests, the Court took the middle ground of allowing plaintiffs' forensic accountant Mr. Sills to conduct a damages-related audit with the understanding that defendants would fully cooperate in producing Mr. Sills' document requests in conducting that audit. The parties were specifically directed by the Court that any issues left outstanding after the August 13, 2007, order were to be resolved by the parties through a meet and confer process which, if unsuccessful, would require them to submit a Joint Stipulation to preserve their objections.

During his audit, Mr. Sills requested on September 5, 2007, that Warner Bros. provide him with the "[c]urrent ultimate revenue and expense analysis for all Superman/Superboy related projects." (Decl. Wayne M. Smith, Ex. A (emphasis added)). In a letter dated September 7, 2007, defendants refused to provide such "current ultimates," arguing that "'ultimates' are simply internal projections about the anticipated performance of a property, and they are not properly included in this or any audit procedure, nor are they of any probative value with respect to the claims at issue in this litigation." (Decl. Marc Toberoff, Ex. J at 2). Plaintiffs thereafter began the process of filing a motion to compel the production of Mr. Sills' request for the "current ultimates." In the body of the proposed motion to compel, plaintiffs specifically made reference to defendants' failure to comply with Mr. Sills' "direct request for [the] same" and noted in particular defendants' "refus[al] to turn over any 'ultimates' for their 'Superman' or 'Superboy' properties" as "Sills requested." (Decl. Marc Toberoff, Ex. L at 3 & 10).

Before the motion could be filed with the Court, the Court heard oral arguments on the parties' cross-motions for partial summary judgment. At the conclusion of the oral argument, the Court inquired about plaintiffs' September 14, 2007, <u>ex parte</u> application to extend the time to complete the damages-related audit by two months. During the ensuing colloquy, Mr. Sills' declaration submitted in connection with the September 14 <u>ex parte</u> request became the focus of discussion. Plaintiffs' counsel repeatedly referred the Court to Mr. Sills stated need for additional time, stating at one point, "I would ask that you take a very close look at Steve Sills' declaration." Mr. Sills' request for additional time prompted charges from defendants that Mr. Sills had

essentially taken a lackadaisical approach to conducting the audit once it was ordered to take place by the Court's August 13, 2007, order. This led to the following exchange between the Court and plaintiffs' counsel:

> THE COURT: I want you to have the information. You've had carte blanche for the last 30 days, and my question is, why don't you have everything that you need at this point?
>
> MR. TOBEROFF: Because Mr. Sills has told us that it is a literal impossibility to perform a bi-coastal audit of both D.C. and Warner Bros, pertaining not just to one motion picture but multiple different forms of programming, and to be able to arrive at an intelligent assessment in 30 days. . . . All he needs is a reasonable amount of time to complete that audit. And I believe that defendants, who were the ones who should have given us this information earlier and didn't, shouldn't be heard to complain about giving us the time needed to perform this audit in the first place.
>
> THE COURT: Let me ask you this: Besides the ultimates, is there any other documents that Mr. Sills needs that he has not gotten?
>
> MR. TOBEROFF: Mr. Sills has gotten major categories of documents. He's still going over them. As I said, I can't answer that question exactly, because in the process, you see something that doesn't comport with something else, and then you have to —
>
> THE COURT: Let me rephrase it, then. <u>At this date, are the ultimates the only document that he has identified that he has not received that he needs for his audit</u>?
>
> MR. TOBEROFF: He just received — to answer that question, he just received on Friday, I believe, a whole pile of information which he hasn't had the opportunity to completely go through.

As can be discerned from this colloquy, when the Court spoke of the ultimates it was addressing it through the lens of Mr. Sill's request for them as he was conducting his audit (and

that defendants then denied providing, which prompted the drafting of the never-filed motion to compel), not through plaintiffs' earlier April 23, 2007, motion to compel or its earlier served discovery requests.

For this reason, the Court specifically cited, in its September 17 Order, Mr. Sills' September 14, 2007, declaration as defining the scope of production for the ultimates. Significantly, Mr. Sills September 14, 2007, declaration recites the requests for documents he submitted to Warner Bros. (once the damages-related audit commenced) and Warner Bros.' response to those requests. (Decl. Marc Toberoff, Ex. M ¶¶ 6-7). Later in his declaration, Mr. Sills singled out for special attention his request for the ultimates made during the course of the audit itself: "Additionally, I requested that Defendants provide their 'ultimates' for their 'Superman' and 'Superboy' derivative works." (Decl. Marc Toberoff, Ex. M ¶ 10). Thus, the only request made by Mr. Sills for ultimates at that time was the request contained in his September 5, 2007, e-mail, wherein he requested the "current ultimates" for those properties.

Given that the Court's September 17, 2007, discovery order was cabined to the request Mr. Sills had made (not the request of plaintiffs' earlier April 23, 2007, motion to compel), and that request was limited to the "current ultimates," plaintiffs' ex parte application to compel defendants to comply with the September 17 discovery order is **DENIED** insofar as the ultimates are concerned.[1]

B.  Settlement Reserve Account Documents

The Court's September 17, 2007, discovery order also required defendants to produce by September 21, 2007, "the 'reserve account documents' to plaintiffs." Plaintiffs' present ex parte seeks for defendants to "immediately produce all documents relating to the 'reserve account' . . ., including all communications relating thereto and all documents supporting the amounts contained therein" (Pls' Ex Parte Appl. at 2), namely, "the customary accounting schedules detailing such computations." (Pls' Memo. in Supp. at 20). Instead, plaintiffs contend they only received "documents . . . 'reflect[ing]' a naked balance total." (Pls' Memo. in Supp. at 20).

---

[1] Once Mr. Sills received the current ultimates from defendants, he requested that they provide "the basis and supporting documentation" for certain line items contained therein. (Decl. Steven Sills, Ex. A). Plaintiffs contend that defendants stated that they "would not provide any follow-up clarification to Mr. Sills' request" (Pls' Ex Parte Request at 6), notably "the information necessary to verify that the percentages charged for production overhead costs and the differing distribution fees shown on the 'ultimates' reflect actual costs incurred." (Decl. Steven Sills ¶ 8). This point of dispute has since been rendered moot by defendants' un-rebutted representation that, on October 3, 2007, they "produced documentation containing the backup information requested by Mr. Sills – cash flows related to the ultimates, and Ms. Doft answered Mr. Sills' questions regarding the bases for the percentages used in the ultimates calculation." (Defs' Opp. at 5).

Plaintiffs' ex parte request goes far beyond what the parties had themselves agreed was required for defendants to produce. This is important because the only reason the Court made mention of the "settlement reserve account documents" in its September 17, 2007, Order was simply to memorialize what the parties themselves represented during the September 17 hearing that they had agreed was to be produced. Notably, during oral argument at the September 17 hearing, plaintiffs' counsel acknowledged that, "[i]n the course of meeting and conferring pursuant to your order regarding outstanding requests, we have come to an agreement with respect to certain documents, which we have not yet all received, and we've come to an understanding with the defendants that even though they did not give us those documents when they had hoped to give them to us, they will not use the joint stipulation schedule against us should they not give us the documents . And we believe they will give us the documents." The correspondence between the parties during their meet and confer reveals that the documents to which plaintiffs' counsel referred as subject of the "agreement" were the settlement reserve account documents. (Decl. Marc Toberoff, Exs. I, K). This was confirmed by defense counsel during the hearing:

> THE COURT: What about these supplemental documents that Mr. Toberoff just referred to regarding [w]hat you're supposed to produce but that he has not received yet?
>
> MR. PERKINS: I can speak to that, Your Honor.
>
> THE COURT: Thank you.
>
> MR. PERKINS: These are, I believe, documents from DC Comics, and there's one category of documents that we had trouble pulling them together in time, but they are —
>
> THE COURT: And how do you refer to these documents?
>
> MR. PERKINS: They are the reserve account documents.
>
> . . . .
>
> THE COURT: Are you producing them?
>
> MR. PERKINS: Yes, we are.
>
> THE COURT: When?
>
> MR. PERKINS: This week, Your Honor.

The parameters of defendants obligations to produce the settlement reserve account

documents are set forth in the correspondence exchanged between the parties following the August 13, 2007, discovery order. The August 30, 2007, letter from James Weinberger to plaintiffs' counsel references the only documented evidence as to what specifically the parties' had agreed to following their August 17, 2007, meet and confer:

> With respect to the settlement reserve account referenced in DC's counterclaim, I confirm our conversation that the settlement reserve is an accounting of liability under the settlement agreement. None of the Defendants has ever represented to you, your clients, or to the Court that an actual escrow fund had been created. As I advised you, the only documents in DC's possession, custody and control which reflect this reserve are (I) the general ledger, which incorporates the reserve in its balances but does not have line-item entries showing the precise amounts owed to the Siegels, and (ii) statements prepared periodically (with some gaps) that show the relevant balances. As we discussed, subject to your agreement that production will not constitute any waiver of privilege, we will provide you with copies of all of these summary statements prepared by DC which reflect the balances in the account as of the date listed. We are collecting these documents now; I will let you know when they are available.

(Decl. Mark Toberoff, Ex. G at 3).

Nowhere in the August 30, 2007, letter did defense counsel represent that defendants would produce, as now suggested by plaintiffs, "the schedules and other documentation demonstrating the computations and assumptions underlying" these periodic statements. (Pls' Memo. in Supp. at 2). Even more importantly, plaintiffs' counsel never communicated to defense counsel following receipt of this letter that anything contained therein misstated the nature of the parties' agreement concerning production of the settlement reserve account documents.

Later plaintiffs' counsel affirmed the nature of the parties' agreement with respect to the nature and scope of production relating to the settlement reserve account documents during a telephone conversation with defense counsel on September 11, 2007. Counsel's affirmance is reflected in a follow up letter defense counsel sent to plaintiffs' counsel on the same day, in which defense counsel noted from "our discussion today . . . some concerns you raised regarding our meet and confer on outstanding DC Comics discovery issues" and "confirm[ed] that in the event DC does not produce the statements evidencing the settlement reserve account <u>as we agreed to do in my August 30, 2007, letter</u> . . ., we will not oppose a motion to compel on the grounds that it was served after the September 11, 2007, deadline for serving a joint stipulation under the Court's August 13, 2007 Order." (Decl. Marc Toberoff, Ex. K at 1 (emphasis added)). Again, plaintiffs' counsel remained silent, not raising any objection or qualification to the nature and scope of the parties' agreement concerning production of the settlement reserve account documents that was set forth in defense counsel's August 30, 2007, letter.

On September 21, 2007, defendants produced to plaintiffs 14 pages worth of summary statements concerning the settlement reserve account referred to in Mr. Weinberger's August 30, 3007, letter and his later September 11, 2007, letter. (Decl. Marc Toberoff, Ex. P). Specifically, those summary statements comprise periodic excerpts consisting of one-line quarterly total entries for "Siegel and Shuster – Superman" amidst other line entries, covering a period from September 30, 2002, through June 30, 2006 (with some gaps for that period). Such a production is entirely consistent with what defense counsel represented to plaintiffs would be produced in his August 30, 2007, letter.

Nonetheless, plaintiffs' counsel, for the first time, voiced objections to the nature of the documents produced. In a letter dated September 24, 2007, plaintiffs' counsel complained that the summaries were "highly inadequate" as they did not contain any "back-up documentation whatsoever that reflects the analysis and calculations made in arriving at" the totals indicated on the summaries themselves. Furthermore, plaintiffs' counsel complained that the summaries produced were "not current, as it only extends until 6/30/06." Then plaintiffs' counsel mentioned, again for the first time, his understanding of the parties agreement following the August 17, 2007, meet and confer and contrasted it to what was represented in defense counsel's earlier correspondence:

> [I]n our August 17, 2007 "meet and confer," pursuant to the Court's August 13, 2007 order, you agreed to produce all responsive documents, without waiver of DC's purported attorney-client privilege. Notwithstanding this, your letter dated August 30, 2007, hedged and carefully backtracked by circumscribing the "reserve account" documents and your prior claims that the "reserve account" was reflected in DC's (undecipherable) general ledger (now re-stated in your August [30], 2007 [letter] as "incorporating the reserve in its balances but does not have line-item entries showing the precise amounts owed to the Siegels.")
>
> . . . .
>
> Please be advised that in the event DC does not agree to produce and thereafter promptly produce <u>all documents</u> relating to the "reserve account" repeatedly claimed by DC and testified to by its President, Paul Levitz, that Plaintiffs will have no choice but to move <u>ex parte</u> regarding this troubling matter.

(Decl. Marc Toberoff, Ex. Q (emphasis in original)).

Defendants were understandingly annoyed by plaintiffs' counsel's letter, and responded by sending a letter of their own on September 25, 2007, reiterating that the documents produced relating to the settlement reserve account were in conformity with the representations they made in the August 30, 3007, letter memorializing the parties' understanding following their earlier meet

and confer: "We said we would produce all the referenced 'statements' and we produced them . . . . We produced the documents we had previously agreed to produce on that date. If you had any problem with what we agreed to turn over as set forth in my August 30, 2007, letter — and you should know you did not — you were obliged to place that issue before the Court in a joint stipulation served on September 11. You did not." (Decl. Marc Toberoff, Ex. R at 2).

As the Court has observed earlier, in the absence of a joint stipulation filed with the Court by the time specified in the August 13, 2007, Order, plaintiffs are limited to those documents which the parties agreed to produce during their August 17, 2007, meet and confer, and the arguments of counsel presented at the September 17 hearing. Both parties presented no argument at the hearing concerning the settlement reserve account documents; in fact, each represented that they had reached agreement regarding the same. Instead, the present dispute concerns what the parties actually agreed to at their meet and confer; indeed, when raising the issue of the settlement reserve account at the September 17 hearing, plaintiffs' counsel specifically asked for the Court to require defendants to produce what the parties had already "agree[d]" to during "the course of meeting and conferring." The only evidence memorializing the parties' agreement pre-production vis-a-vis the settlement reserve account was the recitation reflected in defense counsel's August 30, 2007, letter. The Court finds it significant that plaintiffs did not once object to the parameters of the production contained in the letter or defense counsel's recitation of what the parties had agreed to regarding the settlement reserve account at any time during the three weeks from receiving the letter to when defendants' produced the documents promised in that letter. The Court construes such silence as plaintiffs' counsel's acquiescence and assent to defense counsel's understanding of the parties' agreement.

Because the documents defendants produced on September 21, 2007, regarding the settlement reserve account are in conformity with the parameters agreed to by the parties during their meet and confer, as memorialized in defense counsel's August 30, 2007, letter, the Court finds that such production was in conformity with the directive contained in the September 17, 2007, Order.

Accordingly, plaintiffs' ex parte request is **DENIED** in its entirety.

The only outstanding discovery matter left in this case (again, there being no joint stipulation filed by counsel by the time specified in the August 13, 2007, Order, and the period to complete the damages-related audit having elapsed), is that concerning the escrow documents, the subject matter of which (the documents having been transferred to the Court by the escrow attorney, Mr. David Eisen, on September 20, 2007) is contained the parties' respective briefs: The declaration of Marc Toberoff filed on September 20, 2007, the declaration of Michael Bergman filed on September 25, 2007, plaintiffs' objection to Michael Bergman's declaration filed on September 26, 2007, defendants' objection to plaintiffs' reply papers filed on September 28, 2007, and plaintiffs' objections to the second Michael Bergman declaration filed on October 1, 2007. The Court intends to issue an order shortly resolving this last remaining discovery matter.

**IT IS SO ORDERED.**