WEISSMANN WOLFF BERGMAN
COLEMAN GRODIN & EVALL LLP
Michael Bergman (SBN 37797)
Anjani Mandavia (SBN 94092)
Adam Hagen (SBN 218021)
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212
Telephone: 310-858-7888
Fax: 310-550-7191

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Roger L. Zissu (Admitted *pro hac vice*)
James D. Weinberger (Admitted *pro hac vice*)
866 United Nations Plaza
New York, New York 10017
Telephone: 212-813-5900
Fax: 212-813-5901

PERKINS LAW OFFICE, P.C.
Patrick T. Perkins (Admitted *pro hac vice*)
1711 Route 9D
Cold Spring, NY 10516
Telephone: 845-265-2820
Fax: 845-265-2819

Attorneys for Defendants and Counterclaimant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

JOANNE SIEGEL and LAURA SIEGEL LARSON,

Plaintiffs,

vs.

TIME WARNER INC., WARNER COMMUNICATIONS INC., WARNER BROS. ENTERTAINMENT INC., WARNER BROS. TELEVISION PRODUCTION INC., DC COMICS,, and DOES 1-10,

Defendants.

AND RELATED COUNTERCLAIMS.

Case No. CV 04-08400 SGL (RZx)
Honorable Stephen G. Larson

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR CLARIFICATION AND/OR RECONSIDERATION**

Date: July 14, 2008
Time: 10:00 a.m.
Place: Courtroom 1

# TABLE OF CONTENTS


I. PLAINTIFFS' RHETORIC CANNOT TRANSFORM THE COURT'S STATEMENT INTO A BINDING RULING .......... 1

A. DEFENDANTS HAVE DEMONSTRATED WHY THE COURT SHOULD CLARIFY ITS SUMMARY JUDGMENT RULING .......... 1

1. The Specific Limitations Set Forth In Defendants' Summary Judgment Briefing Disprove Plaintiffs' Contrary Assertions .......... 2

2. It was Not Necessary To Decide The Scope Of The Copyrightable Content In The Ads To Rule on the Status of Their Recapture .......... 2

3. Plaintiffs' Own Argument That They Recaptured The Copyrighted Materials In Action Comics #1 Mirrors Defendants' Position Regarding The Ads .......... 3

B. DEFENDANTS HAVE ESTABLISHED THAT THE COURT MAY CONSIDER ANY RULING IT ISSUED ON THE SCOPE OF THE COPYRIGHTABLE CONTENT OF THE ADS .......... 5

1. Defendants Did Not Have a Full And Fair Opportunity To Present Their Arguments And Evidence On This Issue .......... 6

2. The Court Need Not Determine Whether It Could Have Ruled On The Scope Of The Copyrightable Material In the Ads .......... 7

3. Plaintiffs' "Trojan Horse" Argument Also Supports Reconsideration .......... 8

II. EVIDENTIARY OBJECTIONS AND ALLEGATIONS THAT THE IMAGE WAS MANIPULATED ARE UNFOUNDED, PARTICULARLY IN LIGHT OF DEFENDANTS' PLANS TO PLACE THE ORIGINAL ADS BEFORE THE COURT .......... 8

III. PLAINTIFFS' ARGUMENT THAT DEFENDANTS INTEND TO USE THEIR TRADEMARKS TO "TRUMP" RECAPTURED COPYRIGHTS MISSTATES DEFENDANTS' POSITION AND IS, FOR NOW, IRRELEVANT .......... 9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Butler v. Target Corp.*, 323 F. Supp. 2d 1052 (C.D. Cal. 2004) .......... 10

*Chemical Producers & Distributings Association v. Helliker*, 2004 U.S. Dist. LEXIS 12650 (C.D. Cal. June 28, 2004) .......... 6, 7

*Cool Fuel, Inc. v. Connett*, 685 F.2d 309 (9th Cir. 1982) .......... 6, 7

*DC Comics v. Filmation Associates*, 486 F. Supp. 1273 (S.D.N.Y. 1980) .......... 12

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) .......... 11

*Ervco,, Inc. v. Texaco Ref. & Mktg*, 422 F. Supp. 2d at 1087 .......... 8

*Gieisel v. Poynter Products, Inc.*, 295 F. Supp. 331 (S.D.N.Y. 1968) .......... 12

*JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910 (7th Cir. 2007) .......... 7, 8

*Kleveland v. United States*, 345 F.2d 134 (2d Cir. 1965) .......... 9

*Leyva v. On the Beach, Inc.*, 171 F.3d 717 (1st Cir. 1999) .......... 6, 7

*O'Keefe v. Murphy*, 860 F. Supp. 748 (E.D. Wa. 1994)(same) .......... passim

*Portsmouth Square*, 770 F.3d at 870 .......... 7

*Portsmouth Square, Inc. v. Shareholders Protective Committee*, 770 F.2d 866 (9th Cir. 1985) .......... 6

*United States v. Workinger*, 90 F.3d 1409 (9th Cir. 1996) .......... 9

*Walker v. Viacom International, Inc.*, 2008 U.S. Dist. LEXIS 38882 (N.D. Cal. May 13, 2008) .......... 8

## STATUTES

37 C.F.R. § 202.1(a) .......... 10

17 U.S.C. § 102(b) .......... 10

17 U.S.C. § 304(c) .......... 4

Fed. R. Evid. 901(b)(1) .......... 9

## TREATISES

1 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Comp.* § 6:14 at 6-35 (4th ed. 2008) .......... 12

1 *Nimmer on Copyright (2005)* § 2.16 .......... 10

McCormick, Evidence 181, at 387 (1954) .......... 9

Defendants hereby submit this Reply brief in further support of their motion for clarification and/or reconsideration of this Court's March 28, 2008 Order.

## I. PLAINTIFFS' RHETORIC CANNOT TRANSFORM THE COURT'S STATEMENTS INTO A BINDING RULING

Notwithstanding the myriad arguments presented by Plaintiffs, the fundamental fact remains that Defendants did not move for summary judgment with respect to the copyright significance of the Promotional Announcements (the "Ads"). They did not do so because of the factual issues such a motion would inevitably raise – an assessment with which Plaintiffs heartily agreed at the time. Although Defendants had developed factual and expert evidence regarding the scope of such copyrightable content, they have yet to present such proof to the Court, and thus have not had a full and fair opportunity to articulate their position regarding that copyrightable content. Accordingly, Defendants have moved the Court to clarify that they, as well as Plaintiffs, will be able to present that evidence and argument at trial. In the alternative, Defendants request that the Court reconsider any rulings it has made on the effect of Plaintiffs' failure to recapture the Ads on the apportionment Plaintiffs have requested.

### A. DEFENDANTS HAVE DEMONSTRATED WHY THE COURT SHOULD CLARIFY ITS SUMMARY JUDGMENT RULING

Plaintiffs oppose Defendants' request for clarification on several grounds. First, Plaintiffs ignore the express limitations in Defendants' summary judgment motion and argue that Defendants actually asked the Court to rule on the scope of the copyrightable content of the Ads. However, none of the language Plaintiffs cite in support of this argument undermines the narrow scope of relief Defendants sought. Next, Plaintiffs assert that the Court could not have found that the Ads were not recaptured without also ruling on the scope of their copyrightable content. Not only is this argument plainly incorrect, it is also inconsistent with Plaintiffs' position in their own summary judgment motion: There, Plaintiffs sought a ruling that *Action Comics #1* fell *within* the termination window but, like Defendants'

motion on the Ads, Plaintiffs saw no need to ask the Court to interpret the scope of the copyrightable material contained in that work.

**1. The Specific Limitations Set Forth In Defendants' Summary Judgment Briefing Disprove Plaintiffs' Contrary Assertions**

Defendants' moving papers described how they expressly limited the scope of their request for partial summary judgment – both in their briefing and at oral argument – to make clear that they were *only* seeking a ruling that the Ads were not covered by Plaintiffs' termination notices, *not* a ruling on the scope of any copyrightable content in those Ads.

To overcome these clear-cut limitations, Plaintiffs proffer selected language from Defendants' partial summary judgment brief and argue that Defendants actually requested a broader ruling. However, each of the quoted statements only confirms the limited scope of the relief Defendants requested – *i.e.*, that they remained free to use the unterminated Ads (and the elements contained therein) without accounting to Plaintiffs. *See* Pls. Opp. at 3-4. While Defendants did at times make reference to the "copyrightable contents" of the Ads and "the elements contained therein," that was as far as Defendants went. At no time did Defendants ask the Court to interpret or determine the scope of the copyrightable content of those Ads or the significance thereof to the apportionment issues in the case. Those issues were expressly left for another day.

Critically, none of the statements Plaintiffs have cited go as far as Plaintiffs claim they do. Defendants' request for a ruling that they remain free to use the elements in the Ads – copyrighted or otherwise – is nothing more than a reformulation of Defendants' argument that those Ads fell outside the temporal scope of Plaintiffs' termination notices.

**2. It Was Not Necessary To Decide The Scope Of The Copyrightable Content In The Ads To Rule on the Status of Their Recapture**

The only determination *necessary* to the Court's ruling was the finding that the Ads were copyrighted outside of Plaintiffs' designated termination window.

Plaintiffs' assertion that the Court could not have ruled that Plaintiffs had failed to terminate the Ads without also ruling on the scope of the copyrightable material in those Ads is unsupported.

Because the Court ruled that Plaintiffs' termination notices were served too late to reach the Ads, there was no need to take the additional step to determine whether, and to what extent, the contents of the Ads were copyrightable. Moreover, even assuming the Court was required to find that there was *some* copyrightable content in the Ads as a prerequisite to finding that those Ads had not been terminated, this was at most a threshold determination which did not require any evaluation of the extent or scope of that content. In fact, Plaintiffs have never disputed that the Ads contain copyrightable content including original text and artwork. Indeed, they have taken the inconsistent (and mistaken) position that they own the copyrightable content in the Ads by virtue of their purported recapture of the later and re-published color version of the *Action Comics #1* cover.

As explained in detail in the Court's Order and in Defendants' Opposition to Plaintiffs' Motion for Reconsideration, Plaintiffs' position is also untenable because it depends on their contrary-to-law argument about the alleged "derivative" nature of those Ads – a position based on an improper reading of the 1909 Copyright Act: Unless registered under section 12, no part of an unpublished work could be copyrighted until first publication, even if that first publication was of a subsequently created work. *See* Order at 38-40; Defs' Opp. to Mot. for Recon. at 5-8. Once Plaintiffs' position on the "derivative" nature of the Ads falls away, Plaintiffs are left with their admission of the obvious, *i.e.*, that there is copyrightable material in the Ads.

**3. Plaintiffs' Own Argument That They Recaptured The Copyrighted Material In *Action Comics #1* Mirrors Defendants' Position Regarding The Ads**

Plaintiffs attempt to have it both ways. On the one hand, they claim that Defendants did or had to place the scope of the copyrightable material in the Ads at

issue when they asked the Court to find that those Ads had not been terminated. Yet, in their own partial summary judgment motion, Plaintiffs took the same approach that they say Defendants eschewed and requested a determination limited to the question of whether they had successfully recaptured the copyrighted material in *Action Comics #1* – leaving unresolved the question of the *scope* of what they had recaptured. Thus, Plaintiffs simply requested a ruling that "their statutory Superman Termination is valid as a matter of law with respect to the original 'Superman' comic strips comprising the 'Superman' story published in 'Action Comics, No. 1,' and that Plaintiffs have thereby recaptured Siegel's co-author share of the copyrights therein." (Pls. Mot. for S.J. at 1-2).[1] The Court could, and did, hold that Plaintiffs' termination was valid with respect to the

---

[1] *See also* Pls. Mot. for S.J. at 10-11 ("The instant motion presents a classic example of an issue of law that is ripe for summary judgment; namely the validity of Plaintiffs' Termination under 17 U.S.C. § 304(c) and Plaintiffs' recapture, at a minimum, of the Original Superman Copyrights."); 21 ("It is undisputed that Siegel and Shuster's Original Superman Strips were published in the serialized magazine, Action Comics, No. 1, for which copyright was first secured on April 18, 1938, when Action Comics, No. 1 was first published with a copyright notice."); 23 ("Because Plaintiffs met all of the statutory requirements of Section 304(c), their Termination should be deemed effective. On April 16, 1999, the noticed Termination Date, Plaintiffs recaptured Siegel's joint copyright interest in the Original Superman Strips comprising Action Comics, No. 1."); 24 ("Section 304(c)(1) of the Copyright Act specifically addresses the termination procedures with respect to jointly authored works such as 'Superman.' . . . [O]n April 16, 1999, when the March 1, 1938 Grant was terminated pursuant to Plaintiffs' Termination Notice No. 1, Plaintiffs became the owners of an undivided fifty percent interest in the copyrights to the Original Superman Strips comprising Action Comics, No. 1, pursuant to 17 U.S.C. 304(c)(1)."); Pls. Reply. Mot. for S.J. at 1 ("Plaintiffs' Motion establishes that as a matter of law their statutory notices of termination under section 304(c) of the United States Copyright Act with respect to 'Superman' [] validly terminated the prior copyright grant(s) by Jerome Siegel [] and Joseph Shuster [] of their original 'Superman' comic strip as published by Detective Comics, Inc. [] in Action Comics, No. 1 []; and Plaintiffs thereby recaptured Siegel's joint ownership of the copyright to the Original Superman Strips []."); 48-49 ("Plaintiffs respectfully request an Order [] granting Plaintiffs' First Claim for Relief as to the validity of Plaintiffs' Superman Termination Notices and successful recapture of Siegel's joint copyright in the first "Superman" story published in Action Comics, No. 1."); Pls. Notice of Mot. for S.J. at 1 ("Plaintiffs . . . will and hereby do move the Court for an order of partial summary judgment that Plaintiffs' Notices of Termination pursuant to Section 304(c) of the Copyright Act of 1976, 17 U.S.C. § 304(c) . . . are valid and effective; and that as of April 16, 1999, the noticed termination date, Jerome Siegel's prior grant(s) of 'Superman' to Defendants' alleged predecessors were terminated and Siegel's original co-author share of the 'Superman' copyright was thereby recaptured by Plaintiffs, all in accordance with 17 U.S.C. § 304(c).").

copyright in the Superman material that was published in the *Action Comics #1* story, but did so without issuing a binding interpretation of the scope of that recaptured material. Just as the Court's ruling on Plaintiffs' motion will allow both sides to present evidence at trial regarding the scope of the recaptured material in *Action Comics #1*, the Court should similarly make clear that the scope of the copyrightable material in the Ads is also an issue reserved for trial.

### B. DEFENDANTS HAVE ESTABLISHED THAT THE COURT MAY RECONSIDER ANY RULING IT ISSUED ON THE SCOPE OF THE COPYRIGHTABLE CONTENT OF THE ADS

In the reconsideration portion of their motion, Defendants contend that, even assuming the Court issued a binding ruling on the scope of the copyrightable content in the Ads, the Court should reconsider that ruling because it was unfair to make such a determination *sua sponte* without providing Defendants a full and fair opportunity to present their evidence and argument to the Court.

Plaintiffs apparently do not dispute that the Court has inherent authority to reconsider any ruling it made regarding the scope of the copyrightable content in the Ads. *See* Defs. Mot. at 13-14. Nor do they dispute that Defendants made no attempt to present the full extent of their evidence and argument on the scope of the copyrightable material in the Ads. *See* Pls. Opp. at 13. Instead, Plaintiffs' primary point in response is that the Court properly issued a *sua sponte* ruling because the parties had the ability to present evidence and argument on that issue. (Pls. Mem. Sec. I(E).) As demonstrated below, however, there is no question that Defendants did not have a full and fair opportunity to present the argument and evidence they have developed on the issue.

Plaintiffs' second, and somewhat related, contention is that the Court could have granted summary judgment on the scope of the Ads because it was not an issue of material fact. (*Id.* Secs. I(B) & (C).) As is also demonstrated, this contention, aside from being incorrect, completely misses the point of Defendants' motion.

### 1. Defendants Did Not Have a Full And Fair Opportunity To Present Their Arguments And Evidence On This Issue

Plaintiffs' primary argument is that the Court properly issued a summary judgment ruling *sua sponte* because Defendants had adequate notice that the Court would rule on the scope of the copyrightable content in the Ads and that they had a full and fair opportunity to present their evidence and argument. Plaintiffs provide no support for their position beyond the assertion that Defendants placed the issue in front of the Court through their briefing, a contention Defendants have addressed and disproved in Part I(A)(1) *supra*.

The cases Plaintiffs have cited in Section I(E) of their Opposition lend nothing to the analysis of the issue apart from their recitation of the general *sua sponte* standard. The bulk of them involve circumstances that are distinguishable from the present situation or have inapposite rulings.[2] In fact, the most closely analogous case, *Leyva v. On the Beach, Inc.*, 171 F.3d 717 (1st Cir. 1999), directly supports Defendants' position. In *Leyva*, the First Circuit ruled that it was *improper* for the District Court to issue a ruling *sua sponte* without allowing the party to present the evidence and argument it had developed on the pertinent issues: "When . . . the question comes down to one of fact, a plaintiff is entitled to advance warning that the *nisi prius* court is considering terminating his case by means of summary judgment, a fair opportunity to marshal whatever evidence he can muster, and a chance to put forward his assembled evidence, along with developed legal argumentation, in an effort to persuade the trier that a full-blown trial is warranted." *Leyva*, 171 F.3d at 720.

---

[2] *See Portsmouth Square, Inc. v. Shareholders Protective Committee*, 770 F.2d 866, 870 (9th Cir. 1985) (affirming *sua sponte* summary judgment ruling during Rule 16 pretrial conference when the party "had a full opportunity to present to the district court its [] theory and the facts supporting that theory"); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982) (affirming *sua sponte* summary judgment ruling against party that had specifically moved for summary judgment on the issue); *Chemical Producers & Distribs. Ass'n v. Helliker*, 2004 U.S. Dist. LEXIS 12650 at *5-6 (C.D. Cal. June 28, 2004) (same); *O'Keefe v. Murphy*, 860 F. Supp. 748, 757 (E.D. Wa. 1994)(same).

Moreover, in those cases where *sua sponte* summary judgment rulings were upheld, the courts were careful to point out that, unlike the situation here, the parties had a full and fair opportunity to present their argument and evidence on the pertinent issue. *See Portsmouth Square*, 770 F.3d at 870 (the Court "repeatedly pressed Portsmouth Square's counsel to show that a genuine issue of material fact remained for trial"); *Cool Fuel*, 685 F.2d at 312 ("the parties had every opportunity to explore and expound the issues inherent in the prayer for equitable relief and did so to the extent advisable"); *Chemical Producers*, 2004 U.S. Dist. LEXIS 12650 at *7 ("Plaintiff's motion for summary judgment addressed the same issue as the [other party's] motion would have addressed"); *O'Keefe*, 860 F. Supp. at 757 ("defendants had full opportunity to brief the issues, by briefing their own motion for summary judgment").

**2. The Court Need Not Determine Whether It Could Have Ruled On The Scope Of The Copyrightable Material In the Ads**

Plaintiffs' argument that the Court *could have* issued a ruling on the scope of the copyrightable content of the Ads is purely hypothetical and beside the point. Defendants do not dispute that in some instances a Court may make copyrightability determinations at the summary judgment stage. Although Defendants contend (and Plaintiffs previously agreed) that in this instance the scope of the copyrightable content of the Ads is a factual issue that is properly reserved for trial, the critical question here is whether Defendants had the opportunity to present all of the evidence and argument they had developed on the issue before the Court issued its ruling. For all of the reasons presented in Defendants' motion, the answer to that question is a resounding "no."[3]

---

[3] The copyright cases Plaintiffs have cited at page 6 of their Opposition do not lend anything to the present analysis because in those cases, copyrightability (and infringement) *was* the issue and the litigants had a full and fair opportunity to present all of the evidence and argument they had developed on the issue. *See, e.g., JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 913 (7th Cir. 2007) (Court considered deposition testimony from defendant's president); *Walker v. Viacom Int'l, Inc.*, 2008 U.S.

### 3. Plaintiffs' "Trojan Horse" Argument Also Supports Reconsideration

Finally, the doomsday scenario Plaintiffs have presented on pages 6-7 of their Opposition provides an additional example of why reconsideration, if needed, is proper here. It is clear from Plaintiffs' statements that they view the scope of the recaptured material in the Ads as one of the critical issues in the case. Whether Defendants' position, if sustained, would result in a proper application of the law or an "egregious" ruling is in the eye of the beholder. However, given the importance of this matter, as underscored by Plaintiffs' own arguments, it would be unfair to issue a ruling when it is obvious that the Court has not heard Defendants' best evidence and arguments in support of their position.[4]

## II. EVIDENTIARY OBJECTIONS AND ALLEGATIONS THAT THE IMAGE WAS MANIPULATED ARE UNFOUNDED, PARTICULARLY IN LIGHT OF DEFENDANTS' PLANS TO PLACE THE ORIGINAL ADS BEFORE THE COURT

Plaintiffs' scattershot arguments concerning the new, high quality scans of the Ads that Defendants have submitted with their motion have no basis in law or fact. Plaintiffs' first assertion – that the new scans are essentially the same as that submitted in Defendants' summary judgment brief – is best answered by comparing the exhibits: the differences speak for themselves. Plaintiffs' second "gotcha" argument – that the Court should disregard these differences because Defendants could have previously submitted a high-quality scan – ignores the fact that Defendants' initial motion did not seek an analysis of the content of the Ads,

---

Dist. LEXIS 38882 at *7-10 (N.D. Cal. May 13, 2008) (Court considered declaration from character's creator).

[4] If the Court decides to analyze the issue and concludes that the Court may properly rule on the scope of the copyrightable material in the Ads at the summary judgment stage, Defendants respectfully request that the Court allow the parties to submit supplemental briefs presenting the evidence and arguments on the issue. *See, e.g., O'Keefe*, 860 F. Supp. at 757 ("Even if defendants were denied full briefing opportunity, that injury was remedied when the Court ordered supplemental briefing from Defendants."); *Ervco, Inc. v. Texaco Ref. & Mktg*, 422 F. Supp. 2d at 1087 ("To rectify any possible error, the Court will permit Plaintiffs thirty days to present a genuine issue of material fact . . .").

but simply sought a ruling on whether the Ads were subject to termination. So much for the quest for truth.

Plaintiffs' evidentiary arguments similarly fly in the face of the law of evidence and logic. Defendants stated in their motion for reconsideration that they plan to present to the Court originals of each of the two comic books containing the Ads. To illustrate the lack of clarity in the multiple generation photocopy submitted with the summary judgment papers, Defendants included in their motion a first generation high resolution scan of the Ad from *More Fun No. 31*. This document was properly authenticated under Fed. R. Evid. 901(b)(1) by a witness whose knowledge came from looking at the original comic book itself and who by affidavit testified that the scan is an accurate representation of the original. *Kleveland v. United States*, 345 F.2d 134 (2d Cir. 1965) ("The witness qualifying a photograph, however, does not need to be the photographer or see the picture taken. It is only necessary that he recognize and identify the object depicted and testify that the photograph fairly and correctly represents it." (citing McCormick, Evidence 181, at 387 (1954).); *see generally United States v. Workinger*, 90 F.3d 1409 (9th Cir. 1996) (transcripts authenticated by witness with knowledge). The pure speculation of Plaintiffs' lawyer that these reproductions are not accurate representations of the original disregards the applicable rule of evidence and is erroneous. The Court, in any event, will have the opportunity to examine the original comic book Ad for itself.

## III. PLAINTIFFS' ARGUMENT THAT DEFENDANTS INTEND TO USE THEIR TRADEMARKS TO "TRUMP" RECAPTURED COPYRIGHTS MISSTATES DEFENDANTS' POSITION AND IS, FOR NOW, IRRELEVANT

Plaintiffs devote one-third of their brief to an attempt to counter Defendants' supposed request that the Court "impermissibly expand the reach of trademark law so as to gut Plaintiffs' recaptured copyright in the original Superman story published in *Action Comics #1* by giving Defendants *exclusive* rights to the name

of the copyrighted 'Superman' character that pervades the story." (Pl. Mem. at 2.) But, notwithstanding Plaintiffs' failure to recapture the Ads, Defendants do not make such a contention, nor do they seek to use the law of trademarks to "trump" whatever Plaintiffs recaptured from the first Superman story that appeared in *Action Comics #1*. Instead, Defendants' current motion simply seeks clarification or correction of one statement in the portion of the March 28, 2008 Order addressing the Ads, namely, that the Ads did not contain "Superman's name." Defendants merely want to ensure that the Court did not intend to suggest that *Plaintiffs regained copyright ownership* in the Superman name, a notion that is contrary to law as there is no protection under copyright for a character's name.

Copyright protection extends only to an author's expression. 17 U.S.C. § 102(b). The copyrightable material in an illustrated literary work such as a comic book includes the author's original illustrations, along with the original selection and arrangement of words in development of the details of plot, characters and settings. But such protection does not extend to mere names and titles. *See* 37 C.F.R. § 202.1(a) ("Words and short phrases such as names, titles, and slogans" are "works not subject to copyright"). *See also Butler v. Target Corp.*, 323 F. Supp. 2d 1052, 1059 n.4 (C.D. Cal. 2004) (words, names and titles are not subject to copyright protection); 1 *Nimmer on Copyright* (2005) § 2.16 ("It is . . . clear, as a matter of statutory construction by the courts (as well as Copyright Office Regulations), that titles may not claim statutory copyright."). Thus, regardless of whether the Ads were subject to termination, under no circumstances can Plaintiffs claim that they became owners of the sole right and title to the name Superman by virtue of the material they recaptured. Clarification of this point is the only issue upon which Defendants have moved in their reconsideration motion relating to the "name" Superman.

Plaintiffs, nevertheless, have seized upon Defendants' request as an opportunity to either reargue and have the Court alter its trademark ruling or

prematurely argue an issue relating to Defendants' ongoing trademark rights which the Court has expressly reserved for trial, namely, how to apportion between copyright and trademark in so-called mixed uses in connection with any accounting Plaintiffs may ultimately be owed. See Order. at 67.[5] And while Defendants have neither the space nor the inclination to reply at this time to all of Plaintiffs' misplaced arguments, there are two points worth noting:

First, with respect to Plaintiffs' claim that trademark laws are somehow "subsidiary" to copyright law – which claim was previously briefed by the parties in connection with Defendants' summary judgment motion (*see* Pls. Opp. Mem. at 24-27; Defs. Reply Mem. at 11-15) – their argument is wrong. None of the law Plaintiffs cite stands for the proposition posited, and, more importantly, none relates to the type of apportionment issues at stake *in this case* at trial. A full discussion of Plaintiffs faulty reliance on *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) is set forth at pages 12-14 of Defendants' Summary Judgment Reply Brief. Suffice it to note here that the issue in *Dastar* had nothing to do with *the unauthorized use of another's registered trademarks*: the issue in that case was whether Twentieth Century could sue for a misrepresentation of origin of a video product due to *the omission* of its name as author/copyright owner, a remedy sought by it because the Copyright Act does not provide an author with an attribution right.

Second, to the extent that Plaintiffs claim that Defendants are somehow trying to undermine *Plaintiffs' exploitation rights as co-owners* of the first Superman story, this too is incorrect. Plaintiffs as co-owners of that work are free to use the Superman name to accurately and truthfully identify any future exploitation of their own, so long as such use (1) does not infringe any of the

---

[5] As it turns out, the vast majority of Defendants' uses of Superman trademarks do not involve mixed uses but only uses of the Superman word mark and the "S" shield logo which is, similarly, not protected by copyright.

unterminated copyrighted material still held by Defendants, and (2) does not cause a likelihood of confusion as to source, affiliation or sponsorship of such a product *with Defendants*, which would constitute a violation of the Lanham Act.[6] Again, however, this issue is well beyond the scope of Defendants' motion for reconsideration and in any event is not ripe for consideration at this time.

In sum, Plaintiffs have made more of Defendants' motion than there is, essentially using their opposition brief not to argue against the motion, but instead to induce the Court to change its trademark holding or preview their ill-conceived arguments concerning apportionment as between Plaintiffs' recaptured copyright and Defendants' trademarks. But nothing in Plaintiffs' opposition does anything to counter the unremarkable notion set forth in Defendants' motion, namely, that terminated copyrights cannot, *per se*, provide the recapturing party with rights to a "name" such as Superman.

DATED: June 30, 2008

Respectfully submitted,

By: [signature]
Michael Bergman
Attorneys for Defendant and Counterclaimant

---

[6] Issues relating to non trademark, informational uses of this nature have been litigated previously in connection with copyrighted works whose term has expired or otherwise entered the public domain. In such cases, a party seeking to exploit the copyrighted work that has fallen into the public domain, is subsequently challenged by the former copyright holder on the basis that the new use – permitted under the copyright laws – may be violating the former copyright holder's trademark rights. *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Comp.* § 6:14 at 6-35 (4th ed. 2008). But, so long as the new use of the work under its original title does not cause a likelihood of confusion as to source, sponsorship or affiliation under the Lanham Act, such use would be permissible. *See*, *DC Comics v. Filmation Assocs.*, 486 F. Supp. 1273, 1277 (S.D.N.Y. 1980) (enjoining defendant's animated television series and promotion thereof; court prevented defendant from copying names, physical appearances of plaintiff's comic book characters where (i) comic books were not in public domain and (ii) defendant's use misrepresented the origin of its television program with no effort made to disclose true source), *but see Geisel v. Poynter Prods., Inc.*, 295 F. Supp. 331 (S.D.N.Y. 1968) (use of phrase "based on" to describe three-dimensional Dr. Seuss dolls copied from cartoons the copyrights for which were not owned by plaintiff, along with other appropriate disclaimers, alleviated likelihood of confusion).