O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-08400-SGL (RZx)                              Date: October 6, 2008

Title:       JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -*v*-
             WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
             corporation; DC COMICS INC., a corporation; and DOES 1-10
========================================================================
=
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                                    Donald Hilland
            Courtroom Deputy Clerk                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:          ATTORNEYS PRESENT FOR DEFENDANTS:

Marc Toberoff                              Michael Bergman
Nicholas Williamson                        Roger L. Zissu
                                           Patrick Perkins

PROCEEDINGS:     ORDER REGARDING RIGHT TO JURY TRIAL FOR REMAINING ISSUES

       With the filing of plaintiffs' second amended complaint (and the Court granting plaintiffs
leave to do so), there are only five claims left to try before the Court:  A state law claim for unfair
competition and unfair business practices in violation of California Civil Code § 17200 <u>et seq.</u>;
declaratory relief that plaintiffs have successfully terminated the grant to the copyright in various
Superman works; and three claims requesting an accounting of profits.  In addition, there is a
secondary issue concerning the scope of liability with respect to all these claims, namely, a request
to pierce the corporate veil between defendant DC Comics and certain of its corporate siblings on
the basis that they are "alter egos" of one another.  What divides the parties in litigating these
claims is how such a request for an accounting and for piercing the corporate veil should be tried
— one before a jury or as one tried before the Court (both sides agree that the state law unfair
competition claim is equitable in nature and should be tried to the Court).  (Def's Br. Additional
Issues at 67-68; Pl's Response at 31).

       The Seventh Amendment provides that, "[i]n Suits at common law, where the value in
controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."  The
Supreme Court long ago observed that "suits at common law" referred "not merely to suits, which
the common law recognized among its old and settled proceedings," that is, the common-law

MINUTES FORM 90                                    Initials of Deputy Clerk __jh_____
CIVIL -- GEN                              1        Time: /15

forms of action recognized at the time of the amendment's adoption, "but to suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered."  Parsons v. Bedford, 3 Pet. 433, 437 (1830).  Since that time the distinction between the legal or equitable nature of the rights and remedies at issue in the proceeding has become the guidepost for federal courts in determining whether the Seventh Amendment right to trial by jury attached to the proceedings before it.  See Chauffers, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 565 (1990) ("To determine whether a particular action will resolve legal rights, we examine both the nature of the issues involved and the remedy sought").  Specifically, "[f]irst, we compare the . . . action to 18th-century actions brought in the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature."  Tull v. United States, 481 U.S. 412, 417-18 (1987).

The second inquiry (the nature of the remedy sought) is more important in making this determination than the first.  See Granfinanciera S.A. v. Nordberg, 492 U.S. 33, 42 (1989).  This task of parsing out the precise nature of the action and the remedy sought has become more complicated since the merger of the systems of law and equity; today courts are often required to make analogies in characterizing the action and remedy at issue with those tried and the relief meted out at common law.  See Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 348 (1998); Pernell v. Southall Realty, 416 U.S. 363, 375 (1974) ("[the] Amendment requires trial by jury in actions unheard of at common law, provided that the action involves rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity or admiralty" (emphasis added)).

One final point bears mention:  In performing this task, a court must ensure that the protection of the right to a trial by jury be scrupulously guarded.  See Chauffers, 494 U.S. at 565 ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care").  With that in mind, the Court turns to the question of whether the right to trial by jury attaches to the claims in dispute — the ones for an accounting of profits and the one for declaration that DC Comics is an alter ego of its corporate siblings.

A.    Accounting of Profits

    1.  Nature of Action

The Court begins its task by looking to the nature of the particular claim asserted by plaintiffs.  It is the nature of the particular claim to be tried that is determinative, not the character of the overall action.  See Chauffers, 494 U.S. at 569 ("The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action" (emphasis in original)).

As the Court previously found, plaintiffs have successfully terminated the grant to the copyright and are now co-owners in the Superman copyright contained in the first issue of Action

<u>Comics</u>.  What is left is an accounting claim to divvy up the profits that copyright has garnered since the grant was successfully terminated as of April 16, 1999.  <u>Siegel v. Time Warner Inc.</u>, 542 F.Supp.2d 1098, 1145 (C.D. Cal. 2008) ("After seventy years, Jerome Siegel's heirs regain what he granted so long ago — the copyright in the Superman material that was published in <u>Action Comics</u>, Vol. 1.  What remains is an apportionment of profits, guided in some measure by the rulings contained in this Order, and a trial on whether to include the profits generated by DC Comics's corporate siblings's exploitation of the Superman copyright").   That said, this still leaves the question of what <u>issue</u> is left to be tried.

The 1976 Copyright Act embodied the basic principle under the 1909 Act that "authors of a joint work are co-owners of the copyright."  17 U.S.C. § 201.  The legislative history to the 1976 Act further confirmed that, under this pre-existing law, "the rights and duties of co-owners of a work . . . was left undisturbed . . . and co-owners of a copyright . . . are treated generally as tenants in common . . . subject to a duty to account to other co-owners for any profits."  H. Rep. No. 94-1476 at 120-21, 94th Cong. 2d. Sess. (1976).  While the interests plaintiffs have recaptured are based in copyright, it is the nature of the resulting relationship between plaintiffs and defendants that gives rise to their accounting claims, a relationship grounded in state common law principles of tenancy in common and the duties of a trustee.

Historically, an accounting claim predicated upon a duty arising from neither a tort nor an action in contract but, instead, from the parties' <u>relationship</u> with one another (be it as partners, co-owners of property, or beneficiaries and trustees) was considered equitable in nature.  Justice Story remarked long ago in his commentaries on the equity jurisprudence under the common law:

> Cases of account between tenants in common, between joint tenants, between partners, and between part owners of ships and the masters, fall under the like considerations.  They all involve peculiar agencies, like those of bailiffs or managers of property, and require the same operative power of discovery and the same interposition of equity.  Indeed in all cases of such joint interests, where one party receives all the profits, he is bound to account to the other parties in interest for their respective shares, deducting the proper charges and expenses, whether he acts expressly by their authority as the bailiff, or only by implication as manager without dissent <u>jure domini</u> over the property.

3 Joseph Story, <u>Commentaries on Equity Jurisprudence</u> § 622 at 37 (14th ed. 1918).

As noted above, it is this agency relationship between the parties, not an action compelled by contract or arising from tort, that gives rise to the accounting sought by plaintiffs in this case and which guides the Court's analysis.  That it is the agency relationship between co-owners to a copyright that propels any accounting claim between them was recognized by one of the preeminent voices in copyright jurisprudence, Judge Learned Hand, in an opinion concerning the proper sharing among co-owners to the copyright of an opera:

MINUTES FORM 90                                          Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          3                  Time: /15

> [T]he plaintiff's rights arise from a constructive trust, created and
> cognizable only by a court of equity. . . . Her suit, so far as concerns the
> statutory copyrights, is clearly on the equity side of the court, because
> at law she could get no declaration of those rights, nor, indeed, could a
> court of law look at any but legal interests in the copyrights.

Maurel v. Smith, 220 F. 195, 201-202 (S.D.N.Y. 1915); see also Shapiro, Bernstein & Co. v. Jerry
Vogel Music Co., 223 F.2d 252, 254 (2nd Cir. 1955) ( "As to the scope of the accounting it is clear
that each holder of the renewal copyright on the joint work should account to the other for his
exploitation thereof, not as an infringer but as a trustee"); Oddo v. Ries, 743 F.2d 630, 633 (9th Cir.
1984) ("A co-owner of a copyright must account to other co-owners for any profits he earns from
licensing or use of the copyright, . . . . but the duty to account does not derive from the copyright
law's proscription of infringement.  Rather, it comes from equitable doctrines relating to unjust
enrichment and general principles of law governing the rights of co-owners").

Thus, the nature of the accounting issue to be tried in this case bears "a direct historical
basis cognizable . . . in equity . . . .  The substantive claim here would historically have been
brought in the courts of equity as an equitable accounting" between partners or tenants to the
intellectual property at issue.  (Defs' Additional Br. at 63-64).

2.  Nature of Remedy Sought

This leads to a consideration of the remedy sought — a division of profits.  The legal or
equitable nature of such an accounting has never been precisely penned down, owing much to the
fact that, unlike other remedies, an accounting (much like a request for restitution) operates as a
chameleon, assuming the nature of the action giving rise to it, rather than having a static character
of its own.  Cf. Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212 (2002) ("not all
relief falling under the rubric of restitution is available in equity.  In the days of the divided bench,
restitution was available in certain cases at law, and in certain others in equity" depending upon the
nature of the claim giving rise to request for restitution).

The dynamic nature of where an accounting remedy falls on the ledger between courts of
law and equity under the common law is well-stated by one leading treatise:

> Suits for accounting originated in the common law courts, but they were
> narrow in scope in that they only applied against persons having a legal
> duty to account to plaintiff, such as guardians and receivers.
> Furthermore, the procedures were cumbersome, and the accounting
> action was soon replaced in large part at common law by the action of
> general assumpsit for money had and received, in which all issues were
> triable to the jury.
>
> In equity, there developed both a concurrent and exclusive jurisdiction
> over matters of account.  Concurrent jurisdiction could be invoked when

the claims involved were legal, but the complicated nature of the account rendered the legal remedy inadequate.  When the claims involved were equitable, jurisdiction in equity over the accounting was exclusive.

8 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 38.31[1][a] at 38-76 (3rd ed. 2008).

For this reason, resolution of the nature of the underlying claim is fundamental to determining whether a trial by jury right attaches when the remedy in question is that for an accounting.  Cf. Reich v. Continental Casualty Co., 33 F.3d 754, 756 (7th Cir. 1994) ("restitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case," meaning whether it is legal or equitable depends on "the basis for [the plaintiff's] claim") (Posner, J.).  Thus, courts have held that no right to a jury trial existed on an action for an accounting premised on the existence of a trust, see Dardovitch v. Haltzman, 190 F.3d 125, 133-134 (3rd Cir. 1999), or for an accounting involving the distribution of assets of a partnership.  Phillips v. Kaplus, 764 F.2d 807, 814 (11th Cir. 1985).  That such an accounting action results in an award of money to plaintiffs does not detract from the equitable nature of the remedy provided.

The Supreme Court has recognized, in an analogous context, a restitution of profits improperly had or held is a remedy in equity.  See Chauffers, 494 U.S. at 570 ("we have characterized damages as equitable where they are restitutionary, such as in "actions for disgorgement of improper profits"); Feltner, 523 U.S. at 352 (noting the "historical cause of action — including those actions for monetary relief that we have characterized as equitable, such as actions for disgorgement of improper profits").  Indeed, the analogy of restitution to the particular remedy sought in this case is apt.  The Supreme Court observed that, historically, a "plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could be traced to particular funds or property in the defendant's possession."  Great-West, 534 U.S. at 213.  In a very real sense, this is what plaintiffs are requesting the Court to do in this case; having identified that plaintiffs are co-owners of certain intellectual property, plaintiffs seek for defendant to give to them  some of the money in its possession that is directly tied or traced to that copyright (or, in the words of the Supreme Court, "to restore to the plaintiff particular funds or property in the defendant's possession," Id. at 214).

The Supreme Court made this exact analogy between a restitution request and an equitable accounting action.

There is a limited exception for an accounting for profits, a form of equitable restitution that is not at issue in this case.  If, for example, a plaintiff is entitled to a constructive trust on particular property held by the defendant, he may also recover profits produced by the defendant's use of that property, even if he cannot identify a particular res containing the profits sought to be recovered.

Initials of Deputy Clerk ___jh_____
Time: /15

Id. at 214 n.2 (emphasis added).

That the Supreme Court would emphasize the trust aspect of such an accounting as giving rise to its equitable nature is all the more noteworthy given this Court's previous discussion on how the claim leading to such a request for accounting here is based on the agency or trust-like relationship between the two parties. Plaintiffs' protestations notwithstanding, the trust or agency relationship between the parties is not simply a meaningless label (as would be the case for the use of the term "accounting" which can be either legal or equitable in nature depending upon the underlying claim giving rise to it), but it describes the duty, the legal obligation, upon which plaintiffs' request for an accounting hinges. Professor Nimmer's remark that "a constructive trust relationship is a means of describing a duty rather than a ground for creating it" is correct, but does nothing to advance plaintiffs' position. 1 Nimmer on Copyright § 6.12. What creates the trust relationship between the parties is a finding that the parties are co-owners of a copyright; that they are tenants in common to that particular intellectual property. Once that has been adjudicated (which would be something to which a right to trial by jury attaches), what is left is a claim dependent upon that relationship itself, and thus not any need for a further adjudication of a legal claim to support it (that having already been done by way of the earlier judgment designating the parties co-owners).[1]

It is in this respect the present action is distinguishable from that in Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962). There the action concerned a party's request for an accounting where the claim giving rise to such a request was predicated upon the assertion that defendant had breached a trademark licensing agreement with plaintiff and continued to sell products bearing plaintiff's trademark, thereby infringing plaintiff's mark. It was this contractual basis for the accounting that led the Supreme Court to find the nature of the issue to be tried was legal in nature and thus one to which plaintiff enjoyed a right to a jury: "As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character. And as an action for damages based upon a charge of trademark infringement, it would be no less subject to cognizance by a court of law." Id. at 477. For this reason that the Supreme Court found the form of relief sought — an accounting — immaterial: "The respondent's contention that this money claim is 'purely equitable' is based primarily upon the fact that their complaint is cast in terms of an 'accounting,' rather than in terms of an action for 'debt' or 'damages.' But the

---

[1]   Regarding an accounting for the distribution of partnership assets, courts have noted that threshold issues such as those relating to the existence of the partnership itself and whether a party was a partner in the partnership were legal in nature and a right to a trial by jury of those issues attached, even if no such right attached to the ultimate disposition or dissolution of the partnership's assets by the court. See Stockton v. Altman, 432 F.2d 946, 949-950 (5th Cir. 1970). The same is true with accounting of profits between co-owners to a copyright. The threshold questions over whether a party is a co-owner (so as to trigger the right to an accounting) are bound up in questions legal in nature to which a right to a trial by jury exists. If those threshold issues have been decided by the time of trial, all that is left is the purely equitable claim for distribution of profits between tenants in common, a quintessential equitable task.

constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." Id. at 477-78.

Thus, it was not the fact that plaintiff sought an accounting that pushed the Supreme Court to find that the right to a jury trial existed; it was the fact that the underlying claim precipitating the request for an accounting was predicated upon such purely legal claims that rendered the trial of the same to be one done before a jury. See 8 MOORE'S FEDERAL PRACTICE § 38.31[1][c][l] at 38-78; see also Sid & Marty Krofft Television v. McDonald's Corp., 562 F.2d 1157, 1174-75 (9th Cir. 1977) (finding right to jury trial existed in an action for an accounting predicated upon copyright infringement). The opposite governs here. The underlying claim giving rise to the accounting between plaintiffs and defendants is one arising from the respective relationship they have to one another as tenants in common, co-owners of certain intellectual property (a copyright); it is decidedly not one arising from or the "functional equivalent" of a tortious act, or is it one arising from contract as would be the case for copyright infringement. (Opp. at 26).

The parties have been unable to direct the Court to any authority directly addressing the question of whether an accounting of profits between co-owners of a copyright is a matter to which there exists a right to trial by jury. Nor has the Court, from its own review of the case law, identified any such precedent. It is notable, however, that in every reported decision in which such an accounting occurred, the matter was tried before a court, not a jury. See Gaiman v. McFarlane, 360 F.3d 644, 648 (7th Cir. 2004) (noting as part of procedural history of case that the matter of the accounting between the co-owners to the "Spawn" comic book copyright was tried to the court, not the jury: "The case [seeking a declaration that Gaiman owns the copyrights jointly with McFarlane in certain comic-book characters] was tried to a jury, which brought in a verdict for Gaiman. The judge entered judgment that declared Gaiman to be the co-owner of the characters in question, ordered McFarlane to so designate Gaiman on undistributed copies in which these characters appear, provided modest monetary relief in respect of Gaiman's supplemental claim for damages for breach of his right of publicity, and ordered an accounting of the profits that McFarlane has obtained that are rightfully Gaiman's. The accounting is not yet complete"); Edward B. Marks Music Corp. v. Wonnell, 4 F.R.D. 146, 146 (S.D.N.Y. 1944) (striking request for jury trial on accounting of profits between purported co-owners to a song, noting such an accounting "is usually equitable"); Goodman v. Lee, 1994 WL 710738, at *1 (E.D. La Dec. 20, 1994) (accounting of profits between co-owners to the song "Let the Good Times Roll" tried before court, not jury); Merchant v. Lymon, 1995 WL 217508, at *1 (S.D.N.Y. April 11, 2005) (trying matter of the damages to be awarded between co-owners of copyright to the song "Why Do Fools Fall In Love?" before the court not a jury).

The Court finds that the remaining accounting claims pressed in plaintiffs' complaint (arising from the nature of the relationship between the two as tenants in common) are equitable in nature, which correspondingly means that the nature of the relief sought (an accounting of profits) is equitable in nature. Accordingly, the Court finds that plaintiffs do not have a right to a trial by jury on those accounting claims.

B.     Alter Ego

1.  Nature of Action

To begin, the alter ego doctrine, sometimes referred to as piercing the corporate veil doctrine, is not a cause of action unto itself; "it is merely a procedural means of allowing [or better said, expanding the scope of those ensnared in the net of] liability on a substantive claim." International Financial Servs. v. Chromas Tech., 356 F.3d 731, 736 (7th Cir. 2004) (citing 1 WILLIAM FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41.28 (1999)). That said, there did exist a historical "procedure," recognized at common law, for expanding the reach of the liability on a substantive claim in the context of corporations and its shareholders.  The historic origins of the piercing the corporate veil doctrine were "applied in courts both of law and equity."  Wm. Passalacqua Builders v. Resnick Developers, 933 F.2d 131, 135 (2nd Cir. 1991) (citing I.M. Wormser, Piercing the Veil of the Corporate Entity, 12 COLUM. L. REV. 496, 497-99, 513-14 (1912) ("courts, whether of law, of equity or of bankruptcy, do not hesitate to penetrate the veil and to look beyond the juristic entity at the actual and substantial beneficiaries")).

The historical evolution of the doctrine at common law was described by the Resnick court as follows:

> [E]nforcement of shareholder liability for corporate obligations began as "a crude system in which any creditor with an unsatisfied judgment against the corporation sued any shareholder at common law."  The next stage in the evolution of this theory of disregard was the development of the equitable procedure known as "creditor's bill." When fully formed, the creditor's bill had two parts.  The first part was a proceeding in equity "instituted by any creditor with an unsatisfied judgment, usually on behalf of all creditors, against the corporate debtor," the purpose of which was to adjudge the extent of the total corporate liability to the group of creditors.  The second part was an action at common law against the shareholders individually to collect the amount owed in which only personal defenses were allowed to be raised.

933 F.2d at 135-36.  Given this "split procedure" — one half sounding in equity and the other half in law — courts have concluded that determination of the nature of alter ego action itself is inconclusive, making analysis of the nature of the remedy all the more important.  See Chromas Tech., 356 F.3d at 736 ("Here, such an inquiry is inconclusive . . . the doctrine of piercing the corporate veil has roots in both courts of law and equity. . . .  As the historical inquiry is indeterminate, the outcome of this appeal hinges on the second half of our analysis"); Resnick, 933 F.2d at 136 ("These sources support the proposition that the nature of the ancient action disregarding the corporate form had equitable and legal components. . . . we turn next to examine the remedy sought").

2.  Nature of the Remedy

Many of the courts that have concluded that the remedy of piercing the corporate veil is legal in nature have done so due to the fact that the result of such a determination would result in monetary damages against those standing behind the corporate veil.  See Resnick, 933 F.2d at 136 ("The fact that plaintiffs seek money indicates a legal action"); In re G-I Holdings, Inc., 380 F.Supp.2d 469, 476 (D. N.J. 2005).  However, as demonstrated above, it is the nature of the relief sought, not what ultimately results or is to be secured by the same, that should be dispositive.  In this respect, the Court finds the Seventh Circuit's decision in Chromas Tech. persuasive.  Many of the issues to be considered in determining whether to pierce the corporate veil are indeed fact based, issues which a jury is readily capable of deciding.  But it is the leap between those findings of fact and whether the corporate veil should be pierced that renders it "essentially an equitable doctrine . . . not amenable to determination by a jury."  Chromas Tech., 356 F.3d at 738.  As the Seventh Circuit explained:

> [D]etermining whether there is such a "unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" is essentially a question of fact.  Deciding this question of fact depends on whether there was inadequate capitalization, a failure to observe corporate formalities, commingling of funds, an absence of corporate records, etc., and a jury is arguably capable of resolving such issues.  However, the balance of the veil-piercing analysis — deciding whether adhering to the fiction of a separate corporate existence would promote injustice or inequity — is the type of equitable determination that a jury is not to decide.

Id.  Simply put, whether a corporation is an alter ego of its corporate sibling rests, in the end, on an exercise of discretion, not of compulsion, as would be the case, for example, if all the factual elements of a tort or a contract claim had been established.  See Sonora Diamond Corp. v. Superior Court, 83 Cal.App.4th 523, 538 (2000) ("In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone").  Instead, even if all the objective factors are present, whether the corporate veil should be shredded still requires an equitable assessment of whether maintaining the corporate form would be "inequitable," something that is ultimately a matter of discretion for which no instruction could adequately be provided to a jury as to how to perform such a task.  It is the inherent discretionary nature of whether to even grant the relief requested which has caused courts to comment that such an action rests with the courts of equity of old, not those of law.  See Bangor Punta Operations, Inc. v. Bangor & Aroostook R. Co., 417 U.S. 703, 713 (1974) ("Although a corporation and its shareholders are deemed separate entities for most purposes, the corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy.  In such cases, courts of equity, piercing all fictions and disguises, will deal with the substance of the action and not blindly adhere to the corporate form").

Accordingly, the Court finds that plaintiffs' alter ego claim is one sounding in equity to which

no right to a trial by jury existed at common law.

The parties have pressed the Court provide a decision on questions on the mechanics of how the accounting of profits will take place, i.e., who bears the burden of proof on what issues; should principles of apportionment be employed; how broad or narrow is the scope of the "mixed copyright/trademark" products and merchandise to which an accounting is required; and how much or little is needed to transform the post-termination sale of a pre-termination derivative work into a post-termination derivative work so as to require an accounting.  Given that the Court will be conducting a bench trial on the alter ego claim before it conducts the bench trial on the accounting and unfair competition claims, the Court will reserve ruling on those questions until shortly before the time of that second trial.

The Court is presented with a number of miscellaneous issues and the need to set out a comprehensive final schedule in this matter.  The Court **GRANTS** defendants' request to file objections to plaintiffs' September 23, 2008, filings and also **GRANTS** plaintiffs' request to file a response to defendants' September 26, 2008, objections.  As noted in its previous order, no further pleadings are to be filed with the Court in connection with the issues presented in the parties' brief of additional issues without leave of the Court.

As far as scheduling of the trial in this matter, the Court will stagger trial of the alter ego and accounting claims.  The alter ego claim shall be tried to this Court on January 20, 2009, at 9:30 a.m., in Courtroom One.  The Court will conduct a final pre-trial conference in connection with the alter ego claim on January 12, 2009, at 11:00 a.m. in Courtroom One.   The accounting claims shall be tried to this Court on March 24, 2009, at 9:30 a.m., in Courtroom One.  The Court will conduct a final pre-trial conference in connection with the accounting claim on March 16, 2009, at 11:00 a.m., in Courtroom One.

**IT IS SO ORDERED.**