# EXHIBIT A

03

WEISSMANN WOLFF BERGMAN
  COLEMAN GRODIN & EVALL LLP
Michael Bergman (SBN 37797)
Anjani Mandavia (SBN 94092)
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212
Telephone: 310-858-7888
Fax:        310-550-7191
Email:      mbergman@wwllp.com

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Roger L. Zissu (Admitted *pro hac vice*)
James Weinberger (Admitted *pro hac vice*)
866 United Nations Plaza
New York, New York 10017
Telephone: 212-813-5900
Fax:        212-813-5901

PERKINS LAW OFFICE, P.C.
Patrick T. Perkins (Admitted *pro hac vice*)
1711 Route 9D
Cold Spring, NY 10516
Telephone: 845-265-2820
Fax:        845-265-2819

Attorneys for Defendants and Counterclaimant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>Plaintiffs,<br><br>vs.<br><br>TIME WARNER INC., WARNER COMMUNICATIONS INC. WARNER BROS. ENTERTAINMENT INC., WARNER BROS. TELEVISION PRODUCTION INC., DC COMICS, and DOES 1-10,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. SA CV 04-8400 SGL (RZx)<br>Case No. SA CV 04-8776 SGL (RZx)<br><br>Hon. Stephen G. Larson, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**NOTICE OF MOTION AND JOINT STIPULATION RE: DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH THE COURT'S 4/30/07 ORDER AND MOTION FOR SANCTIONS**<br><br>Time:      10:00 a.m.<br>Date:      October 15, 2007<br>Place:     Courtroom 540<br>Mag. Judge Ralph Zarefsky<br>Discovery Cutoff: Nov. 17, 2006 |

04

# TABLE OF CONTENTS

I.    DEFENDANTS' INTRODUCTORY STATEMENT ........................................1

II.   PLAINTIFFS' INTRODUCTORY STATEMENT ...................................3

III.  DEFENDANTS' CONTENTIONS ........................................6

    A.   RELEVANT BACKGROUND ................................6

    B.   ARGUMENT ................................10

       1.   The "Defamatory" Cover Letter To The Escrow Documents................................12

       2.   Post-Litigation Attorney-Client Communications................................13

       3.   Plaintiffs and Mr. Toberoff Cannot Use An Entry On a Third Party's Privilege Log To Prevent the Escrow Officer From Releasing Documents That Were Unlisted On Their Own Privilege Logs................................14

       4.   The Escrow Holder Cannot Fulfill The Court's Order Without Matching Up The Escrow Documents With the Documents and Privilege Log Entries Identified in Mr. Toberoff's Declaration................................20

    C.   CONTEMPT SANCTIONS ARE WARRANTED HERE ................23

IV.   PLAINTIFFS' CONTENTIONS ................................24

    FACTUAL AND PROCEDURAL BACKGROUND................................24

       1.   Documents Stolen from Plaintiffs' Attorneys' Files ................................25

       2.   The Court's April 30, 2007 Order................................28

    ARGUMENT................................31

    A.   Plaintiffs' Counsel Fully Complied With the Court's April 20, 2007 Order................................31

       1.   Plaintiffs Attorney-Client Communications After Commencement of Litigation Retain Their Privilege................................32

       2.   The "Defamatory Cover Letter" Discussing The Contents Of Privileged Communications Listed In The Privilege Logs Should Not Be Disclosed Per The Order's Rationale ................................34

05

3.    Per The Order, The Two Letters Listed On The Privilege Log Of Non-Party Attorney, Don Bulson, Should Not Be Disclosed ................... 37

B.    Defendants' Improper Attempt To Influence And Interfere With The "Escrow" Process Should Not Be Countenanced ............................. 42

C.    Sanctions Against Plaintiff Are Improper ........................................... 44

D.    Defendants Should Be Sanctioned For Their Attempt to Influence the Escrow Process ............................................................................... 45

V.    DEFENDANTS' CONCLUSION ................................................................. 45

VI.    PLAINTIFFS' CONCLUSION ................................................................... 46

ii

**06**

(9th Cir. 1981) (party asserting the attorney-client privilege has the burden of establishing that it applies). The first specific mention they made of the document's potentially or purportedly privileged nature was during the briefing of Defendants' original motion to compel, at which time Mr. Toberoff made an equivocal reference to the document. (Bergman Decl. Exh. J.) However, Mr. Toberoff did not demonstrate or even affirmatively state that that the document is privileged; rather, he contended that the letter "is defamatory and in other respects *potentially violates* the attorney-client privilege." (*Id.* at ¶ 27) (emphasis added.) It was not until the correspondence leading up to the present motion that Mr. Toberoff took a firm stance by asserting that the cover letter is protected by the attorney-client privilege. These circumstances demonstrate that Plaintiffs and Mr. Toberoff cannot make the showing required to withhold a document from production, and for this independent reason, that letter should be turned over to Defendants.

### 2. Post-Litigation Attorney-Client Communications.

While Defendants do not dispute that the parties to the litigation had an understanding that they would not list post-litigation documents on their privilege logs, that is not the issue here. Because the Court's Order was clear and required the Escrow Holder to release *any* documents not previously listed on a privilege log, the sole issue is whether each Escrow Document -- post-litigation communication or not -- was listed on a privilege log. Under a straightforward analysis of what that Order required, therefore, the Escrow holder should turn over the documents purportedly containing post-litigation attorney-client communications regardless of whether the plaintiffs and defendants to the litigation had a prior understanding, since those documents had not been previously produced or listed on any privilege log.

It is now too late to contemplate what might have happened if Mr. Toberoff had declared this objection to the Court during the hearing and given Defendants

13

**07**

"In the transcript, Magistrate Zarefsky does seem to announce a simple protocol for the so-called Escrow Documents: documents which appear on privilege logs are protected and should not be turned over to defendants, and documents not on privilege logs are not protected and should be produced to defendants. Unfortunately, there are some documents, and you have each made certain agreements, which do not seem to be directly encompassed by the transcript or Magistrate Judge Zarefsky's Order."

Bergman Decl. II, Ex. G.

Defendants self-servingly distort the position taken by Mr. Eisen in his May 24, 2007 letter to the parties. Bergman Decl. II, Ex. G.  Eisen's letter is quite clear that he is continuing custody of the "escrow documents" because certain documents fall between the cracks and "do not seem to be encompassed by the transcript or Magistrate Judge Zarefsky's Order." *Id.* These documents are (1) two privileged communications between Toberoff and Plaintiffs *after* the start of the present litigations, which were not listed on a privilege log pursuant to a standing agreement with Defendants; (2) two documents listed on the privilege log of Michael Siegel's attorney, Don Bulson; and (3) the "defamatory cover letter" that allegedly accompanied the packages delivered to Warner and described the contents of stolen attorney-client communications listed on privilege logs.

## 1. Plaintiffs' Attorney-Client Communications After Commencement Of Litigation Retain Their Privilege

Defendants' unreasonable overreaching stance is no better exemplified than their demand that Mr. Eisen turn over two attorney-client communications *after the commencement of litigation* between Plaintiffs and their attorney, Mr. Toberoff. Defendants cling to the absurd and inequitable position that there has been a waiver of these plainly privileged communications because such were not listed on a privilege log even though Defendants admit, as they must, that the parties have a longstanding agreement pursuant to which neither side was supposed to list post-

08

litigation attorney-client communications on a privilege log.[11]  Per this agreement, Defendants and Plaintiffs have not listed hundreds of post-litigation communications on any privilege log.

Defendants ignore this reality and instead make the bald unreasonable claim that Magistrate Zarefsky's "bright line" Order sweeps away this privilege, even though this obviously was not intended or addressed, as pointed out in Mr. Eisen's May 24, 2007 letter:

> "Mr. Toberoff refers to two post-litigation, attorney client emails (Q10 and Q278) and related fax transmittal documents (Q285-289), which he says were subject to a 'standing agreement' that such communications need not be listed on privilege logs. This issue was not referred to at the hearing by Magistrate Zarefsky or counsel…"

Bergman Decl. II, Exs. D at 51; G.

Defendants erroneously state that this issue was never brought to their or the Court's attention and that they were prevented from addressing it. However, as Defendants well know, these privileged e-mails were specifically discussed on page 30 of Plaintiffs' portion of the parties' March 26, 2007 Joint Stipulation regarding the escrow documents as follows: "There are also 2 privileged e-mail communications between Plaintiffs and their present counsel dated after commencement of this action which were not listed in Plaintiffs' privilege logs because the parties have agreed not to list post-complaint attorney-client communications on their respective privilege logs."

Additionally, in paragraph 22 of Mr. Toberoff's March 23, 2007 declaration in opposition to defendants' motion to compel, Mr. Toberoff specifically mentioned the two privileged e-mails and explained to the Court that these post-litigation communications were not listed on a privilege log because "the parties to this action have agreed not to list post-complaint attorney-client communications on their respective privilege logs."  Toberoff Decl. I, ¶ 22.

---

[11] "Defendants do not dispute that the parties to the litigation had an understanding that they would not list post-litigation documents on their privilege logs…" Motion at 13.

33

No reasonable person would conclude that the Court nonetheless intended that such clearly privileged communications be produced given the rationale of its Order.  No fair reading of the Order, as well as common sense, could give Defendants access to privileged communications they would not otherwise be entitled to, simply because such documents were pilfered from Toberoff's legal files.  It is mere sophistry to insist it was Magistrate Zarefsky's intention that, despite the parties' standing agreement, Plaintiffs must list such post-litigation attorney-client communications on a privilege log, whereas Defendants need not.

2. **The "Defamatory Cover Letter" Discussing The Contents Of Privileged Communications Listed In The Privilege Logs Should Not Be Disclosed Per The Order's Rationale**

Defendants also claim that the anonymous "undated defamatory letter" enclosing the stolen documents must be released because it has not been listed on a privilege log.  Bergman Decl. II, Ex. D at 51.  Firstly, this letter was clearly not the subject of Defendants' motion to compel which dealt with the stolen documents enclosed by the letter, as throughout their initial motion defendants drew a clear line between the "Whistle-blower documents" that were the subject of its motion and the "cover letter" contained with the documents, which was not. *Compare Defendants' Motion at* 2:6-14 (requesting production of the "Whistle-blower documents") with *Defendants' Motion at* 6:13-14 (referring to "the cover letter contained with the documents"); 6:26-27 (characterizing "the 'cover letter' that *came with* the Whistle-blower documents") (emphasis added); 7:9-10 (referring to "Whistle-blower Documents contained with the letter"); 7:17-19 (referring to attorneys perusal of "the contents of the cover letter and my brief thumbing through the documents"); and 16:17-21:28 (referring repeatedly to the "Whistle-blower Documents" and never mentioning the cover letter.)

As noted by Mr. Eisen, the cover letter "also was not discussed" at the hearing before Magistrate Zarefsky.  Bergman Decl. II, Exs. A ,G.  However, the

**10**

Toberoff's declaration to confirm that he is releasing the proper Escrow Documents to Plaintiffs and Defendants; and (3) grant sanctions to Defendants in the amount of $7,440.

## VI.    PLAINTIFFS' CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that Defendants' unfounded motion be denied in its entirety and that the Court grant Plaintiffs sanctions in the amount of $5,600.

DATED: September 17, 2007    Respectfully submitted,

WEISSMANN WOLFF BERGMAN
COLEMAN GRODIN & EVALL, LLP
-and-
FROSS ZELNICK LERMAN ZISSU, LLP
-and-
PERKINS LAW FIRM, PLC

By _____
                Michael Bergman
                Attorneys for Defendants

DATED: September __, 2007    LAW OFFICES OF MARC TOBEROFF, PLC

By _____
                Marc Toberoff

Attorneys for Plaintiffs JOANNE SIEGEL
and LAURA SIEGEL LARSON

46

**11**

# EXHIBIT B

# JAMS

## CONFIDENTIALITY AGREEMENT (CALIFORNIA)

**Re:     Mediation of Siegel, Joanne, et al. vs. DC Comics, et al.
JAMS Reference Number 1100052854**

In order to promote communication among the parties and to facilitate resolution of the dispute, the participants agree as follows:

1.      This mediation process is to be considered settlement negotiations for the purpose of all state and federal rules protecting disclosures made during such process from later discovery and/or use in evidence.

2.      The provisions of California Evidence Code §§ 1115-1128 and 703.5, attached hereto, apply to this mediation. The provisions of the Central District of California Local Rule 16-15, attached hereto, also apply to this mediation. Pursuant to Local Rule 16-5.8, the mediation and any settlement conference or discussion ("Settlement Conference") shall be confidential, and no part of any Settlement Conference shall be reported, or otherwise recorded, without the consent of the parties. With respect to California Evidence Code §1122, any agreement to disclose under sub-sections (a)(1) or (a)(2) of that section must be expressly made in writing. THIS CONFIDENTIALITY AGREEMENT ("AGREEMENT") EXTENDS TO ALL PRESENT AND FUTURE CIVIL, JUDICIAL, QUASI-JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER PROCEEDINGS.

3.      The participants' sole purpose in conducting or participating in any Settlement Conference is to compromise, settle or resolve their dispute, in whole or in part. Pursuant to Evidence Code § 1121, neither the mediator nor anyone else will submit to a court or other adjudicative body any report, assessment, evaluation, recommendation, or finding of any kind by the mediator concerning a mediation conducted by the mediator, unless all parties to the mediation expressly agree otherwise in writing in accordance with Evidence Code § 1118.

4.      The privileged character of any information or documents is not altered by disclosure to the mediator or disclosure in any Settlement Conference The mediation process may continue after the date appearing below. Therefore, the mediator's subsequent oral and written communications with the mediation participants in a continuing effort to resolve the dispute are subject to this Agreement. Accordingly, the parties waive the automatic termination provisions of Evidence Code § 1125(a)(5).

5.      All parties, counsel and any other persons attending any  Settlement Conference shall treat all such discussions as strictly confidential in every respect, including without limitation, the contents or substance of any oral or written statements

**13**

made at the Settlement Conference, and all other substantive aspects of such Settlement Conference ("Confidential Settlement Information"). Without limitation, any document that is marked "Confidential – For Settlement Purposes Only" and is disclosed or produced at or in connection with a Settlement Conference shall be treated as Confidential Settlement Information. Confidential Settlement Information shall not be disclosed to anyone other than the parties, their counsel or the mediator or used in any way, shape or form for any purpose, including impeachment, in any pending or future proceeding in any court, in whole or in part, directly or indirectly, orally or in writing, except as set forth in paragraph 6 below.

6.    The prohibition on the disclosure of Confidential Settlement Information does not extend to disclosures as may be mutually stipulated and agreed upon in writing by all parties or to disclosures as are otherwise ordered by a Court of competent jurisdiction. Documentation or information that is (a) publicly available, (b) already in the possession of the adverse party or their counsel prior to its disclosure by a party or their counsel at a Settlement Conference, or (c) is developed independently of any Settlement Conference and without reference thereto, shall not be considered as Confidential Settlement Information, and pursuant to Evidence Code § 1120, the use of such information and documentation at a Settlement Conference shall have no effect on the admissibility or protection from disclosure of the information and documentation in the underlying litigation; however the fact that such information or documentation was used or disclosed  at a Settlement Conference, and the nature of such use or disclosure, at a Settlement Conference will constitute Confidential Settlement Information.

7.    The parties shall file with the Court a "joint report, outlining the efforts they have taken in furtherance of the settlement and the results of those efforts," pursuant to the Court's March 31, 2008 scheduling order, and on or before the Court's June 1, 2008 deadline. To the extent the parties fail to settle any outstanding action, claim or dispute by a written settlement agreement, the parties shall, unless otherwise agreed in writing, limit the information conveyed to the Court in their joint report or otherwise to the following: (i) that the parties were unable to settle the action, claim or dispute; (ii) the names of all parties and their counsel who attended each mediation session or other Settlement Conference; and (iii) the dates and duration of any such mediation session or other Settlement Conference. Any further or additional statement or disclosure regarding the status of the parties' settlement discussions as set in the "joint report" or otherwise shall only be made with the written consent of all parties. No further disclosure concerning any of the settlement proceedings, or of "Confidential Settlement Information," shall be made by either party or their respective attorneys, agents, or representatives, in whole or in part, directly or indirectly, orally or in writing, except as set forth in paragraph 6 above.

8.    ANY WRITTEN SETTLEMENT AGREEMENT PREPARED DURING OR AT THE CONCLUSION OF THE MEDIATION IS SUBJECT TO DISCLOSURE, BINDING, ENFORCEABLE, AND ADMISSIBLE to prove the existence of and/or to enforce the agreement under California Code of Civil Procedure 5664.6, if applicable, or otherwise.

**14**

9.      Because the participants are disclosing information in reliance upon this Agreement, any breach of this Agreement would cause irreparable injury for which monetary damages would be inadequate. Consequently, any pasty to this Agreement may obtain an injunction to prevent disclosure of any such confidential information in violation of this Agreement.

10.      In the event that any other individual or entity not set forth below participates in the mediation process, such an individual or entity must expressly and in writing agree to all provisions of this Agreement.

11.      The mediator is serving as a neutral intermediary and settlement facilitator and may not act as an advocate for any party. THE MEDIATOR'S STATEMENTS DO NOT CONSTITUTE LEGAL ADVICE TO ANY PARTY. ACCORDINGLY, THE PARTIES ARE STRONGLY ENCOURAGED TO SEEK LEGAL ADVICE FROM THEIR OWN COUNSEL. If the mediator assists in preparing a settlement agreement, each participant is advised to have the agreement independently reviewed by their own counsel before executing the agreement.

Executed on _____

_____
Marc Toberoff, Esq.
Law Offices of Marc Toberoff

_____
Nicholas C. Williamson, Esq.
Law Offices of Marc Toberoff

_____
Keith G. Adams, Esq.
Law Offices of Marc Toberoff

_____
Joanne Siegel

_____
Laura Siegel Larson

**15**

Received   Apr-30-08   07:16pm   From-1 310 827 7227   -To-   Page 003

page 3/5

9.      Because the participants are disclosing information in reliance upon this Agreement, any breach of this Agreement would cause irreparable injury for which monetary damages would be inadequate. Consequently, any party to this Agreement may obtain an injunction to prevent disclosure of any such confidential information in violation of this Agreement.

10.      In the event that any other individual or entity not set forth below participates in the mediation process, such an individual or entity must expressly and in writing agree to all provisions of this Agreement.

11.      The mediator is serving as a neutral intermediary and settlement facilitator and may not act as an advocate for any party. THE MEDIATOR'S STATEMENTS DO NOT CONSTITUTE LEGAL ADVICE TO ANY PARTY. ACCORDINGLY, THE PARTIES ARE STRONGLY ENCOURAGED TO SEEK LEGAL ADVICE FROM THEIR OWN COUNSEL. If the mediator assists in preparing a settlement agreement, each participant is advised to have the agreement independently reviewed by their own counsel before executing the agreement.

Executed on _____

_____
Marc Toberoff, Esq.
Law Offices of Marc Toberoff

_____
Nicholas C. Williamson, Esq.
Law Offices of Marc Toberoff

_____
Keith G. Adams, Esq.
Law Offices of Marc Toberoff

_____
Joanne Siegel

_____
Laura Siegel Larson

**16**

APR-30-2008 07:28 PM   1 310 827 7227   P.03

Estate of Joseph Shuster,
Mark Warren Peary, Executor

Michael Bergman, Esq.
Weissman Wolff Bergman, et al.

Anjani Mandavia, Esq.
Weissman Wolff Bergman, et al.

Roger Zissu, Esq.
Fross Zelnick Lehrman & Zissu, P.C.

Patrick T. Perkins, Esq.
Perkins Law Office, P.C.

Warner Bros. Entertainment Inc.

Time Warner, Inc.

Warner Communications, Inc.

Warner Bros. Television Production, Inc.

DC Comics

**17**

page 4/5

 

Estate of Joseph Shuster,
Mark Warren Peary, Executor

Michael Bergman, Esq.
Weissman Wolff Bergman, et al.

Anjani Mandavia, Esq.
Weissman Wolff Bergman, et al.

 

Roger Zissu, Esq.
Fross Zelnick Lehrman & Zissu, P.C.

Patrick T. Perkins, Esq.
Perkins Law Office, P.C.

 

Warner Bros. Entertainment Inc.

 

Time Warner Inc.

 

Warner Communications Inc.

 

Warner Bros. Television Production
A division of WB Studio Enterprises Inc.

page 4/5

Estate of Joseph Shuster,
Mark Warren Peary, Executor

Michael Bergman, Esq.
Weissman Wolff Bergman, et al.

Anjani Mandavia, Esq.
Weissman Wolff Bergman, et al.

Roger Zissu, Esq.
Fross Zelnick Lehrman & Zissu, P.C.

Patrick T. Perkins, Esq.
Perkins Law Office, P.C.

Warner Bros. Entertainment Inc.

Time Warner Inc.

Warner Communications Inc.

Warner Bros. Television Production
A division of WB Studio Enterprises Inc.

19

page 4/5

_____
Estate of Joseph Shuster,
Mark Warren Peary, Executor


_____
Michael Bergman, Esq.
Weissman Wolff Bergman, et al.


_____
Anjani Mandavia, Esq.
Weissman Wolff Bergman, et al.


_____
Roger Zissu, Esq.
Fross Zelnick Lehrman & Zissu, P.C.


_____
Patrick T. Perkins, Esq.
Perkins Law Office, P.C.

_____
Warner Bros. Entertainment Inc.


_____
Time Warner Inc.


_____
Warner Communications Inc.


_____
Warner Bros. Television Production
A division of WB Studio Enterprises Inc.

**20**

page 4/5

---
Estate of Joseph Shuster,
Mark Warren Peary, Executor

---
Michael Bergman, Esq.
Weissman Wolff Bergman, et al.

---
Anjani Mandavia, Esq.
Weissman Wolff Bergman, et al.

---
Roger Zissu, Esq.
Fross Zelnick Lehrman & Zissu, P.C.

---
Patrick T. Perkins, Esq.
Perkins Law Office, P.C.

---
Warner Bros. Entertainment Inc.

---
Time Warner Inc.

---
Warner Communications Inc.

---
Warner Bros. Television Production
A division of WB Studio Enterprises Inc.

**21**

page 5/5

DC Comics

_____          _____
for                                  for


_____          _____
for                                  for


_____          _____
for                                  for


_____          _____
for                                  for


_____          _____
for                                  for

**22**

# EXHIBIT C

**"O"**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-08400-SGL (RZx)                              Date: March 31, 2008

Title:    JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -*v*- WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS INC., a corporation; and DOES 1-10

=======================================================================

PRESENT:    HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                      None Present
Courtroom Deputy Clerk                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

None present                                     None present

PROCEEDINGS:    ORDER DENYING AS MOOT PARTIES CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT IN CV-04-8776 CASE; ORDER REQUIRING PARTIES TO ENGAGE IN MEANINGFUL SETTLEMENT NEGOTIATIONS; ORDER SETTING PRE-TRIAL AND TRIAL DATES; ORDER STAYING RULING ON OUTSTANDING ISSUES CONTAINED IN JULY 27, 2007, ORDER PENDING SETTLEMENT DISCUSSIONS   (IN CHAMBERS)

As the Court stated during the September 17, 2007, hearing on the parties' cross-motions for partial summary judgment in these cases, the issues raised by the parties in the Superboy action, Case No. CV-04-8776-SGL, were, in light of the Court's earlier ruling on July 27, 2007, and with a forthcoming ruling in the companion Superman action, Case No. CV-04-8400-SGL, would be rendered moot. With the Court's issuance of its Order on March 26, 2008, the Court finds that the issues raised in the parties' cross-motions for partial summary judgment in the Superboy case are, in fact, moot.

In light of the Court's rulings to date in these companion cases, which have narrowed the areas of dispute between the parties, the Court believes that it would be prudent at this juncture for the parties to engage in meaningful settlement talks before their jointly chosen mediator, JAMS Mediator Hon. Daniel Weinstein (Ret.), something which they apparently have not done since the inception of this litigation in 2004.

MINUTES FORM 90                                   Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          1

**24**

Case 2:04-cv-08400-SGL-RZ Document 294 Filed 03/31/2008 Page 2 of 2 Page

Accordingly, the Court hereby **ORDERS** the parties to devote the next sixty (60) days to engaging in a good faith effort to settle their dispute in the Superman and Superboy litigation before the JAMS Mediator. At the conclusion of this period, on June 1, 2008, the parties are to file a joint report, outlining the efforts that they have taken in furtherance of settlement and the results of those efforts.

Thereafter, the Court will, if the parties have not settled these cases, set out a briefing schedule and a hearing date on the five issues identified in the parties' February 21, 2008, Stipulation Requesting Status Conference and Briefing Schedule Regarding Certain Trial and Pre-Trial Matters, as well as the following issues left unresolved in this Court's March 26, 2008, Order in the Superman case: Whether and to what extent do the following fall within the scope of what plaintiffs regained through their termination notices: 1) Post-termination alterations to pre-termination derivative works; and 2) Mixed use of trademarks and copyright.

The Court also finds that there is a need for the placement of firm pre-trial and trial dates to both assist the Court in case management and to give predictability to counsel as to when the litigation in this case will come to an end. The Court therefore sets the following pre-trial and trial dates:

1.  The Court will conduct a pre-trial conference in the Superman case on October 6, 2008, at 11:00 a.m. in Courtroom One.

2.  Thereafter, the court will hold a hearing on any motions in limine in the Superman on October 20, 2008, at 11:00 a.m. in Courtroom One.

3.  Trial in the Superman case is set for November 4, 2008, at 9:30 a.m. in Courtroom One.

As a final matter, the Court reserves issuing an order on the remaining issues brought up in the Court's July 27, 2007, Order in the Superboy case (and to which the parties have provided both supplemental briefing and oral argument), and setting the pre-trial and trial dates in the Superboy matter, if needed, until after the conclusion of the trial in the Superman case.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN
2

Initials of Deputy Clerk __jh_____

# EXHIBIT D

Case 2:04-cv-08400-ODW-RZ Document 395-5 Filed 12/30/08 Page 25 of 29 Page
Case 2:04-cv-08400-SGL-RZ Document 286 Filed 12/12/2007 Page 1 of 5 Page
ID #:3952

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.     CV 04-08400-SGL (RZx)                          Date: December 12, 2007

Title:     JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -v-
           WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
           corporation; DC COMICS INC., a corporation; and DOES 1-10
===============================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                                    None Present
           Courtroom Deputy Clerk                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:           ATTORNEYS PRESENT FOR DEFENDANTS:

None present                                None present

PROCEEDINGS:   ORDER GRANTING DEFENDANTS' EX PARTE APPLICATION TO SET
               REBUTTAL EXPERT REPORT; ORDER CONTINUING PRE-TRIAL AND
               TRIAL DATES        (IN CHAMBERS)

        A central discovery issue in this case has been the conduct of the damages-related audit of
defendants' businesses and disputes related thereto.  Plaintiffs' financial expert, Mr. Steven Sills,
was afforded leave by this Court to conduct an on-site damages-related audit of defendants'
businesses to be completed by October 9, 2007.  During the audit, numerous production-related
disputes arose, none of which were presented to the Court by way of a motion to compel.  Despite
these production issues, Mr. Stills nonetheless submitted a supplemental expert report on
November 13, 2007.  Upon receipt of the report, defendants informed plaintiffs' counsel of the
need for additional time for their financial expert, Mr. Franklin Johnson, to submit a rebuttal report.
After a back and forth between the parties that apparently became tied up with plaintiffs' demands
for resolution of the audit-related production issues, defendants filed the present ex parte request
related solely to the time to provide a rebuttal report.

        Defendants' financial expert represents to the Court that he will need until January 14, 2008,
to submit his rebuttal report, due to the fact that the numbers in Mr. Sills report do not match up
with the numbers Mr. Johnson has calculated based on his review of defendants' books:

MINUTES FORM 90                                        Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          1

**27**

Case 2:04-cv-08400-SGL-RZ Document 286 Filed 12/12/2007 Page 2 of 5 Page

> Our task is particularly challenging in that we do not have Mr. Sills' binder. For the records we have inspected to date, many of his numbers do not agree with amounts we have inspected and the reasons for the differences are not readily apparent. . . . This is particularly so because the Sills Report seems to contain certain alleged revenue and expense numbers for Defendants' properties which do not correspond with the revenue and expense numbers we have been able to determine from our review of Defendants' books and records . . . .

(Decl. Franklin Johnson ¶¶ 3-4). This reason for the requested extension appears related to plaintiffs' complaint they have been denied access to all of defendants "books and records." As explained in their opposition: "Such financial information gaps should necessarily be resolved so that both sides' experts and the Court are 'dealing with a full deck' and analyzing the same set of financial data in computing Plaintiffs' damages. Whereas the parties' experts may disagree as to the interpretation of this data, at least they will be disagreeing over the same information." (Opp. at 2). The Court is concerned about the apparent linkage of the diverse financial calculations and these outstanding audit production issues.

Rule 26(a)(2)(C) requires that expert witness reports be made at least 90 days before the trial date. If the expert report is offered as rebuttal evidence, then said report must be made within 30 days after the submission of the report to which it is offered in rebuttal. Here, Mr. Sills submitted his "supplemental" expert report on January 12, 2007 (it is clear to the Court that Mr. Sills' initial report was simply a "placeholder" submitted because of the approaching expert cut-off and did not contain much substance owing to the fact that defendants had not furnished the necessary information for him to truly render an opinion, see Decl Marc Toberoff Ex. B at 4 & 10 ("after reviewing the scant and incomplete financial documents produced by Warner, it is clear that . . . many additional documents, as originally requested, remain necessary to properly determine an accounting to Plaintiffs . . . . [T]he documents and information requested by Plaintiffs, but not produced by Warner, is needed to make a proper and complete determination of Warner's revenues and profits. . . . In order for us to express an opinion on the actual amount due Plaintiffs in an accounting, Warner must provide the documents in its possession that on my advice have been requested by Plaintiffs")), which was the stipulated date for filing expert reports. (See Decl. Marc Toberoff, Ex. A).

The pre-trial and trial dates were subsequently continued by stipulation of the parties; moreover, the parties have again submitted a stipulation seeking for a further extension in the pre-trial and trial dates on account of the destruction of plaintiffs' counsel's home during the recent wildfires in Malibu on November 23, 2007.

Defendants mistakenly assert that plaintiffs' alleged non-compliance with Rule 26's requirements to timely tender Mr. Sills' expert report justifies their failure to submit a rebuttal report within the thirty day time frame called for in the rule. First, as noted above, there was no such non-compliance. Second, "[o]ne party's failure to comply with the expert disclosure requirement does

| | |
|---|---|
| MINUTES FORM 90 | Initials of Deputy Clerk __jh_____ |
| CIVIL -- GEN | 2 |

Case 2:04-cv-08400-ODW-RZ Document 395-5 Filed 12/30/08 Page 27 of 29 Page
Case 2:04-cv-08400-SGL-RZ Document 286 Filed 12/12/2007 Page 3 of 5 Page
ID #:3954

not excuse noncompliance by another party." 6 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE §
26.23[2][a][iii] at 26-74.21 (3rd ed. 2007).

Rather than attempting to resolve the narrow issue of whether to extend the time for
submitting the rebuttal report, the Court opts for an all-encompassing order that conclusively sets
forth the deadlines and obligations of the parties going forward in this case.

It is clear that defendants' expert needs more time to submit a rebuttal to Mr. Sills report.  It
is also clear that much of this need stems from the fact that the parties' financial experts are not
playing off the same play book.  Unlike plaintiffs' expert, Mr. Johnson has unfettered access to
defendants' financial information (a point conceded by defendants, see Reply at 2 n.2 ("As an
aside, however, . . . Defendants certainly have control over their own financial documents")).  It is
also clear to the Court that the problems in initiating a damages-related audit of defendants'
businesses has detrimentally impacted the submission and scheduling of each parties' respective
financial expert reports.  If such an audit had been completed earlier, the initial report submitted by
Mr. Sills in January, 2007, would have been more substantive, as would have been Mr. Johnson's
February, 2007, rebuttal report.  (See Decl. Marc Toberoff, Ex. C (Mr. Johnson's half-page rebuttal
report declares that "[i]f and when Mr. Sills submits a report expressing substantive opinions or
claims of any amount purportedly owing to plaintiffs, I will be prepared to and will respond to those
opinions and claims").  It should come as no surprise to the parties that Mr. Sills' post-audit report
would require a true rebuttal, as the subject of Mr. Sills' "supplemental" report contain much more
depth, and was predicated on more concrete facts, than the earlier "initial" report.  Indeed, it was
not until the audit was completed that it can be truly said that any financial expert reports existed in
this case.

This also heightens the importance of the yet unresolved production issues that have crept
up during the damages-related audit itself.  Defendants are correct that plaintiffs could have, if they
wished, filed a motion to compel of their own to litigate these production issues and the Court itself
is puzzled by the failure to do so (especially where the audit was completed more than two months
ago).  That said, any future motion to compel at this point might undermine any schedule that the
Court now sets if these production issues are not first resolved.  It appears clear that  resolution of
the timing of expert report and depositions requires resolution of the request for production of
financial information so that a meaningful and lasting scheduling of this case can be entered.

Towards that end, the Court hereby **GRANTS** defendants' ex parte request affording Mr.
Johnson leave to submit a rebuttal report beyond the December 13, 2007, date as required by
Rule 26(a)(2)(C), and further to allow a round of depositions to be taken of both sides' financial
experts.  At the same time, the Court has reviewed the parties' correspondence relating to the
outstanding audit-production issues; notably, the December 6, 2007, letter from plaintiffs' counsel
identifying the areas of dispute concerning unresolved production issues during the court-ordered
damages-related audit.  From its review of the papers, the Court finds that certain documents or
explanations concerning previously produced documents should have been produced or
articulated during the audit, and therefore **ORDERS** defendants to produce and/or clarify to Mr.
Sills by January 11, 2008, the following:

MINUTES FORM 90                                                             Initials of Deputy Clerk __jh_____
CIVIL -- GEN                                            3

● "Audit Documents" referenced on pages 3 to 4 of the December 6, 2007, letter;

● "DC Comics' Foreign/Domestic Revenue and Expenses" referenced on page 4 of the December 6, 2007, letter;

● "DC Comics' Publishing Division - Media" referenced on page 4 of the December 6, 2007, letter;  and

● "DC Comics' Merchandising" referenced on page 4 of the December 6, 2007, letter.

Plaintiffs' request for "Percentage Changes" in the December 6, 2007, letter had previously been disposed of in the Court's October 23, 2007, Order, and the Court will not revisit the issue. Nor does the Court find plaintiffs' request for a breakdown of general and administrative expenses title-by-title (the "General and Administrative Expenses" category listed in the December 6, 2007, letter) well-founded.

Undoubtedly, once such information is produced, Mr. Sills will submit a second supplemental expert report incorporating the additional information into his earlier "supplemental" report.  Accordingly, the Court hereby **ORDERS** that Mr. Sills' submit such a second supplemental report to defendants by January 28, 2008.  Once such a second supplemental report has been submitted, defendants' financial expert, Mr. Johnson, shall have thirty days from that time to submit his rebuttal report.  Upon the submission of the rebuttal report, each side, if it wishes, may conduct a deposition of those experts, said depositions to occur within two weeks of the submission of Mr. Johnson's rebuttal report (a time frame which the parties' purposed stipulation to continue the pre-trial and trial dates appears itself to contemplate).

These extensions in the discovery process necessarily will impact the other pre-trial and trial dates in place in this case.  The parties' themselves recognize that resolving the damages-related discovery issues and the subsequent submission of expert reports and depositions of those experts is necessary for forward progress in this case.  As explained by defense counsel, "[o]f most concern was the mediation completion date; Defendants believe that both experts should be deposed prior to the mediation to provide the parties with a reasonable universe of potential damages that they can discuss during the mediation."  (Reply at 1).  Plaintiffs have taken a similar position in their papers.  (Opp. at 11 (observing that resolution of the issues "obviously impact[s] both Plaintiffs' trial preparation and ability to entertain meaningful settlement negotiations")). Accordingly, the Court hereby re-sets the following pre-trial and trial dates in this case so as to allow this final episode in discovery to conclude beforehand, afford the time plaintiffs' counsel needs to get his personal affairs in order after the unfortunate loss of his home (as reflected in the proposed stipulated dates submitted by the parties), and compromising as little as possible with the Court's desire for an expeditious conclusion to this litigation:

Court-ordered Mediation:          March 28, 2008

MINUTES FORM 90                                        Initials of Deputy Clerk __jh_____
CIVIL -- GEN                                4

**30**

Case 2:04-cv-08400-SGL-RZ Document 286 Filed 12/12/2007 Page 5 of 5 Page

CV 04-08400-SGL (RZx)
JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual v WARNER BROS.
ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS INC., a
corporation; and DOES 1-10
MINUTE ORDER of December 12, 2007

| | |
|---|---|
| Jury Instructions: | March 31, 2008 |
| Objections to Jury Instructions: | April 7, 2008 |
| Hearing on Motions in Limine: | April 14, 2008, at 1:30 p.m. |
| Final Pre-Trial Conference: | April 28, 2008, at 11:00 a.m. |
| Trial Briefs: | May 5, 2008 |
| Trial of Case No. CV 04-8400: | May 13, 2008, at 9:30 a.m. |
| Trial of Case No. CV 04-8776: | Thereafter, as set by Court |

The parties are advised that failure to adhere to any of the deadlines or obligations imposed in this Order will result in sanctions. Furthermore, the parties are advised that the Court will brook no further submissions of ex parte applications in this case. If issues do arise after this Order (and the Court expects that this will not occur), they are to be presented to the Court in the form of a singular document (a "Joint Stipulation") submitted to the Court containing both sides respective positions.

**IT IS SO ORDERED.**

MINUTES FORM 90                                         Initials of Deputy Clerk __jh_____
CIVIL -- GEN                              5

31