1  WEISSMANN WOLFF BERGMAN
   COLEMAN GRODIN & EVALL LLP
2  Michael Bergman (SBN 37797)
   Anjani Mandavia (SBN 94092)
3  Adam Hagen (SBN 218021)
   9665 Wilshire Boulevard, Ninth Floor
4  Beverly Hills, California 90212
   Telephone: (310) 858-7888
5  Fax: (310) 550-7191

6  FROSS ZELNICK LEHRMAN & ZISSU, P.C.
   Roger L. Zissu (Admitted *pro hac vice*)
7  James D. Weinberger (Admitted *pro hac vice*)
   866 United Nations Plaza
8  New York, New York 10017
   Telephone: (212) 813-5900
9  Fax: (212) 813-5901

10 PERKINS LAW OFFICE, P.C.
   Patrick T. Perkins (Admitted *pro hac vice*)
11 1711 Route 9D
   Cold Spring, New York 10516
12 Telephone: (845) 265-2820
   Fax: (845) 265-2819

13
   Attorneys for Defendants and Counterclaimant
14
15              **UNITED STATES DISTRICT COURT**

               **CENTRAL DISTRICT OF CALIFORNIA**
16

17 | JOANNE SIEGEL and LAURA SIEGEL LARSON, | Case No. SA CV 04-8400 SGL (RZx) |
   | | Hon. Stephen G. Larson, U.S.D.J. |
18 | Plaintiffs, | |
19 | | **DEFENDANTS' *MOTION IN LIMINE NO. 2* TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' WITNESSES MARK EVANIER, JAMES STERANKO, WAYNE LEWELLEN, STEVEN SILLS, BARRY MEYER, ALAN HORN, JEFF ROBINOV, KEVIN TSUJIHARA, BRADLEY SCOTT MILLER, MARSHA TODD, GREGORY NOVECK AND JAY KOGAN** |
20 | vs. | |
21 | WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10, | |
22 | | |
23 | Defendants. | |
24 | | |
25 | AND RELATED COUNTERCLAIMS | |
26
27
28

1    TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE THAT at 11:00 a.m. on January 26, 2009, or as

3    soon thereafter as the matter may be heard in the above-entitled action before the

4    Honorable Stephen G. Larson, United States District Judge, United States District

5    Court for the Central District of California, Eastern Division, 3470 Twelfth Street,

6    Riverside, California, Courtroom 1, defendant and counterclaimant DC Comics, and

7    defendants Warner Bros. Entertainment Inc., and Time Warner Inc. (collectively

8    "Defendants"), will and hereby do move the Court to exclude the testimony of

9    Plaintiffs' designated witnesses Mark Evanier, James Steranko, Wayne Lewellen,

10   Steven Sills, Barry Meyer, Alan Horn, Jeff Robinov, Kevin Tsujihara, Bradley Scott

11   Miller, Marsha Todd, Gregory Noveck and Jay Kogan.

12        This motion is made pursuant to Local Rule 7-3, this Court's Standing Order,

13   Fed. R. Evid. 701 and 702 and Fed. R. Civ. P. 37, and federal decisional authority.

14   Defendants have met and conferred with Plaintiffs Joanne Siegel and Laura Siegel

15   Larson ("Plaintiffs" or the "Siegels") in person on December 8, 2008 and in writing

16   on December 9, 2008 in accordance with Local Rule 7-3 of the Local Rules of the

17   United States District Court for the Central District of California ("L.R.").

18        This motion is based on this Notice of Motion and Motion, Memorandum of

19   Points and Authorities in support thereof; the declaration of Michael Bergman and

20   all exhibits thereto, all pleadings and papers on file in this action, such other

21   evidence or arguments as may be presented to the Court, and such other matters of

22   which this Court may take judicial notice.

23

24

25

26

27

28                                    2

1 DATED:  January 5, 2009

WEISSMANN WOLFF BERGMAN
COLEMAN GRODIN & EVALL LLP

-and-

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

-and-

PERKINS LAW OFFICE, P.C.

By: _____
        Michael Bergman

Attorneys for Defendants and Counterclaimant

3

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

SUMMARY OF GROUNDS FOR WITNESS EXCLUSION ............................ 2, 3

ARGUMENT ........................................................................................................ 3

I.   PLAINTIFFS' PROPOSED EXPERT WITNESSES SHOULD BE PRECLUDED FROM TESTIFYING AT THE FEBRUARY 3 TRIAL ....... 3

    A.   Legal Standards for Admissibility of Expert Testimony ...................... 4

        1.   Proper Designation under Fed. R. Civ. P. 26 .............................. 4

        2.   Competency under Fed R. Evid. 702 ........................................... 6

    B.   Messrs. Evanier, Steranko and Sills Were Not Properly Disclosed Under Rules 26(a)(2)(A) and Are Not Competent to Testify In Any Event .......................................................................... 8

    C.   Mr. Lewellen, Though Designated as An Expert on Intra-Corporate Licensing, Is Not Competent to Testify on This Subject and Must Be Excluded .................................. 12

II.  PLAINTIFFS SHOULD BE PROHIBITED FROM INTRODUCING AT TRIAL TESTIMONY FROM UNDISCLOSED FACT WITNESSES ................................................................................ 14

    A.   Rule 37(c)(1) Provides for the Exclusion of Undisclosed Witnesses ............................................................................................ 15

    B.   Plaintiffs Must Be Precluded From Calling Undisclosed Witnesses ............................................................................................ 16

        1.   Plaintiffs Never Disclosed These Eight Individuals ................. 16

        2.   Plaintiffs' Failure to Disclose These Individuals Was Without Substantial Justification and Was Not Harmless ................................................................................ 17

III. PLAINTIFFS SHOULD ALSO BE PROHIBITED FROM CALLING FOUR OF THE UNDISCLOSED WITNESSES AT TRIAL BECAUSE THEY ARE "APEX" WITNESSES .............................. 20

    A.   The "Apex" Rule Prevents the Harassment of High-Level Executives .............................................. 21

i

B.     The Apex Rule Should Preclude Plaintiffs From Calling Messrs. Meyer, Horn, Tsujihara and Robinov as Trial Witnesses...............................................................22

CONCLUSION.......................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Stock Exchange, LLC v. MOPEX, Inc.,*
215 F.R.D. 87 (S.D.N.Y. 2002)..............................................................4, 17

*Bach v. Forever Living Products U.S., Inc.,*
473 F. Supp. 2d 1110 (D. Wash. 2007).....................................................7

*Celerity, Inc. v. Ultra Clean Holdings, Inc.,*
2007 WL 205067 (N.D. Cal. Jan. 25, 2007) .......................................20

*Daubert v. Merrell Dow Pharmaceuticals,*
509 U.S. 579 (1993) ........................................6, 7, 10, 11, 14

*Design Strategies, Inc. v. Davis,*
367 F. Supp. 2d 630 (S.D.N.Y. 2005)..............................................12, 18

*Fund Commission Service, II, Inc. v. Westpac Banking Co.,*
1996 WL 469660 (S.D.N.Y. Aug. 16, 1996) ............................5, 10, 11

*Garcia v. Qwest Corp.,*
2008 WL 4531657 (D. Ariz. Oct. 3, 2008) ....................................5, 16

*Greguski v. Long Island Railroad Co.,*
163 F.R.D. 221 (S.D.N.Y.1995)...................................................5, 10, 11

*Hoffman v. Construction Protective Services,*
541 F.3d 1175 (9th Cir. 2008)........................................................15, 18

*International Flora Techs., Ltd. v. Clarins U.S.A., Inc.,*
2008 WL 4174894 (D. Ariz. Sept. 5, 2008) ...........................4, 16, 17

*In re Kreta Shipping, S.A.,*
181 F.R.D. 273 (S.D.N.Y. 1998)..............................................5, 6, 10, 11

*Juell v. Forest Pharmaceuticals, Inc.,*
2007 WL 2601414 (E.D. Cal. Sept. 6, 2007) ..........................................19

*Lamarca v. United States,*
31 F. Supp. 2d 110 (E.D.N.Y. 1998).........................................5, 6, 10, 11

*Lewis v. Telephone Employees Credit Union,*
87 F.3d 1537 (9th Cir. 1996).................................................................21

*Luce v. United States,*
469 U.S. 38 (1984) .......................................................................3

*Occulto v. Adamar of New Jersey, Inc.,*
125 F.R.D. 611 (D.N.J. 1989) .........................................................5, 14

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.,*
318 F.3d 592 (4th Cir. 2003)...........................................................5, 10

iii

*Thibeault v. Square D Co.*,
960 F.2d 239 (1st Cir. 1992) ................................................................ 6, 10

*Unigard Security Ins. Co. v. Lakewood Eng'g & Manufacturing Corp.*,
982 F.2d 363 (9th Cir. 1992) .................................................................... 22

*United States v. Chang*,
207 F.3d 1169 (9th Cir. 2000) .................................................................... 8

*United States v. Frazier*,
387 F.3d 1244 (11th Cir. 2004) ................................................................... 7

*United States v. Proctor & Gamble Co.*,
356 U.S. 677 (1958) ..................................................................................... 2

*United States v. Santiago*,
202 Fed. Appx. 399 (11th Cir. 2006) .......................................................... 7

*United States v. Vevea*,
2007 WL 4328787 (E.D. Cal. Dec. 10, 2007) ........................................... 19

*Visser v. Packer Engineering Associates, Inc.*,
924 F.2d 655 (7th Cir. 1991) ....................................................................... 3

*WebSideStory, Inc. v. NetRratings, Inc.*,
2007 WL 1120567 (S.D. Cal. Apr. 6, 2007) ............................................. 21

*Widhelm v. Wal-Mart Stores, Inc.*,
162 F.R.D. 591 (D. Neb. 1995) .............................................................. 5, 10

*Wong v. Regents of the University of California*,
410 F.3d 1052 (9th Cir. 2005) ................................................................... 18

*Yeti by Molly. Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) ............................................................ 15, 16

## FEDERAL RULES

FED. R. CIV. P. 26 ................................................................................ passim

FED. R. CIV. P. 30 ........................................................................................ 22

FED. R. CIV. P. 37 ..................................................................... 4, 15, 16, 20

FED. R. EVID. 701 ................................................................................... 3, 11

FED. R. EVID. 702 ............................................................................... passim

FED. R. EVID. 703 ......................................................................................... 4

FED. R. EVID. 705 ......................................................................................... 4

iv

1

2

## MISCELLANEOUS

3

Jack B. Weinstein & Margaret A. Berger,
*Weinstein's Federal Evidence* (2d ed. 2007)........................................................8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' *MOTION IN LIMINE NO. 2* TO EXCLUDE
TESTIMONY OF CERTAIN OF PLAINTIFFS' WITNESSES**

1   Pursuant to Local Rule 7-3, this Court's Standing Order, Fed. R. Evid. 701

2   and 702 and Fed. R. Civ. P. 37, Defendants respectfully move *in limine* to exclude

3   the testimony of Plaintiffs' designated witnesses Mark Evanier, James Steranko,

4   Wayne Lewellen, Steven Sills, Barry Meyer, Alan Horn, Jeff Robinov, Kevin

5   Tsujihara, Bradley Scott Miller, Marsha Todd, Gregory Noveck and Jay Kogan.

6                         **PRELIMINARY STATEMENT**

7   The Court has ordered a bench trial on February 3, 2009 (the "February 3

8   Trial") on the sole question of whether any relevant agreement between DC Comics

9   ("DC") and Warner Bros. Entertainment Inc. ("WBEI") for the exploitation of the

10  Superman property (including the recaptured copyright), constitutes a "sweetheart

11  deal" such that DC received from WBEI less than fair market value for the license

12  of those rights. As a logical consequence of the Court's Orders, if any such

13  "sweetheart deal" exists, then it would be equitable to add to the DC profits for

14  which DC must account to Plaintiffs a sum that is equivalent to the amount by

15  which DC was underpaid by WBEI on any "sweetheart" license.[1]

16  As part of their disclosures at the December 3, 2008 Local Rule 16-4

17  conference, Plaintiffs provided Defendants with a list of over 25 witnesses they

18  intended to call at the February 3 Trial. (*See* Declaration of Michael Bergman

19  ("Bergman Dec.") Ex. 2.) The list included four purported experts of Plaintiff, only

20  one of whom previously had been disclosed to be testifying on any issues relating to

21  the February 3 Trial. Moreover, 8 of the 22 non-expert witnesses identified at the

22  December 3 conference were not disclosed in Plaintiffs' mandatory disclosures

23  under Fed. R. Civ. P. 26(a) (Bergman Dec. Ex. 98) or any supplementation thereof,

24

25  _____

[1] We do not believe that Plaintiffs are intending to put any of these witnesses on for a
26  claim of traditional corporate alter-ego, or that the February 3 Trial will cover such
    question. *See* Defendants' Motion in Limine No. 1 re Scope of Trial. Even if alter ego
27  were a legitimate claim in the February 3 Trial, however, all of the witnesses that are the
    subject to this motion could not give testimony for the same reasons as set forth herein.

28

1  nor were they deposed or otherwise identified as witnesses during discovery. Under

2  applicable law, this failure to disclose forecloses their testimony at trial. Even if

3  they had been disclosed, many of these other witnesses should be excluded for

4  additional reasons, such as the fact that they have apparently been designated solely

5  by virtue of the high positions they occupy within their companies.

6        It is clear that having listed virtually ever name they could find from a review

7  of Defendants' document production, Plaintiffs are trying to play surprise and

8  prevent Defendants from understanding exactly who it is they intend to call at trial

9  and what those witnesses will say. This, of course, frustrates the very purpose of

10  Rule 26 as well as Local Rule 16, which along with other modern discovery rules

11  exist to help "make a trial less a game of blindman's buff and more a fair contest

12  with the basic issues and facts disclosed to the fullest practicable extent." *United*

13  *States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). As such, Defendants'

14  motion in limine should be granted.

15  <u>**SUMMARY OF GROUNDS FOR WITNESS EXCLUSION**</u>

16        For ease of reference, Defendants submit the following chart showing each

17  witness that is the subject of this motion, and the various grounds for their

18  disqualification by this motion in limine:

| Ground / Witness | Undisclosed | Expert Not Designated for Topic | Apex Witness | Not Competent | Cumulative |
|---|---|---|---|---|---|
| Evanier | | • | | • | |
| Steranko | | • | | • | |
| Sills | | • | | • | |
| Lewellen | | | | • | |
| Meyer | • | | • | | • |
| Horn | • | | • | | • |
| Robinov | • | | • | | • |
| Tsujihara | • | | • | | • |

28                                    2

| Ground / Witness | Undisclosed | Expert Not Designated for Topic | Apex Witness | Not Competent | Cumulative |
|---|---|---|---|---|---|
| Miller | • | | | | • |
| Todd | • | | | | • |
| Noveck | • | | | | • |
| Kogan | • | | | | • |

## ARGUMENT

This Court has the authority to grant a motion *in limine* pursuant to "the . . . court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citations omitted).  The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *Id. See also* Larson, J., Standing Order.

**I.   PLAINTIFFS' PROPOSED EXPERT WITNESSES SHOULD BE PRECLUDED FROM TESTIFYING AT THE FEBRUARY 3 TRIAL**

According to Plaintiffs' disclosures, they plan to offer the testimony of their four purported expert witnesses, Mark Evanier, James Steranko, Steve Sills and Wayne Lewellen.  Messrs. Evanier, Steranko and Sills were not designated as experts on any issues relating to the February 3 Trial and as such should be excluded as a matter of course.  Moreover, even if they had been properly designated, none of such proposed  experts,[2] including the fourth, Mr. Lewellen, is competent to testify

---

[2] To the extent Plaintiffs try to argue that any of these individuals are fact, and not expert witnesses, there is no question that none of the witnesses have personal knowledge of anything relevant to the February 3 Trial. *See* Fed. R. Evid. 701.  Not one of these four individuals was involved in the deals between DC and WBEI or privy to the corporate inner-workings of any Time Warner entities.  Any testimony by these individuals about what they were told or their understanding from anecdotal "evidence" of the dealings of others with DC and WBEI or other media conglomerates, obviously violates the hearsay rule. *See e.g. Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (inferences and opinions by nonexpert witnesses "must be grounded in observation or other first-hand personal experience.  They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience") (citations omitted).

3

1    as to any issue relating to the February 3 Trial.  As such, their testimony must be

2    excluded.

3        **A.**    **Legal Standards for Admissibility of Expert Testimony**

4           **1.**    **Proper Designation under Fed. R. Civ. P. 26**

5        With respect to experts, under Fed. R. Civ. P. 26(a)(2)(A), a party is required

6    to "disclose to the other parties the identity of any witness it may use at trial to

7    present evidence under Federal Rule of Evidence 702, 703 and 705." The

8        disclosure must be accompanied by a written report—prepared and

9        signed by the witness—if the witness is one retained or specially

10       employed to provide expert testimony . . . . The report must contain:

11       (i) a complete statement of all opinions the witness will express and

12       the basis and reasons for them . . . .

13   Fed. R. Civ. P. 26(a)(2)(B).  The Advisory Committee Notes to Rule 26 provide that

14   the expert's report "is intended to set forth the substance of the direct examination."

15   *See* Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note (emphasis added).

16       Further, Fed. Civ. P. 37(c)(1) provides that, "[i]f a party fails to provide

17   information or identify a witness as required by Rule 26(a) or 26(e), the party is not

18   allowed to use that information or witness to supply evidence . . . at a trial, unless

19   the failure was substantially justified or is harmless." "The burden of proving

20   substantial justification or harmlessness is on the party facing sanctions [or seeking

21   leave to call undisclosed witnesses at trial]." *International Flora Tech., Ltd. v.*

22   *Clarins U.S.A., Inc.*, No. 06-1371-PHX-ROS, 2008 WL 4174894, *3 (D. Ariz. Sept.

23   5, 2008); *see also American Stock Exch., LLC v. MOPEX, Inc.*, 215 F.R.D. 87, 93

24   (S.D.N.Y. 2002) ("The burden to prove substantial justification or harmlessness

25   rests with the dilatory party.") (citations omitted).  For purposes of Rule 37(c)(1), "a

26   party's failure to disclose is substantially justified where the non-moving party has a

27   reasonable basis in law and fact, and where there exists a genuine dispute

28                                             4

1  concerning compliance." *Garcia v. Qwest Corp.*, CV-07-999-PHX-LOA, 2008 WL

2  4531657, at *3 (D. Ariz. Oct. 3, 2008) (citations omitted). "Failure to comply with

3  the mandate of Rule [26] is harmless when there is no prejudice to the party entitled

4  to the disclosure." *Id.* Such a failure to disclose or supplement is sanctionable. *Id.*

5       Courts have been uniform in their interpretation of Rule 37, and consistently

6  precluded purported expert witnesses from testifying to matters which were not

7  disclosed in their reports. *See, e.g., Southern States Rack & Fixture, Inc. v.*

8  *Sherwin-Williams, Co.*, 318 F.3d 592, 599 (4th Cir. 2003); *Lamarca v. United*

9  *States*, 31 F. Supp. 2d 110, 122 (E.D.N.Y. 1998) (medical expert precluded from

10  testifying on matters of causation insofar as it was not disclosed in his report);

11  *Greguski v. Long Island R.R. Co.*, 163 F.R.D. 221, 224 (S.D.N.Y. 1995) (expert

12  permitted to testify, but only as to matters contained in his report); *Widhelm v. Wal-*

13  *Mart Stores, Inc.*, 162 F.R.D. 591, 594 (D. Neb. 1995) (same):

14       Expert testimony exceeding the bounds of the expert's report is

15       excludable pursuant to Rule 37(c)(1)." *In re Kreta Shipping, S.A.*, 181

16       F.R.D. 273, 275 (S.D.N.Y. 1998). A party that without substantial

17       justification fails to disclose information required by Rule 26(a) ...

18       shall not, unless such failure is harmless be permitted to use as

19       evidence at a trial ... any witness or information not so disclosed ...

20       Fed.R.Civ.P. 37(c)(1). "This result is self executing' and is an

21       'automatic sanction' that is designed to provide a strong inducement

22       for disclosure of relevant material that the disclosing party expects to

23       use as evidence." *Fund Comm'n Svce., II, Inc. v. Westpac Banking*

24       *Co.*, 1996 WL 469660, *3 (S.D.N.Y. Aug. 16, 1996) (citing

25       Fed.R.Civ.P. 37(c) advisory committee's note). This duty to disclose

26       information concerning expert testimony is intended to allow

27       "opposing parties to have a reasonable opportunity [to] prepare for

28

1    effective cross examination and perhaps arrange for expert testimony

2    from other witnesses." *Kreta*, 181 F.R.D. at 275 (citing Fed.R.Civ.P.

3    26(a)(2) advisory committee's note).

4  *Lamarca*, 31 F. Supp. 2d at 122.  As the First Circuit has held,

5        Recognizing the importance of expert testimony in modern trial

6        practice, the Civil Rules provide for extensive pretrial disclosure of

7        expert testimony.  This sort of disclosure is consonant with the federal

8        courts' desire to "make a trial less a game of blindman's buff and

9        more a fair contest with the basic issues and facts disclosed to the

10       fullest practical extent." . . . In the arena of expert discovery - a

11       setting which often involves complex factual inquiries - Rule 26

12       increases the quality of trials by better preparing attorneys for cross-

13       examination, minimizing surprise, and supplying a helpful focus for

14       the court's supervision of the judicial process. . . .  In short, Rule 26

15       promotes fairness both in the discovery process and at trial.  For Rule

16       26 to play its proper part in this salutary scheme, discovery must not

17       be allowed to degenerate into a game of cat and mouse.

18  *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992) (internal citations

19  omitted).

20            **2.    Competency under Fed. R. Evid. 702**

21       Furthermore, even when properly designated, expert testimony is admissible

22  only if the proffered testimony will "'assist the trier of fact to understand the

23  evidence or to determine a fact in issue' . . . [e]xpert testimony which does not relate

24  to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell

25  Dow Pharms.*, 509 U.S. 579, 591 (1993) (quoting Federal R. Evid. 702).  Federal

26  Rule of Evidence 702 states:

27

28                                        6

1    If scientific, technical, or other specialized knowledge will assist the
2    trier of fact to understand the evidence or to determine a fact in issue,
3    a witness qualified as an expert by knowledge, skill, experience,
4    training, or education, may testify thereto in the form of an opinion or
5    otherwise, if (1) the testimony is based upon sufficient facts or data,
6    (2) the testimony is the product of reliable principles and methods,
7    and (3) the witness has applied the principles and methods reliably to
8    the facts of the case.

9  Fed. R. Evid. 702. *See also Daubert*, 509 U.S. at 558.  The burden of proving that
10 the requirements of Rule 702 are met lies with the party offering the expert
11 testimony. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

12      In determining the admissibility of expert testimony, courts must first
13 consider whether "the expert is qualified to testify competently regarding the
14 matters he intends to address." *Frazier*, 387 F.3d at 1260 (citation omitted). Experts
15 may be qualified in a variety of ways. *Id.*  Although scientific training or education
16 is one way to qualify as an expert, "experience in a field may offer another path to
17 expert status." *Id.* at 1260-61. Rule 702 lists the factors courts should consider in
18 determining whether a witness is qualified to testify as an expert, including
19 knowledge, skill, experience, training, and education. *United States v. Santiago,*
20 202 Fed. Appx. 399, 401 (11th Cir. 2006).

21      That said, an expert's opinion must be based on more than "subjective belief
22 or unsupported speculation," rather, he or she must have "knowledge, skill,
23 experience, training, or education" pertaining to the relevant issues. *See Daubert,*
24 509 U.S. at 588-90.  In other words, he or she must be "qualified to testify *on the*
25 *matters at issue* and the testimony [must be] relevant and reliable." *Bach v. Forever*
26 *Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1114 (D. Wash. 2007) (citing
27 *Daubert*, 509 U.S. at 598) (emphasis added).  Even where a proposed witness

28                                      7

1  possesses credentials to "render some expert opinions, the trial court may, and
2  perhaps must, exclude on grounds of disqualification of any testimony that extends
3  beyond the witness's demonstrated expertise." 4 Jack B. Weinstein & Margaret A.
4  Berger, *Weinstein's Federal Evidence*, § 702.04[6] (2d ed. 2007); *see, e.g., United*
5  *States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) (experience in international
6  finance did not qualify individual as expert to testify as to whether something was
7  counterfeit).

8  **B.    Messrs. Evanier, Steranko and Sills Were Not**
9  **Properly Disclosed Under Rules 26(a)(2)(A) and**
10  **Are Not Competent to Testify In Any Event**

11      Comic book historians Mark Evanier and James Steranko have not been
12  designated by Plaintiffs under Rule 26(a) as having opinions on the single issue at
13  stake in the February 3 Trial, namely, whether the agreements between DC and
14  WBEI are "sweetheart" deals so that Plaintiffs are inequitably deprived of monies
15  owed to them under the accounting. Nor have they been designated to testify on the
16  factors comprising either of the two elements of the traditional alter ego test. Mr.
17  Evanier claims in his report to be a "comic book writer, columnist and historian"
18  with over 30 years experience in the business. (Bergman Dec. Ex. 99 at 2). Mr.
19  Evanier's report indicates the following areas of testimony:

20      The first is the manner in which the early Superman comics were
21      created . . . so as to inform us as to whether or not their early
22      Superman material were [sic: was] created by them as "employees for
23      hire."
24      The second is, to the extent the early Superman works were not
25      "works for hire" . . . to what degree do the elements portrayed in such
26      works continue to be exploited in recent derivative works such as
27      WB's feature-length motion picture, Superman Returns? . . . .

28                                     8

1  |  Lastly, I have been asked to analyze the extent to which WB's
2  |  television series, Smallville, is derived from Jerry Siegel's original
3  |  Superboy story and the line of Superboy comics which emerged from
4  |  Siegel's original story.

5  Bergman Dec. Ex. 99 at 1.  No other issues were identified, and Mr. Evanier's
6  rebuttal reports similarly do not raise issues relevant to the February 3 Trial.  *Id.* &
7  Bergman Dec. Ex. 100.

8  Like Mr. Evanier, Mr. Steranko hails from the "comic book industry"
9  (Bergman Dec. Ex. 101 at 1), with experience since the 1960s as a writer, illustrator
10  and historian.  And like Mr. Evanier, Mr. Steranko's report similarly is devoid of
11  any designation on the issues at hand:

12  |  I have been asked to analyze with respect to Superman: (a) how Jerry
13  |  Siegel and Joe Shuster worked in creating the early Superman Comics
14  |  to aid in a determination as to whether such comics and elements
15  |  contained therein were not "works for hire" and thus subject to
16  |  recapture by the Plaintiffs and (b) the impact and prevalence of such
17  |  recaptured Superman elements on Defendants' recent exploitations of
18  |  Superman.
19  |  I have been asked to analyze with respect to Superboy whether the
20  |  television series, Smallville, is derived from Jerry Siegel's original
21  |  Superboy story and the line of Superboy comics to which it gave
22  |  birth.

23  *Id.* at 3-4.  No other issues were identified and Mr. Steranko's rebuttal report was
24  submitted on similar topics.  *Id.* & Bergman Dec. Ex. 102.

25  Thus, as neither Mr. Evanier nor Mr. Steranko has been designated for any
26  issue relating to the February 3 Trial – whether it concerns only the question of
27  whether the Superman agreements between DC and WBEI were "sweetheart deals"
28

9

1 that deprive Plaintiffs of monies owed to them under the accounting, or the

2 additional question of whether those two entities are alter egos — neither can testify

3 as experts in such trial. Even if these witnesses were competent to testify on the

4 questions at issue — and neither is (see below) — the failure to disclose the relevant

5 opinions and the basis therefor is a clear violation of Rule 26(a)(2)(A), which is

6 sanctionable absent a showing that it was substantially justified or harmless.

7 Neither can be shown by Plaintiffs here, and, as such, neither witness can testify at

8 the February 3 Trial. Fed. Civ. P. 37(c)(1); *Southern States Rack*, 318 F.3d at 599;

9 *Lamarca*, 31 F. Supp. 2d 110; *Greguski*, 163 F.R.D. 221; *Widhelm*, 162 F.R.D. 591;

10 *Kreta Shipping, S.A.*, 181 F.R.D. at 275; *Fund Comm'n Svce.*, 1996 WL 469660,

11 *36; *Thibeault*, 960 F.2d at 244.

12      Even if they were properly designated, neither witness is competent to testify

13 at the February 3 Trial in any event. The reports submitted by Messrs. Evanier and

14 Steranko have no conceivable bearing on any issue to be determined in this trial:

15 Mr. Evanier's expert report deals with issues of copyright ownership and the

16 derivative nature of Superboy, while Mr. Steranko's report deals with the "import

17 and impact of Jerry Siegel's original creations on Defendant's exploitations."

18 Bergman Exs. 99 & 101. And this is not surprising since, as writers and illustrators,

19 Messrs. Evanier and Steranko lack the "knowledge, skill, experience, training or

20 education" pertaining to any issues related to the fairness of the deals that "go[es]

21 beyond subjective belief or unsupported speculation" required by Federal Rule of

22 Evidence 702. *Daubert*, 509 U.S. at 588-90.[3] As such, even if they had been

23 properly designated, Messrs. Evanier and Steranko are not qualified to testify at the

24 February 3 Trial.

25

26 ─────────────────

[3] The appropriate expertise necessarily requires familiarity with the negotiation of

27 intellectual property licenses in entertainment media markets.

28                                  10

1    Plaintiffs' CPA Steven Sills also was not designated on issues relating to the

2  February 3 Trial. He was only designated "to provide an opinion regarding the

3  reporting of profits to Plaintiffs by Time Warner Inc., Warner Communications Inc.,

4  Warner Bros. Entertainment Inc., Warner Bros. Television Inc. and DC Comics . . .

5  for the exploitation of the characters Superman and Superboy in new derivative

6  works . . . on or after the dates of Plaintiffs' respective Superman and Superboy

7  Notices of Termination." Bergman Dec. Ex. 103 at 2. The question of how much

8  money may be owed to Plaintiffs has no bearing on whether any relevant agreement

9  between DC and WBEI for the exploitation of the Superman property constitutes a

10  "sweetheart deal" such that DC received from WBEI less than fair market value for

11  the rights. Mr. Sills' report and anticipated testimony concerns accounting, *i.e.*, how

12  much Plaintiffs are to receive, not a qualitative analysis of the agreements under

13  which money is to be paid and their fairness by reason of the legal relationship

14  between the parties. Thus, under the clear authority of Rules 26(a)(2)(A), 37(1) and

15  the cases cited above, his testimony in the February 3 Trial should be excluded.

16  Fed. Civ. P. 37(c)(1); *Southern States Rack*, 318 F.3d at 599; *Lamarca*, 31 F. Supp.

17  2d 110; *Greguski*, 163 F.R.D. 221; *Widhelm*, 162 F.R.D. 591; *Kreta Shipping, S.A.*,

18  181 F.R.D. at 275; *Fund Comm'n Svce.*, 1996 WL 469660, *36; *Thibeault*, 960 F.2d

19  at 244.

20    Further, Mr. Sills is not competent to testify in the February 3 Trial under

21  Fed. R. Evid. 702 and *Daubert*. Mr. Sills is an accountant, not a film or television

22  industry expert with knowledge of how deals like those between DC and WBEI

23  relating to Superman are structured, their basis in the parties' legal relationship, or

24  under what terms they are performed. The fact that Mr. Sills has audited WBEI on

25  various occasions and specializes in ferreting out and calculating monies allegedly

26  due, Bergman Dec. Ex. 103 at Appendix A, is irrelevant as he lacks the knowledge

27  concerning the actual issues to be tried, specifically whether the agreements

28                                 11

1   represent fair market value for the Superman property.  Mr. Sills simply lacks any

2   knowledge which would be useful to assist the trier of fact.  As such, his testimony

3   should be excluded for this separate reason.

4   **C.**   **Mr. Lewellen, Though Designated as An Expert**

5   **on Intra-Corporate Licensing, Is Not Competent**

6   **to Testify on This Subject and Must Be Excluded**

7         Finally, although Plaintiffs designated Wayne Lewellen loosely as an expert

8   on the question of intra-corporate dealings, he has neither the background

9   qualifications nor the requisite specialized knowledge to provide pertinent, relevant

10  and competent expert testimony on the question of whether the agreements at issue

11  were "sweetheart deals," let alone the required expertise to be of "assistance to the

12  trier of fact" and satisfy the requirements under Fed. R. Evid. 702 and *Daubert*.

13  Worse, at his deposition it became clear that the only basis for his purported

14  opinions were "things that [Plaintiffs' counsel] Mr. Toberoff told you on the phone."

15  Bergman Dec. Ex. 104 at 74-75.  As such, his testimony at the February 3 Trial also

16  should be precluded.

17        As to his qualifications, Mr. Lewellen's report makes clear that his experience

18  in the film business (he does not purport to have experience in television or

19  animation) was only as a "sales and distribution executive" at Paramount Pictures.

20  Bergman Dec. Ex. 105 at 1.  Mr. Lewellen testified that after starting out as a

21  "booker" who "sold cartoons to the theater," Bergman Dec. Ex. 104 at 76:7-8, he

22  worked for over 30 years as a sales and distribution executive who "oversaw sales

23  activities."  *Id.* at 77:21.  In such capacities he "oversaw distribution patterns of

24  films," i.e., "how broadly they were released or how narrowly they may be released,

25  in what markets they would be released in, what dates they would be released on."

26  *Id.* at 78:8-12.  In such position he never negotiated "the acquisition of any literary

27  property," never determined "what Paramount would pay in fixed or contingent

28                                    12

1 payments for any literary property," and never had any involvement in the

2 "development," "production," "distribution" or "negotiation for any rights for use in

3 a television series." *Id.* at 80-81. Accordingly, Mr. Lewellen's experience has

4 nothing to do with the type of agreements at issue in the February 3 Trial, which are

5 rights agreements in which the licensor is providing the licensee with the ability to

6 exploit certain literary properties in various media.

7       Moreover, Mr. Lewellen's bald and sweeping statement in his expert report

8 that intra-corporate transactions result in "deal terms [that] were significantly more

9 modest, and the deal negotiations less acrimonious, than if the negotiating partners

10 were employed under separate corporate umbrellas" (Bergman Dec. Ex. 105 at 8)

11 was not based on either personal knowledge or his knowledge of the entertainment

12 industry. When questioned at his deposition about the basis for this assertion, Mr.

13 Lewellen readily admitted that he had read no materials that supported such

14 statement, never saw any contracts themselves relating thereto, and could only think

15 of two transactions in the Viacom/Paramount family he had heard about from "those

16 folks involved" to point to concerning those deals. Bergman Dec. Ex. 104 at 40-42.

17 But he could not "recall any of their names," "what films were involved," and

18 declined to say the deals were made for "less than fair market value." *Id.* at 42-45.

19 Nor could he recall the Paramount persons involved in the licensing of the

20 Paramount films involved, the time period for such deals, or how many films were

21 involved. *Id.* at 44-46. Mr. Lewellen also stated that he could not answer questions

22 about the propriety or performances by the Paramount executive involved because

23 he did not know the details of "the specific deals and specific titles" or of the

24 "business relationship" between the parties. *Id.* at 51-53. In sum, "I did not specify

25 a deal, no . . . I told you I couldn't recall any specific deal." *Id.* at 53. Mr. Lewellen

26 could not identify or recall any other deal that might be the basis for the above-

27 quoted remark. *Id.* at 64.

28

13

1    Finally, during his deposition Mr. Lewellen also admitted that prior to

2  completing his expert report he had never seen the DC/WBEI agreement at issue for

3  the *Superman Returns* film and that before his deposition he had only been shown

4  the "deal sheets" relating to this agreement in preparation for his testimony.  Indeed,

5  when asked, Mr. Lewellen freely testified that, "whatever in the report that you [he]

6  had to say about those two agreements [*i.e.* regarding *Superman Returns* and

7  *Smallville*], you [he] had learned from Mr. Toberoff." *Id.* at 75:10-75:22.  *Cf.*

8  *Occulto v. Adamar of N.J., Inc.*, 125 F.R.D. 611, 616 (D.N.J. 1989) ("Experts

9  participate in a case because, ultimately, the trier of fact will be assisted by their

10  opinions, pursuant to Rule 702, Fed. R. Ev.  They do not participate as the alter-ego

11  of the attorney who will be trying the case.")

12    Thus, because he lacks the "knowledge, skill, experience, training or

13  education" pertaining to any issues related to the fairness of the deals that "go[es]

14  beyond subjective belief or unsupported speculation" required by Federal Rule of

15  Evidence 702, *Daubert*, 509 U.S. at 588-90, Mr. Lewellen is not competent to

16  testify on the agreements at issue in the February 3 Trial.

17  **II.    PLAINTIFFS SHOULD BE PROHIBITED FROM INTRODUCING**

18  **AT TRIAL TESTIMONY FROM UNDISCLOSED FACT WITNESSES**

19    Of the 26 people on Plaintiffs' trial witness list (Bergman Dec. Ex. 2), *eight*

20  had never been previously disclosed by Plaintiffs.  These eight witnesses are: Barry

21  Meyer, Alan Horn, Jeff Robinov, Kevin Tsujihara, Bradley Scott Miller, Marsha

22  Todd, Gregory Noveck and Jay Kogan.  While these witnesses are or were WBEI

23  and DC employees, this is of no import.  Plaintiffs have offered no justification at

24  all, much less substantial justification, for their failure to disclose these individuals

25  as required by Fed. R. Civ. P. 26.  Moreover, this belated disclosure is far from

26  harmless to Defendants, will lengthen trial and appears designed solely as a fishing

27  expedition to search for evidence Plaintiffs failed to develop – and that does not

28                                          14

1  exist – during discovery.  Accordingly, Plaintiffs should be prohibited from calling
2  these eight individuals at trial.

3      **A.     Rule 37(c)(1) Provides for the Exclusion of Undisclosed Witnesses**

4      Rule 26(a)(1)(A)(i) requires that, "without awaiting a discovery request," a
5  party must disclose to all other parties:

6      the name and, if known, the address and telephone number of each
7      individual likely to have discoverable information—along with the
8      subjects of that information—that the disclosing party may use to
9      support its claims or defenses, unless the use would be solely for
10     impeachment.

11 Fed. R. Civ. P. 26(a)(1)(A)(i).  Moreover, under Rule 26(e)(1), a party is under a
12 duty to supplement its initial disclosures throughout discovery if additional
13 individuals with discoverable information become known.  Fed. R. Civ. P. 26(e)(1).
14 As with expert disclosures, to ensure that the disclosure requirements of Rule 26 are
15 followed, Rule 37(c)(1) provides that:

16     If a party fails to provide information or identify a witness as required
17     by Rule 26(a) or 26(e), the party is not allowed to use that information
18     or witness . . . at a trial, unless the failure was substantially justified or
19     is harmless.

20 Fed. R. Civ. P. 37(c)(1).

21     As the Ninth Circuit recently made clear, "Rule 37(c)(1) gives teeth to [the
22 Rule 26] requirements by forbidding the use at trial of any information required to
23 be disclosed by Rule 26(a) that it not properly disclosed." *Hoffman v. Construction*
24 *Protective Svcs.*, 541 F.3d 1175, 1179 (9th Cir. 2008).  The preclusionary sanction
25 of Rule 37(c)(1) is "self-executing" and "automatic" and is intended "to provide a
26 strong inducement for the disclosure of material." *Yeti By Molly, Ltd. v. Deckers*
27 *Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citation omitted).  Moreover,

28                                              15

1  "Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the

2  discovery rules as a precondition before imposing sanctions." *Garcia*, 2008 WL

3  4531657 at *3 (citation omitted); *see Yeti By Molly*, 259 F.3d at 1106 (exclusion

4  under Rule 37(c)(1) is appropriate "even absent a showing in the record of bad faith

5  or willfulness.")

6       As noted above, (i) Plaintiffs bear the burden of proof on both substantial

7  justification and harmlessness, *International Flora*, 2008 WL 4174894 at *3;

8  *American Stock Exch.*, 215 F.R.D. at 93, (ii) substantial justification requires a

9  "reasonable basis in law and fact, and . . . a genuine dispute concerning

10  compliance," *Garcia*, 2008 WL 4531657 at *3, and (iii) harmlessness requires a

11  showing that the other party was not prejudiced by the non-disclosure. *Id.*

12      **B.**    **Plaintiffs Must Be Precluded From Calling Undisclosed Witnesses**

13       Applying the above legal standards to this case is simple and straightforward.

14  First, at no time prior to the close of fact discovery did plaintiffs disclose the identity

15  of these eight witnesses.  Second, it cannot be disputed that Plaintiffs' failure to

16  disclose these individuals is a violation of Rule 26(a) and (e).  Finally, Plaintiffs'

17  failure to disclose these individuals is neither substantially justified nor harmless.

18  Accordingly, Rule 37(c)(1) requires that Plaintiffs be precluded from calling these

19  individuals at trial.

20      **1.**    **Plaintiffs Never Disclosed These Eight Individuals**

21       Fact discovery in this case commenced in early 2005 and continued until

22  November 2006 – a period of almost 2 years.  Plaintiffs' initial disclosures

23  (Bergman Dec. Ex. 98) did not identify these eight individuals as people with

24  discoverable knowledge.  Further, at no point during the nearly two years of fact

25  discovery did Plaintiffs supplement their initial disclosures to identify any of these

26  eight individuals.  Nor did Plaintiffs seek to depose any of these eight individuals.

27  Now, two years after discovery closed and on the eve of trial, Plaintiffs reveal their

28                      16

1  intention to call these eight new witnesses at trial.  This is exactly the type of
2  "surprise" and "ambush" that the disclosure requirements of Rule 26 were meant to
3  eliminate. *See American Stock Exch.*, 215 F.R.D. at 93.

4         2. **Plaintiffs' Failure to Disclose These Individuals Was**
5           **Without Substantial Justification and Was Not Harmless**

6       As stated above, "the burden of proving substantial justification or
7  harmlessness is on the party facing sanctions." *International Flora*, 2008 WL
8  4174894 at *3 (citation omitted).  Here, that burden is on Plaintiffs.

9       Plaintiffs cannot offer substantial justification – or any justification at all – for
10  their failure to identify these eight individuals.  Plaintiffs were obligated by Rule
11  26(a)(1) and (e)(1) to produce a list of individuals with discoverable knowledge and
12  supplement this list if they learned of any additional such individuals.  Plaintiffs'
13  initial disclosures did not identify these eight individuals.  At some point, however,
14  Plaintiffs apparently came to believe that these eight people had discoverable
15  information.  At that moment, Plaintiffs were *required* by Rule 26(e)(1) to
16  supplement their initial disclosures to disclose these new potential witnesses.  They
17  did not do so.  Accordingly, there can be no genuine dispute that Plaintiffs have
18  failed to comply with the requirements of Rule 26.  And Plaintiffs have offered no
19  reasonable basis in law and fact (because there is no such basis) for believing they
20  were not required to disclose these individuals.

21       Plaintiffs' failure to identify the names of these individuals is not harmless,
22  either.  Neither Plaintiffs nor Defendants have deposed any of these newly-disclosed
23  witnesses, and trial is less than a month away.  Nor have Plaintiffs ever explained
24  what areas of inquiry they expect these witnesses to testify to, or how their
25  anticipated testimony is at all related to the issues in this trial.  (Bergman Dec. ¶ 2.)
26  Plaintiffs cannot excuse their failure to comply with Rule 26 by suggesting that
27  Defendants "should have known" that Plaintiffs would rely on the testimony of

28                           17

1 | these eight individuals.   How could Defendants have known when Plaintiffs never
2 | took any action to signal their intent to call these individuals in their case in chief?
3 | How could Defendants have known when Plaintiffs did not identify these
4 | individuals at any time during almost two years of fact discovery or the two years
5 | since discovery closed?  The witnesses may be current or former employees of
6 | Defendants, but it is entirely unclear what portion of their potential range of
7 | knowledge is pertinent to the matters currently before the Court.

8 | Nor can Plaintiffs try to remedy the harm to Defendants by suggesting that the
9 | trial be postponed until such time as these witnesses can be deposed.  As the Ninth
10 | Circuit recently stated, having to re-open discovery and modify a trial schedule to
11 | remedy a party's failure to disclose information "supports a finding that that the
12 | failure to disclose was not harmless." *Hoffman*, 541 F.3d at 1180 (citing *Wong v.*
13 | *Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005)).  Moreover, as
14 | one court has noted, to re-open discovery for purposes of deposing these witnesses
15 | or obtaining evidence on the issues from other sources for which Plaintiffs intend to
16 | use their testimony

17 | would inevitably result in further substantial delays in the resolution
18 | of this case and impose additional costs on Defendants.  Defendants
19 | would thus be harmed . . . in that [they] would be required either to
20 | postpone a trial for which they are otherwise prepared . . . or proceed
21 | without having had the opportunity to conduct adequate discovery on
22 | this issue.

23 | *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 635 (S.D.N.Y. 2005), *aff'd*
24 | 469 F.3d 284 (2d Cir. 2006).  So, too, here.

25 | In reality, Plaintiffs have no clue what, if anything, these eight individuals
26 | know about the specific license agreements at issue in the February 3 Trial or
27 | whether any of them has knowledge that is not duplicative of the testimony that has

28 | 18

1   been, and will be, elicited from properly disclosed witnesses that have been

2   deposed.  For example, one of the belatedly-disclosed individuals, Jay Kogan, is an

3   attorney at DC.  But Lillian Laserson, presently Special Counsel and previously

4   Senior Vice President and General Counsel at DC and Mr. Kogan's direct superior,

5   has already been deposed and also is listed on Plaintiffs' trial witness list.  Plaintiffs

6   have never complained that Ms. Laserson's testimony was inadequate or that they

7   needed testimony from additional attorneys in the DC legal department.  Moreover,

8   DC produced its President and Publisher Paul Levitz as its Fed. R. Civ. P. 30(6)

9   witness on topics related to the agreements at issue in the February 3 Trial.

10  Plaintiffs never complained that his testimony was not adequate, either.  Yet now,

11  inexplicably, Plaintiffs want to call Mr. Kogan at trial despite having never

12  disclosed or deposed him and despite having no basis for believing he has any

13  information that is not duplicative of Ms. Laserson's or Mr. Levitz's testimony.[4]

14      In short, Plaintiffs want to put these eight individuals on the stand and

15  conduct a fishing expedition to see what, if anything, each might know about the

16  specific licensing agreements that may be at issue in the February 3 Trial.  In other

17  words, Plaintiffs are seeking to conduct additional fact discovery – *at trial*.  This

18  Plaintiffs cannot do.  *See, e.g., U.S. v. Vevea*, No. CR F 03-5410 LJO, 2007 WL

19  4328787, at *3 (E.D. Cal. Dec. 10, 2007) ("Fishing expeditions during trial will not

20  be tolerated."); *Juell v. Forest Pharms., Inc.*, CIV-S-05-0378 FCD/GGH, 2007 WL

21

22  ───────────────
    [4] The situation with Noveck, Todd and Miller's testimony is similar.  Mr. Noveck is a
23  Senior Vice President for Creative Affairs at DC who reports directly to Paul Levitz
    regarding media licensing.  Mr. Levitz was DC's 30(b)(6) witness on this topic.  Ms. Todd
24  was formerly a lawyer at WBEI who was one of several involved with the negotiation of
    the *Superman Returns* agreement.  She reported to John Schulman – Defendants'
25  designated 30(b)(6) witness on the agreement in question – and left the company in 2002.
    Mr. Miller was a lawyer at Warner Bros. Television Production who has also left the
26  company.  Brett Paul was the designated 30(b)(6) witness from Warner Bros. Television
    Production.  As set forth in Section III, *infra*, Meyer, Horn, Robinov and Tsujihara are all
27  "apex" witnesses whose testimony should be precluded on that basis.

28                                              19

1  2601414, at *2 (E.D. Cal. Sept. 6, 2007) ("[T]he court is not inclined to allow a []
2  trial to become a fishing expedition for further information.")  This Court should
3  likewise refuse to countenance Plaintiffs' attempt to conduct a fishing expedition at
4  trial and waste the time of the Court, the Defendants and these eight individuals.[5]

5       Accordingly, for the reasons set forth above, Plaintiffs should be precluded
6  under Fed. R. Civ. P. 37(c)(1) from introducing testimony by any means from (i)
7  Barry Meyer; (ii) Alan Horn; (iii) Jeff Robinov; (iv) Kevin Tsujihara; (v) Bradley
8  Scott Miller; (vi) Marsha Todd; (vii) Gregory Noveck; and (viii) Jay Kogan.

9  **III.   PLAINTIFFS SHOULD ALSO BE PROHIBITED FROM**
10       **CALLING FOUR OF THE UNDISCLOSED WITNESSES AT**
11       **TRIAL BECAUSE THEY ARE "APEX" WITNESSES**

12       There is an additional reason to prohibit Plaintiffs from calling Barry Meyer,
13  Alan Horn, Kevin Tsujihara and Jeff Robinov.  Mr. Meyer is the *Chairman and*
14  *Chief Executive Officer* of WBEI; Mr. Horn is the *President and Chief Operating*
15  *Officer* of WBEI; Mr. Robinov is the *President* of Warner Bros. Pictures; and Mr.
16  Tsujihara is the *President* of Warner Bros. Home Entertainment Inc.  These four
17  individuals are "high-level decision makers" (termed "apex" witnesses) who are
18  "removed from the daily subjects of the litigation" and have "no unique personal
19  knowledge of the facts at issue" in the litigation.  *Celerity, Inc. v. Ultra Clean*
20  *Holding, Inc.*, C 05-4374 MMC (JW), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25,
21  2007).  Courts routinely prohibit attempts to harass apex witnesses when, as here, it
22  cannot be shown that they have unique, non-repetitive knowledge about the specific
23  facts of the case.  The apex rule, which was developed in the discovery context,
24  should apply in the instant case to the above proposed trial witnesses.

25

26

27  [5] Defendants' Motion in Limine No. 4 re Subpoenas likewise seeks to preclude Plaintiffs from using trial subpoenas to essentially conduct discovery after the close of discovery.

28                                    20

A.   **The "Apex" Rule Prevents the Harassment of High-Level Executives**

The apex rule can be stated as follows: "When a high-level corporate executive lacks unique or superior knowledge of the facts in dispute, courts have found that good cause exists to prohibit the deposition" of the witness. *WebSideStory, Inc. v. NetRatings, Inc.*, Civil No. 06cv408 WQH (AJB), 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007). Indeed, as Chief Magistrate Judge Larson of the Northern District of California has stated: "Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse and harassment." *Celerity, Inc.*, 2007 WL 205067 at *3.

Thus, in determining whether to allow an apex witness to be deposed, courts consider: (1) whether the apex witness has "unique first-hand, non-repetitive knowledge of the facts at issue in the case," and (2) whether the party seeking to elicit the testimony "has exhausted other less intrusive discovery methods," including seeking testimony from "lower level employees." *WebSideStory*, 2007 WL 1120567 at * 2. Although the apex rule is usually encountered in the context of a party seeking to depose a high-level executive of its corporate adversary, the same rule should apply *a fortiori* to attempts to call an apex witness at trial, especially when (as here) the witness has *never been deposed or even disclosed*.

Moreover, it is entirely within the Court's power to preclude the calling of apex witnesses at trial. The apex rule in the context of depositions springs from Rule 26, which vests a trial court with "discretion to limit discovery [and] to impose restrictions where the discovery sought 'is obtainable from some other source that is more convenient [and] less burdensome.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). A trial court has the same kind of authority to make such discovery and evidentiary rulings at trial, including the exclusion of testimony. *See Lewis v. Tele. Employees*

21

1   *Credit Union*, 87 F.3d 1537, 1557 (9th Cir. 1996) ("This circuit has recognized as

2   part of a district court's inherent powers the 'broad discretion to make discovery and

3   evidentiary rulings conducive to the conduct of a fair and orderly trial.'") (quoting

4   *Unigard Security Ins. Co. v. Lakewood Eng'g & Manufacturing. Corp.*, 982 F.2d

5   363, 368 (9th Cir. 1992)).

6       **B.    The Apex Rule Should Preclude Plaintiffs From Calling**

7               **Messrs. Meyer, Horn, Tsujihara and Robinov as Trial Witnesses**

8         The facts at issue in the February 3 Trial concern whether specific television

9   and film licensing agreement between defendants WBEI and DC were unfair to DC

10  and, perhaps, the traditional alter ego doctrine.[6]  During fact discovery, Plaintiffs

11  deposed under Fed. R. Civ. P. 30(b)(6) and individually many witnesses from

12  WBEI, DC and other Warner defendants about the various inter-company Superman

13  agreements, including the following senior executives: (i) John Schulman, General

14  Counsel of WBEI, and a 30(b)(6) designee of WBEI on the inter-corporate

15  agreements, (ii) Paul Levitz, President of DC and a 30(b)(6) designee of DC on the

16  inter-corporate agreements, (iii) Brett Paul, Warner Bros. Television Production

17  Inc.'s Executive Vice President of Business Affairs, Finance and Operations and a

18  30(b)(6) designee on the inter-corporate agreements, and (iv) Nari Gardiner, Senior

19  Vice President, Finance and Operations of Warner Bros. Consumer Products, and a

20  30(b)(6) designee of WBEI on the inter-corporate agreements.  Plaintiffs never

21  complained that the testimony from these witnesses was inadequate, or that

22  Plaintiffs needed to depose anyone else, let alone the high-level officials in the apex

23  of WBEI corporate management about these licensing deals.

24

25  ---

[6] As noted above, Defendants have concurrently filed their Motion in Limine No. 1 re
26  Scope of Trial to limit the evidence to be introduced at this trial to the question of the fair market value of the relevant license agreements between DC and WBEI, and to exclude
27  evidence concerning the traditional alter ego factors.

28                        22

1       Accordingly, Plaintiffs never even attempted to justify during fact discovery
2   their purported need to elicit testimony from Messrs. Meyer, Horn, Tsujihara and
3   Robinov.  They never sought to demonstrate that these apex witnesses have "unique
4   first-hand, non-repetitive knowledge" about the specific licensing deals at issue.
5   Nor did Plaintiffs ever seek to demonstrate that they exhausted the search for such
6   testimony from lower-level executives, or that such testimony proved to be
7   inadequate.  And while Plaintiffs may argue that these apex witnesses may be able
8   to provide testimony relevant to a traditional alter ego determination – which is not
9   what this trial is about – Plaintiffs themselves have *no idea* whether the witnesses at
10  issue have such knowledge or not.

11      But now, without any explanation for their failure to disclose or depose these
12  apex witnesses, and without any prior attempt to demonstrate that these individuals
13  have special or unique first-hand, non-repetitive knowledge about these specific
14  licensing deals, Plaintiffs want to bring four high-level WBEI executives to the
15  stand.  Plaintiffs could not have so casually obtained the right to depose these four
16  apex witnesses during fact discovery, and they certainly should not so easily be
17  allowed to call these apex witnesses during trial.  The apex rule protects these high-
18  level executives from Plaintiffs' attempted harassment and protects both the Court
19  and the parties from the burden and expense of an artificially lengthened trial.

20      Finally, it should be noted that, at this late point, Plaintiffs cannot possibly
21  meet the requirements of the apex rule by demonstrating that Messrs. Meyer, Horn
22  Tsujihara and Robinov have unique first-hand, non-repetitive knowledge of the
23  specific licensing deals at issue.  Plaintiffs have no knowledge of what, if anything,
24  these four apex witnesses know about these licensing deals.  Even if such
25  knowledge exists, Plaintiffs cannot show that it is not duplicative or repetitive of the
26  testimony that will be elicited from the properly-disclosed and deposed witnesses.
27  Plaintiffs cannot overcome the apex rule at this late juncture and the Court should
28

1    not permit Plaintiffs simply to lengthen the trial or harass Defendants' high-level

2    executives in this manner.

3                                    **CONCLUSION**

4          For the reasons set forth herein, Defendants respectfully request that the Court

5    grant their motion in limine to exclude the testimony at the February 3 Trial of Mark

6    Evanier, James Steranko, Steven Sills, Wayne Lewellen, Barry Meyer, Alan Horn,

7    Jeff Robinov, Kevin Tsujihara, Bradley Scott Miller, Marsha Todd, Gregory Noveck

8    and Jay Kogan.

9    DATED:  January 5, 2009                Respectfully submitted,

10

11                                   WEISSMANN WOLFF BERGMAN
                                          COLEMAN GRODIN & EVALL LLP
12                                              -and-

13                                   FROSS ZELNICK LEHRMAN & ZISSU, P.C.

14                                              -and-

15                                   PERKINS LAW OFFICE, P.C.

16

17                                   By: _____

18                                        Michael Bergman

19                                   Attorneys for Defendants and Counterclaimant

20

21

22

23

24

25

26

27

28