FOX GROUP LEGAL
Jonathan Gottlieb, Bar No. 194432
2121 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 369-1000
Facsimile: (310) 969-0144
jonathan.gottlieb@fox.com

Attorneys for Non-Party
Twentieth Century Fox Film Corporation

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE SIEGEL, et al.<br><br>Plaintiff,<br><br>v.<br><br>WARNER BROS. ENTERTAINMENT INC., et al.<br><br>Defendant. | CASE NO. CV-04-8400-SGL (RZx)<br><br>**NOTICE OF MOTION AND MOTION OF NON-PARTY TWENTIETH CENTURY FOX FILM CORPORATION TO QUASH TRIAL SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[DECLARATION OF JONATHAN GOTTLIEB IN SUPPORT FILED CONCURRENTLY; [PROPOSED] ORDER LODGED CONCURRENTLY]**<br><br>Hearing Date: 2/2/2009<br>Time: 10:00 a.m.<br>Courtroom: 1<br>Judge: The Honorable Stephen G. Larson |

FGL-902086.v1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on February 2, 2009, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Stephen G. Larson, Courtroom 1 of the United States District Court for the Central District of California, Eastern Division, located at 3470 Twelfth Street, Riverside, CA 92501, Non-Party Twentieth Century Fox Film Corporation ("Fox") will, and hereby does, move the Court for an order quashing the trial subpoenas *duces tecum* propounded by Plaintiff on its "custodian of records or person most knowledgeable to testify" regarding certain documents, served on or about December 22, 2009.

This motion is made pursuant to Rule 45 of the Federal Rules of Civil Procedure, on the grounds that the testimony and documents sought by Plaintiff in her trial subpoena to Fox are irrelevant, unnecessary and unduly burdensome, and constitute an improper attempt by Plaintiff to conduct fact discovery through means of a trial subpoena.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support thereof, the concurrently filed Declaration of Jonathan Gottlieb, all pleadings and papers on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

//
//
//
//
//
//

FGL-902086.v1

STATEMENT OF LOCAL RULE 7-3 COMPLIANCE

      This motion is made following a conference of counsel pursuant to Local Rule 7-3, which was held by correspondence dated January 5, 2009, a telephone conference on January 6, 2009, and further correspondence dated January 9 and January 12, 2009. *See* Declaration of Jonathan Gottlieb in Support of Motion of Non-Party Twentieth Century Fox Film Corporation To Quash Trial Subpoena, ¶¶ 4-6.

DATED: January 12, 2009      FOX GROUP LEGAL

By: _____
JONATHAN GOTTLIEB, Bar No. 194432
Attorneys for Petitioner
Twentieth Century Fox Film Corporation

FGL-902086.v1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Plaintiff has served a trial subpoena on Non-Party Twentieth Century Fox Film Corporation ("Fox"), seeking production of the rights documents underlying *Hello, Dolly* and the appearance of a custodian of records.  Plaintiff is not entitled to this discovery at all, and certainly not through the use of a trial subpoena.  Fox respectfully submits that the Court should quash the subpoena propounded by Plaintiff for the following reasons:

- The documents sought are *not relevant.*  Plaintiff seeks comparable rights acquisition deals to the supposed "sweetheart" deal regarding rights to a comic book character between DC Comics and a corporate sibling in 1999.  The *Hello, Dolly* documents, entered more than 30 years earlier, and relating to the rights for a stage musical, are not probative of any issue in dispute.

- The documents sought are *not necessary*.  Plaintiff has obtained other, presumably more analogous, rights agreements for use as "data points."  Plaintiff's counsel also believes that press reports detail the terms of *Hello, Dolly*.  These press reports can be relied on by Plaintiff's expert in his testimony.

- Even assuming some relevance, Plaintiff's supposed need for these documents cannot supplant Fox's interest in the confidentiality of its agreements.  Under Plaintiff's theory, any rights agreement from any unrelated party is fair game for disclosure in litigation disputing rights.  That cannot be the law.

- Finally, Plaintiff seeks to use the trial subpoena to obtain documents she has not obtained in discovery.  That is not a permissible use of this form of

1  process.

2  As explained more fully below, Fox submits that the circumstances
3  compel an Order quashing Plaintiff's subpoena.

4  **II.  BACKGROUND**

5  In the afternoon of December 22, 2008, Plaintiff Joanne Siegel served
6  Non-Party Twentieth Century Fox Film Corporation ("Fox") with two subpoenas in
7  this matter.  Declaration of Jonathan Gottlieb in Support of Motion of Non-Party
8  Twentieth Century Fox Film Corporation to Quash Trial Subpoena ("Gottlieb
9  Decl.") ¶ 2.  The first subpoena was a "documents-only" subpoena (the "Document
10 Subpoena") with a return date of January 8, 2009, seeking production of "[a]ll
11 AGREEMENTS for [Fox] to license or acquire the film rights to the dramatic stage
12 musical, "Hello Dolly," underlying [Fox's] feature motion picture, 'Hello Dolly'
13 (1969)" (the "*Hello, Dolly* documents").  Gottlieb Decl. ¶ 2, Ex. A at 5.  The
14 Document Subpoena advised Fox that the Court had entered a Protective Order in
15 this matter and that any documents produced pursuant to that subpoena would be
16 held and marked as "Confidential" thereunder.  *Id.*

17 The second subpoena, the "Trial Subpoena," commanded the
18 production of the same document(s) as well as the personal appearance of "the
19 custodian of records or person most knowledgeable to testify" regarding those
20 documents.  Gottlieb Decl. ¶ 3, Ex. B, at 5.  Like the Document Subpoena, the Trial
21 Subpoena promised confidentiality under the Protective Order for all documents
22 produced.[1]

23 Fox timely objected to the Document Subpoena and sought a
24 conference of counsel regarding the Trial Subpoena on January 5, 2009.  Gottlieb
25 Decl. ¶ 4, Ex. C.  Counsel for Plaintiffs responded later that day and conferred with

---

[1] Both the Document Subpoena and the Trial Subpoena attached copies of the Protective Order entered in this matter April 5, 2006.  Because the Court has this document on file, because its provisions are not directly germane to this Motion, and for reasons of brevity, those copies have been omitted from the Declaration of Jonathan Gottlieb.

1  counsel for Fox on January 6, 2009. In that conference, Plaintiff's counsel Marc
2  Toberoff explained that he was seeking the *Hello, Dolly* rights agreements for use as
3  a "comp" in the damages phase of the *Siegel* trial. He further expressed his belief
4  that defendant Warner Brothers had "cherry picked" from its own files only the
5  rights deals most favorable to a low valuation, and that he was therefore seeking
6  more rightsholder-favorable deals from other studios to use at trial. He stated that
7  he believed from press reports that Fox's *Hello, Dolly* deal was generous to the
8  licensor, and that several other entities had agreed to produce rights deals in
9  response to subpoenas that he had propounded. In response, counsel for Fox stated
10 his view that the *Hello, Dolly* documents, entered into more than 40 years ago and
11 relating to the film rights for a hit Broadway musical play, were not relevant to a
12 rights deal involving a comic book property that did not occur within remotely the
13 same time period. Counsel for Fox also stated that, even if the *Hello, Dolly*
14 documents had some tangential relevance to the litigation as one data point among
15 many, that extremely limited relevance did not justify imposing any burden on third
16 parties. Plaintiff's counsel declined to withdraw the Trial Subpoena. Gottlieb Decl.
17 ¶ 5.
18 Despite subsequent correspondence, Plaintiff and Fox were unable to
19 resolve these issues without the Court's intervention. Gottlieb Decl. ¶ 6, Ex. D.
20 Accordingly, on January 12, 2009 Fox timely moves to quash the Trial Subpoena.

21 **III.   DISCUSSION**

22 Federal Rule of Civil Procedure 45 allows a non-party to move to
23 quash a subpoena if it subjects the recipient to undue burden. Fed. R. Civ. P.
24 45(c)(3)(A)(iv); *Televisa, S.A. De C.V. v. Univision Communications, Inc.*, No. CV
25 05-3444 PSG (MANx), 2008 WL 4951213, at *1-2 (C.D. Cal., Nov. 17, 2008). To
26 evaluate whether a subpoena imposes an undue burden, courts balance six factors:
27 (1) The relevance of the information requested; (2) the
28 need of the party for production; (3) the breadth of the

|   |   |
|---|---|
| 1 | request for production; (4)  the time period covered by |
| 2 | the subpoena; (5)  the particularity with which the |
| 3 | subpoena describes the requested production; and (6) the |
| 4 | burden imposed. |

*Televisa*, 2008 WL 4951213, at *2 (citing Moore's Federal Practice § 45.32 (3d ed. 2008)).

Here, the first and second factors preclude enforcement of the Trial Subpoena. The material requested is not relevant, and Plaintiffs cannot demonstrate a need for it in light of their possession of other (presumably more relevant) rights agreements.

### A. THE TRIAL SUBPOENA SEEKS TESTIMONY AND DOCUMENTS THAT ARE IRRELEVANT TO THIS ACTION.

Federal courts in California quash subpoenas seeking irrelevant information.  Fed. R. Civ. P. 45(c)(3)(A)(iv) ("On timely motion, the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden."); *see Televisa*, 2008 WL 4951213, at *2; *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (granting a motion to quash where the information sought by a subpoena was irrelevant to the claims of the lawsuit).  The ultimate burden to show relevance of the subpoenaed information rests with the party propounding the subpoena.  *Green v. Baca*, 226 F.R.D. 624, 653-54 (C.D. Cal. 2005) (citations omitted) (the "party issuing the [trial] subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings").

Being a stranger to these proceedings and lacking a written exegesis for Plaintiff's theory of relevance, Fox is at a disadvantage in understanding precisely why Plaintiff believes the *Hello, Dolly* documents are relevant to this litigation. From conversation with Plaintiff's counsel and from review of the docket and the Court's orders in this matter, Fox understands that Plaintiff seeks to show that the license fees paid by WBEI to DC Comics pursuant to a 1999 license do not

1 represent the terms that would have been reached in an arms-length negotiation.  *See*
2 *Siegel v. Warner Bros. Entertainment Inc.*, 542 F. Supp. 2d 1098, 1114, 1143-45
3 (C.D. Cal. 2008).  In Fox's conference with Plaintiff's counsel, Plaintiff's counsel
4 expressed his belief that the *Hello, Dolly* documents were more licensor-favorable
5 than many of the documents that Defendant Warner Brothers had produced in the
6 litigation.  Gottlieb Decl. ¶ 5.

7 Plaintiff cannot demonstrate that the *Hello, Dolly* documents are
8 relevant to this action.  *See* Fed. R. Evid. 401 ("'Relevant evidence' means evidence
9 having any tendency to make the existence of any fact that is of consequence to the
10 determination of the action more probable or less probable than it would be without
11 the evidence.").  Plaintiff apparently seeks to prove that DC Comics entered a
12 "sweetheart deal" with its corporate sibling in 1999.  Plaintiff cannot explain,
13 however, how the terms of agreements Fox entered over thirty years earlier with
14 several different parties could be probative of that fact.  That the two supposedly
15 comparable agreements were entered more than thirty years apart, without more,
16 compels the conclusion that the *Hello, Dolly* documents are irrelevant here.

17 Nor can Plaintiff explain why disclosure of a grant of film rights to a
18 musical stage play sheds any light on "fair market value" for the licensing of a
19 comic book property.  Indeed, even if one were to assume that valuation is relatively
20 constant across genres, unique aspects of the *Hello, Dolly* documents diminish their
21 possible relevance even more.  As public records show, the *Hello, Dolly* film was
22 based on the *Hello, Dolly* stage musical, which itself was based on a Thornton
23 Wilder stage play, *The Matchmaker*, which was a revision of an earlier stageplay,
24 *The Merchant of Yonkers*.  *See* http://www.ibdb.com/show.php?id=4310 (last visited
25 January 12, 2009); http://en.wikipedia.org/wiki/Hello,_Dolly!_(musical).  To
26 complicate matters further, *The Matchmaker* had previously been made into a film
27 by Paramount Pictures in 1958.  In addition to acquiring rights from these
28 predecessor entities, Fox would have acquired rights from the creators and

producers of the musical play. In contrast, the license at issue in *Siegel* involves a series of comic books, films, merchandising, and other uses of a character - none of which is included in the *Hello, Dolly* agreements.

In short, the *Hello, Dolly* documents have no relevance to this matter.[2] Because the Trial Subpoena seeks information irrelevant to any of the allegations or claims at issue in this lawsuit, it is appropriate to quash the Trial Subpoena. *See Televisa*, 2008 WL at *2.

### B. EVEN ASSUMING SOME RELEVANCE, PLAINTIFF CANNOT DEMONSTRATE HER NEED FOR THE *HELLO, DOLLY* DOCUMENTS.

Assuming *arguendo* that the *Hello, Dolly* documents have some conceivable relevance to this matter (in the same sense that any deal for acquisition of rights underlying a motion picture might be relevant), Plaintiff cannot demonstrate her need for them. This is so for two reasons: first, Plaintiff's counsel has obtained other rights deals from a number of other sources that can be used as "comps." *See e.g.,* Gottlieb Decl. ¶ 6, Ex. D at 1 (Plaintiff's counsel writes, "Sony had no problem responding to a similar subpoena regarding 'Annie'"). Plaintiff has undoubtedly retained an expert who has made use of rights licenses stored in libraries and archives that have at least as much connection to this matter as the *Hello, Dolly* documents do. *See Siegel*, 542 F. Supp. 2d at 1145 (noting that "[w]hether the license fees paid represents the fair market value, or whether the license for the works between the related entities was a 'sweetheart deal,' are questions of fact that are not answered on summary judgment, *certainly not without the benefit of expert testimony* . . . .) (emphasis added).

Relatedly, Plaintiff's counsel claims to already be aware of the relevant

---

[2] For the reasons described in the text, the subpoena also is overbroad by requesting documents -- *e.g.*, those addressing music rights -- that have no conceivable analog to the case. For the same reason, the subpoena does not describe the documents sought with adequate particularity.

terms of the *Hello, Dolly* documents.  *See* Gottlieb Decl. ¶¶ 5,6  Ex.D, at 1 (Plaintiff's counsel writes, "Fox's grave 'confidentiality' concerns and critical focus on this matter are [not] warranted by an ancient 'Hello Dolly' agreement from the 1970's, *the non-confidential terms of which were well publicized in the trades and other sources . . . .*") (emphasis added).  Rather than imposing any burden on Fox whatsoever, Plaintiff can provide this information from "the trades and other sources" to her expert as one of the bases for his or her opinion.  *See* Fed. R. Evid. 703 ("If [evidence is] of a type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.")  Since it is likely to be the expert's overall opinion that is particularly informative to the finder of fact, and not the underlying source material (particularly material of such remote possible relevance as the *Hello, Dolly* documents), Plaintiff cannot demonstrate her need for the evidence demanded in the Trial Subpoena.

### C. DISCLOSURE WOULD EFFECT AN UNDUE BURDEN ON FOX BY SACRIFICING ITS INTEREST IN PROTECTING THE CONFIDENTIALITY OF ITS AGREEMENTS.

Demonstrating that the *Hello, Dolly* documents lack relevance and that Plaintiffs have no need for them (even assuming some relevance) compel the conclusion that any burden on Fox is "undue" and the Trial Subpoena should therefore be quashed.  The burden on Fox, however, is significant.  Fox is very protective of its properties and does not customarily make public its agreements with its licensors; such confidentiality is a standard, customary, and expected feature of its business operations.  Allowing enforcement of the Trial Subpoena would vitiate Fox's confidentiality interest.

Rule 45 acknowledges that confidentiality is a limit on discovery obtainable from third parties.  *See* Rule 45(c)(3)(B)(i) (Court may grant motion to quash if subpoena requires "disclosing a trade secret or other *confidential* research,

1    development, or *commercial information*") (emphasis added).  In the related context
2    of Rule 26(c)(1)(G), Courts have recognized licensing and royalty information to be
3    trade secrets.  *E.g., Duplan Corp. v. Deering Millik Inc*., 397 F. Supp. 1146, 1185-
4    87 (D.S.C. 1974) (holding confidential business information such as licensing and
5    royalty information to be trade secrets entitled to protection from discovery).  Courts
6    have also considered private contracts to be "trade secrets," as they are not public
7    and require effort to negotiate and draft them.  *See Nucar Consulting, Inc. v. Doyle,*
8    No. 19756-NC, 2005 WL 820706, at *7, *9 (Del. Ch. Apr. 5. 2005).  Rights deals
9    are the stock-in-trade of movie studios, such as Fox.  Courts regularly protect the
10   sensitive data regarding stock-in-trade of other industries, even where such data is
11   not "trade secret," but merely confidential information.  *Cf. American Standard v.*
12   *Pfizer Inc*., 828 F.2d 734, 736-44 (Fed. Cir. 1987) (sales data and marketing plans
13   confidential information, not discoverable); *Pioneer Hi-Bred Int'l Inc. v. Holden's*
14   *Found. Seeds*, 105 F.R.D. 76, 77-83 (N.D. Ind. 1985) (quantities, prices and sales of
15   a non-party's product confidential business information not subject to discovery).

16             Indeed, Fox's interest in the confidentiality of its documents is not a
17   matter truly subject to dispute.  Plaintiff, in propounding the Document and Trial
18   Subpoenas, emphasized the Protective Order in this case and assured Fox that its
19   documents would receive confidential treatment.  *See* Gottlieb Decl. ¶ 2, 3, Exs. A,
20   B.  Of course, documents presented at trial cannot ordinarily be protected under a
21   protective order, so enforcement of the Trial Subpoena would effect public
22   disclosure of the *Hello, Dolly* documents.

23             Given the lack of relevance of the *Hello, Dolly* contracts to this
24   litigation, Plaintiff essentially seeks discovery with no bounding principle.  If the
25   Trial Subpoena is appropriate here, then any party to a rights dispute could seek
26   rights agreements from third parties on the same theories of relevance as those that
27   Plaintiff advances here.  But discovery - and particularly third-party discovery -- are
28   not so broad.   An order to quash the Trial Subpoena is warranted to protect Fox's

legitimate expectations and interests as a third party.

### D. **PLAINTIFF'S USE OF A TRIAL SUBPOENA TO OBTAIN DISCOVERY IS IMPROPER.**

California federal courts prohibit parties from using trial subpoenas to effect production of documents not obtained in discovery. *See Atkins v. County of Riverside*, 2007 WL 4696859, at *7 (C.D. Cal. Mar. 20, 2007) ("In California, federal courts interpret Rule 45 as setting forth two types of subpoenas: pretrial discovery subpoenas and trial subpoenas."); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 561-562 (S.D. Cal. 1999) (discussing limits on trial subpoena document requests). In other words, "[a] trial subpoena is not an appropriate means of ascertaining facts or uncovering evidence." *Puritan Inv. Corp. v. ASLL Corp.*, 1997 WL 793569, at *2 (E.D. Pa. Dec. 9, 1997) Rather, federal courts in California authorize production of documents through trial subpoenas for only limited purposes, such as to secure documents for the purpose of memory refreshment or trial preparation or to ensure availability at trial of original documents previously disclosed by discovery. *nSight Inc. v. PeopleSoft, Inc*., No. 3:04 CV 3836 MMC (MEJ), 2006 WL 988807, at *2 (N.D. Cal. 2006).

Allowing enforcement of the Trial Subpoena would run afoul of this rule. Plaintiff served a Document Subpoena requesting the same documents as the Trial Subpoena. Fox's objections relieved it of the obligation of producing documents. Because Plaintiff has not moved to compel documents from Fox pursuant to the Document Subpoena,[3] the Trial Subpoena is the only pending mechanism that would effect the production of the *Hello, Dolly* documents. Plaintiff should not be allowed to accomplish through a Trial Subpoena that which

---

[3] Fox's understood from the initial conversation with Plaintiff's counsel that Plaintiff did not intend to move to compel; Plaintiff's counsel has expressed his intention to so move, but has not indicated when he will do so. Gottlieb Decl. Ex. D, at 2. In any event, given the timing of the subpoenas, there is insufficient time before February 3 for a Joint Stipulation to be heard on normal notice.

she cannot accomplish through standard discovery processes.

## IV. CONCLUSION

For all of the foregoing reasons, Fox respectfully requests that the Court enter an order quashing Plaintiff's Trial Subpoena, ruling the discovery sought irrelevant, unnecessary, unduly burdensome and/or otherwise inappropriate, and for any and all other relief that the Court deems appropriate.

DATED: January 12, 2009            FOX GROUP LEGAL

By: _____
JONATHAN GOTTLIEB, Bar No. 194432

Attorneys for Petitioner
Twentieth Century Fox Film Corporation