WEISSMANN WOLFF BERGMAN
   COLEMAN GRODIN & EVALL LLP
Michael Bergman (SBN 37797)
Anjani Mandavia (SBN 94092)
Adam Hagen (SBN 218021)
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212
Telephone: (310) 858-7888
Fax: (310) 550-7191

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Roger L. Zissu (Admitted *pro hac vice*)
James D. Weinberger (Admitted *pro hac vice*)
866 United Nations Plaza
New York, New York 10017
Telephone: (212) 813-5900
Fax: (212) 813-5901

PERKINS LAW OFFICE, P.C.
Patrick T. Perkins (Admitted *pro hac vice*)
1711 Route 9D
Cold Spring, New York 10516
Telephone: (845) 265-2820
Fax: (845) 265-2819

Attorneys for Defendants and Counterclaimant

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>Plaintiffs,<br>vs.<br><br>WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. SA CV 04-8400 SGL (RZx)<br><br>Hon. Stephen G. Larson, U.S.D.J.<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE IN SUPPORT OF DEFENDANTS' CLAIM THAT WARNER BROS. ENTERTAINMENT IS NOT THE CO-OWNER OF THE SUPERMAN AUDIOVISUAL RIGHTS**<br><br>Date: January 26, 2009<br>Time: 11:00 a.m.<br>Place: Courtroom 1<br><br>Trial Date: February 3, 2009 |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. SUMMARY OF APPLICABLE LAW ................................................................. 3

III. ARGUMENT .......................................................................................................... 4

    A. The Agreements Between DC and WBEI Purported to Be Grants In Certain Exclusive Copyright Rights; They are Not Conveyances Of DC's "Entire Proportional Undivided Joint Interest" In Said (Non-Exclusive) Copyright Rights .................................................................................... 5

    B. Since Plaintiffs' Superman Termination Notices Have Been Held to Be Effective, DC's Exclusive Grants to WBEI Have, as a Matter of Law, Been Abrogated and Converted to Non-Exclusive ................................................................. 8

    C. Evidence Regarding Whether or Not the Superman Agreements Were for a Fair Market Value to DC Should Not Be Excluded; Indeed, It is the Only Evidence That Should Be Permitted in This Phase of the Trial ............................................................................................... 12

IV. CONCLUSION .................................................................................................... 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashton-Tate v. Ross*,
   916 F.2d 516 (9th Cir. 1990) .................................................................. 4

*Bodenstab v. J.R. Blank & Associate, Inc.*,
   1989 U.S. Dist. LEXIS 8554 (N.D. Ill. 1989) ............................. 9, 10, 11

*Broadcast Music, Inc. v. Roger Miller Music, Inc.*,
   396 F.3d 762 (6th Cir. 2005) .................................................................. 5

*Burkitt v. Flawless Records, Inc.*,
   2005 U.S. Dist. LEXIS 11986 (E.D. La. 2005) ................................. 9. 10

*Carroll v. Kahn*,
   2003 U.S. Dist. LEXIS 17902 ................................................................ 5

*Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*,
   140 F.2d 266 (2d Cir. 1944) ................................................................... 5

*Jasper v. Sony Music Entertainment, Inc.*,
   378 F. Supp. 2d 334 (S.D.N.Y. 2005) ........................................ 9, 11, 12

*Lindsay v. R.M.S. Titanic, Inc. et al*,
   1999 U.S. Dist. LEXIS 15837 (S.D.N.Y. 1999) ....................... 9. 11, 12

*Siegel II*,
   542 F. Supp. 2d at 1143 ............................................................... 3, 9, 13

*Siegel v. Warner Brothers Entertainment Inc.*,
   542 F. Supp. 2d 1098 (C.D. Cal. 2008) .................................................. 2

## FEDERAL STATUTES

17 U.S.C. § 101 ................................................................................................ 3

## TREATISES

1 *Nimmer on Copyright* § 6.12 ....................................................................... 5

1 *Nimmer on Copyright* § 6.12[C][3] ..................................................... 3, 6, 9

1 *Nimmer on Copyright* § 10.3[A][7] .............................................................. 3

3 *Nimmer on Copyright* § 6.12[B] .................................................................. 4

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1**

Defendants Time Warner Inc. ("TWI"), Warner Bros. Entertainment Inc. ("WBEI") and defendant and counter-claimant DC Comics ("DC") (collectively "Defendants") respectfully submit this Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion in Limine No. 1 (the "Motion").

## I. INTRODUCTION

Plaintiffs' Motion, awkwardly styled as one to "Exclude Evidence in Support of Defendants' Claim that Warner Bros. Entertainment Inc. is Not the Co-owner of the Superman Audiovisual Rights," is precisely the type of motion that the Court has said will *not* be considered or heard at this stage of the litigation; that is, it is a <u>summary judgment motion disguised as a motion in limine</u>. (*See Larson Scheduling Order,* ¶3 ("summary judgment motions disguised as motions in limine will not be heard").) Worse, it is a summary judgment motion based exclusively on recycled legal arguments that this Court has *already expressly rejected.*

Plaintiffs' Motion posits that, as a matter of law, DC's various exclusive agreements with WBEI had the net effect of substituting WBEI in the place of DC as Plaintiffs' copyright co-owner with respect to the licensed Superman audiovisual rights, resulting in a direct accounting obligation from WBEI to Plaintiffs. As such, argue Plaintiffs, whether the amount and nature of the compensation flowing to DC on the audiovisual licenses constitutes "fair market value" is irrelevant, and all evidence on that issue should be excluded. (Motion at p. 12.) Accordingly, if Plaintiffs' Motion were granted as requested, there would be no reason to proceed on what is the *sole* issue presently scheduled for the February 3, 2009 trial; namely, whether and to what extent any of the relevant Superman agreements between DC and WBEI constitute "sweetheart" deals to the detriment of DC (and therefore, potentially, to Plaintiffs).

Not only is Plaintiffs' disguised summary judgment motion improper and untimely, it also is just an impermissible attempt at reconsideration of the legal position advanced by Plaintiffs in opposition to Defendants' motion for partial

1

1  summary judgment on their alter ego claim – a legal position that the Court
2  rejected as "requir[ing] large legal leaps that are not countenanced by current law."
3  *Siegel v. Warner Bros. Entertainment Inc.*, 542 F. Supp. 2d 1098, 1143-44 (C.D.
4  Cal. 2008) ("*Siegel II*").[1]  As such, the Motion also runs afoul of Local Rule 7-18's
5  mandate that requests for reconsideration are inappropriate absent some new facts
6  or law, or a manifest showing that the Court previously failed to consider the
7  material facts presented.[2]

8      Plaintiffs can make no such showing here.  Nevertheless, with no new facts
9  or law at their disposal, Plaintiffs seek to resuscitate and advance thae same
10 discredited arguments at this late date, in an apparent attempt to avoid a trial in
11 which it is clear they will have *no* credible evidence to support their long-standing
12 assertion that DC obtained less than fair market value from WBEI for the licensed
13 Superman rights.

14     Plaintiffs' Motion is in direct violation of the admonition contained in this
15 Court's Scheduling Order against disguised summary judgment motions,
16 andshould be rejected for this reason alone.  In the event, however, that the Motion
17 is considered, it should summarily be denied as an impermissible motion for
18 reconsideration of a legal position that is not only without merit, but also was
19 previously considered and rejected by the Court.

---

[1] "Plaintiffs … argu[e] that 'Warner has stepped exclusively into DC's shoes with respect to such motion picture and television copyright.' (Pl's Opp. at 30). In other words, the exclusive license had the net effect of substituting WBEI for DC Comics as a joint owner with plaintiffs … insofar as the exploitation of the copyright in the mediums in which those licenses are concerned. ¶ This theory, however, requires large legal leaps that are not countenanced by current law." *Id.*

[2] "A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." L.R. 7-18.

2

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1**

## II. SUMMARY OF THE APPLICABLE LAW

Under the Copyright Act of 1976, "an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the *exclusive* rights comprised in copyright, whether or not it is limited in time or place of effect" constitutes a "transfer of copyright ownership." 17 U.S.C. § 101 (emphasis added). See 1 *Nimmer on Copyright* § 6.12[C][3] ("Under the current Act a grant of any exclusive right comprised in a copyright is treated in the same manner as an assignment").

In order to effectively transfer an exclusive copyright interest in a *jointly owned* work – whatever the transfer terminology used – the consent of *all* joint owners is required. *Siegel II*, 542 F. Supp. 2d at 1143.[3] In the absence of the consent of all the joint owners, any purported transfer of an exclusive copyright interest – however denominated – constitutes at best a non-exclusive license from the transferring co-owner to the transferee. *Id.*[4]

Under such circumstances, and in accordance with established principles, the non-exclusive licensee is accountable only to its licensor, and owes no duty of accounting to the non-licensor co-owner of the copyright the licensee exploits. *Id.* (citing *Ashton-Tate v. Ross*, 916 F.2d 516, 523 (9th Cir. 1990) (a copyright holder is entitled to share in licensing proceeds from co-owner, not in a licensee's

---

[3] "[I]n order for an exclusive license in the entirety of the interest in a joint work itself (such as Superman) to be effective, the consent of both joint owners in the copyrighted work is required. *See* 2 *Patry on Copyright*, § 5:7 ('A joint author (or co-owner) may not, however, transfer *all* interest in the work without the other co-owner's express (and written) authorization, since that would result in an involuntary transfer of the other joint owner's undivided interest in the whole'). The same requirement for prior consent holds true even with respect to the wholesale transfer of exclusive licenses in subparts to a copyright, such as a licensee transferring all stage rights (not just the joint owner's rights) to a novel but not the movie or literary rights. *Cf.* 1 *Nimmer on Copyright*, § 6.12[C][3] at 6-38.8 to 6-39." *Id.*

[4] "DC Comics unilaterally sought to give an exclusive license to the entirety in the Superman property's movie and television rights to WBEI post-termination. As a result, the attempt to provide an exclusive license was ineffective. At best, all that was conveyed was a non-exclusive license, and, at worst, a license agreement whose terms are null and void absent ratification by plaintiffs. *See* 3 *Nimmer on Copyright* § 10.03[A][7] at 10-51." *Id.*

---

3

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1**

profits)). *See also,* 1 *Nimmer on Copyright* § 6.12[B] ("A right of accounting may be enforced only as against the joint owner-licensor and not as against his licensee.").

### III. ARGUMENT

It is important to note at the outset that this Court, in *Siegel II*, declined to dismiss TWI and WBEI from this action solely because it believed that, in this equitable proceeding, "the relatedness of the transferor and transferee entities cannot be ignored."[5] However, the argument advanced by Plaintiffs in this Motion – that is, that the unilateral grant of exclusive rights by DC to WBEI resulted in WBEI "stepping into the shoes" of DC as to those rights – is *not* dependant in any way on the fact that WBEI and DC are corporate affiliates. Indeed, Plaintiffs' argument, if adopted, would apply to *any* grant of exclusive rights from a transferor to a transferee where a third party claims to be a copyright co-owner of the transferor – thereby thrusting the transferee into a co-tenancy relationship with the other (non-contracting) co-owner, and subjecting all of its profits to an accounting claim. Not only would such a result run afoul of the long-standing authority that co-owners have no direct claim against the licensees of the other co-owner, it also would be *directly contrary* to the decision of every other court that has considered the issue, whether expressly or implicitly. There is simply no basis for the Court to deviate from this established precedent and hold that, by virtue of receiving a purportedly exclusive copyright license from DC, WBEI has now become a joint owner with Plaintiffs, with a concomitant obligation to account for its profits.

---

[5] "This fact alone raises a specter of a 'sweetheart deal' entered into by related entities in order to pay less than market value fee for licensing valuable copyrights." *Id.* at 1144 (emphasis added).

4

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1**

A. **The Agreements Between DC and WBEI Purport to Be Grants In Certain Exclusive Copyright Rights; They Are *Not* Conveyances Of DC's "Entire Proportional Undivided Joint Interest" In Said (Non-Exclusive) Copyright Rights**

The principal argument advanced by Plaintiffs in the Motion is that the post-termination agreements between DC and WBEI for the motion picture and television rights to Superman[6] aren't what they purport to be – namely, grants of exclusive motion picture and television rights in the Superman property – but rather are a conveyance of the entirety of "DC's proportional undivided co-ownership interest" in said rights (which, by virtue of Plaintiffs' co-ownership interest, is necessarily *non-exclusive* as to the rights granted). (See Motion at 5-8.)

In support of their argument, Plaintiffs rely on authority to the effect that "one joint owner may transfer his own interest in a joint work without such transfer being consented to or joined in by the other joint owners" and that the transferee in such situations "steps into the shoes of" and succeeds to the accounting obligations of the transferor (Motion at 7-9, citing 1 *Nimmer on Copyright* § 6.12; *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 266, 267 (2d Cir. 1944); *Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 764 (6th Cir. 2005); *Carroll v. Kahn*, 2003 U.S. Dist. LEXIS 17902; 68 U.S.P.Q.2D (BNA) 1357 (N.D.N.Y.).) But this authority addresses the situation where a joint owner transfers *just his own* non-exclusive interest in a copyright, not where he purports to transfer the entirety of exclusive rights under copyright. *See* 1 *Nimmer on Copyright* § 6.12[C][3] ("[A] grantee of an *undivided non-exclusive interest* in all rights in the work [is] treated as a joint owner-transferee.") (emph. added).

For this legal principle to have any application here, the Court would have to

---

[6] These are the November 6, 1999 Option Purchase Agreement (the "Film Agreement") (Declaration of Nicholas Williamson ("Williamson Decl."), Ex. A), and the December 5, 2000 Rights Option and Purchase Agreement, as amended December 5, 2002 (the "*Smallville* Agreement") (Williamson Decl., Ex. B).

5
**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1**

1  conclude that DC did *not* in fact purport to transfer to WBEI the *exclusive* motion
2  picture and television rights to Superman, and that the parties instead intended only
3  to transfer to WBEI DC's *non-exclusive* undivided one-half co-ownership interest
4  in those rights.[7] Of course, such a conclusion would require the Court to disregard
5  the plain language of the relevant agreements, and to construct entirely new and
6  different agreements between the parties – ones that neither party bargained for.

7  As Plaintiffs have pointed out at length in their Motion, DC expressly
8  granted substantial, *exclusive* rights to WBEI in both the Film Agreement and the
9  *Smallville* Agreement. The Film Agreement provides as follows:

> If the option is exercised, Warner shall own, and subject
> only to such exercise DC assigns and sells to Warner,
> *exclusively,* in perpetuity and throughout the universe, *all*
> rights, title and interest in the Property except for the
> Reserved Rights set forth in Paragraph 6 hereof (the
> "Rights").

Film Agreement (Williamson Decl. Ex. A) at p. 3 (emphasis added).[8] Similarly, the *Smallville* Agreement provides as follows:

> DC Comics … does hereby assign, grant, bargain, sell,
> transfer, and set over (all herein called grant) forever, to
> Warner Bros. Television Production … the *exclusive*
> worldwide television production rights (except for

---

[7] Plaintiffs' theory appears to be that the term "exclusive" grant as used in the relevant agreements did not mean a grant of the entirety of the motion picture and television rights to Superman, but rather a only grant of the entirety of *DC's interests* in the motion picture and television rights to Superman (*see* Motion at 10) – a very material difference.

[8] Plaintiffs misleadingly quote this contractual provision as follows: "If the option is exercised, Warner shall own, and subject only to such exercise DC assigns and sells to Warner, exclusively, in perpetuity and throughout the universe, all *[of DC's]* rights, title and interest in the Property except for the Reserved Rights set forth in Paragraph 6 hereof (the 'Rights')." (Motion at 3; emphasis added.) The gratuitous addition of the phrase "*of DC's*" completely changes the meaning of the provision, to comport with how Plaintiffs would like the agreement to be interpreted, not with what it actually says.

6
**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1**

> television animation rights as herein reserved by [DC])
> accruing in an to the literary material described as
> follows: ...

*Smallville* Agreement (Williamson Decl., Ex. B) at p. 8 (emphasis added).[9]

Additionally, in both the Film Agreement and the *Smallville* Agreement, DC expressly represented and warranted that it was the *sole and exclusive* owner of the *entirety* of the Superman property, and had the *sole and exclusive* right to dispose of the rights being granted:

> DC hereby represents and warrants that: ..DC is the *sole proprietor* of *all rights* in the Property ... DC has full right and power to make and perform this Agreement *without the consent of any third party* ...

Film Agreement (Williamson Decl., Ex. A) at pp. 11-12 (emphasis added). And the *Smallville* Agreement provides that:

> Assignor [DC] represents and warrants that Assignor is the *sole author and owner* of the work, and of all rights herein granted and assigned; ... that Assignor has the *sole right to dispose* of each and every right herein granted and purported to be granted....

*Smallville* Agreement (Williamson Decl. Ex. B) at p. 9 (emphasis added).

Accordingly, the language of both the Film Agreement and the *Smallville* Agreement is directly contrary to the meaning urged by Plaintiffs. Both agreements expressly state, *on their face*, that DC was purporting to transfer to

---

[9] Extensive grant language of this nature is not unusual, and can typically be found in exclusive copyright licenses.

[11] Defendants do not deny that DC purported to grant an exclusive licenses to WBEI for the motion picture and television rights to Superman. (Williamson Decl., Exs. A & B.) Indeed, DC had at that time rejected the validity and effectiveness of the Superman Notices, and asserted that it remained the sole owner of all Superman copyrights.

WBEI *all* of the *exclusive* film and television rights in Superman as therein indicated (meaning that WBEI would be the only one entitled to exploit those specified rights), and was not merely conveying to WBEI DC's "entire proportional undivided interest" in such rights (which by its very nature would have given WBEI *non-exclusive* rights in the property). Plaintiffs have presented no rationale for the Court to disregard such unequivocal contractual language in favor of the absurd and unsupported interpretation that notwithstanding the language of the agreements the parties were in actuality only intending for DC to transfer to WBEI an undivided nonexclusive co-ownership interest in the Superman rights – which would be the *only* basis on which to claim that WBEI had "stepped into the shoes" of DC with respect to any accounting obligations – thereby obligating WBEI to not only make substantial upfront and continuing royalty payments to DC under the terms of the respective agreements, but also, outside the contracts, to split with Plaintiffs any profits it might make.

### B. Since Plaintiffs' Superman Termination Notices Have Been Held to Be Effective, DC's Exclusive Grants to WBEI Have, as a Matter of Law, Been Abrogated and Converted to Non-Exclusive Licenses

Nor can Plaintiffs rely on copyright law to supply their preferred "co-ownership" interpretation of the consequences of DC's exclusive grants to WBEI. In fact, copyright law provides that when a transferee purports to get an exclusive copyright interest from just one of two co-owners of the copyright, he does not as a consequence become a co-owner of the granted rights with the non-consenting owner; instead, he becomes a mere non-exclusive licensee of the rights from the granting co-owner. As a non-exclusive licensee, he has no obligation to account to the non-consenting co-owner.

As this Court previously held, "DC Comics unilaterally [*i.e.*, without Plaintiffs' consent] sought to give an exclusive license to the entirety in the

8

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1**

Superman property's movie and television rights to WBEI post-termination. As a result, the attempt to provide an exclusive license was ineffective." *Siegel II,* 542 F. Supp. 2d at 1143-44.[11] That is, where there is a non-consenting co-owner, even an express attempt by the other co-owner to convey the exclusive rights to the entirety of a copyright or one or more of its divisible parts will not result in the transferee "stepping into the shoes" of the transferor/co-owner, with a corresponding duty to account. Instead, the attempted exclusive transfer will fail, and will likely be converted into a non-exclusive license, which carries no duty to account. *See e.g.* 1 *Nimmer on Copyright* § 6.12[C][3] ("Since . . . a grant executed by less than all of the joint owners of a copyright is necessarily non-exclusive, it follows that any such grant constitutes a non-exclusive license.").

This principle has been followed – either expressly or impliedly – by each of the several courts that has been presented with a similar situation. *See e.g. Bodenstab v. J.R. Blank & Assoc., Inc.,* 1989 U.S. Dist. LEXIS 8554, (N.D. Ill. 1989); *Burkitt v. Flawless Records, Inc.,* 2005 U.S. Dist. LEXIS 11986, *57-58 (E.D. La. 2005); *Lindsay v. R.M.S. Titanic, Inc. et al,* 1999 U.S. Dist. LEXIS 15837, *22-23 (S.D.N.Y. 1999); and *Jasper v. Sony Music Entm't, Inc.,* 378 F. Supp. 2d 334, 346 (S.D.N.Y. 2005).

The *Bodenstab* and *Burkitt* cases in particular are *directly* on point. Plaintiffs in both cases advanced the precise argument Plaintiffs are advancing here – that is, that because one or more of the *exclusive* rights under copyright had been transferred by their co-owner to a third party, the third party as a consequence became an "owner" with the corresponding obligation to account to plaintiffs. *See Bodenstab,* 1989 U.S. Dist LEXIS 8554 at *3-4;[12] and *Burkitt,* 2005 U.S. Dist.

---

[12] "Compuware and Bodenstab maintain that the possibility exists that the 1982 agreement granted Compuware the <u>ownership</u> of the right to market the programs.... They contend that if Compuware is a co-owner of the programs, it must account to Bodenstab for profits received from sale of the programs." *Id.* (emph. added).

LEXIS 11986 at *57.[13] Both courts *flatly rejected* this argument, and held that since ownership of any of the exclusive rights under copyright *cannot* be transferred without the consent of all the copyright co-owners, and assuming that the plaintiffs were ultimately found to be co-owners, since they admittedly did not give their consent to the transfers the transactions in question *as a matter of law* constituted nothing more than non-exclusive licenses which did not give rise to a claim for an accounting. *See Bodenstab*, 1989 U.S. Dist LEXIS 8554 at *4-5:

> Transfer of ownership of any of the exclusive rights comprised in a copyright can only be accomplished with the consent of all joint owners of the copyright. Thus, assuming Bodenstab is a joint owner of these programs, Blank could not have granted Compuware any ownership rights without Bodenstab's consent. … Thus, without Bodenstab's consent, Blank could only grant a license to Compuware, making Compuware a licensee and free from liability to Bodenstab for royalty payments.

*See also Burkitt*, 2005 U.S. Dist. LEXIS 11986 at *58-60:

> An exclusive license can only be accomplished by agreement of all co-owners. [Citation,] Because plaintiffs maintain that they did not consent to the license granted to the Universal Defendants, any license granted by Scantlin merely granted a license of the rights of the copyright owner, i.e. a non-exclusive license, rather than a transfer of ownership which is a transfer of all of the rights, i.e. an exclusive license. … As plaintiffs concede, a licensee is free from liability to a co-owner for an

---

[13] "[P]laintiffs maintain that the Universal Defendants were granted an exclusive license which is a transfer of <u>ownership</u>, thereby subjecting them to plaintiffs' accounting claims." *Id.* (emph. added).

|   |   |
|---|---|
| 1 | accounting. Accordingly, plaintiffs' claims for an |
| 2 | accounting against the Universal Defendants are |
| 3 | dismissed. |

The reasoning on which these decisions are expressly based completely undermines Plaintiffs' contention that DC's post-termination transfer to WBEI of the audiovisual rights to Superman resulted in WBEI becoming a co-owner with Plaintiffs with respect to those rights.[14]

The same issue was also present in, although not discussed at length by, *Lindsay v. R.M.S. Titanic, Inc. et al*, 1999 U.S. Dist. LEXIS 15837, *22-23 (S.D.N.Y. 1999) and *Jasper v. Sony Music Entm't, Inc.*, 378 F. Supp. 2d 334, 346 (S.D.N.Y. 2005), both of which decisions resulted in a holding that a non-consenting co-owner had no direct claim against the purported *exclusive* licensee of the transferring co-owner. In *Lindsay,* the plaintiff sued R.M.S. Titanic, Inc. ("RMST") and Discovery Communications, Inc. ("DCI") for his share of the profits from the exploitation of certain footage filmed during a Titanic salvage operation. RMST had granted DCI an *exclusive* license to exploit that footage.[15] The court *dismissed* the plaintiff's claim against DCI – the exclusive licensee of its his purported co-owner – for an accounting of the moneys it received from its use of the copyrighted footage, on the basis that "[t]he duty to provide an accounting from profits obtained runs only between co-owners of a copyright [citations omitted]. Because DCI is only a licensee of a putative joint owner of the copyright

---

[14] Because they have no response to these cases, Plaintiffs bizarrely assert that the *Bodenstab* and *Burkitt* decisions are "unpublished" and therefore are uncitable. (Motion at 10, n. 3.) Plaintiffs do not explain on what basis they make that assertion, and in fact they are incorrect. These cases are not "unpublished" or uncitable – indeed, the *Burkitt* court cited to *Bodenstab* – they simply have, as many district court decisions do, solely a Lexis or Westlaw citation. Alternatively, Plaintiffs suggest that *Bodenstab* and *Burkitt* were wrongly decided, and ask the Court to disregard them. However, although these decisions are not binding on this Court, they are persuasive authority, as they are directly on point, and their analysis is logically based on and consistent with existing copyright precedent.

[15] "[Plaintiff's] complaint alleges that RMST 'unlawfully entered into the exclusive license agreement with DCI' …" 1999 U.S. Dist. LEXIS 15837 at *11.

at issue here, Lindsay's claim for an accounting fails as a matter of law and must be dismissed." *Lindsay*, 1999 U.S. Dist. LEXIS 15837, *22-23.

In *Jasper*, plaintiff was one member of a well-known singing group. The plaintiff's co-authors – the other members of the group – undisputedly granted Sony Music Entertainment an *exclusive* license to exploit certain of the group's works. The plaintiff contended that he was not a party to the license agreement, and that Sony therefore was obligated to pay royalties directly to him as co-author of the copyrighted works rather than to the licensor pursuant to the terms of the license. The court disagreed, holding that even if the plaintiff did not sign the license, his claim still failed as a matter of law and was subject to dismissal because "licensees have no obligation to co-authors with whom they do not contract." *Jasper*, 378 F. Supp. 2d at 346.

Plaintiffs have cited no case – and Defendants have found none – that supports Plaintiffs' argument that the conveyance of extensive *exclusive* copyright interests by one of two joint copyright owners is the equivalent of conveying the granting co-owner's proportional, undivided *nonexclusive* joint interest in those rights, and therefore should be treated similarly. In fact, all the cases that have addressed this situation, both expressly and impliedly, have found precisely the *opposite*. Accordingly, there is no basis in the law (just as there is no basis in the contractual language) for granting Plaintiff's Motion on the purported "co-ownership" relationship between WBEI and Plaintiffs.

### C. **Evidence Regarding Whether or Not the Superman Agreements Were for a Fair Market Value to DC Should Not Be Excluded; Indeed, It is the Only Evidence That Should Be Permitted in This Phase of the Trial**

As noted above, neither the language of the contracts at issue nor the applicable case law supports Plaintiffs' recycled argument that DC's grants to WBEI of the exclusive motion picture and television rights in Superman was in

actuality a transfer of DC's "proportional undivided joint ownership interest" in those rights, resulting in WBEI "stepping into the shoes" of DC as Plaintiffs' co-owner, and giving rise to a an obligation of WBEI to account directly to Plaintiffs for its profits. The Court rejected this argument once before and, if it reconsiders it at all, should reject it again here. Indeed, the only basis on which WBEI (and TWI) have been kept in this action is the Court's concern that the relationship between the Defendants may have given rise to below market license fees to DC. *Siegel II* at 1144 ("This fact alone raises a specter of a 'sweetheart deal' entered into by related entities in order to pay a less than market value fee for licensing valuable copyrights"). As the Court stated:

> Whether the license fees paid represents the fair market value therefore, or whether the license for the works between the related entities was a "sweetheart deal," are questions of fact that are not answered on summary judgment, certainly not without the benefit of expert testimony which has not been presented by either party on this topic.

*Id.* at 1144-45.

Accordingly, not only should the Court *deny* Plaintiffs' Motion to exclude all evidence regarding whether WBEI paid fair market value to DC, or whether the agreements between DC and WBEI for the Superman audiovisual works constitute "sweetheart deals" to the detriment of DC, that is in fact the *only* evidence that *should* be permitted at this trial. See Defendants' Motion in Limine No. 1 re Scope of Trial.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion in Limine No. 1 to Exclude Evidence in Support of Defendants' Claim that Warner Bros. Entertainment Inc. is Not the Co-owner of the Superman

1 | Audiovisual Rights be denied in its entirety.

2 | DATED: January 12, 2008     Respectfully submitted,

WEISSMANN WOLFF BERGMAN
COLEMAN GRODIN & EVALL LLP

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

-and-

PERKINS LAW OFFICE, P.C.

By: /s/ Michael Bergman
Michael Bergman

Attorneys for Defendants and Counterclaimant

---

14

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1**