WEISSMANN WOLFF BERGMAN
  COLEMAN GRODIN & EVALL LLP
Michael Bergman (SBN 37797)
Anjani Mandavia (SBN 94092)
Adam Hagen (SBN 218021)
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212
Telephone: (310) 858-7888
Fax: (310) 550-7191

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Roger L. Zissu (Admitted *pro hac vice*)
James D. Weinberger (Admitted *pro hac vice*)
866 United Nations Plaza
New York, New York 10017
Telephone: (212) 813-5900
Fax: (212) 813-5901

PERKINS LAW OFFICE, P.C.
Patrick T. Perkins (Admitted *pro hac vice*)
1711 Route 9D
Cold Spring, New York 10516
Telephone: (845) 265-2820
Fax: (845) 265-2819

Attorneys for Defendants and Counterclaimant

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>Plaintiffs,<br><br>vs.<br><br>WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. SA CV 04-8400 SGL (RZx)<br><br>Hon. Stephen G. Larson, U.S.D.J.<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Trial Date: February 3, 2009 |

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

16-4.1  Claims and Defenses ............................................................................... 1

(a)   Plaintiffs' Claims ............................................................................. 1
    1.   Sweetheart Deals ..................................................................... 1
    2.   Alter Ego ................................................................................. 1

(b)   Elements Required to Establish Plaintiffs' Claims ......................... 1
    1.   Sweetheart Deals ..................................................................... 1
    2.   Alter Ego ................................................................................. 2

(c)   Defendants' Key Evidence in Opposition to Claim ........................ 2
    1.   Sweetheart Deals ..................................................................... 2
    2.   Alter Ego ................................................................................. 5

(d)   Counterclaims and Affirmative Defenses ....................................... 5

(e)   Elements re Counterclaims and Affirmative Defenses ................... 6

(f)   Evidence re Counterclaims and Affirmative Defenses ................... 6

(g)   Third Parties .................................................................................... 6

(h)   Anticipated Evidentiary Issues ........................................................ 6

(i)   Germane Issues of Law ................................................................... 7
    1.   Sweetheart Deals ..................................................................... 7
    2.   Alter Ego ................................................................................. 9
        a.   The Unity Prong .......................................................... 10
        b.   The Inequity Prong ...................................................... 11

16-4.3  Bifurcation of Issues ............................................................................. 12

16-4.4  Jury Trial .............................................................................................. 12

16-4.5  Attorneys Fees ...................................................................................... 12

16-4.6  Abandonment of Issues ........................................................................ 12

# TABLE OF AUTHORITIES

*Ameritec Corp. v. Ameritech Corp.*,
  1986 U.S. Dist. LEXIS 26195 (C.D. Cal. 1986) .......................................... 11

*Board of Trustees v. Valley Cabinet & Mfg. Co.*,
  877 F.2d 769 (9th Cir. 1989) .......................................................................... 12

*Cambridge Electrics Corp. v. MGA Electrics, Inc.*,
  227 F.R.D. 313 (C.D. Cal. 2004) ................................................................... 10

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) .......................................................................... 11

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2nd Cir. 1995) ......................................................................... 11

*Frank Music Corporation v. Metropolitan-Goldwyn-Mayer, Inc.*,
  772 F.2d 505 (9th Cir. 1985) ....................................................................... 7, 8

*Jarvis v. K2 Corporation*,
  486 F.3d 526 (9th Cir. 2007) ....................................................................... 7, 8

*Joiner v. Ryder System*,
  966 F. Supp. 1478 (C.D. Ill. 1996) ................................................................ 11

*Katzir's Floor and Home Design, Inc. v. M-MLS.com*,
  394 F.3d 1143 (9th Cir. 2004) ....................................................................... 10

*Mackie v. Rieser*,
  296 F.3d 909 (9th Cir. 2002) ........................................................................... 8

*McLeod v. Hosmer-Dorrance, Inc.*,
  1976 U.S. Dist. LEXIS 12289 (N.D. Cal. 1976) ............................................. 9

*Nielson v. Union Bank of California, N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ....................................................... 2, 9

*On Davis v. The Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001) ............................................................................ 8

*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*,
  562 F.2d 1157 (9th Cir. 1977) ......................................................................... 7

*Siegel v. Warner Brothers Entertainment Inc.*,
  542 F. Supp. 2d 1098 (C.D. Cal. 2008) ........................................................... 2

*Wechsler v. Macke International Trade, Inc.*,
  327 F. Supp. 2d 1139 (C.D. Cal. 2004) ......................................................... 11

## STATE CASES

*Doney v. TRW, Inc.*,
33 Cal. App. 4th 245 (1995)..................................................................... 12

*Laird v. Capital Cities/ABC, Inc.*,
68 Cal. App. 4th 727 (1998)................................................................... 2, 9

*Las Palmas Associate v. Las Palmas Center Associate*,
235 Cal. App. 3d 1220 (1991)..................................................................9

*Mid-Century Insurance Co. v. Gardner*,
9 Cal. App. 4th 1205 (1992).....................................................................9

*Sonora Diamond Corp. v. Superior Court*,
83 Cal. App. 4th 523 (2000)............................................................. passim

*Tomaselli v. Transamerica Insurance Co.*,
25 Cal. App. 4th 1269 (1994).................................................................. 10

Pursuant to Local Rule 16-4, defendants Warner Bros. Entertainment Inc. ("WBEI"), Time Warner Inc. ("TWI"), and defendant and counterclaimant DC Comics ("DC") (collectively "Defendants") hereby submit their Memorandum of Contentions of Fact and Law:

**16-4.1 Claims and Defenses**

(a) Plaintiffs' Claims

    1. ***Sweetheart Deals.*** One or more of the agreements between WBEI and DC for the post April 16, 1999 exploitation of the "Superman" property is a "sweetheart deal" to the detriment of DC; that is, one or more of such agreements provides for compensation to DC that was below fair market value at the time the agreement(s) was entered into.[1]

    2. ***Alter Ego.*** DC, on the one hand, and WBEI and/or TWI, on the other hand, are "alter egos" of one another. Defendants contend that this is not an issue to be tried.[2]

(b) Elements Required to Establish Plaintiffs' Claims

    1. ***Sweetheart Deals.*** Plaintiffs have the burden of establishing as to each challenged agreement:

        a. That DC licensed to WBEI rights to exploit the "Superman" property for a less than market fee at the time the deal was entered into; and

---

[1] Despite Defendants' request, Plaintiffs have not identified which of the agreements between DC and WBEI for the exploitation of the Superman property they believe to be "sweetheart deals" to the detriment of DC.

[2] Defendants believe that the alter ego claim, as such, was disposed of by the court on summary judgment and that the sole claim to be tried in this first phase of the trial is the "sweetheart deal" claim, and they accordingly have filed a motion in limine to exclude the introduction of any evidence on the traditional alter ego claim and elements. Defendants' Memorandum of Contentions of Fact and Law addresses the alter ego claim in the event Defendants' motion in limine is denied, and evidence regarding a traditional alter claim ego is permitted at trial.

b.    That the below market license resulted in damage to Plaintiffs in the form of a calculable reduction in the profits of DC in which Plaintiffs are potentially entitled to share.

*Siegel v. Warner Bros. Entertainment Inc.*, 542 F. Supp. 2d 1098, 1144-45 (C.D. Cal. 2008) ("*Siegel II*").

    2.    ***Alter Ego***.  If the claim remains in the case, Plaintiffs have the burden of establishing:

        a.    That a unity of interest and ownership exists between DC, on the one hand, and WBEI and/or TWI, on the other hand, such that the separate personalities of the entities do not in reality exist; and

        b.    That there will be an inequitable result if the acts and obligations in question are treated as those of DC alone, and not as those of WBEI and/or TWI.

*Nielson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003) (citing *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 526 (2000)); *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 742 (1998).

(c)    <u>Defendants' Key Evidence in Opposition to Claim</u>

    1.    ***Sweetheart Deals***.  Defendants will present the following evidence in opposition to Plaintiffs' claim that one or more of the agreements between DC and WBEI for the exploitation of the Superman property constitutes a "sweetheart deal" to the detriment of DC:

        a.    Testimony of Paul Levitz, President and Publisher of DC, on the terms, negotiation, and fair market value of the relevant agreements between DC and WBEI for the exploitation of the Superman property, DC's practices, and comparison to other literary rights agreements;

2

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

b.  Testimony of Brett Paul, Executive Vice President of Business Affairs at Warner Bros. Television, regarding the terms, negotiation, and fair market value of the relevant agreement between DC and WBEI for the exploitation of the Superman property in the television medium, Warner Bros. Television's practices in the television industry, and comparison to other literary rights agreements for television;

c.  Testimony of Steven Spira, President of Worldwide Business Affairs at Warner Bros. Pictures, regarding the terms and fair market value of the relevant agreement between DC and WBEI for the exploitation of the Superman property in motion pictures, Warner Bros.' practices in the motion picture industry, and comparison to other literary rights agreements for motion pictures;

d.  Testimony of Nairi Gardner, Senior Vice President of Finance and Operations at Warner Bros. Consumer Products, regarding the terms and fair market value of the relevant agreement between DC and WBEI for the merchandising of the Superman property, and comparison to other merchandising agreements;

e.  Testimony of Lillian Laserson, Special Counsel for DC, regarding the terms and negotiation of the relevant agreements between DC and WBEI for the exploitation of the Superman property in television, motion pictures and merchandising;

f.  Testimony of Cheryl Rubin, Senior Vice President of Licensing and Merchandising at DC, regarding DC's dealings with WBEI with respect to the merchandising of the Superman property;

    g.      Testimony of John Schulman, former Executive Vice President and General Counsel for WBEI, regarding the terms and negotiation of the relevant agreement between DC and WBEI for the exploitation of the Superman property in motion pictures;

    h.      Testimony of Defendants' expert Richard Marks regarding the nature of compensation provided for literary properties in the television industry, the fair market value of the relevant agreement between DC and WBEI for the exploitation of the Superman property in television, and comparison to other literary rights agreements for television;

    i.      Testimony of Defendants' expert William Immerman regarding the nature of compensation provided for literary properties in the motion picture industry, the fair market value of the relevant agreement between DC and WBEI for the exploitation of the Superman property in motion pictures, and comparison to other literary rights agreements for motion pictures;

    j.      Relevant agreements between DC and WBEI regarding the exploitation of the Superman property;

    k.      Various negotiation documents for agreements between DC and WBEI;

    l.      Various literary rights agreements for the film and television exploitation of properties other than Superman;

The foregoing evidence will establish that each of the relevant agreements between DC and WBEI for the exploitation of the Superman property was well within or above the range of fair market value at the time it was entered into, and was not to the detriment of DC.

2. *Alter Ego.* In the event the Court permits evidence on the traditional alter ego doctrine, Defendants will present the following evidence in opposition to the claim that DC, on the one hand, and WBEI and/or TWI, are the alter egos of one another:

    a.    Testimony of Paul Levitz, DC's President and Publisher, regarding the corporate and reporting relationship between DC and WBEI, and DC and TWI;

    b.    Testimony of Patrick Caldon, Executive Vice President of Finance and Operations at DC, regarding the financial reporting relationship and interaction between DC and WBEI;

    c.    Testimony of Reginald Harpur, Senior Vice President and Controller of WBEI, regarding the financial reporting relationship and interaction between DC and WBEI, and to TWI; and

    d.    Testimony of Janice Cannon, Director of Corporate Legal Affairs at TWI, regarding the corporate relationship between TWI and its relevant subsidiaries.

The foregoing evidence will establish that the relationship between DC, WBEI and TWI does not meet the "unity of interest" test required to establish alter ego, and that there is nothing more than the financial and operational relationships among TWI, WBEI, and DC that are typical among affiliated entities and subsidiaries of a large publicly held company.

(d)   <u>Counterclaims and Affirmative Defenses</u>

Defendants have no separate affirmative defenses or counterclaims applicable to this phase of the trial. By reason of the Court's prior rulings in *Siegel II*, Defendants' affirmative defenses and DC's counterclaims – other than those regarding the Superboy termination notices, the unpublished Superboy works, and

the derivative nature of Superboy – have largely been addressed and determined, and in any event are not implicated in this phase of the trial.

(e) <u>Elements re Counterclaims and Affirmative Defenses</u>

Not applicable.

(f) <u>Evidence re Counterclaims and Affirmative Defenses</u>

Not applicable.

(g) <u>Third Parties</u>

Not applicable

(h) <u>Anticipated Evidentiary Issues</u>

Defendants have filed four motions in limine to exclude certain of Plaintiffs' proposed evidence:

1. Defendants' first motion in limine is to limit the scope of the trial, and the evidence introduced, to the issue of whether and to what extent any relevant agreement between DC and WBEI constitutes a "sweetheart deal" such that DC received less than fair market value for the license, and to exclude any evidence related to the traditional alter ego elements or any other matters.

2. Defendants' second motion in limine is to exclude the testimony of certain witnesses, including senior corporate officers of Defendants (*i.e.* "apex" witnesses), none of whom were identified in Plaintiffs' Rule 26 disclosures or were deposed; and certain of Plaintiffs' "expert" witnesses who have no expertise on the issues to be tried in this phase of the trial.

3. Defendants' third motion in limine is to exclude a number of Plaintiffs' proposed exhibits as being irrelevant to the issues to be tried in this phase of the trial.

4.     Defendants' fourth motion in limine is to exclude any of Plaintiffs' exhibits first identified and produced after the exchange of the parties' Rule 16 exhibit lists on December 3, 2008, and any documents obtained by Plaintiffs through improper document subpoenas served on third parties on December 22 and 23, 2008, in violation of the discovery cut off, and over two years after discovery closed.

Further, even after the deadline to file motions in limine passed, Plaintiffs have continued to conduct discovery and supplement their document production with additional materials not produced or requested by Plaintiffs during discovery, which they intend to use at trial. Defendants will object to any use of such late-produced materials as they are introduced at trial.

(i)     <u>Germane Issues of Law</u>

1.     ***Sweetheart Deals.*** The Court will need to determine the appropriate standard to be applied to assess whether any challenged agreement between DC and WBEI was for less than fair market value to DC at the time it was entered into. Defendants have found no case law in the copyright co-owner/joint authorship context addressing how a hypothetical fair market value of a copyright license is to be determined in order to equitably allocate profits among the co-owners. However, in the copyright infringement context, fair market value – for the purpose of assessing damages – has generally been described as "what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work." *Jarvis v. K2 Corporation*, 486 F.3d 526, 533 (9th Cir. 2007); *Frank Music Corporation v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985), citing *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562

F.2d 1157, 1172 (9th Cir. 1977).[3] Excessively speculative claims are to be rejected, *Frank Music*, 772 F.2d at 513, and the "market value approach is an objective, not a subjective, analysis," *Mackie v. Rieser,* 296 F.3d 909, 917 (9th Cir. 2002); *see also On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001) ("The question is not what the owner would have charged, but rather what is the fair market value."). *Jarvis*, 486 F.3d at 534.

Literary rights agreements in the motion picture and television industries often have several components to the compensation accorded to the rights holder (*e.g.* advance, fixed compensation, contingent compensation, etc.). Additionally, the rights licensed may be granted through several separate agreements (*e.g.* film rights, publishing rights, merchandising, etc.), and these agreements, in turn, may be entered into in conjunction with other agreements relevant to the project. Therefore, in order to assess whether any given license between DC and WBEI provides "market" compensation to the rights holder, it is necessary to look at the relationship and other related agreements between the contracting parties, in the context of the project as a whole. Additionally, although each copyrighted property is unique, the Court may appropriately look to the compensation obtained for the license of similar rights to other properties, as well as to expert testimony, in order to establish the general parameters and range of the market at the time the relevant agreements were entered into.[4]

---

[3] "Fair market value" is often expressed as a range, such that a license falling within that range would be considered fair. *See, e.g., Jarvis*, 486 F.3d at 534-35.

[4] *See, e.g., Jarvis*, 486 F.3d at 534. In *Jarvis*, plaintiff photographer sued defendant corporation for using a number of his copyrighted photographs without compensation on its on-line marketing site. The Ninth Circuit affirmed the district court's copyright infringement damages award where the district court had based its damages calculations on objective considerations of market value, including the testimony of plaintiffs' expert as to market value, the testimony of defendant's senior executive as to what the corporation was willing to pay for on-line photographic images, and the previous dealings of the parties regarding the licensing of plaintiff's photographs: "The court's inquiry was objective, avoiding references to what Jarvis thought he should have earned

To the extent the Court determines that any relevant agreement between DC and WBEI falls below the range of fair value, then the appropriate equitable remedy would be to increase the profit amount in which Plaintiffs are potentially entitled to share by that amount representing the difference between the value to DC of the actual agreement, and the value to DC of a "fair market" agreement.

2.  ***Alter Ego***.  Assuming for the sake of argument that this is an issue to be tried, the burden of establishing an alter ego relationship is substantial, and falls on the Plaintiffs.  *Las Palmas Assoc. v. Las Palmas Center Assoc.*, 235 Cal. App. 3d 1220, 1249 (1991) ("Because society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that imposition of *alter ego* liability be approached with caution.").  *See also McLeod v. Hosmer-Dorrance, Inc.*, 1976 U.S. Dist. LEXIS 12289 at *4 (N.D. Cal. 1976) ("A long line of cases teaches that corporate entities are not to be lightly disregarded.").  Accordingly, a plaintiff seeking to establish liability on the basis of alter ego must overcome the *presumption* of separateness.  *See, e.g., Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212 (1992) ("It is the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity."); and *Nielson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) ("[A] parent company is presumed to have an existence separate from its subsidiaries.").

Two distinct elements must be established before one entity may be adjudged an alter ego of another: "First, there must be such unity of interest and ownership between the [two entities] that the separate personalities of the [two

---

or wished he had charged. The court also examined the financial perspectives of both the willing buyer (in the form of evidence about what K2 typically pays for images and what it specifically paid Jarvis in its prior dealings with him) and the willing seller (in the form of Jarvis' earlier deals with K2 and his revenue from image databanks) at the hypothetical time of sale." *Id.*

9

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

entities] do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the [one entity] alone." *Neilson*, 290 F. Supp. 2d at 1115 (citing *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 526 (2000)). *See also Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 742 (1998). Therefore, in order to overcome the presumption of separateness and to demonstrate that DC is the alter ego of WBEI and/or TWI, Plaintiffs must establish *both* that there is a unity of interest among TWI, WBEI, and DC such that their separate personalities no longer exist *and* that an inequitable result would occur if DC's liabilities and obligations (if any) were not treated as those of TWI and WBEI.

### a. The Unity Prong

Courts look at a number of factors in analyzing the first "unity" prong of the alter-ego test. Although the specific analysis a court chooses to employ depends on the facts of the particular case, the factors in this first prong include: 1) "commingling of funds and other assets;" 2) "identical equitable ownership in the two entities;" 3) "use of the same offices and employees;" 4) "use of one [entity] as a mere shell or conduit for the affairs of another;" 5) "disregard of corporate formalities;" 6) "inadequate capitalization;" and 7) "identical directors and officers." *Sonora Diamond*, 83 Cal. App. 4th at 538-39. *See also Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285, n. 13 (1994); and *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 326 (C.D. Cal. 2004).

To prevail on the first prong of the alter ego analysis, a plaintiff must offer evidence sufficient to show a total disregard for the corporate structure; evidence on one or two factors is not enough. *Sonora Diamond*, 83 Cal. App. 4th at 539 ("No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied."). *See also Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (the

10

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

fact of ownership and control "does not eviscerate the separate corporate identity that is the foundation of corporate law"). Furthermore, "[a] parent corporation may be directly involved in financing and macro-management of its subsidiaries. . . without exposing itself to a charge that each subsidiary is merely its *alter ego*." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459-60 (2nd Cir. 1995) (no alter ego liability notwithstanding that parental approval was required for leases, major capital expenditures, and the sale of its subsidiary's assets)). *See also Joiner v. Ryder Sys.*, 966 F. Supp. 1478, 1485 (C.D. Ill. 1996) (no alter ego liability notwithstanding that parent approved its subsidiaries' acquisitions and capital budget).

### b.  The Inequity Prong

Courts have not adopted a uniform approach for analyzing the second part of the alter ego test, namely the "inequity" prong. Some courts have held that, to satisfy the inequity prong, a plaintiff must present evidence that a corporation was established with a fraudulent intent. *See, e.g., Ameritec Corp. v. Ameritech Corp.*, 1986 U.S. Dist. LEXIS 26195 (C.D. Cal. 1986) ("In addition to showing of control, one of the requirements of finding an 'alter ego' status requires that the corporate entities be set up with fraudulent intent or in bad faith."). These cases are meant to deal with sham corporations created in an attempt to avoid liability.

Other courts have evaluated the inequity prong in terms of the degree of injustice that would result from recognizing the corporate entity and refusing to pierce the corporate veil. Injustice in this sense requires the plaintiff to establish more than the "injustice" that would result from a subsidiary's inability to satisfy a judgment. *See, e.g., Wechsler v. Macke Int'l Trade, Inc.*, 327 F. Supp. 2d 1139, 1145 (C.D. Cal. 2004) ("[I]t is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof [of] an inequitable result") (citations and internal

quotations omitted). Rather, to establish the second prong of the alter ego analysis, a plaintiff must identify conduct amounting to fraud or bad faith. *See Sonora Diamond*, 83 Cal. App. 4th at 539 ("The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form."); and *Board of Trustees v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 773 (9th Cir. 1989) ("Garden variety fraud should be insufficient to pierce the corporate veil in the absence of evidence of shareholder abuse of the corporate form to defraud creditors.").

Furthermore, the fraud or bad faith must be in the use of the corporate form to prevent the party harmed from receiving compensation for its damages. *Doney v. TRW, Inc.*, 33 Cal. App. 4th 245, 249 (1995) ("Alter ego is essentially a theory of vicarious liability under which the owners of a corporation may be held liable for harm for which the corporation is responsible where, *because* of the corporation's utilization of the corporate form, the party harmed will not be adequately compensated for its damages.") (emphasis added).

### 16-4.3 Bifurcation of Issues

No issues need be bifurcated in this phase of the trial.

### 16-4.4 Jury Trial

This is not a jury trial.

### 16-4.5 Attorneys Fees

No attorneys fee issues are implicated in this phase of the trial.

### 16-4.6 Abandonment of Issues

Defendants have not abandoned any issues.

DATED: January 12, 2009

Respectfully submitted,

WEISSMANN WOLFF BERGMAN
COLEMAN GRODIN & EVALL LLP

-and-

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

-and-

PERKINS LAW OFFICE, P.C.

By: /s/ Michael Bergman
Michael Bergman
Attorneys for Defendants and Counterclaimant