TOBEROFF & ASSOCIATES P.C.
Marc Toberoff (SBN 188547)
Nicholas C. Williamson (SBN 231124)
2049 Century Park East, Suite 2720
Los Angeles, California 90067
Telephone: (310) 246-3333
Facsimile: (310) 24603101
MToberoff@ipwla.com

Attorneys for Plaintiffs

WEISSMANN WOLFF BERGMAN
   COLEMAN GRODIN & EVALL LLP
Michael Bergman (SBN 37797)
Anjani Mandavia (SBN 94092)
Adam Hagen (SBN 218021)
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212
Telephone: (310) 858-7888
Fax: (310) 550-7191
mbergman@wwllp.com

FROSS ZELNICK LEHRMAN &
   ZISSU, P.C.
Roger L. Zissu (*pro hac vice*)
James D. Weinberger (*pro hac vice*)
866 United Nations Plaza
New York, New York 10017
Telephone: (212) 813-5900
Fax: (212) 813-5901
rzissu@frosszelnick.com

PERKINS LAW OFFICE, P.C.
Patrick T. Perkins (*pro hac vice*)
1711 Route 9D
Cold Spring, New York 10516
Telephone: (845) 265-2820
Fax: (845) 265-2819
pperkins@ptplaw.com

Attorneys for Defendants and
Counterclaimant

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>Plaintiffs,<br><br>vs.<br><br>WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. SA CV 04-8400 SGL (RZx)<br><br>Hon. Stephen G. Larson, U.S.D.J.<br><br>**FINAL PRETRIAL CONFERENCE ORDER**<br><br>**Final Pre-Trial Conference**<br>Date:  January 26, 2009<br>Time:  11:00 a.m.<br>Place: Courtroom 1<br><br>**Trial**<br>Date:  February 3, 2009<br>Time:  9:30 a.m.<br>Place: Courtroom 1<br><br>[Complaint filed: October 8, 2004] |

1

# <u>TABLE OF CONTENTS</u>

2    1.    <u>Parties</u> ..................................................................................1

3    2.    <u>Jurisdiction and Venue</u> .....................................................2

4    3.    <u>Estimated Time of Trial</u> ...................................................2

5    4.    <u>Non-Jury Trial</u> ...................................................................2

6    5.    <u>Admitted Facts</u> ..................................................................2

7    6.    <u>Facts Stipulated Without Prejudice to Evidentiary Objections</u>............4

8    7.    <u>Claims and Defenses</u> .........................................................7

9         Plaintiffs ..............................................................................7

10        A.    Plaintiffs' Claims ....................................................7

11        B.    Elements of Plaintiffs' Claims ...............................7

12        C.    Key Evidence .........................................................8

13             i.     DC's Close Relationship With TWEC (WBEI's Predecessor) ....................................8

14

15             ii.    Negotiations Between DC and Warner Bros. for Superman Copyrights .........................9

16             iii.    Warner Bros. Superman Film and Television Agreements ...................................10

17

         Defendants' Position ..........................................................12

18    8.    <u>Issues to be Tried</u>.............................................................13

19    9.    <u>Discovery</u>..........................................................................14

20    10.   <u>F.R.C.P. 26(a)(3) Disclosures</u> ........................................14

21    11.   <u>Witness Lists</u> ....................................................................14

22    12.   <u>Pending Motions</u>..............................................................15

23    13.   <u>Bifurcation</u>........................................................................17

24    14.   <u>Conclusion</u> ........................................................................17

25

26

27

28

1  Following pretrial proceedings, pursuant to Rule 16, F.R.Civ.P. and L.R. 16, IT
2  IS ORDERED:

3  **1.    THE PARTIES ARE:**

4  Plaintiff and counterclaim defendant Joanne Siegel, an individual and plaintiff
5  and counterclaim defendant Laura Siegel Larson, an individual (collectively,
6  "Plaintiffs").

7  Defendant Warner Bros. Entertainment Inc. ("WBEI"), a corporation,
8  defendant Time Warner Inc. ("TWI"), a corporation and defendant and
9  counterclaimant DC Comics ("DC"), a general partnership (collectively,
10  "Defendants").

11  Each of these parties has been served and has appeared.  All other parties
12  named in the pleadings and not identified in the preceding paragraph are now
13  dismissed.

14  The pleadings which raise the issues are:

15  A.    Plaintiffs' Second Amended Complaint;

16  B.    Defendants' Answer and Affirmative Defenses to Plaintiffs'
17  Second Amended Complaint; and Defendants' Counterclaims against Plaintiffs.

18
19  **2.    FEDERAL JURISDICTION AND VENUE ARE INVOKED UPON THE FOLLOWING GROUNDS:**

20  This is a civil action seeking declaratory relief, accounting for profits and
21  related claims arising out of Plaintiffs' termination notices of prior grants of
22  copyright pursuant to the United States Copyright Act of 1976, 17 U.S.C. § 304(c).
23  The Court has subject matter jurisdiction over the claims set forth in Plaintiffs'
24  Second Amended Complaint pursuant to the United States Copyright Act
25  (hereinafter, the "Copyright Act"), 17 U.S.C. § 101 et al. and 28 U.S.C. §§ 1331,
26  1332, 1338(a) and (b).  This Court has supplemental jurisdiction over the related state
27  claims herein under 18 U.S.C. § 1367 in that these claims form part of the same case
28  and controversy as the federal claims herein.  This Court has personal jurisdiction

over the Defendants in that Defendants are regularly doing business in the State of California and in this District, and because a substantial part of the relevant acts complained of herein occurred in the State of California and this District.  Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because a substantial part of the relevant acts that give rise to the claims herein below occurred in this district and because Warner Bros. Entertainment Inc. has its principal place of business in this district.  The facts requisite to federal jurisdiction are admitted.

### 3.    ESTIMATED TIME OF TRIAL

Plaintiffs estimate seven (7) trial days.

Defendants estimate four (4) trial days, if their motions in limine are granted.

### 4.    THE TRIAL IS TO BE A NON-JURY TRIAL.

At least fourteen (14) days prior to the trial date each party shall lodge and serve by e-mail, fax, or personal delivery the findings of fact and conclusions of law the party expects the Court to make upon proof at the time of trial as required by L.R. 52-1 and this Court.  At least seven (7) days prior to the trial date each party shall lodge and serve by e-mail, fax, or personal delivery their responses to the findings of fact and conclusions previously lodged by the opposing side.

### 5.    THE FOLLOWING FACTS ARE ADMITTED AND REQUIRE NO PROOF:

1.    DC Comics is in the business of creating, publishing and licensing comic book stories and characters.

2.    The November 6, 1999 Superman Film Option/Purchase agreement (Bates numbered WB004199-4231) between DC Comics and TWEC was fully executed on May 9, 2002.

3.    The December 5, 2000 Smallville Television Agreement (Bates numbered WB0135031-135051) between DC Comics and TWEC was fully executed

on February 12, 2001.

4.     The December 5, 2000 Smallville Television Agreement between DC Comics and TWEC was amended by a written instrument dated September 5, 2002.

5.     The Batman Option Purchase Agreement dated as of May 31, 2002, (Bates numbered WB004083-4120) between DC Comics and TWEC was fully executed on February 3, 2004.

6.     Paul Levitz is the President and Publisher of DC Comics.

7.     Paul Levitz negotiated on behalf of DC Comics certain financial terms of the Superman Option/Purchase agreement between DC Comics and TWEC dated as of November 6, 1999 regarding Superman motion picture and other audiovisual rights (the "Superman Film Agreement").

8.     Paul Levitz negotiated, on behalf of DC Comics, certain financial terms of the Smallville Television Agreement between DC Comics and TWEC dated as of December 5, 2000 regarding Superman television rights (the "Superman Television Agreement.")

9.     Paul Levitz negotiated on behalf of DC Comics certain financial terms of the September 5, 2002 Amendment to the Superman Television Agreement.

10.     The Superman Film Agreement applies to the 2006 feature motion picture entitled *Superman Returns*.

11.     On or about May 22, 2002 Warner Bros. paid DC Comics the $1,500,000 option fee pursuant to Paragraph 1(a) of the Superman Film Agreement.

12.     The Superman Television Agreement, as amended September 5, 2002, applies to the *Smallville* television series.

13.     The agreement dated June 15, 1987, between DC Comics Inc. and Cantharus Productions N.V. (Bates numbered WB016531-16549), applies to the television series entitled *Superboy* (a.k.a *The Adventures of Superboy*) (1988-1992).

14.     The agreement dated September 21, 1995, between DC Comics Inc. and Warner Bros. Animation (Bates numbered WB019605-19618) applies to the

3

animated television series entitled *Superman* (also known as *Superman: The Animated Series*) (1996-2000).

15.    The agreement dated January 1, 2000, between DC Comics Inc. and Warner Bros. Television Animation (Bates numbered WB019503-19526) applies to the animated television series entitled *Justice League* (2001-2004).

16.    The agreement dated January 1, 2004, between DC Comics and Warner Bros. Animation Inc. (Bates numbered WB019544-19566) applies to the animated television series entitled *Krypto* (2005-2006).

17.    The unexecuted draft agreement dated June 1, 2004, between DC Comics and Warner Bros. Animation Inc. (Bates numbered WB019575-19601) applies to the animated television series entitled *Legion of Super Heroes* (2006-2008).

**6.    THE FOLLOWING FACTS, THOUGH STIPULATED, SHALL BE WITHOUT PREJUDICE TO ANY EVIDENTIARY OBJECTION:**

18.    National Periodical Publications, Inc. ("National") is the successor in interest to Detective Comics, Inc.

19.    In 1976, National's name was changed to DC Comics, Inc.

20.    In 1993, DC Comics, Inc. was dissolved and converted to a New York general partnership.

21.    DC Comics has remained a New York general partnership from 1993 until the present.

22.    From 1993 until March 2003, the partners in DC Comics were WCI and Time Warner Entertainment Company, L.P. ("TWEC").

23.    In 1992 Historic Time Warner Inc. formed TWEC with certain of its affiliates, and third party investors.  The affiliated entities contributed various cable, filmed entertainment and network programming assets to the TWEC partnership, while the non-affiliated parties made substantial capital contributions in exchange for limited partnership interests.

24.    Between 1993 and 2003 Historic Time Warner Inc. and its affiliated

4
FINAL PRE-TRIAL CONFERENCE ORDER

partners owned between approximately 70% and 75% of TWEC.  During this time TWEC held various cable, entertainment and network programming assets, including Warner Bros., Warner Bros. Television Production, HBO and Time Warner Cable, all of which were separate divisions of TWEC.

25.    In March 2003, Time Warner Inc. ("TWI") completed a restructuring of TWEC.  As a result of this restructuring, TWI acquired complete indirect ownership of TWEC's filmed entertainment and network programming assets, including Warner Bros., Warner Bros. Television Production, and certain other former divisions of TWEC.

26.    EC is a direct wholly owned subsidiary of WCI.

27.    WCI is an indirect subsidiary of TWI.

28.    WBEI is a direct wholly owned subsidiary of WCI.

29.    In connection with the restructuring of TWEC, WCI contributed its 50% interest in DC Comics to EC and TWEC distributed the assets of its content businesses (i.e. the filmed entertainment and network programming assets), including its partnership interest in DC Comics, to WCI.

30.    The partners in DC Comics are EC and WCI, each holding a one-half interest in the partnership.

31.    The 2003 TWEC restructuring resulted in the formation of a number of new corporations to hold and operate the content businesses formerly owned by TWEC. These newly formed corporations included Warner Bros. Entertainment Inc. ("WBEI"), which succeeded to TWEC's filmed entertainment businesses.

32.    WBEI is wholly owned by WCI, which is indirectly owned by TWI.

33.    Both DC Comics and WBEI are affiliates of TWI.

34.    For financial reporting purposes, DC Comics and WBEI fall within the "filmed entertainment" group of TWI companies - which also includes New Line Cinema Corporation and Castle Rock Entertainment - and for operating management purposes DC Comics reports to its ultimate corporate parent through WBEI.  (

FINAL PRE-TRIAL CONFERENCE ORDER

35.     Because of that financial reporting structure, DC Comic's President and Publisher reports to and obtains approvals from WBEI's President and Chief Operating Officer before making significant acquisitions or certain financial decisions or investments that are outside the scope of DC Comic's customary acquisitions and investments; before implementing meaningful strategic changes; and before embarking on something substantially outside DC Comic's normal course of business.

36.     Warner Bros. began developing a Superman theatrical motion picture entitled "Superman Reborn" in 1994.

37.     The feature film "Batman" was theatrically released in the United States on June 23, 1989.

38.     The feature film "Batman Returns" was theatrically released in the United States on June 19, 1992.

39.     The feature film "Batman Forever" was theatrically released in the United States on June 16, 1995.

40.     The feature film "Batman & Robin" was theatrically released in the United States on June 20, 1997.

41.     The feature film "The Matrix" was theatrically released in the United States on March 31, 1999.

42.     The feature film "Harry Potter and The Sorcerer's Stone" was theatrically released on November 16, 2001.

43.     The feature film "Lord of the Rings: Fellowship of the Ring" was theatrically released on December 19, 2001.

44.     The feature film "Harry Potter and the Chamber of Secrets" was theatrically released on November 15, 2002.

45.     The feature film "Lord of The Rings: The Two Towers" was theatrically released on December 18, 2002.

46.     The feature film "The Matrix Reloaded" was theatrically released in the

FINAL PRE-TRIAL CONFERENCE ORDER

1 United States on May 15, 2003.

2     47.    The feature film "The Matrix Revolutions" was theatrically released in

3 the United States on November 5, 2003.

4     48.    The feature film "Lord of the Rings: The Return of the King" was

5 theatrically released on December 17, 2003.

6     49.    The feature film "Harry Potter and the Prisoner of Azkaban" was

7 theatrically released on June 4, 2004.

8     50.    The feature film "Batman Begins" was theatrically released on June 15,

9 2005.

10     51.    The feature film "Harry Potter and the Goblet of Fire" was theatrically

11 released on November 18, 2005.

12     52.    The feature film "The Dark Knight" was theatrically released in the

13 United States on July 18, 2008.

14

15     **7.**    **CLAIMS AND DEFENSES TO BE PRESENTED AT TRIAL:**

16     **Plaintiffs:**

17

18     **A.**    **Plaintiffs plan to purse the following claims against Defendants at this phase of trial:**

19

20 Claim 1**:**  Declaratory Relief (Plaintiffs are entitled to an accounting of profits

21 by WBEI from Superman copyright interests co-owned by WBEI and Plaintiffs, not

22 DC and Plaintiffs.  It would also be inequitable to permit Defendants to dilute

23 Plaintiffs' profits through *non-arm's length* affiliated transactions that favor WBEI to

24 the detriment of Plaintiffs.)

25     **B.**    **The elements required to establish Plaintiffs' claims are:**

26 Declaratory Relief:

27 1)    An actual controversy exists between the parties;

28 2)    The controversy extends to the rights and duties of the parties with

FINAL PRE-TRIAL CONFERENCE ORDER

respect to Defendants' accounting of profits from the Superman copyright interest recaptured by Plaintiffs' pursuant to 17 U.S.C.§ 304(c) ("Recaptured Copyrights");

3)    A judicial declaration is necessary to determine Plaintiffs' rights to an accounting by Warner Bros. Entertainment Inc. and other Time Warner Inc. entities for their exploitation of the Recaptured Copyrights.

See 28 U.S.C. §2201(a).

4)    Pursuant to the Court's March 28 and October 6, 2008 orders, Plaintiffs are to prove the following ultimate facts:

a)    At the time DC negotiated the relevant agreements for Superman copyright interests with Warner Bros. it was "closely related" to Warner Bros.

b)    The deal terms of such agreements, resulting from DC and Warner Bros. intra-corporate relationship, do not constitute "fair market value" for the valuable Superman copyright interests conveyed.

**C.    In brief, the key evidence Plaintiffs rely on for this claim is:**

i.    <u>**DC's Close Relationship With TWEC (WBEI's Predecessor)**</u>

1.    At the time DC negotiated the relevant Superman agreements with TWEC, DC was "closely related" to TWEC.  Defendants have admitted that DC was co-owned by TWEC at the time it entered both the November 6, 1999 Superman Film Option/Purchase agreement ("Superman Film Agreement") and the December 5, 2000 Smallville Television Agreement ("Superman Television Agreement") with this entity.

<u>Key Evidence:</u>   Testimony of Janice Cannon and Julie Spencer. Trial Exhibits ("Tr. Ex") 124, 127, 304.

2.    Defendants have admitted the corporate history and ownership of DC, which establishes that DC has been a Warner Bros. affiliate since at least 1973.

<u>Key Evidence:</u> Testimony of Paul Levitz. Tr. Ex. 129.

FINAL PRE-TRIAL CONFERENCE ORDER

3.      Defendants have admitted that, at all relevant times, both DC and the Warner Bros. studio were part of Time Warner Inc. ("TWI"), that TWEC was the corporate parent of WBEI, as well as both one of the two partners of the DC partnership, and the owner of the second partner, EC Publications, Inc.

Key Evidence:  Testimony of Janice Cannon, Julie Spencer and Paul Levitz. Tr. Exs. 124, 127, 129, 304.

4.      Defendants have admitted that DC's President and Publisher "report[s] to and obtain[s] approvals from WBEI's President and Chief Operating Officer before making significant acquisitions or certain financial decisions or investments that are outside the scope of DC's customary acquisitions and investments; before implementing meaningful strategic changes; and before embarking on something substantially outside DC's normal course of business. "

Key Evidence:  Testimony of Paul Levitz. Tr. Ex. 129.

5.      Defendants have admitted that, for financial reporting purposes, DC and WBEI both fall within TWI's "Filmed Entertainment Group" – which also includes New Line Cinema Corporation and Castle Rock Entertainment – and for operating management purposes DC reports to WBEI, which, in turn, reports to TWI.

Key Evidence:  Testimony of Janice Cannon, Julie Spencer and Paul Levitz.  Tr. Exs. 124, 127, 129.

### ii.      Negotiations between DC and Warner Bros. for Superman Copyrights

6.      The negotiations between Warner Bros. and DC of the Superman Film Agreement were cursory and non-arm's length.

Key Evidence:  Testimony of Paul Levitz, John Schulman, Marsha Todd, Jay Kogan, Wayne Lewellen, Steven Sills. Tr. Exs. 25-29, 40, 41 70, 73, 136, 152-157, 173, 203, 204, 232, 247-252.

7.      DC must transact with Warner Bros. regarding DC's key characters. The film and television rights to DC's major characters invariably are assigned or

licensed to Warner Bros.  DC is only permitted to deal with third-parties when Warner Bros. clearly has no interest in a property.

        <u>Key Evidence:</u>  Testimony of Gregory Noveck, Paul Levitz, John Schulman.  Tr. Exs. 78, 93-108, 144, 186-187, 189-191, 228, 239, 272, 273, 276, 278, 279, 306.

        8.     The Superman agreements were primarily negotiated by long term friends and associates Paul Levitz for DC and John Schulman for Warner in a casual uneven fashion well outside of industry norms.  Such agreements are generally worked out by Studio business and legal affairs executives, on the one hand, with an entertainment law firm specializing in complex industry transactions, on the other.

        <u>Key Evidence:</u>  Testimony of Wayne Lewellen, Paul Levitz, John Schulman. Tr. Exs. 27-29, 153-155, 157, 173, 232, 248, 249, 253.

### iii.    <u>Warner Bros. Superman Film and Television Agreements</u>

        9.     Superman is a unique, extremely valuable "evergreen" intellectual property.  It is the basis for a long-running major merchandising "brand," highly successful publishing line, and *several* successful television series and films over seven decades.  As such, Superman is one of the most valuable, branded entertainment franchises in existence.

        <u>Key Evidence:</u>  Testimony of Marc Evanier, James Steranko, Wayne Lewellen, Paul Levitz, Gregory Noveck.  Tr. Exs. 29, 114, 147, 183, 228, 233, 278, 279, 293.

        10.    The terms of the Superman Film Agreement, Superman Television Agreement and Superman Animation Agreements do not constitute "fair market value."  The "market value" of a unique property like Superman is subjective and therefore determined on the competitive open market.  DC did not offer valuable Superman rights to Warner Bros.' competitors – the other major Studios – it solely dealt with Warner Bros.

1     Key Evidence:  Testimony of Wayne Lewellen, Marc Evanier, Paul

2  Levitz, John Schulman. Tr. Exs. 78, 93-108, 144, 161, 186-187, 189-191, 228, 232,

3  239, 272, 273, 276, 278, 279, 306.

4     11.    The basic deal terms of the Superman Film Agreement were merely

5  imported from an old 1974 agreement, entered into when Superman was at a historic

6  low.  DC suggested very limited changes, but the few changes that were made

7  favored Warner Bros.

8     Key Evidence:  Testimony of Mark Evanier, James Steranko, Paul

9  Levitz, John Schulman, Marsha Todd, Jay Kogan, Wayne Lewellen. Tr. Exs. 25-29,

10  40, 41 70, 73, 136, 152-157, 173, 203, 204, 232, 247-253.

11     12.    The basic deal terms of the Superman Television Agreement were

12  merely imported from an old 1991 agreement between DC and its affiliate, Lorimar

13  Productions (a division of Time Warner Entertainment Company, L.P.), when

14  Superman was less valuable, underlying the *Lois and Clark* television series.  DC

15  suggested very limited changes, but the few changes made favored Warner Bros.

16     Key Evidence:  Testimony of Mark Evanier, James Steranko, Paul

17  Levitz, John Schulman, Marsha Todd, Jay Kogan, Wayne Lewellen. Tr. Exs. 51, 72,

18  115, 159-161, 172, 174-177, 179, 181, 198, 200, 223.

19     13.    The terms of the Superman Film Agreement, Superman Television

20  Agreement and Superman Animation Agreements strongly favor Warner Bros. to the

21  detriment of DC, and are often onerous.

22     Key Evidence:  Testimony of Wayne Lewellen, Steven Sills, Ari Emanuel,

23  Mike Edwards.  Tr. Exs. 37, 48, 50, 53, 54, 121, 128, 141, 161, 179, 181, 186, 201,

24  218, 225, 232, 294-296, 300, 306-308, 315, 319, 321, 324, 325-327, 1037, 1038,

25  1083-86, 1092-1094, 1097, 1099, 1100, 1101, 1103-1108.

26     14.    The financial and other terms of the Superman Film Agreement,

27  Superman Television Agreement and Superman Animation Agreements are less

28  favorable to the rightsholder than comparable terms of option/purchase agreements

11
FINAL PRE-TRIAL CONFERENCE ORDER

for intellectual properties that were far less successful than Superman at the time such agreements were entered into.

Key Evidence:  Testimony of Wayne Lewellen, Steven Sills, Ari Emanuel, Mike Edwards. Tr. Exs. 37, 48, 50, 53, 54, 121, 128, 141, 161, 179, 181, 186, 201, 218, 225, 232, 294-296, 300, 306-308, 315, 319, 321, 324, 325-327, 1037, 1038, 1083-86, 1092-1094, 1097, 1099, 1100, 1101, 1103-1108.

15.    The Superman Film Agreement, Superman Television Agreement and Superman Animation Agreements omit terms that are commonplace in underlying rights agreements and favor and/or protect the rightsholder.

Key Evidence:  Testimony of Wayne Lewellen, Steven Sills, Ari Emanuel. Tr. Exs. 37, 48, 50, 53, 54, 121, 128, 141, 161, 179, 181, 186, 201, 218, 225, 232, 294-296, 300, 306-308, 315, 319, 321, 324, 325-327, 1037, 1038, 1083-86, 1092-1094, 1097, 1099, 1100, 1101, 1103-1108.

**Defendants' Position re Plaintiffs' Claim:**

It is Defendants' position that the only claim that is to tried in this phase of the trial is as follows:

That one or more of the agreements between WBEI and DC for the post April 16, 1999 exploitation of the "Superman" property is a "sweetheart deal" to the detriment of DC; that is, one or more of such agreements provides for compensation to DC that was below fair market value at the time the agreement(s) was entered into.

The elements required to establish Plaintiffs' claim, as to each challenged agreement, are as follows:

        a.    That DC licensed to WBEI rights to exploit the "Superman" property for a less than market fee at the time the deal was entered into; and

        b.    That the below market license resulted in damage to Plaintiffs in the form of a calculable reduction in the profits of DC in which

Plaintiffs are potentially entitled to share.

*Siegel v. Warner Bros. Entertainment Inc.*, 542 F. Supp. 2d 1098, 1144-45 (C.D. Cal. 2008) ("*Siegel II*").

Defendants object to the characterization of the purported "facts" preceding the "key evidence" in support of Plaintiffs' claim as set forth by Plaintiffs above. Defendants' key evidence in opposition to Plaintiffs' claim is set forth in Defendants' Memorandum of Contentions of Fact and Law.  That evidence will establish that each of the relevant agreements between DC and WBEI for the exploitation of the Superman property was well within or above the range of fair market value at the time it was entered into, and was not to the detriment of DC, and accordingly does not constitute a "sweetheart deal."

**DEFENDANTS:**

Defendants will not be asserting any affirmative defenses or counterclaims in this phase of the trial.

**8.    IN VIEW OF THE ADMITTED FACTS AND THE ELEMENTS REQUIRED TO ESTABLISH THE CLAIMS AND COUNTERCLAIMS THE FOLLOWING ISSUES REMAIN TO BE TRIED:**

Plaintiffs contend the following issues remain to be tried:

1.    As Warner Bros. and Plaintiffs (not DC and Plaintiffs) *co-own* divisible Superman film and television rights in and to the Recaptured Copyrights should not Warner Bros. and Plaintiffs account to each other for their exploitation of the copyright rights they co-own?

2.    At the time DC negotiated the relevant agreements for Superman copyright interests with Warner Bros. was DC "closely related" to Warner Bros.?

3.    Do the deal terms of such agreements, resulting from DC and Warner Bros. intra-corporate relationship constitute "fair market value" for the Superman copyright interests conveyed?

Defendants contend that the following issue remains to be tried in the instant

13

trial:

     1.     As to each agreement challenged by Plaintiffs, did DC license to Warner Bros. rights to exploit the "Superman" property for a less than market fee at the time the deal was entered into, and, if so, did such below market license result in damage to Plaintiffs in the form of a calculable reduction in the profits of DC in which Plaintiffs are entitled to share?

### 9.    DISCOVERY

    <u>Plaintiffs' Position</u>:  Discovery regarding this first phase of trial is incomplete. Defendants' failure to fully supplement their production relevant to trial, pursuant to Fed. R. Civ. P. 26(e), is the subject of Plaintiffs' motion to compel filed in the form of a Joint Stipulation on December 30, 2008.  The motion is scheduled to be heard on January 14, 2009.

    <u>Defendants' Position</u>:  Discovery regarding this first phase of the trial is complete.  *See also* Section 12, *infra*.

### 10.    ALL DISCLOSURES UNDER FED.R.CIV.P. 26(A)(3) HAVE BEEN MADE

    The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6-1.  Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits objected to in the parties' Joint Exhibit Stipulation filed concurrently herewith.

### 11.    WITNESS LISTS OF THE PARTIES HAVE BEEN FILED WITH THE COURT

    Only the witnesses identified in the parties' joint witness list will be permitted to testify (other than solely for impeachment).

    Neither party is intending to present evidence by way of deposition testimony (other than for cross-examination or impeachment).

FINAL PRE-TRIAL CONFERENCE ORDER

## 12.   THE FOLLOWING LAW AND MOTION MATTERS AND MOTIONS *IN LIMINE*, AND NO OTHERS, ARE PENDING OR CONTEMPLATED:

**Plaintiffs have moved *in limine* as follows**:

1)     Plaintiffs have moved to preclude Defendants from introducing evidence that Warner Bros. purportedly paid DC "fair market value" for Warner Bros. purchase of DC's Superman "audiovisual," motion picture and television rights on the basis that such evidence is moot and irrelevant with respect to such Superman copyright interests as are now *co-owned* by Warner Bros. and Plaintiffs, not DC and Plaintiffs.

2)     Plaintiffs have moved to preclude Defendants from introducing into evidence documents and agreements produced for the first time at the parties' L.R. 16-2 Meeting of Counsel because Defendants failed to comply with their discovery obligations pursuant to Fed. R. Civ. P. 26.  Defendants were required to supplement their Rule 26(a) disclosures as well as their document production by November 21, 2008 pursuant to written agreement of the parties, but willfully failed to do so.  Plaintiffs have also moved (a) to preclude Defendants' percipient witnesses from testifying regarding agreements they did not negotiate, draft and/or directly participate in and which were not produced prior to the agreed November 21, 2008 deadline; and (b) to preclude Defendants' non-expert witnesses from offering lay opinions about the purported "fairness" of the Superman agreements between DC and Warner Bros.

3)     Plaintiffs have moved to preclude Defendants' experts, William Immerman and Richard Marks from testifying on the grounds that, with regard to the issues to be tried on February 3, 2009, the mere conclusory opinions expressed in their expert reports and deposition testimony are not supported by sufficient facts or data and/or by any reliable or even discernable methodology.

4)     Plaintiffs have moved to preclude Defendants from introducing irrelevant, prejudicial and/or inadmissible documents at trial, including evidence of

agreements regarding intellectual properties that were not of Superman's stature as a longstanding "franchise" property at the time the agreements were entered into.

**Defendants have moved *in limine* as follows**:

Defendants have filed four motions in limine to exclude certain of Plaintiffs' proposed evidence:

1) Defendants' first motion in limine is to limit the scope of the trial, and the evidence introduced, to the issue of whether and to what extent any relevant agreement between DC and WBEI constitutes a "sweetheart deal" such that DC received less than fair market value for the license, and to exclude any evidence related to the traditional alter ego elements or any other matters.

2) Defendants' second motion in limine is to exclude the testimony of certain witnesses, including senior corporate officers of Defendants (*i.e.* "apex" witnesses), none of whom were identified in Plaintiffs' Rule 26 disclosures or were deposed; and certain of Plaintiffs' "expert" witnesses who have no expertise on the issues to be tried in this phase of the trial.

3) Defendants' third motion in limine is to exclude a number of Plaintiffs' proposed exhibits as being irrelevant to the issues to be tried in this phase of the trial.

4) Defendants' fourth motion in limine is to exclude any of Plaintiffs' exhibits first identified and produced after the exchange of the parties' Rule 16 exhibit lists on December 3, 2008, and any documents obtained by Plaintiffs through improper document subpoenas served on third parties on December 22 and 23, 2008, in violation of the discovery cut off, and over two years after discovery closed.

Additionally, even after the deadline to file motions in limine passed, Plaintiffs have continued to conduct discovery and supplement their document production with additional materials not produced or requested by Plaintiffs during discovery, which they intend to use at trial.  Defendants will object to any use of such

FINAL PRE-TRIAL CONFERENCE ORDER

late-produced materials as they are introduced at trial.

### 13.  BIFURCATION OF THE FOLLOWING ISSUES FOR TRIAL IS ORDERED:

Pursuant to the Court's March 26, 2008 order granting in part and denying in part the parties' respective motions for partial summary judgment, the Court reserved for trial Plaintiffs' "accounting" claims arising out of their termination of certain rights under copyright in literary work(s) including  Superman pursuant to 17 U.S.C. 304(c), including Plaintiffs' claim that Warner Bros.' profits from the exploitation of certain Superman copyright interests should be included in this calculation.  On October 6, 2008, the Court bifurcated these claims, with the determination of whether Plaintiffs are entitled to share in Warner Bros.' profits to be tried first on January 20, 2009.  The remaining accounting issues are set to be tried on March 24, 2009.  On December 18, 2008, the Court continued the first trial until February 3, 2009 and kept the second trial on its originally scheduled date of March 24, 2009.

### 14.  CONCLUSION

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the relevant pleadings relevant to the first phase of trial on February 3, 2009 and govern the course of such trial, unless modified to prevent manifest injustice.


Dated: January __, 2009


_____

UNITED STATES DISTRICT COURT JUDGE

1 | Approved as to form and content:

2 | DATED: January 12, 2009       TOBEROFF & ASSOCIATES, P.C.

3

4 | By _____

5 | Marc Toberoff

6 | Attorneys for Plaintiffs,
7 | JOANNE SIEGEL and LAURA SIEGEL
   | LARSON

8 | DATED:  January 12, 2009

9 | WEISSMANN WOLFF BERGMAN
   |    COLEMAN GRODIN & EVALL LLP

10

11 | -and-

12 | FROSS ZELNICK LEHRMAN & ZISSU, P.C.

13 | -and-

14

15 | PERKINS LAW OFFICE, P.C.

16

17 | By: _____

18 | Michael Bergman

19 | Attorneys for Defendants and Counterclaimant

20

21

22

23

24

25

26

27

28