Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
MToberoff@ipwla.com

Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, <br><br> Defendants. | Case No: CV 04-8400 SGL (RZx) <br><br> Hon. Stephen G. Larson, U.S.D.J. <br><br> **PLAINTIFFS JOANNE SIEGEL AND LAURA SIEGEL LARSON'S REPLY IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 3** <br><br> [Plaintiffs' Replies in Support of Motions *in Limine* Nos. 1-2, 4, Reply Declaration of Marc Toberoff filed electronically] <br><br> Date:   January 26, 2009 <br> Time:   11:00 a.m. <br> Place:  Courtroom 1 <br><br> Trial Date:  February 3, 2009 |
| DC COMICS, <br><br> Counterclaimant, <br><br> vs. <br><br> JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Counterclaim Defendants. | |

# **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ...................................................................................1

II.     ARGUMENT.........................................................................................1

    A.    Defendants Did Not Properly Disclose the Late Disclosed
          Agreements Despite Their Obligation to Do So ...................................1

          1.    Defendants' Discovery Abuse Mandates Automatic
                Preclusion.....................................................................................7

    B.    Plaintiffs' "Incompleteness" Argument Was Justified ........................8

    C.    Defendants Should Be Precluded From Using the Late Documents
          Due to Their Willful Failure to Supplement Their Production.............8

    D.    Defendants Concede That Their Executives May Not Offer
          Impermissible Lay Opinions ...............................................................10

III.    CONCLUSION ............................................................................11

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*3M Co. v. Kanbar*,
2007 U.S. Dist. LEXIS 45232 (N.D. Cal. June 14, 2007).........................................6

*Bryant v. Mattel, Inc.*,
2007 WL 5432961 (C.D. Cal., February 13, 2007)....................................5

*Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*,
2002 WL 1433584 (N.D. Ill. 2002) ...................................4

*Paulsen v. State Farm Ins. Co.*,
2008 WL 449783 (E.D. La., February 15, 2008) .......................6

*Solis-Alacorn v. United States*,
514 F. Supp. 2d 185 (D.P.R. 2007) ...................................... 6-7

*U.S. v. Peoples*,
250 F.3d 630 (8th Cir. 2001) ...................................11

*Yeti by Molly v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) ....................................8, 10

### <u>Federal Authorities</u>

F.R.C.P. 26..........................................*passim*

F.R.C.P. 37..........................................*passim*

F.R.E. Rule 701.......................................11

F.R.E. Rule 702.......................................11

L.R. 16..............................................*passim*

Adv. Comm. Notes on 1993 Amendments to former F.R.C.P. 26(a)(1)(B) ..... 3-4, 6

### <u>Other Authorities</u>

Schwarzer Tashima Wagstaffe, *Federal Civil Procedure Before Trial* (2008)
11:271.............................................4

11:273............................................ 4-5

11:340............................................10

I.     **INTRODUCTION**

Defendants do not, because they cannot, justify their flagrant flouting of F.R.C.P. 26's initial disclosure duties and the parties' production supplementation agreement.  Defendants willfully neglected to produce *a single supplemental document* by the mutually designated November 21, 2008 deadline, and then ambushed Plaintiffs on the eve of trial with twenty-three (23) previously undisclosed rights agreements (nearly 1,000 pages) that Defendants seek to use at trial.  This discovery abuse is outrageous, constitutes the very ambush tactic Rule 26 is designed to avoid, and should not be countenanced by this Court.  Accordingly, Defendants should be precluded from offering at trial:  (i) the documents disclosed for the first time on December 3, 2008 at the L.R. 16-2 Meeting of Counsel ("Late Disclosed Documents"); (ii) *all* supplemental documents belatedly produced on and after December 17, 2008 ("Late Supplemental Documents"); (iii) any other evidence, in Defendants' possession, but not furnished to Plaintiffs by November 21, 2008, as expressly agreed; and (iv) any arguments or testimonial evidence pertaining to the period after November 17, 2006, for which Defendants provided an untimely, incomplete and self-serving supplementation.  *See* F.R.C.P 26(e), 37(c)(1).  Plaintiffs should also be allowed to supplement their exhibit and witness lists given Defendants' untimely production.

II.    **ARGUMENT**

    A.     **Defendants Did Not Properly Disclose the Late Disclosed Agreements Despite Their Obligation to Do So**

Firstly, in an effort to deflect attention from their clearly improper behavior, Defendants cling to the fiction that Plaintiffs did not bother to develop any discovery relating to the "alter ego" trial.  As exemplified by Plaintiffs' recently submitted pre-trial Memorandum of Contentions of Fact and Law, Plaintiffs will be mounting a *substantial* case regarding the Superman "sweetheart dealings" within the Warner Bros. corporate family.  Moreover, as set forth in Plaintiffs' recently granted motion

1

to compel supplementation, Plaintiffs served Defendants with *many* document requests regarding the "alter ego" issue.[1]  Plaintiffs also deposed several Warner Bros. and DC executives on matters directly bearing on the "alter ego" issue, as will be seen at trial.  Notwithstanding this, the focus here is not on what Plaintiffs did or did not do as to their "alter ego" claim; at issue is Defendants' willful disregard of their Rule 26 obligations in furtherance of their "trial by ambush" tactics.[2]

Secondly, Defendants' defense to their discovery gamesmanship rests on their faulty, if not coy, premise that they complied with the initial disclosure requirements of F.R.C.P. 26 by "sufficiently identify[ing] the documents Defendants would rely upon."  Defs. Opp. *Limine* No. 3 at 7:8-9.  They clearly did not do this.  Defendants promised in their April 15, 2005, F.R.C.P. 26 initial disclosure to "***produce to Plaintiff***... [d]ocuments relevant to the issue of whether the licensing agreement(s) between Defendants DC and Warner Bros. regarding Superman and Superboy are 'arm's length' agreements" (emphasis added).  *See* Declaration of Marc Toberoff in Support of Plaintiffs' Motions *in Limine* ("Toberoff Decl."), Ex. P.  Defendants subsequently produced hundreds of thousands of pages of documents in this litigation, but *none* of the newly disclosed twenty-three contracts at the heart of this

---

[1]  Specifically, Warner Bros. is obliged to supplement its previous production responsive to Plaintiffs' Requests Nos. 25, 41-43, 47-48, 52, 74-76, 79, 116, 119, 123, 125, 184, 229, 231 and 274; DC Comics must supplement its production responsive to Plaintiffs' Requests Nos. 33-38, 41, 45-48, 50-51, 55-56, 59, 80-82, 84, 86-89,  91, 112-113, 151, 183-185, 191-192, 202, 223-225 and 274.  *See* Toberoff Reply Declaration ("Tob. Reply Decl."), Ex. E.

[2]  Defendants gratuitously *repeat* throughout their opposition that Plaintiffs have the "burden" of proof at trial, suggesting their exposure on this point.  As explained more fully in Plaintiffs' Memorandum of Contentions of Fact and Law, ***Defendants should have the burden*** of establishing that their Superman agreements purportedly constitute "fair market value" for the extremely valuable Superman copyrights.  *See* Pls. Memorandum of Contentions of Fact and Law at 22:26-23:21.  The Court ruled that "the relevant entities are all closely related… and that this fact alone raises a specter of a 'sweetheart deal' entered into by related entities in order to pay a less than market value fee for licensing valuable copyrights."  *Siegel v. Warner Bros. Ent., Inc.* ("*Siegel II*"), 542 F. Supp. 2d 1098, 1144 (C.D. Cal. 2008).  Moreover, by failing to offer Superman in the competitive open market, *Defendants* prevented Superman's true "fair market value" from ever being properly determined and secured.  Defendants' intra-corporate dealings are, by definition, non-arm's length transactions –  the antithesis of "fair market value."  Accordingly, Defendants must rebut the strong inferences, if not presumption, inherent in their closely related status and streamlined negotiations that they had little concern for "fair market value" when re-organizing the ownership of key Superman rights within the corporate family.

motion.  Plaintiffs thus reasonably believed that the documents Defendants produced

prior to the L.R.16-2 Meeting of Counsel 3 ½ years later, included all documents

"relevant to the issue of whether the licensing agreement(s)… regarding Superman…

are 'arm's length' agreements,"  as promised by Defendants in their initial

disclosure.  Plaintiffs prepared their case, and for the L.R. 16-2 conference,

accordingly.  Thus, Plaintiffs reasonably did not object to what turned out to be a

misleading representation in Defendants' initial disclosure until Defendants' surprise

document dump and designation at the L.R. 16-2 conference on December 3, 2008,

when it became obvious that Defendants had not honored their promise to produce

even the documents *they* viewed as relevant to Plaintiffs' "alter-ego" claim.

     Notwithstanding Defendants' unprofessional breach of their promise in their

initial disclosure "to produce" documents under F.R.C.P. 26(a)(1)(A)(ii), if

Defendants intended to use third-party contracts at trial, they were obliged to either

furnish Plaintiffs with (a) "a copy" of such documents or (b) a "description by

category and location" of such documents, so as to disclose the documents to

Plaintiffs with a reasonable degree of specificity.[3]  The Advisory Committee Notes

state that:

> "[The description] should describe and categorize, to the extent identified
> during the initial investigation, the nature and location of potentially relevant
> documents and records, including computerized data and other electronically-
> recorded information, sufficiently to enable opposing parties ***(1) to make an
> informed decision concerning which documents might need to be examined***,
> at least initially, ***and (2) to frame their document requests*** *in a manner likely
> to avoid squabbles resulting from the wording of the requests.* As with
> potential witnesses, the requirement for disclosure of documents applies to all
> potentially relevant items then known to the party, whether or not supportive
> of its contentions in the case…. ***The litigants should not indulge in
> gamesmanship with respect to the disclosure obligations***."

Adv. Comm. Notes on 1993 Amendments to former F.R.C.P. 26(a)(1)(B), the

predecessor of F.R.C.P. 26(a)(1)(A)(ii) (emphasis added).

     Incredibly, Defendants claim that their statement – "[d]ocuments relevant to

---

[3] The party must provide "***a copy*** – or ***a description by category and location*** – of all
documents, electronically stored information, and tangible things that the disclosing party
has in its possession, custody, or control and may use to support its claims or defenses."
F.R.C.P. 26(a)(1)(A)(ii) (emphasis added).

1   the issue of whether the licensing agreement(s) between Defendants DC and Warner

2   Bros. regarding Superman and Superboy are 'arm's length' agreements'" – complies

3   with this provision.  Defendants, with a straight face, declare that this statement

4   adequately "alerted" Plaintiffs of the "nature and location" of documents related to

5   their defense of Plaintiffs' "sweetheart deal" claims.  Defs. Opp. *Limine* No. 3 at

6   4:11-14.  However, it is obvious from the statement that the "nature and location" of

7   the "relevant" documents was not disclosed such that Plaintiffs could make an

8   "informed decision" concerning which documents (*i.e.*, rights acquisition agreements

9   with third parties) needed to be examined and "to frame their document requests"

10  accordingly.  Schwarzer Tashima Wagstaffe, *Federal Civil Procedure* ("*Fed. Civ.*

11  *Proc.*") *Before Trial* (2008) at 11:271, quoting Adv. Comm. Notes on 1993

12  Amendments to former F.R.C.P. 26(a)(1)(B).[4]

13          Defendants blithely assert that their initial disclosure need not be "overly

14  specific or list each individual document."  Defs. *Limine* No. 3 at 4:8-9.  However,

15  Defendants did not even deign to list the general category of documents (*e.g.*, "third-

16  party rights acquisition agreements" or "agreements to acquire rights to non-

17  Superman properties").  Defendants ignore both the spirit and the letter of Rule 26,

18  which "is designed to require full disclosure of relevant information and to

19  encourage fair play… Rule 26(e)'s provisions are not optional."  *Fidelity Nat. Title*

20  *Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 2002 WL 1433584, at *6

21  (N.D. Ill. 2002).

22          Treatises warn that due to "potential sanctions for nondisclosure… [counsel]

23  should] be *scrupulous* in describing available documents.  [One] risk[s] losing the

24  right to rely on such documents at trial if it can be argued your initial description did

25  not adequately identify their existence."  Schwarzer *et al.*, *Fed. Civ. Proc. Before*

26  *Trial* at 11:273 (emphasis original).  As a practical matter, "many attorneys simply

27

28  [4] Had Defendants properly disclosed these contracts, Plaintiffs could have not only sought discovery from Defendants as to these contracts, but contracts from third parties in rebuttal. After causing this problem, Defendants should not be heard to complain about Plaintiffs' prompt attempt to remedy it.  *See* Plfs. Opp. *Limine* No. 4.

*produce copies of all documents* rather than simply identifying them.  This conserves effort and expense and furthers the purposes of mandatory initial disclosures by promptly placing plainly relevant information in the opposing parties' hands."  *Id*. at 11:273 (emphasis original).

Courts in the Central District have rejected the use of vague statements in Rule 26 initial disclosures as not comporting with the "fair play" inherent in the Rule.  In *Bryant v. Mattel, Inc.*, 2007 WL 5432961 (C.D. Cal., February 13, 2007), the court found the following initial disclosure "deficient," as it contained only "a paltry amount of information, identifying only seven witnesses by name and only three broad categories of documents."  The initial disclosure was similarly vague to the statement offered by Defendants in this action, listing only:

> 1. Documents and things relating to MGA's products and product packaging that are the subject of the complaint (including, without limitation, "Bratz" dolls, "Bratz Petz," the "Bratz Funky Fashion Makeover Head," "4-Ever Best Friends," "Mommy's Little Patient," and "Alien Racers").

> 2. Documents and things relating to the strength and fame of MGA's trade dress in its "Bratz" line, including, without limitation, advertisements and television commercials for its "Bratz" products, honors and prizes awarded to the "Bratz" line, and the market share of "Bratz" products.

> 3. Other documents not yet in MGA's possession, custody or control but believed to be in possession of or under the custody or control of Mattel, as described in MGA's First Set of Requests For the Production of Documents and Things and/or third party subpoenas.

The Discovery Master held that this disclosure provided only "unfocused groupings of documents," "facially deficient descriptions of documents," and no information whatsoever about the location of the documents.  *Id*. at *2.  Defendants' initial disclosure is even worse.  Their tactic is obvious:  offer as basic and vague a statement as possible in their initial disclosure, tempered by *a promise to produce*; lead Plaintiffs to believe they have produced all documents they believe are relevant to the "alter-ego" claim when they in fact had not; and then, on the eve of trial, sandbag Plaintiffs with the production and disclosure of numerous trial exhibits at the L.R. 16-2 Meeting of Counsel.  Rule 26 is not an opportunity for Defendants to

"hide" documents on which they intend to rely behind vague "disclosures" or broken

promises to produce.  This behavior must not go unpunished by the court.  *See*

*Paulsen v. State Farm Ins. Co.*, 2008 WL 449783 (E.D. La., February 15, 2008)

(party precluded from using documents disclosed for the first time in party's exhibit

list because of "previous failure to identify documents pursuant to Rule 26's initial

and supplemental disclosure requirements").

Defendants weakly rely on distinguishable cases where, unlike here, the Rule

26 initial disclosures were sufficiently more specific for the opposing party to "make

an informed decision concerning which documents might need to be examined."

Adv. Comm. Notes on 1993 Amendments to former F.R.C.P. 26(a)(1)(B).

In *3M Co. v. Kanbar*, 2007 U.S. Dist. LEXIS 45232 at *4 (N.D. Cal., June 14,

2007), the description in the contested initial disclosure, though not an "itemized

list," was clearly more explicit than Defendants' effort here:

> "Such documents relate to the POST-IT trademark, the development,
> marketing, and sales of products offered under or in connection with the
> POST-IT trademark, 3M's registrations for the POST-IT trademark, 3M's
> enforcement of the trademark, the development, marketing, and sales of
> products offered under or in connection with the Canary Yellow trademark,
> 3M's registration for the Canary Yellow trademark, and 3M's enforcement of
> the Canary Yellow trademark."

*Id*. at *4.

In *Solis-Alacorn v. United States*, 514 F. Supp. 2d 185, 189-190 (D.P.R.

2007), a party *promised* to produce *specific* documents listed in its Rule 26 initial

disclosures[5] but then did not.  *Id*. at 188 ("These documents shall be produced

---

[5]  "Federal Defendants identified the following items as pertaining to Rule 26(a)(1)(B)
disclosures:

> (1) DEA-6, Report of Investigation (ROI), prepared on Sept. 18, 2003 by SA
> Felton Cameron.
> (2) DEA-6, Report of Investigation (ROI), prepared on April 12, 2003 by José
> O. Rodríguez.
> (3) DEA-6, Report of Investigation (ROI), prepared on April 15, 2003, by Task
> Force Agent Carlos Strubbe.
> (4) DEA Memorandum dated March 18, 2003, review of DEA Quick Release
> Policy for Seized Property.
> (5) DEA Seizure Form, Asset No. 03-DEA-426573.
> (6) Vehicle Indemnity Agreement, Asset No. 03-DEA-426573.

forthcoming."). The court noted that the party's "conduct of pledging production of documents and later reneging on such promise is far from exemplary." *Id*. at 190. The court ultimately denied the motion to preclude these documents because *each* documents had been *specifically listed* in the Rule 26 disclosure, thus giving the other side clear notice of the relevant documents to request. Here, instead of identifying specific contracts, or even the document category, Defendants provided only a vague circular statement (*i.e.*, "documents relevant to the issue"). This so-called "identification" is wholly insufficient to satisfy Rule 26.

### 1. Defendants' Discovery Abuse Mandates Automatic Preclusion

Pursuant to F.R.C.P. 37(c)(1), "[i]f a party fails to provide information… as required by Rule 26(a) or 26(e), the party is *not allowed* to use that information… to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Once the movant demonstrates that Rule 26(a) or 26(e)(1) has been violated, the sanction is *automatic* unless the respondent demonstrates a "substantial justification" for its failure. Defendants apparently view such third party and non-Superman contracts as a key component of their defense to Plaintiffs' "alter-ego" claim. Defendants cannot provide *any* justification whatsoever for not properly disclosing the Late Disclosed Documents at the time of the initial disclosures or during the 3 ½ year period that followed.

Defendants' willful failure to provide "cop[ies]" or to disclose the "category [*i.e.*, Defendants' non-Superman rights acquisition contracts] and location" of the Late Disclosed Documents they intended to use at trial clearly *prejudiced* Plaintiffs' discovery and preparation for trial. Proper disclosure would have enabled Plaintiffs to factor such documents into Plaintiffs' trial strategy, the framing of requests to produce such contracts and other such Warner Bros. contracts, focused depositions

---

(7) Claim for Damage, Injury or Death, dated Sept. 20, 2004, submitted by Migdalia Marques Roberto.
(8) Claim for Damage, Injury or Death dated Sept. 20, 2004, submitted by Silvio Solís Alarcón.
(9) Arrest Warrant for Juan Díaz Suazo." *Id*. at 188.

regarding such contracts, the securing of rebuttal evidence, all of which, in turn, would determine the exhibit and witness lists Plaintiffs were required to present at the L.R. 16-2 conference.  Accordingly, Defendants must be precluded from using the Late Disclosed Documents at the "alter ego" trial.  *See Yeti by Molly v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("The Advisory Committee Notes describe [Rule 37] as a self executing, automatic sanction to provide a strong inducement for disclosure of material.  Courts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded.").

### B.    Plaintiffs' "Incompleteness" Argument Was Justified

Defendants weakly accuse Plaintiffs of failing to adequately inform them that Defendants' last-minute document dump contained many incomplete contracts. Defendants sloppily provided *incomplete* contracts to Plaintiffs, and now complain when Plaintiffs rightfully point this out to the Court.  Defendants erroneously accuse Plaintiffs of failing to articulate why the "missing" pages or "non-financial terms" are relevant.[6]  Defs. Opp. *Limine* No. 3 at 9: 19-20.  Defendants' feeble excuses make no sense, as Plaintiffs are clearly entitled to complete documents.  Although Plaintiffs need not explain to Defendants why contractual provisions *they have not yet seen* are relevant, for the "privilege" of seeing an entire contract, Plaintiffs specifically identified missing *material* terms.  *Id.* at 9:19-20.  Recognizing the weakness of their position, Defendants recently provided the missing pages.

### C.    Defendants Should Be Precluded From Using the Late Documents Due to Their Willful Failure to Supplement Their Production

As noted, the Court, on January 14, 2009, granted Plaintiffs' motion to compel Defendants' full supplementation of documents relevant to the "alter ego" trial. Defendants were ordered to produce, and to confirm by declaration that they have produced, all discoverable material sought by Plaintiffs' motion by January 21, 2009.

---

[6] Elsewhere, Defendants state "that the 'sweetheart deal' determination necessarily requires consideration of more than just pure monetary considerations in an isolated agreement." Defs. Opp. *Limine* No. 3 at 9 n.5.  Plaintiffs agree.

*See* Tob. Reply Decl., Ex. E.

Defendants have offered no justification, or even a colorable excuse, in their papers or at the January 14, 2009 hearing on the motion to compel, for their behavior, other than feigning ignorance as to the "scope" of the February 3, 2009 trial. Defs. Opp. *Limine* No. 3 at 11:10-11. However, until Plaintiffs moved to compel, Defendants had refused *any* supplementation, even of post-2006 documents relevant to Defendants' narrow view of the trial. *See* Declaration of Marc Toberoff in Support of Plaintiffs' Motions *in Limine* ("Tob. Decl."), ¶¶ 28-29.

Defendants' conduct is all the more brazen and sanctionable because their agreement to supplement all documents no later than sixty (60) days before trial (i.e., November 21, 2008) was the product of a prior five-month meet-and-confer process in January-June 2008, and was reached only after Plaintiffs served Defendants with a *prior* motion to compel on June 3, 2008. Tob. Reply Decl., ¶ 7; Tob. Decl., Exs. S-T, U. The agreement was made specifically so that the parties would have the full universe of documents in advance of the L.R. 16-2 Meeting of Counsel, when they must present their witness and exhibit lists. *Id.*

Defendants willfully let the November 21, 2008 deadline pass, knowing it would prejudice Plaintiffs' preparation for the L.R. 16-2 Meeting and trial. Even after receiving Plaintiffs' detailed demand letter on December 3, 2008, Defendants incredulously continued to insist they had no obligation to supplement their 2006 production. Tob. Decl., ¶¶ 28-29, Ex. EE. Then, without the courtesy of any notice, on December 17, 2008, at 7:02 p.m., the night before this motion *in limine* was due, and a day before Defendants' response to the motion to compel was due, Defendants again surprised Plaintiffs by narrowly "supplementing" their production, "subject to" numerous exceptions, denials and objections, and timed to disrupt Plaintiffs' motions. *Id.*, ¶ 39, Ex. EE.

In sum, Defendants willfully breached a clear agreement to supplement their production by November 21, 2008 for a perceived tactical advantage. Plaintiffs

repeatedly reminded Defendants of their obligations by letter dated October 17, 2008 (*id.*, Ex. V); by Plaintiffs' timely supplementation on November 21, 2008 as agreed (*id.*, ¶ 21); by letter dated December 3, 2008 (*id.*, Ex. W); in person at the parties' L.R. 16-2 Meeting on December 3, 2008 and the motions *in limine* "meet and confer" on December 8, 2008 (*id.*, ¶¶ 28-29); and by letter dated December 10, 2008 re: this motion.  *Id.*, Ex. DD.  Yet Defendants flouted all of this.

Under F.R.C.P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is ***not allowed*** to use that information or witness to supply evidence… at a trial, unless the failure was substantially justified or is harmless."  *See Yeti by Molly*, 259 F.3d at 1106 ("[E]ven absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements."); Schwarzer, *et al.*, *Fed. Civ. Proc. Before Trial* at 11:340 (Unless nondisclosure is "harmless" or excused by "substantial justification," a court "*must* impose this sanction.") (emphasis original).

In light of Defendants' willful and unjustified breach of their duty to supplement under Rule 26(e) *and* of the parties' express supplementation agreement, Plaintiffs reiterate their request that, for failure to timely supplement their production pertaining to November 17, 2006 to the present, Defendants be precluded at trial from (i) using any of the Late Supplemental Documents and (ii) presenting arguments or evidence pertaining to the period after November 17, 2006.  F.R.C.P 26(e), 37(c)(1).

## D.    Defendants Concede That Their Executives May Not Offer Impermissible Lay Opinions

Defendants ask the Court to "deny" Plaintiffs' motion regarding the permissible scope of their executives' testimony at the "alter ego" trial, despite having conceded Plaintiffs' position.  Defs. Opp. *Limine* No. 3 at 12:19-13:25. Defendants conceded, while inserting some "wiggle room," that their executives

"will not be offering *opinions* about the [entertainment] industry in general.  Instead, they will testify based on specific facts that are *within their own personal knowledge*."  *Id.* at 13:11-12 (emphasis added).  Defendants further conceded that their experts "will render expert opinions, and their corporate executives will testify based on facts."  *Id.* at 13:23-25.  However, for the avoidance of doubt, Plaintiffs seek an order that Defendants' executives may only testify as to specific facts based on their personal knowledge, and may offer no "lay opinions," including without limitation "lay opinion" regarding "fair market value" or purported industry custom and practices, as such is the domain of expert witnesses.  *See* F.R.E. Rule 701(c), 702; *U.S. v. Peoples*, 250 F.3d 630, 639-641 (8th Cir. 2001) ("What is essentially expert testimony…may not be admitted under the guise of lay opinions.").

## III.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this Motion *in Limine* precluding Defendants from offering at trial:  (i) the Late Disclosed Documents; (ii) the Late Supplemental Documents; and/or (iii) arguments or evidence pertaining to the period after November 17, 2006.  Plaintiffs further respectfully request that Defendants' percipient witnesses be precluded:  (i) from testifying about documents or matters of which they have no personal knowledge, including the Late Disclosed Documents (F.R.E. 602); and (ii) from offering lay opinions as to the purported relative "fairness" of contract terms or "fair market value," as such is necessarily based on specialized knowledge of the entertainment industry within the scope of F.R.E. 702.

DATED: January 18, 2009          TOBEROFF & ASSOCIATES, P.C.


By_____
               Marc Toberoff

Attorneys for Plaintiffs JOANNE SIEGEL
and LAURA SIEGEL LARSON