Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
Keith G. Adams (CA State Bar No. 240497)
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
MToberoff@ipwla.com

Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual,

Plaintiffs,

vs.

WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS, a general partnership; and DOES 1-10,

Defendants.

---

DC COMICS,

Counterclaimant,

vs.

JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual,

Counterclaim Defendants.

---

Case No: CV 04-8400 SGL (RZx)

Hon. Stephen G. Larson, U.S.D.J.

**PLAINTIFFS JOANNE SIEGEL AND LAURA SIEGEL LARSON'S NOTICE OF MOTION AND MOTION FOR CLARIFICATION OF THE COURT'S JANUARY 26, 2009 ORDER**

[Declaration of Marc Toberoff filed manually]

Date: March 16, 2009
Time: 10:00 a.m.
Place: Courtroom 1

Trial Date: April 21, 2009

TO DEFENDANTS WARNER BROS. ENTERTAINMENT INC., A CORPORATION, TIME WARNER INC., A CORPORATION, DC COMICS, A GENERAL PARTNERSHIP, AND DOES 1–10, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 16, 2009 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of the above-entitled court, Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs") will and hereby do move the Court for an order clarifying, in part, the Court's oral January 26, 2009 order ("Order") regarding the scope of the April 21, 2009 "alter ego" trial ("April 21 Trial"). Specifically, Plaintiffs seek clarification of the portion of the Order that states that the trial shall concern the following:

> "Given the nature and the characterization of the property in question, the trial shall determine whether the value of the various Superman option and assignment agreements and amounts paid thereunder reflect the fair market value of the nonexclusive rights that the Court has determined were transferred from D.C. to Warner Brothers and, if not, what accounting shall be required of Warner Brothers to ensure an equitable result."

Plaintiffs seek to clarify that the April 21 Trial will address the "fair market value" of the *entirety* of the Superman film and television agreements between defendants DC Comics ("DC") and Warner Bros. Entertainment Inc. ("Warner Bros."). Plaintiffs seek this clarification because the Order as stated could be misinterpreted to mean that the April 21 Trial will focus only on whether the relevant Superman agreements reflect the fair market value of the *nonexclusive* license of the copyrights recaptured by Plaintiffs through their 17 U.S.C. § 304(c) termination.

As the relevant Superman agreements were integrated transactions regarding primarily exclusive copyrights, it is impossible to determine how much was paid solely for the "nonexclusive rights." It is also not possible at this stage of litigation to determine the "fair market value" of the nonexclusive Superman rights recaptured

by Plaintiffs, as the scope of such nonexclusive Superman rights requires a resolution of the complex "work for hire" issues pending before the Court, and, thereafter, the determination at trial of the literary elements contained in the recaptured copyrights, which is better suited to the second phase of trial.

The first phase of trial should also not dwell on the nonexclusive rights because: (a) DC expressly warranted that the rights conveyed were "exclusive" and agreed to *indemnify* and make Warner Bros. whole against any financial loss arising from less than "exclusive" rights; (b) despite the nonexclusivity of the recaptured Superman copyrights, Warner Bros.' Superman film and television rights are *de facto* exclusive in the entertainment industry, due to Defendants' exclusive ownership of foreign rights to the copyrights, and exclusive worldwide rights to most Superman copyrights and all Superman trademarks; and (c) Warner Bros. and DC should be estopped from arguing at trial that their "sweetheart deals" were retroactively for "fair market value" based on the non-exclusivity of the recaptured copyrights, having entered into purportedly "exclusive" agreements notwithstanding Plaintiffs' 1997 notices of termination, and waging a twelve-year war of attrition contesting the validity of the notices on dubious grounds.

Plaintiffs' motion is based on this notice of motion; the accompanying memorandum of points and authorities; the declarations and other evidence filed in support of Plaintiffs' motion; all prior pleadings and proceedings in this matter; any matters of which the court may take judicial notice; and all oral and written evidence to be presented at the hearing, if any, on this motion.

DATED: February 20, 2009

TOBEROFF & ASSOCIATES, P.C.

By ______________________
Marc Toberoff

Attorneys for Plaintiffs JOANNE SIEGEL and LAURA SIEGEL LARSON

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........ 3

A. Plaintiffs' Notices of Termination ........ 3

B. DC Grants Warner Bros. Rights to the Entire Superman Property ........ 3

C. Warner Bros. Must Account to Plaintiffs If the Superman Agreements Do Not Represent Superman's "Fair Market Value" ........ 5

D. Defendants Fail to Articulate a Workable Position as to the Scope of Trial ........ 5

III. ARGUMENT ........ 6

A. A "Transaction" Approach to the Fair Market Value Analysis Is Appropriate ........ 6

1. The Court and Parties Have Always Focused on the Relevant Agreements as a Whole ........ 6

2. The Superman Agreements Do Not Differentiate the Compensation Payable by Warner Bros. to DC for "Nonexclusive Rights" ........ 7

B. It Is Impossible to Include Indeterminate Nonexclusive Rights in a Fair Market Value Analysis of the Relevant Agreements" ........ 8

C. In Practice, the "Nonexclusive Rights" Issue Is Superfluous to a Determination of the Agreements' "Fair Market Value" ........ 10

1. DC Provided Warner Bros. with the Economic Equivalent of Superman Exclusivity by Warranting Exclusivity and Indemnifying Warner Bros. ........ 10

2. Warner Bros. Perpetual Superman Film and Television Rights Are De Facto "Exclusive" in the Entertainment Industry ........ 10

3. Defendants Should Also Be Estopped from Arguing That Their "Sweetheart Deals" Are Retroactively for "Fair Market Value" Due to the Validity of Plaintiffs' Termination ........ 12

IV. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Federal Cases**

*Barker v. United States*, 200 F.2d 223 (9th Cir. 1952) .......... 10

*Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984) .......... 5

*Siegel v. Warner Bros. Entertainment Inc.* ("*Siegel II*"), 542 F. Supp. 2d 1098 (C.D. Cal. 2008) .......... *passim*

**State Cases**

*Keene v. Harling*, 36 Cal.Rptr. 98 (1963) .......... 8

**Federal Authorities**

17 U.S.C. § 304 .......... 3

**Other Authorities**

6 Williston on Contracts (3rd Ed.) § 862 .......... 8

# I. INTRODUCTION

Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs") are the heirs of Jerome Siegel ("Siegel"), the co-author of the world renowned comic book hero, Superman. This Court has found that Plaintiffs' notices of termination were valid and that Plaintiffs have recaptured Siegel's co-ownership interest in Superman works that were not works-for-hire, including *Action Comics No. 1*. *See generally Siegel v. Warner Bros. Entertainment Inc.* ("*Siegel II*"), 542 F. Supp. 2d 1098 (C.D. Cal. 2008). The remaining subjects for trial in this matter are: (i) which Defendants must account to Plaintiffs for profits derived from the Superman copyrights; and (ii) the amount of such profits payable to Plaintiffs. *Id.* at 1145.

Plaintiffs seek clarification of that portion of the Court's January 26, 2009 oral order ("Order"), wherein the Court framed the first phase of trial, commencing on April 21, 2009 ("April 21 Trial"), as follows:

> "Given the nature and the characterization of the property in question, the trial shall determine whether the value of the various Superman option and assignment agreements and amounts paid thereunder reflect the fair market value of the *nonexclusive rights that the Court has determined were transferred* from D.C. to Warner Brothers and, if not, what accounting shall be required of Warner Brothers to ensure an equitable result."

Declaration of Marc Toberoff in Support of Plaintiffs' Motion for Clarification ("Toberoff Decl."), Ex. A (January 26, 2009 transcript) at 34:7-14 (emph. added).

Plaintiffs seek clarification because the Order could be misinterpreted to mean that the April 21 Trial is to determine whether the relevant intra-corporate Superman Agreements between DC Comics ("DC") and Warner Bros. Entertainment Inc. or its predecessors ("Warner Bros.") (collectively "Defendants") – including the November 6, 1999 Superman Film Option/Purchase Agreement ("Superman Film Agreement") (*id.*, Ex. B), and the December 5, 2000 Smallville Television Agreement ("Superman Television Agreement") (*id.*, Ex. C) (collectively, "Superman Agreements") and the assorted agreements pertaining to

Superman animated television rights ("Superman Animation Agreements")[1] – reflect the "fair market value" of only the *nonexclusive* Superman copyrights recaptured by Plaintiffs, even though such *nonexclusive* copyrights have yet to be fully determined and were conveyed to Warner Bros., with mostly *exclusive* copyrights and other rights, in integrated transactions for undifferentiated compensation.

Instead, the April 21 Trial should address whether these Superman agreements as a whole reflect the "fair market value" of the film and television rights to the Superman "mythos" granted to Warner Bros. This Court has previously indicated that the April 21 Trial will address the Superman agreements in their entirety. Both parties have reiterated this understanding in their motions and pre-trial filings, and have prepared for the April 21 Trial accordingly.

First, it is not possible at this stage of litigation to determine whether the Superman agreements reflect the "fair market value" of the nonexclusive rights. The scope of the nonexclusive rights requires a resolution of the complex "work for hire" issues pending before the Court that determine the specific Superman copyrights recaptured by Plaintiffs. Even once the "work for hire" issues are determined, the issue of which Superman literary elements are contained in the recaptured works (*e.g.*, "super-hearing," "telescopic vision") would still need to be tried with the benefit of expert testimony.[2]

Second, it is impossible to determine how much compensation Warner Bros. provided to DC under the agreements for any "nonexclusive rights," because the consideration in the agreements is for the entire bundle of copyrights and other

---

[1] The assorted Superman Animation Agreements between DC and Warner Bros. are ***nonexclusive*** licenses to begin with. There is therefore no need or basis to "reform" them to accommodate that portion which concerns the recaptured copyrights. *See* Section III.B, *infra*.

[2] Indeed, the issue of which literary elements are present in *Action Comics No. 1* awaits trial and expert testimony on the subject. *See* Plaintiffs' Memorandum of Points and Authorities on Pre-Trial Issues Filed Pursuant to the Court's July 3, 2008 Order (filed July 21, 2008) at 74:18-80:11.

rights, most of which are exclusive, comprising the Superman mythos.

Third, after Defendants had received Plaintiffs' notices of termination, DC warranted the exclusivity of the Superman rights conveyed and agreed to indemnify Warner Bros. for anything less, thus providing Warner Bros. with the economic equivalent of *exclusive* Superman rights.

Fourth, the fact that some rights, in retrospect, were nonexclusive has a *de minimis* impact on the "fair market value" of the grants in their entirety, as Warner Bros. has a *de facto* monopoly on Superman film and television exploitation in the entertainment industry through its many exclusive Superman copyrights, trademark rights, and exclusive foreign rights to any recaptured copyrights.

Finally, Defendants should be estopped from arguing at trial that their "sweetheart deals" were retroactively for "fair market value" based on the non-exclusivity of the recaptured copyrights, having entered into purportedly "exclusive" agreements notwithstanding Plaintiffs' 1997 notices of termination, and waging a twelve-year war of attrition contesting the validity of the notices on dubious grounds.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Notices of Termination

This case arises out of Plaintiffs' proper exercise of their right, under section 304(c) of the Copyright Act to recapture Siegel's original copyright interests in Superman. Plaintiffs served the requisite statutory notices on Defendants on April 3, 1997, which terminated Siegel's prior grants of rights to Defendants' predecessor(s), applicable to Superman works written by Siegel and published between April 16, 1938 and April 16, 1943. Under § 304(c) and § 304(c)(2), any transfer of a copyright in a work that is not a "work made for hire" is subject to termination.

### B. DC Grants Warner Bros. Rights to the Entire Superman Property

After Plaintiffs served their notices of termination on Defendants, DC

purported to grant Warner Bros. exclusive film and television rights to ***all*** Superman works in the Superman Film Agreement (entered into on May 9, 2002) and the Superman Television Agreement (entered into on December 5, 2000), respectively, including any works recaptured by Plaintiffs and the many works not subject to termination.[3] Both agreements define the "Superman" property extremely broadly.[4]

The Superman Agreements further provided that in the event of a conflict between any provision of the agreements and any law, the law "shall prevail," but "only to the extent necessary and no other provision shall be affected." Toberoff Decl., Ex. B at 14, ¶15(a).

Lastly, after Defendants had received Plaintiffs' notices of termination, DC nonetheless warranted in the Superman Film Agreement, that it is "the sole proprietor of all rights in the Property," that it owns Superman "free and clear of any liens, encumbrances, other third party interests of any kind and free and clear of any claims or litigation, whether pending or threatened," and agreed to indemnify Warner Bros. for any breach of its warranties. *Id.*, Ex. B at 11-12, ¶9. Similarly, in the Superman Television Agreement, DC warranted that it "is the sole author and owner of the work, and of all rights herein granted and assigned," and agreed to indemnify Warner Bros. for any breach of such warranty. *Id.*, Ex. C at 9, ¶3.

---

[3] *See* Toberoff Decl., Ex. B at 5-6 ("Exclusively" granting Warner Bros. "all [film and audiovisual] rights in the Property," including "[t]he right to produce audiovisual works of all types now known or hereafter devised); Ex. C at 8 (granting "exclusive worldwide television production rights.").

[4] *See* Toberoff Decl., Ex. B at 17 (Defining "Property" as "[a]ll material tangible and intangible detailing the stories and adventures of the comic book character known as 'Superman' as depicted in publications and television series, together with associated characters which have appeared (or will appear) together with 'Superman' and all now and hereafter existing rights of every kind and character whatsoever therein…."), Ex. C at 8 ("All material tangible and intangible detailing the stories and adventures of the comic book character known as 'Clark Kent' or 'Superman' as depicted in publications and television series together with associated characters which have appeared (or will appear) together with 'Clark Kent' or 'Superman' and all now and hereafter existing rights of every kind and character whatsoever therein….").

### C. Warner Bros. Must Account to Plaintiffs If the Superman Agreements Do Not Represent Superman's "Fair Market Value"

The Court ruled that Plaintiffs' notices of termination were effective and that Plaintiffs have thereby recaptured Siegel's copyright interest in *Action Comics No. 1* and any other Superman works within the termination window that were not "works made for hire." *Siegel II*, 542 F. Supp. 2d at 1143-44. DC's rights to any such recaptured copyrights would be nonexclusive by operation of law. *See Oddo v. Ries*, 743 F.2d 630, 634-35 (9th Cir. 1984). Accordingly, the Court reformed the Superman Agreements to the extent necessary to accommodate the non-exclusivity of the recaptured copyrights. *See* Toberoff Decl., Ex. A at 11:24-12:1 ("What the Court has done in reforming the contract is basically afforded or deemed that what D.C. gave to Warner Brothers was a license for the nonexclusive rights that it possessed."). *See also id.*, Ex. B at 11-12, ¶9, Ex. C at 9, ¶3.

The Court reserved for trial the question of "[w]hether the license fees paid [in the Superman Agreements] represents the fair market value therefore," *Siegel II*, 542 F. Supp. 2d at 1144, 1145, and later bifurcated the trial so that the "fair market value" issue would be tried first. *See* Toberoff Decl., Ex. D at 9.

On January 26, 2009, the Court formulated the scope of the first phase of trial as follows:

> "Given the nature and the characterization of the property in question, the trial shall determine whether the value of the various Superman option and assignment agreements and amounts paid thereunder reflect the fair market value ***of the nonexclusive rights*** that the Court has determined were transferred from D.C. to Warner Brothers and, if not, what accounting shall be required of Warner Bros. to ensure an equitable result."

*See* Toberoff Decl., Ex. A at 34:7-14 (emphasis added).

### D. Defendants Fail to Articulate a Workable Position as to the Scope of Trial

Plaintiffs wrote to Defendants on January 26, 2009 to express their concern that the Court's formulation of the scope of trial earlier that day allowed the possibility that the trial would focus solely on the "fair market value of the

nonexclusive rights" recaptured by Plaintiffs, that such a trial would be unworkable, and informed them of Plaintiffs' intention to seek clarification. Toberoff Decl., Ex. E. Plaintiffs raised two points: that the trial should concern the Superman Agreements as a whole, not the "nonexclusive rights;"[5] and that the "fair market value" analysis should not include non-exclusive rights and literary elements, as such have not yet been fully determined. *Id.*, ¶ 8, Ex. E.

Defendants agreed that the trial should focus on the Superman Agreements as a whole. *Id.*, Ex. G. Defendants maintained that the April 21 Trial will determine the fair market value of the Superman rights Warner Bros. "actually received," but skirted the second critical point, because they could not refute it. *Id.*

## III. ARGUMENT

### A. A "Transaction" Approach to the Fair Market Value Analysis Is Appropriate

#### 1. <u>The Court and Parties Have Always Focused on the Relevant Agreements as a Whole</u>

The relevant Superman Agreements between DC and Warner Bros. concerned all of DC's Superman copyrights and trademarks comprising the Superman mythos, most of which remain exclusively owned by DC. An analysis of the "fair market value" of the Superman Agreements should not include a valuation of the "nonexclusive" copyrights, as such were not separately paid for, and, in any event, have yet to be fully determined in this litigation.

The Court has identified the relevant issue for the April 21 Trial as the fair market value of the Superman Agreements. *See Siegel II*, 542 F. Supp. 2d at 1145. At the January 26, 2009 hearing, the Court emphasized that the "fair market value" of the overall *transactions* between Warner Bros. and DC is the central issue for trial.[6]

---

[5] Defendants agreed that, with respect to whether the trial should concern the transactions as a whole, that "the simple issue for trial is whether the consideration paid by Warner Bros. to DC reflects fair value for the rights Warner Bros. actually received under the agreements as reformed by the Court." Toberoff Decl., Ex. G.

[6] *See, e.g.*,Toberoff Decl., Ex. A at 7:18-20 ("whether or not the deal between D.C. and Warner Brothers was such that it was a deal at a fair market value"); 7:23-24 ("fair market

Defendants have conceded that the focus of the "alter ego" trial is whether the Superman Agreements adequately reflect the "fair market value" of the grant in its entirety. Toberoff Decl., Ex. G.[7] Plaintiffs likewise have maintained that the purpose of the April 21 Trial is to determine whether the Superman Agreements as a whole reflect the fair market value of Superman.[8]

In light of the above, it would create confusion and undermine the work of the Court and the parties if the focus of the April 21 Trial was changed from the relevant transactions as a whole to the value of indeterminate nonexclusive rights.

2. The Superman Agreements Do Not Differentiate the Compensation Payable by Warner Bros. to DC for "Nonexclusive Rights"

No separate compensation was paid by Warner Bros. to DC for "nonexclusive rights." *See* Toberoff Decl., Exs. B, C. Instead, the "nonexclusive" and "exclusive" copyrights, together with other rights, were bound up in single, integrated transactions that must be viewed as a whole. No basis exists to

---

transaction"); 35:10-11 (the Court "need[s] to know what is the value here … trying to compare apples to apples as best we can"); 35:18-20 ("whether or not this transaction between Warner Bros and D.C. was at arm's length in the sense that it was a fair, bona fide transaction in every sense of the word").

[7] *See also* Defendants' Memorandum of Contentions of Fact and Law, filed January 12, 2009 at 7:13-15 ("The Court will need to determine … whether any challenged agreement between DC and WBEI was for less than fair market value."); Defendants' [Proposed] Pre-Trial Conference Order at 14:2-6 ("As to each agreement challenged by Plaintiffs, did DC license to Warner Bros. rights to exploit the 'Superman' property for a less than market fee at the time the deal was entered into, and if so, did such below market license result in damage to Plaintiffs in the form of a calculable reduction in the profits of DC in which Plaintiffs are entitled to share?"); Defendants' Trial Brief, filed January 23, 2009, at 1:7-9 (Trial is to "determine whether any relevant agreement… was below market at the time it was entered into."); 2:11-12 (The proper analysis is of "the final terms of the deals themselves, considered in their *entirety*."); 6:17-20 (Plaintiffs must establish "that any of the relevant agreements between DC and WBEI, when considered *as a whole* in the context of industry standards, were for below fair market value.") (emphasis added); 7:17 (Defendants must establish "that the terms, considered as a whole, of the relevant Superman agreements" were for fair market value.).

[8] *See, e.g.*, Plaintiffs' Memorandum of Contentions of Fact and Law 21:27–22:1 ("Defendants should have the burden to establish their… counterclaim that their Superman agreements purportedly constitute 'fair market value' for the extremely valuable Superman copyrights."); 22:20–27:18 (analyzing the Superman agreements as a whole); 28:27–31:28 (comparing the terms of the Superman agreements to the terms of agreements for other franchise properties).

retroactively segregate or evaluate compensation paid for non-exclusive copyrights. *See, e.g., Keene v. Harling*, 36 Cal.Rptr. 98, 105 (1963) ("'If payment of a lump sum is to be made for several articles, the contract is necessarily indivisible.'") *quoting* 6 Williston on Contracts (3rd Ed.), § 862, p. 272. There is no purpose served by a comparison between the "fair market value" of DC's as yet not-fully-determined "nonexclusive rights," and the consideration in the Superman Agreements, which are "apples and oranges."

Any attempt to determine the compensation for the nonexclusive rights would necessarily expand the scope of the April 21 Trial far beyond a determination of the "fair market value" of the relevant Superman Agreements, by requiring an adjudication of the complex work-for-hire issues, a trial as to which literary elements are present in the recaptured copyrights, and an apportionment[9] of the consideration DC received for the film and television rights to all its Superman copyrights and other interests. Accordingly, it is impracticable to reasonably evaluate the "fair market value" of the nonexclusive rights at this first phase of trial. *See* Sections III(B)-(C), *infra*.

The relevant agreements were for the Superman mythos as a whole. If DC's consideration for the film and television rights to the Superman mythos is for less than "fair market value," then the result is inequitable to Plaintiffs, who participate in that consideration, regardless of the apportionment, if any, in the second phase of trial. As such, the "fair market value" of the Superman Agreements as a whole, should be the focus, as each party up until this point had safely assumed.

### B. It Is Impossible to Include Indeterminate Nonexclusive Rights in a Fair Market Value Analysis of the Relevant Agreements

The termination applies to all Superman works within the termination

[9] This Court has yet to rule whether apportionment, a copyright infringement doctrine, will even apply to the accounting portion of this matter, and the parties did not designate, in their pretrial filings for the "alter ego" trial, evidence, witnesses, or experts for the apportionment issue as it was apparent these issues would be dealt with at the second trial.

window (April 16, 1938 to April 16, 1943)[10] that were not "works made-for-hire." Any literary "elements" present in the recaptured copyrights are co-owned by Plaintiffs and DC. *See Siegel II*, 542 F. Supp. 2d at 1140. However, Superman works that are *proven* by Defendants by a preponderance of the evidence to be "works made-for-hire," or which were published subsequent to the termination window, remain exclusively owned by DC.

On partial summary judgment, the Court determined that at least *Action Comics No. 1* was recaptured by Plaintiffs. *Id.* at 1130. The work-for-hire status of the other works within the termination window remains hotly disputed, has yet to be determined, and is not the subject of the current trial.[11] Furthermore, even once the work-for-hire issues as to the remaining Superman works are decided, the issue of which Superman literary elements are in the recaptured works (*e.g.*, "super-hearing," "telescopic vision") would still need to be tried with the benefit of expert testimony.[12]

Thus, legally and logically, there is no way to incorporate the value of the "nonexclusive" Superman copyrights in a "fair market value" analysis of the Superman Agreements at the April 21 Trial, because the threshold issues of which copyrights are "nonexclusive" and the literary contents of such copyrights have yet to be fully determined, and are best suited for the second phase of trial.

///

///

///

---

[10] These consist of *Action Comics Nos. 1-54*, *Superman Nos. 1-6,* and the McClure Newspaper Strips.

[11] *See, e.g.*, Plaintiffs' Memorandum of Points and Authorities on Pre-Trial Issues Filed Pursuant to the Court's July 3, 2008 Order (filed July 21, 2008) at 29:11-35:28; Plaintiffs' Opposition to Defendants' Brief on Additional Issues (filed July 28, 2008) at 2:18-26:8; Plaintiffs' Objection and Response to Defendants' Improper Reply Brief on Additional Issues (filed August 11, 2008); and Plaintiffs' Objection and Response to Defendants' Improper Sur-Reply to Plaintiffs' Oral Argument (filed September 22, 2008).

[12] This issue is naturally one of the subjects for the second phase of trial and neither side has designated any evidence on this subject for the first phase of trial.

### C. In Practice, the "Nonexclusive Rights" Issue Is Superfluous to a Determination of the Agreements' "Fair Market Value"

#### 1. DC Provided Warner Bros. with the Economic Equivalent of Superman Exclusivity by Warranting Exclusivity and Indemnifying Warner Bros.

Once the focus is properly placed on the fair market value of the Superman Agreements, there is no need to account for the value of the indeterminate "nonexclusive rights." After Defendants had received Plaintiffs' notices of termination in 1997, DC nonetheless warranted the exclusivity of the Superman rights conveyed to Warner Bros. and ***agreed to indemnify*** Warner Bros. for anything less, thus providing Warner Bros. with the economic equivalent of *exclusive* Superman rights. *See* Toberoff Decl., Ex. B at 11-12, ¶9; Ex. C at 9, ¶3.

DC and Warner Bros. were well aware that DC was potentially ***not*** the sole owner of all the Superman works, and to compensate for that, DC and Warner Bros. included DC's indemnification, which encompassed any loss due to Plaintiffs' Termination. DC's warranty and indemnification must be taken into account when evaluating the fair market value of the transaction. *See Barker v. United States*, 200 F.2d 223, 231 (9th Cir. 1952) ("[E]ach step in an entire transaction cannot be treated separately.").

There is therefore no basis to discount the "fair market value" of the agreements because certain copyrights turned out to be "nonexclusive," as this is covered by DC's warranties and indemnification. Economically, Warner Bros. is placed in the same position as it would have been had all (as opposed to most) of the Superman rights conveyed been "exclusive."

#### 2. Warner Bros. Perpetual Superman Film and Television Rights Are *De Facto* "Exclusive" in the Entertainment Industry

The nonexclusivity of the film and television rights to the recaptured copyrights has, in any event, only a *de minimis* effect on the fair market value of the Superman Agreements as a whole. Practically speaking, Warner Bros. has had for

some time a *de facto* monopoly in the entertainment business on Superman film and television exploitation, through DC's conveyance of mostly *exclusive* Superman copyrights, trademark rights and exclusive foreign rights to any recaptured copyrights. *See Siegel II*, 542 F. Supp. 2d at 1140 ("Left expressly intact… were any of the rights… [DC] had gained over the years from the copyright through other sources of law, notably the right to exploit the work abroad."). The vast majority of the Superman copyrights conveyed were exclusive,[13] with the exception of certain early copyrights, and DC retained exclusive foreign copyrights to those.

Warner Bros. has thus consistently held itself out in the entertainment industry as holding exclusive Superman film and television rights. Practically speaking, no other studio would or could launch a competing Superman film or television project based solely on non-exclusive U.S. rights to certain Superman copyrights. Large portions of the total receipts from major motion pictures and television series are derived from foreign sources, and "foreign" revenues are essential to the viability of any major film or television project as, given their enormous budgets, it is extremely difficult, if not impossible, to turn a profit if limited to the U.S. market.[14]

Given that Warner Bros. was conveyed exclusive "foreign" rights to all Superman copyrights, exclusive worldwide rights to most Superman works (and certainly all post-April 1943 works), and exclusive Superman trademarks, and given that DC must indemnify Warner Bros. against any losses if the U.S. rights to certain early Superman copyrights are determined to be "nonexclusive," Warner Bros.' Superman film and television rights are *de facto* exclusive.

///

---

[13] This includes the copyrights to any works that are determined to be "made for hire" and all Superman works published after the close of the termination window in April 1943.

[14] This is amply illustrated by the Defendants' own calculations of its Superman revenues: 42.4% of the revenues for *Superman Returns*, and 34.7% of the revenues from *Smallville*, were "foreign" in origin. Toberoff Decl., Ex. H (Report of Defendants' Expert Franklin Johnson).

3. Defendants Should Also Be Estopped From Arguing That Their "Sweetheart Deals" Are Retroactively for "Fair Market Value" Due to the Validity of Plaintiffs' Termination

Defendants should be estopped from retroactively *leveraging* the fact that the notices of termination (served in 1997) were recently held valid to justify their "sweetheart deals." In the Superman Agreements, DC represented to Warner Bros. that it was the *exclusive* owner of the Superman property and of all the Superman rights conveyed. DC made these representations (and Warner Bros. accepted them) after Plaintiffs had served their notices of termination in April 1997. DC and Warner Bros. thereafter proceeded to contest the validity of the notices of termination on dubious concocted grounds, and waged an ongoing twelve-year war of attrition. Though enriched by the Superman property and owing Plaintiffs an accounting as of April 1999, Defendants have not shared one penny in Superman profits with Plaintiffs, under any theory of accounting, for nearly ten years.

Defendants should not be permitted to play both sides, by arguing that the "sweetheart deals" they consciously entered into are retroactively for "fair market value" due to the validity of the Termination they contested for twelve years.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this motion in its entirety.

DATED: February 20, 2009 TOBEROFF & ASSOCIATES, P.C.

By ______________________
Marc Toberoff

Attorneys for Plaintiffs JOANNE SIEGEL and LAURA SIEGEL LARSON