# EXHIBIT S

# SEND

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
### CIVIL MINUTES -- GENERAL

Case No.    CV 04-08400-SGL (RZx); CV 04-8776-SGL (RZx)        Date:  September 17, 2007

Title:    JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -v- WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS INC., a corporation; and DOES 1-10

======================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                  Theresa Lanza
Courtroom Deputy Clerk                      Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

Marc Toberoff                          Michael Bergman
                                       Roper L. Zissu
                                       Patrick T. Perkins

PROCEEDINGS:    ORDER RE OUTSTANDING DISCOVERY MATTERS

At the conclusion of the September 17, 2007, hearing on the parties' cross-motions for partial summary judgment in the Superman, CV-04-8400-SGL, and the Superboy, CV-04-8776-SGL, matters, which motions the Court then concurrently took under submission, the Court heard argument from counsel regarding outstanding discovery issues.  Except as set forth below, discovery in these matters is **ORDERED** closed:

(1)    Consistent with the September 11, 2007, Joint Stipulation of the parties, Bryan Singer is **ORDERED** to sit for a deposition by no later than November 30, 2007;

(2)    Plaintiff Laura Siegel Larson is **ORDERED** to sit for a deposition by no later than October 9, 2007, said deposition not to exceed two hours in length;

(3)    Defendant DC Comics is **ORDERED** to produce the "reserve account documents" to plaintiffs on or before Friday, September 21, 2007;

MINUTES FORM 90
CIVIL -- GEN


DOCKETED ON CM
1
SEP 1 9 2007
BY _____ 044

Initials of Deputy Clerk __jh_
Time:  3/50

(170)

**108**

(4)    Defendants are **ORDERED** to produce to plaintiffs all requested "ultimates" as referenced in the September 14, 2007, Declaration of Steven Sills at ¶¶ 10-11 by Friday, September 21, 2007;

(5)    Plaintiffs ex parte application for an order modifying the Court's August 13, 2007, discovery order is **GRANTED** in part in that plaintiffs are afforded until October 9, 2007, to complete their damages-related audit of defendants Time Warner, Inc., Warner Bros Entertainment, Inc., Warner Bros Television Production, Inc., and DC Comics.

(6)    The "escrow attorney" referenced at the hearing is directed to submit by Friday, September 21, 2007, to the Court for in camera review the nine documents which plaintiffs had either not previously produced to defendants or were not listed on a privilege log in connection with this litigation. Counsel for plaintiffs is **ORDERED** to submit a declaration on or before Friday, September 21, 2007, setting forth the grounds for any claims of privilege relating to said documents; defendants may file a response to the declaration on or before Tuesday, September 29, 2007. The motion to compel which defense counsel informed the Court has been or was being filed with the magistrate judge is hereby rendered **MOOT**.

Finally, the trial date in the Superman matter remains January 22, 2008. The trial date in the Superboy matter will be set thereafter by the Court.

**IT IS SO ORDERED.**

MINUTES FORM 90                                      Initials of Deputy Clerk __jh_____
CIVIL -- GEN                        2               Time:  3/50

**109**

# EXHIBIT T

Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
LAW OFFICES OF MARC TOBEROFF, PLC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: MToberoff@ipwla.com



COPY

CLERK, U.S. DISTRICT COURT

FILED
SEP 20 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>TIME WARNER INC., a corporation; WARNER COMMUNICATIONS INC., a corporation; WARNER BROS. ENTERTAINMENT INC., a corporation; WARNER BROS. TELEVISION PRODUCTION INC., a corporation; DC COMICS, a general partnership; and DOES 1-10,<br><br>　　　　　Defendants.<br><br>DC COMICS,<br><br>　　　　　Counterclaimant,<br><br>　　vs.<br><br>JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual,<br><br>　　　　　Counterclaim Defendants. | Case Nos.: CV 04-08400 SGL (RZx)<br>　　　　　　　CV 04-08776 SGL (RZx)<br><br>[Hon. Stephen G. Larson, U.S.D.J.]<br>[Hon. Ralph Zaresky, U.S.M.J.]<br><br>**DECLARATION OF MARC TOBEROFF FILED PURSUANT TO THE COURT'S SEPTEMBER 17, 2007 ORDER**<br><br>**DISCOVERY MATTER LOCAL RULE 37** |

I, Marc Toberoff, declare as follows:

1.    I am an attorney at the Law Offices of Marc Toberoff, PLC, counsel of record for plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs"). I am a member in good standing of the State Bar of California and submit this declaration pursuant to the Court's September 17, 2007 order. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.    On April 30, 2007 I participated in a hearing before Magistrate Zarefsky concerning Defendants' motion to compel the production of a large number of documents, many clearly confidential attorney-client communications, stolen from my law offices and delivered to Defendants, which Defendants then placed with Arnold & Porter, as "escrow holder" (the "Escrow Holder") of the stolen documents (the "Escrow Documents").

3.    At the April 30 hearing, Magistrate Zarefsky ordered me to furnish the Escrow Holder with a declaration specifically referencing, by the bates numbers, which "Escrow Documents" had already been produced and which had not been produced and listed on a privilege log, so that the Escrow Holder could appropriately disburse the Escrow Documents by the bates numbers referenced in my declaration – returning the privileged documents to my offices and releasing the non-privileged documents to Defendants' counsel. ("April 30, 2007 Order"). A true and correct copy of the transcript of the April 30, 2007 hearing is attached hereto as Exhibit "1".

4.    I drafted and furnished to Mr. Eisen a declaration which fully complied with the April 30, 2007 Order, as admitted by Defendants. Attached hereto as Exhibit "2" is a true and correct copy of my May 21, 2007 declaration. *See* the parties' September 17, 2007 Joint Stipulation at 13, a true and correct copy of which is attached hereto as Exhibit "3." ("September 17, 2007 Joint Stipulation").

5.    The vast majority of the "Escrow Documents" are privileged or have already been produced, and were designated as such in my declaration. However, 9

1

documents (4 of which are merely fax cover or confirmation sheets) of the 839 pages of "Escrow Documents" (many duplicates) did not fit squarely within the Order in the context of the April 30 hearing, and, pursuant to this Court's order of September 17, 2007, are to be reviewed by the Court *in camera*.

6.     This handful of documents fall into three categories that slipped between the "cracks" of the Order but are clearly privileged:  (i) 6 *post-litigation attorney-client communications*, which, pursuant to the parties' standing agreement (admitted by Defendants herein) need not have been listed in a privilege log to preserve the privilege (*see* Exhibit 3 (September 17, 2007 Joint Stipulation) at 32- 34); (ii) the "defamatory cover letter" enclosing and describing the contents of the stolen Escrow Documents, including many of the attorney-client communications that are identified on the privilege logs of Plaintiffs and non-party witnesses (*see* Exhibit 3 at 34-37); and (iii) 2 letters between me and Don Bulson, Esq., the attorney for Plaintiff Laura Siegel Larson's half-brother, Michael Siegel, who is a statutory beneficiary of the "Superman" termination notices, which were listed in Mr. Bulson's privilege log and properly identified as such in my May 21, 2007 declaration (*see* Exhibit 3 at 37-42).

7.     To put the anonymous "defamatory cover letter" in context, my investigation has revealed that in late 2005 the Escrow Documents were stolen from my law firm's files by a disgruntled *attorney* formerly employed by my firm, who thereafter furnished the documents to Defendant Warner Bros. Entertainment, Inc. ("Warner") under circumstances that Warner has not disclosed.

8.     This attorney, after working at my firm for just three months, disappeared without notice in November, 2005.  My investigation has revealed that in late November and early December, 2005, he then contacted Plaintiffs and tried to convince them to terminate my firm, and to retain him instead, by disparaging me with false, and often nutty, statements, and by offering to work for a reduced fee, suggesting that his actions were financially motivated.  I am informed that he did the same with another female client of mine (and that he additionally harassed her by

2

repeated phone calls and messages asking her out). I am advised by these clients that that they rejected this attorney's overtures in early *December, 2005.*

9.  The "defamatory cover letter" is rife with highly prejudicial ranting and conspiratorial speculation. More troubling, this attorney, without regard for his oath as an officer of the court, disclosed without authorization confidential attorney-client communications and work product (pre-meditatively assembled after hours) to the opposing party in the midst of a lawsuit.

10.  The "defamatory cover letter," which Warner alleges enclosed the stolen documents, states: "consider it an early holiday gift." Notwithstanding this, I was not contacted by Warner (via Arnold & Porter) about these stolen documents until July 5, 2006. Warner claimed that on June 28, 2006, three very high level executives – Alan Horn, Warner President and COO; Jeff Rabinov, President of Production, and John Schulman, Warner's General Counsel – each anonymously received packages consisting of the of the documents.

11.  I requested by letter dated July 19, 2006 to Arnold & Porter and copied to Defendants' counsel, Michael Bergman ("Bergman"), that Warner furnish the following:

> "(1) the date(s) each set of documents was received; (2) copies of all envelopes or packages enclosing the documents; (3) the method by which the documents were sent and, in the unlikely event the documents were delivered by hand, the name of the messenger (and messenger service) logged at Warner Bros. security gate and (4) any other pertinent information regarding Warner Bros.' receipt of these documents. We would also like to inspect the "original" documents and enclosing envelopes or packages as received by Warner Bros."

*See* Exhibit F of my Declaration in Opposition to Defendants' Motion to Compel Production of Whistleblower Documents, dated March 23, 2007, a true and correct copy of which is attached hereto as Exhibit "4."

12.  I thereafter received letters dated July 20, 2006 and July 24, 2006 from Mr. Bergman, and on July 24, 2006 from Arnold & Porter, but neither provided the

3

requested information. *See* Exhibit 4; Exs. G, H. By letter dated July 26, 2007 to Mr. Bergman, I reiterated Plaintiffs' demand for information regarding Warner's receipt of the stolen documents. *See* Exhibit 4, Ex. I. Mr. Bergman finally responded by letter dated July 27, 2006, repeating that the packages mysteriously arrived in envelopes at the desks of three high placed Warner executives on June 28, 2006; but claiming that Warner did not retain any of the three envelopes (or a copy of any envelopes) and stating that Warner had no mailroom, security or executive office records, notes or logs of the three substantial packages ever being signed in or received, despite the extraordinary nature of their contents. *See* Exhibit 4, Ex. J. All such information, commonly kept by Studio security, mailrooms and executive offices, had vanished.

13. The undated, anonymous cover letter discusses and discloses the substance and contents of many, if not most, of the privileged documents enclosed by the cover letter and listed in the privilege logs of Plaintiffs and alleged non-party witnesses. Specifically, the letter contains, directly and indirectly, the substance of privileged attorney-client communications and attorney work product that were contained within the confidential files at my law firm.

14. The "defamatory cover letter" is irrelevant to the subject matter of this action, and is obviously highly prejudicial; nor is it likely to lead to the discovery of admissible evidence, particularly as discovery in this action is closed. It is not subject to authentication by the author, as it was anonymous. It is also riddled with inadmissible hearsay statements. Finally, the letter refers to documents and information protected by, *inter alia*, the attorney-client privilege and work product doctrine, and would therefore be inadmissible in any event.

15. The cover letter was clearly not the subject of Defendants' March 26, 2007 Joint Stipulation regarding the escrow documents, as throughout their initial motion Defendants drew a clear line between the "Whistle-blower documents" that were the subject of its motion and the "cover letter" contained with the documents,

4

which was not. *Compare Defendants' March 26, 2007 Joint Stipulation* at 2:6-14 (requesting production of the "Whistle-blower documents") with 6:13-14 (referring to "the cover letter contained with the documents"); 6:26-27 (characterizing "the 'cover letter' that *came with* the Whistle-blower documents") (emphasis added); 7:9-10 (referring to "Whistle-blower Documents contained with the letter"); 7:17-19 (referring to attorneys perusal of "the contents of the cover letter and my brief thumbing through the documents"); and 16:17-21:28 (referring repeatedly to the "Whistle-blower Documents" and never mentioning the cover letter.) Attached hereto as Exhibit "5" is a true and correct copy of the parties' March 26, 2007 Joint Stipulation Re: Defendants' Motion to Compel Production of Whistleblower Documents.

16. Plaintiffs' opposition to Defendants' original motion to compel specifically states at page 37, footnote 10, that the cover letter, in discussing the stolen attorney-client communications accompanying it, discloses information protected by the attorney-client privilege and the work product doctrine. *See* Exhibit 5 at 37. However, the cover letter was not discussed by either party at the April 30, 2007 hearing before Magistrate Zarefsky, as it did not appear to be a part of Defendants' motion to compel. *See* Exhibit 1 at 7:25- 20:5.

17. Plaintiffs and I did not authorize this illicit letter. Plaintiffs cannot be held to have consented to the release of the privileged information and work product contained therein, or to have waived the privilege, as the unauthorized disclosure of protected attorney-client information or documents does not waive attorney-client privilege. *See* Exhibit 3 at 35-37.

18. The cover letter, in disclosing privileged information contained in the attorney-client communications *listed in Plaintiffs' and third party privilege logs*, falls within the rationale and spirit of Magistrate Zarefsky's April 30, 2007 order as a document that should not be released to Defendants.

19.    Defendants have also demanded that the Escrow Holder, David Eisen, Esq., turn over two obviously privileged communications between Plaintiffs and me from *after the commencement of litigation.* Defendants cling to the absurd and inequitable position that there has been a waiver of these plainly privileged communications because such were not listed on a privilege log, even though Defendants admit, as they must, that *the parties have a longstanding agreement pursuant to which neither side was supposed to list post-litigation attorney-client communications on a privilege log.* See Exhibit 3 at 13. Per this agreement, Defendants and Plaintiffs have not listed hundreds of post-litigation communications on any privilege log. These two communications are clearly subject to this standing agreement, and the fact they were stolen from my law offices in no way changes this.

20.    These privileged e-mails were specifically discussed on page 30 of Plaintiffs' portion of the parties' March 26, 2007 Joint Stipulation regarding the escrow documents as follows: "There are also 2 privileged e-mail communications between Plaintiffs and their present counsel dated after commencement of this action which were not listed in Plaintiffs' privilege logs because the parties have agreed not to list post-complaint attorney-client communications on their respective privilege logs." *See* Exhibit 5 at 30.

21.    Additionally, in paragraph 22 of my March 23, 2007 declaration in opposition to defendants' motion to compel, I specifically mentioned the two privileged e-mails, and explained to the Court that these post-litigation communications were not listed on a privilege log because "the parties to this action have agreed not to list post-complaint attorney-client communications on their respective privilege logs." *See* Exhibit 4.

22.    It is my belief that Magistrate Zarefsky did not intend by his April 30, 2007 Order that such clearly privileged communications be produced. No fair reading of the Order's rationale, as well as common sense, could give Defendants

6

access to privileged communications, to which they would not otherwise be entitled, because such documents were pilfered from my legal files.

23. On behalf of Don Bulson ("Bulson"), the former attorney of Laura Siegel Larson's stepbrother, Michael Siegel, I served a privilege log on October 23, 2006 in response to Defendants' subpoena. The items listed on this privilege log included two letters we wrote to each other. *See* Exhibit 4, Ex. O.

24. Magistrate Zarefsky's April 30, 2007 Order encompassed and protects documents such as these two communications listed on third party privilege logs and referenced in my March 23, 2007 declaration. *See* Exhibit 1, at 19:16- 20:6. In fact, my declaration referenced several Escrow Documents by bates numbers on third party privilege logs that Defendants acknowledge are covered by the Order and have not challenged. *See* Exhibit 2 at 6:13-14, 22; *see also* Declaration of Michael Bergman in Support of Defendants' Motion to [sic] Compliance With the Court's 4/30/07 Order and Motion For Sanctions ("Bergman Decl."), Ex. E, a true and correct copy of which is attached hereto as Exhibit 6. Defendants, nonetheless, belatedly chose to impermissibly challenge the assertion of the joint interest privilege with respect to these two communications.

25. Mr. Bulson's privilege log was served on Defendants long ago on October 23, 2006, and listed the two documents as communications between Mr. Bulson and myself. Exhibit 4, Ex. O. Plaintiffs' privilege logs were also served long ago on July 20 and September 29, 2006. Exhibit 4, Exs. L, M. Defendants could easily have moved in this Court to compel Plaintiffs' production of these two documents within the discovery and motion deadlines. They did not do so, and instead attempted to "bootstrap" this new motion to compel after the cut-off into their September 17, 2007 Joint Stipulation regarding the April 30, 2007 Order *after the deadline for discovery motions has long passed. See* Stipulation Regarding Scheduling Order entered March 19, 2007. For the Court's information, Defendants

7

did file a motion to compel against Mr. Bulson in the United States District Court for the Northern District of Ohio, which motion is pending.

26. The two letters exchanged between me and Mr. Bulson were designed to further a joint legal strategy between my clients, Joanne Siegel and Laura Siegel Larson, and Mr. Bulson's then-client, Michael Siegel, with respect to the "Superman" termination notices ("Terminations"), of which both Mr. Bulson's and my clients were beneficiaries under 17 U.S.C. § 304(c). These communications necessarily concerned prior settlement discussions with Defendants and anticipated litigation regarding the Termination. Considering the financial value of the "Superman" property, such litigation was a virtual inevitability in the absence of settlement.

27. Such communications amongst the attorneys of Jerome Siegel's statutory heirs under 17 U.S.C. § 304(c) (*i.e.*, Plaintiffs and Michael Siegel) in anticipation of litigation regarding the Termination, of which they are the beneficiaries, is precisely the sort of communications the joint interest privilege is designed to protect. *See* Exhibit 3 at 38-42. Therefore, the Bulson documents are protected by the applicable joint interest privilege and work product doctrine, which are not waived by disclosure to Mr. Bulson.

28. In compliance with Magistrate Zarefsky's April 30, 2007 Order, my declaration matched the escrow bates numbers of the two Bulson letters to the corresponding entries on Mr. Bulson's *privilege log*. *See* Exhibit 2; Exhibit 4, Ex. O. There was certainly no requirement in the Order that privileged documents/privilege log listings be cross-referenced on multiple privilege logs to sustain the privilege. *See* Exhibit 1 at 19:8- 20:5. As such, the Bulson documents were to be returned and not released to Defendants by the Escrow Holder, per the April 30, 2007 Order.

29. In response, Defendants' counsel, Michael Bergman, wrote to the Escrow Holder on May 22, 2007, improperly challenging the assertion of the joint interest privilege in Bulson's log, as if the Escrow Holder were the Court, and

demanding the release of the documents on this alleged newfound basis. *See* Exhibit 6, Ex. E.

30. In his May 22, 2007 letter, Mr. Bergman *admits* that "'escrow documents' originally listed on the privilege logs of non-party witnesses should not be released." *Id.* However, one paragraph later, he claims that the two documents listed on the privilege log of Mr. Bulson, a non-party attorney, must be turned over, while citing no rationale or authority for this exception to the April 30, 2007 Order. *Id. See* Exhibit 3 at 39-42.

31. On July 24, 2006, Defendants filed a motion to compel challenging the sufficiency and format of Plaintiffs' privilege logs. By order dated August 18, 2006, Magistrate Zarefsky denied Defendants' motion, ruling that "the Court notes that the log appears to follow the form suggested in a commonly used treatise, W. Schwarzer, W. Tashima and J. Wagstaffe, Federal Civil Procedure Before Trial, Form 11:A (Rutter 2006). Moreover, the log appears to have the same information which the Court found sufficient in *Dole v. Milonas*, 889 F.2d 885 (9th Cir. 1989). Accordingly, this Court finds that by providing this log, the Plaintiffs have sufficiently asserted the attorney-client privilege and the work product doctrine." *See* Exhibit 4, Ex. A. Mr. Bulson's privilege log followed the same standard format approved by Magistrate Zarefsky. *See* Exhibit 4, Ex. O.

32. Thus, the Bulson documents are protected by the applicable joint interest privilege and work product doctrine, as properly noted on his privilege log.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on September 20, 2007 in Los Angeles, California.



Marc Toberoff

9

# EXHIBIT U

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-08400-SGL (RZx)                                      Date:  September 26, 2008

Title:    JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -*v*-
          WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
          corporation; DC COMICS INC., a corporation; and DOES 1-10

=======================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                                    None Present
          Courtroom Deputy Clerk                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None present                             None present

PROCEEDINGS:    ORDER REGARDING ESCROW DOCUMENTS

        The Court has been called upon to resolve a dispute over the disposition of certain documents (hereinafter "escrow documents") in the possession of attorney Mr. David Eisen at the law firm Arnold & Porter.  Given the passage of time, some background is in order.

        In June, 2006, three employees at Warner Bros. Entertainment, Inc. (including the company's then general counsel, Mr. John Schulman) received packages containing documents relating to the present litigation (the aforementioned escrow documents) from an anonymous source.  The documents in question contained embarrassing and potentially questionable conduct by plaintiffs counsel in this case.  The Vice President for Warner Bros., Mr. Wayne Smith, thereafter undertook the following steps: (1) He reviewed each document but ceased such review when it became apparent that the document was privileged, (2) contacted plaintiffs' counsel and advised him that the documents had been received, and (3) refrained from using any information in the documents unless and until there was either an agreement with opposing counsel or the court had determined how to proceed with the document's disposition.  Moreover, Mr. Smith and Mr. Schulman further decided to turn the documents over to a neutral third party pending resolution of the disposition of the escrow documents, either pursuant to the agreement of the parties or order of the Court.

MINUTES FORM 90                                                        Initials of Deputy Clerk: jh
CIVIL -- GEN                              1

**122**

Magistrate Judge Zarefsky was the discovery judge in this matter at the time the escrow documents in question were received by company employees at Warner Bros.  On June 30, 2006, the escrow documents were turned over to the escrow agent. The escrow agent thereafter Bates-stamped a set of the escrow documents and then sent a copy of the same to plaintiffs' counsel, Mr. Toberoff.  The originals remained in the agent's possession in escrow.

On August 7, 2006, defendants served a request on plaintiffs for the production of the escrow documents, requesting, in particular, "[a]ll Writings referenced in the July 5, 2006 letter from [the escrow agent] to, among others, Marc Toberoff, Esq. and which were attached to or enclosed with the July 18, 2006, letter from [the escrow agent] to Marc Toberoff, Esq."  Plaintiffs' thereafter filed a response on September 6, 2006.  Subsequently, in connection with another discovery matter, Magistrate Judge Zarefsky ordered that plaintiffs "produce all privilege logs, including any revisions, by September 29, 2006."  In the subsequently-produced privilege log, plaintiffs' counsel allegedly did not assert privilege in the escrow documents.  At this point, defendants filed a motion to compel plaintiffs and their counsel to produce all non-privileged escrow documents not identified on any privilege log.

Defendants' motion to compel was heard by Magistrate Judge Zarefsky on April 30, 2007. During the hearing, plaintiffs' counsel asserted that, except for two documents, all of the escrow documents had been either previously produced to defendants or had been listed on a privilege log:

> COURT: The question is: Have you otherwise produced [the documents]?  That's all that's all at issue, isn't it?
>
> MR. TOBEROFF: I have, your Honor.  I have put in a declaration unequivocally that even though I'm not obliged to do so, and jump through hoops of having to respond and own up to documents stolen from my legal files, an obligation that does not apply to the defendants in this case and does not apply to parties under Rule 34, I nonetheless went through every single one of those documents, which they, instead of returning the originals, returned to me with Bate stamps, checked it against our production, and found two documents that were non-privileged that hadn't been produced that consisted of letters from plaintiffs to DC Comics, which I produced.
>
> COURT: See, your declaration doesn't quite say that, Mr. Toberoff.  I read your declaration.
>
> MR. TOBEROFF: The intention of the declaration is to say exactly what I'm saying now; that I went through my files, not just the plaintiffs' files, which is all the motion pertains to, but all my files, all the third-party witness files —

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                                    2

COURT: Forgive me for interrupting.  Your declaration does say that.  What your declaration doesn't say is that you went through these, let's call them [escrow] documents, even though that may not be an accurate statement, you went through these [escrow] documents, and that you verified that each of the [escrow] documents either had been produced or had been listed on the privilege log.  It doesn't say that.

MR. TOBEROFF: That is the case, your Honor, and that was certainly my intention to say that, and I'm saying that now.

COURT: All right, then we can get that cleared up immediately.

MR. TOBEROFF: I'd be happy to take an oath and say that, because that is precisely what I did.

That during the hearing, Magistrate Judge Zarefsky, noting that the previously provided declaration was unclear, issued the following Order:

COURT: Now I told you, Mr. Toberoff, that I saw a little wiggle room in your declaration.  You tell me you didn't mean for there to be any.  So, here's what I'm going to do.  Not later than May 7th, that's a week from today, I want you to submit a declaration that does identify by the Bates numbers of the escrow documents and the corresponding Bates numbers of documents already produced, those among the escrow documents which are unprivileged and have already been produced.

So, you take the Bates numbers of the escrow documents and say, "Here are the corresponding Bates numbers of the documents that have already been pr<u>and correspond to the listings on the privilege log of the documents which have not been produced because they were privileged</u>. All right?  So, put that in your declaration.

Then the escrow holder . . . is to return to the plaintiffs any documents which are identified in the declaration as being privileged and having been identified on the privilege logs.

<u>The others can be delivered to trial counsel for defendants because they're either unprivileged, or, if they were privileged, privilege has been waived because they weren't listed on the privilege log</u>

. . . .

Do you understand what I've ordered you to put in the

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                                    3

**124**

declaration?

        MR. TOBEROFF: I do, your Honor.

(emphasis added).  Magistrate Judge Zarefsky then repeated the outline of his Order to plaintiffs' counsel towards the end of the hearing: "Privileged documents get returned.  <u>The privilege documents that were listed on the privilege log get returned</u>.  The others get sent to defense counsel." (emphasis added).

On May 21, 2007, plaintiffs' counsel produced the declaration required by Magistrate Judge Zarefsky.  The declaration asserted privilege for the first time for a number of documents in escrow that had neither  been listed previously on a privilege log nor had been previously produced.  That plaintiffs' counsel's declaration went beyond the bounds of Magistrate Judge Zarefsky's order was made plain by a cover letter attached to his May 21, 2007, declaration: "Any documents not identified in my declaration as listed in a privilege log or as previously produced to defendants are to be produced to defendants, <u>with the exception of the clearly privileged litigation communications identified in my declaration</u>."  (emphasis added).

Not surprisingly a dispute quickly ensued between the parties over whether plaintiffs' counsel's declaration sought to exclude from production to defendants categories of escrow documents ordered to be produced by Magistrate Judge Zarefsky's Order.  The matter was presented to this Court when Magistrate Judge Zarefsky had to step aside from serving as the discovery judge in this matter due to attend to personal matters.

The Court ordered the escrow agent to submit the particular escrow documents in question (the ones plaintiffs' counsel was asserting privilege for the first time) for an <u>in camera</u> review and ordered plaintiffs' counsel to submit a declaration "setting forth the grounds for any claim of privilege relating to said documents."  Both steps were eventually done and the Court is now in the possession of both.

Upon reflection the Court finds that plaintiffs' counsel's newly asserted claims for privilege are not well-taken. Pursuant to Magistrate Judge Zarefsky's order, any claim of privilege not previously asserted before that Order was deemed "waived."  Although plaintiffs suggest that such a reading of Magistrate Judge's order as not a fair one and lacks common sense, the language of his order is clear and unambiguous: Any escrow document not matching up to the privilege log or the declaration's list of previously-produced documents was to be produced to defendants; any assertion of privilege to such documents to be produced was deemed "waived."  That plaintiffs' counsel may have a basis to assert such privilege or otherwise challenge the propriety of producing such material on relevance grounds, etc., is inapposite.  If plaintiffs wished to press such new claims of privilege or any other basis for challenging production of the same, Magistrate Judge Zarefsky's Order deemed them waived.  What plaintiffs' counsel should have done at that point to preserve such assertions was to appeal Magistrate Judge Zarefsky's Order to this Court, in particular that section of his Order deeming any previously un-asserted grounds of privilege to be "waived."  Plaintiffs did not do so, and the time to appeal Magistrate Judge Zarefsky's Order to this

MINUTES FORM 90  
CIVIL -- GEN                 4                 Initials of Deputy Clerk: jh

CV 04-08400-SGL (RZx)
JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual v WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS INC., a corporation; and DOES 1-10
MINUTE ORDER of September 26, 2008

Court has long since expired.  See Local Rule 72-2.1.

Magistrate Judge Zarefsky's Order is now the law of the case in this matter.  Plaintiffs' argument that the parties had reached an agreement beforehand that any post-litigation attorney-client communications did not have to be listed in a privilege log to preserve its privilege status is, as explained in defendants' supplemental declaration to the Court's Order, simply mistaken.

Accordingly, pursuant to the terms of Magistrate Judge Zarefsky's Order, the escrow agent is **ORDERED** to produce to defendants' counsel forthwith any escrow document not previously listed in a privilege log or as having been previously been produced.  That is to say, the escrow agent is to match up the escrow documents with the privilege log entries and production documents listed in Mr. Toberoff's May 21, 2007, declaration.  Thus, the nine documents produced by the escrow agent to the Court for in camera review are to be produced to defendants' counsel as those documents were not previously identified in a privilege log provided by plaintiffs.

**IT IS SO ORDERED.**

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                                    5

# EXHIBIT V

ARNOLD & PORTER LLP

David S. Eisen
David.Eisen@aporter.com

213.243.4192
213.243.4199 Fax

44th Floor
777 South Figueroa Street
Los Angeles, CA 90017-5844

October 8, 2008

*Via Facsimile*

Michael Bergman, Esq.
Weissmann Wolff Bergman Coleman
  Grodin & Evall, LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, CA  90212

Marc Toberoff, Esq.
Law Offices of Marc Toberoff
2049 Century Park East, Suite 2720
Los Angeles, CA  90067

Re:     Siegel & Larson v. Time Warner, Inc.

Gentlemen:

I have had an opportunity to review Judge Larson's September 26, 2008
order, and to review prior correspondence in an effort to reconstruct where we
are and carry out Judge Larson's request.  I had previously informed you that
prior orders had been unclear as to whether I was to produce to Mr. Bergman:
(1) post-litigation communications, (2) the undated cover letter, and (3)
documents identified in the privilege log of a third party.  By ordering me to
produce the *in camera* documents to Mr. Bergman, Judge Larson has
answered each of those in the affirmative.  The only other issue was whether I
was supposed to compare escrow documents to plaintiff's privilege logs, and
produce any documents not accurately described.  Judge Larson also
answered that in the affirmative.

Accordingly, it appears that my remaining task is to compare the
privilege logs to the documents, and to produce to Mr. Bergman all escrow
documents except those accurately described on the privilege logs.  Mr.
Toberoff's May 21, 2007 declaration lists the following escrow documents as
present on either plaintiff's July 19, 2006 privilege log, or September 29, 2006
privilege log (some of which documents are duplicative of one another:

**128**

# ARNOLD & PORTER LLP

Michael Bergman, Esq.
Marc Toberoff, Esq.
October 8, 2008
Page 2

| | |
|---|---|
| Q27-33 | Q388-393 |
| Q87-89 | Q394-399 |
| Q90-95 | Q425-429 |
| Q96-104 | Q430-452 |
| Q105-127 | Q477-482 |
| Q128-131 | Q483-488 |
| Q132-137 | Q496-499 |
| Q138-145 | Q589-596 |
| Q146-151 | Q597-605 |
| Q152-157 | Q606-609 |
| Q158-163 | Q621-623 |
| Q164-171 | Q629-634 |
| Q175-199 | Q660-665 |
| Q250-254 | Q666-671 |
| Q310-313 | Q697-701 |
| Q316-323 | Q702-724 |
| Q324-332 | Q749-754 |
| Q333-335 | Q755-760 |
| Q345-350 | Q768-771 |
| Q353-360 | |

Obviously, it is not my role to determine whether these documents are privileged or not. I will simply match these documents to the corresponding privilege log citation in Mr. Toberoff's declaration, and to the extent they do match, I will not produce them to Mr. Bergman. With those exceptions, I will produce all of the escrow documents to Mr. Bergman, and will endeavor to do so Friday, October 10, 2008. I will simultaneously send Mr. Toberoff those documents which do match plaintiff's privilege logs, and I will not retain any copies of any of the escrow documents.

Sincerely,

DAVID S. EISEN

**129**

# EXHIBIT W

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* ALSO ADMITTED IN NEW YORK

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

October 9, 2008

<u>Via E-Mail</u>

David Eisen, Esq.
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844

Re:    <u>Superman/Superboy Litigations, Case Nos. 04-CV-8400, 8776 SGL (RZx)</u>

Dear Mr. Eisen:

I write to follow up on both your faxed letter dated October 8, 2008, and our subsequent conversation yesterday evening, concerning the disposition of the so-called "Escrow Documents" under the Court's September 26, 2008 Order ("Order"). Your letter has misconstrued the Order by taking the incorrect positions that: (a) Escrow Documents properly listed in the privilege logs of third-parties are to be released to defendants; and (b) you are to determine whether the Escrow Documents listed in the relevant privilege logs were "accurately described," so as to preserve the claimed privilege. Both these interpretations go well beyond the narrow scope of the Order, self-servingly further defendants' strategies to abuse the theft of numerous legal files from our offices, and, frankly, cast doubt on your role as a "neutral" and an "escrow agent," as represented by defendants to the Court.

## A.    <u>Documents Listed on Third-Party Privilege Logs</u>

To release to defendants Escrow Documents properly listed on the privilege logs of third parties fundamentally misreads the Order, and has no basis in law or logic. The Order states:

> "[T]he escrow agent is ORDERED to produce to defendants' counsel fortwith any escrow document not previously listed **in a privilege log** or as having been previously been produced. That is to say, the escrow agent is to match up the escrow documents with the privilege log entries and production documents **listed in Mr. Toberoff's May 21, 2007, declaration**. Thus, the nine documents produced by the escrow agent to the Court for <u>in camera</u> review are to be produced to defendants' counsel as those documents were not previously identified in a privilege log provided by plaintiffs." (emphasis added)

**131**

**TOBEROFF & ASSOCIATES, P.C.**

David Eisen, Esq.
October 9, 2008
Page 2

The Order is clearly referring to both plaintiffs' privilege logs and those of third parties, as numerous third-party privilege logs *were* listed in the May 21, 2007 Declaration of Marc Toberoff, including the privilege logs of Kevin Marks, Esq. (page 1), Don Bulson, Esq. (page 2) and Warren Peary and Jean Peavy (the "Shusters") (page 3).

Moreover, defendants repeatedly stated in their pursuit of these stolen documents that they *were not* seeking the production of documents listed on third-party privilege logs.  Defendants' original motion to compel regarding the Escrow Documents sought the production of "all of the Whistle-blower documents that they now claim are privileged but that were not included on any privilege log."  *See* Joint Stipulation Re: Defendants' Motion to Compel Production of Whistle-blower Documents, filed March 23, 2007, at 2:12-14.  Defendants later reinforced this by stating that they "seek on this narrow motion the production of those Whistle-blower documents that have never been identified on *any* privilege log." *See* Defendants' Supplemental Memorandum of Points and Authorities in Support of Their Motion to Compel Production of Whistle-Blower Documents, dated April 2, 2007, at 5:11-13.

On May 22, 2007, in a letter to you responding to plaintiffs' May 21, 2007 declaration, defendants specifically confirmed that "**Mr. Toberoff is correct that Escrow Documents that were originally listed in the privilege logs of non-party witnesses should not be released**." *See* Exhibit "A" (emphasis added).   That letter instead described  a handful of specific documents that had not been addressed at the hearing before Magistrate Zarefsky, and thus fell through the cracks of his oral "order" and remained at issue, namely the anonymous "undated cover letter," a couple of "post-litigation attorney-client communications," and a couple pieces of "correspondence between Mr. Toberoff and Mr. Bulson." *Id.*

Furthermore, when defendants submitted their joint stipulation specifically addressing these nine documents on September 17, 2007, the *only* documents on third-party privilege logs at issue were the two letters listed on Don Bulson's log because they were subject to a separate motion to compel in the Northern District of Ohio.  Defendants challenged the claim of a joint-interest privilege for these documents, and the Court granted their motion.  These are the only two "Bulson" documents in the Escrow Documents.  As noted above, defendants have conceded and not challenged the validity of the other third-party privilege logs.

Finally, when the Court issued its September 17, 2007 minute order, it directed *only* that the nine documents in dispute – specifically, the "undated cover letter," post-litigation attorney-client communications, and the documents listed solely in the privilege log of Don Bulson – be submitted to the Court for *in camera* review.  *See* Exhibit "B" at 2.

Thus defendants have conceded on numerous occasions, as they must, that Escrow Documents listed on third-party privilege logs are not to be released to them.  Moreover, there is no legal basis whatsoever to override such privilege logs and release attorney-client communications of third parties. In light of your concerted "stretching" of the Order, to suddenly contemplate

**132**

**TOBEROFF & ASSOCIATES, P.C.**

David Eisen, Esq.
October 9, 2008
Page 3

releasing such privileged communications to defendants is extremely troubling and reasonably casts doubt on your neutrality in this matter.

**B.      The "Matching Up" Process**

The Order simply directs the escrow agent to "match up the escrow documents with the privilege log entries and production documents." This is expressly made "pursuant to the terms of Magistrate Judge Zarefsky's Order" of April 30, 2007.  That order, given orally, was as follows:

> "…I want you to submit a declaration that does identify by the Bates numbers of the escrow documents and the corresponding Bates numbers of documents already produced, those among the escrow documents which are unprivileged and have already been produced. So, you take the Bates numbers of the escrow documents and say, 'Here are the corresponding Bates numbers of the documents that have already been produced.'  Take the Bates numbers of the escrow documents and correspond to the listings on the privilege log of the documents which have not been produced because they were privileged.  All right?  So, put that in your declaration. Then **the escrow holder, Mr. Bergman [sic], is to return to the plaintiffs any documents which are identified in the declaration as being privileged** and having been identified on the privilege log. The others can be delivered to trial counsel for defendants because they're either unprivileged or, if they were privileged, privilege has been waived because they weren't listed on the privilege log."

*See* Exhibit "C" at 19:8-20:5.

In response to a question from plaintiffs' counsel, Magistrate Zarefsky further clarified this mechanical process:

> "So, put that in your declaration. Then the escrow holder, Mr. Bergman, is to return to plaintiffs any documents which are identified in the declaration as being privileged and having been identified on the privilege logs. The others can be delivered to trial counsel for defendants….
>  "For example, Bates number, let's call it 'escrow'…Escrow document 00004 corresponds to previously produced document 00006.  Escrow document 00007 corresponds to previously produced document 00009, and so on…Privilege escrow document 00015 is a privilege document which was listed on the privilege log as document such and such… Privilege documents get returned.  The privilege documents that were listed on the privilege log get returned.  The others get sent to defense counsel."

*Id.* at 19:16- 20:3; 30:7-24.

Thus, the April 30, 2007 order directs only that the escrow documents "correspond" to those listed on privilege logs.  The order does *not* contemplate an inquiry into the validity of the claims

**133**

**TOBEROFF & ASSOCIATES, P.C.**

David Eisen, Esq.
October 9, 2008
Page 4

of privilege made for these documents or for the "escrow holder" to adjudicate whether the escrow documents were "accurately described," as set forth in your October 8, 2008 letter. In fact, the validity of plaintiffs' privilege log had previously been challenged by defendants and sustained by Magistrate Zarefsky by Order dated August 18, 2006, finding that the "descriptions in the log were sufficient" to assert privilege. *See* Exhibit "D" at 5:16-27. This order was never appealed to the Court under L.R. 72-2.1 and thus is the "law of the case." It would be manifestly improper for defendants to circumvent that ruling under the guise of retaining an ostensibly "neutral" escrow agent to evaluate plaintiffs' claims of privilege and the adequacy of plaintiffs' privilege logs.

In addition to the "nine documents," defendants' September 17, 2007 motion also sought to have the "escrow agent" undertake a search for and review of additional "escrow documents" for which defendants wanted to challenge the claim of privilege. Plaintiffs specifically objected to this as well beyond the function of an "escrow agent," and the Court did not order this expanded review. Instead the Court limited its review to the nine documents submitted in camera:

> "The 'escrow attorney' referenced at the hearing is directed to submit by Friday, September 21, 2007, to the Court for an in camera review the nine documents which plaintiffs had either not previously produced to defendants or were not listed on a privilege log *in connection with this litigation.* Counsel for Plaintiffs is ORDERED to submit a declaration on or before Friday, September 21, 2007, setting forth the grounds for any claims of privilege relating to said documents; defendants may file a response to the declaration on or before Tuesday, September 29, 2007. The motion to compel which defense counsel informed the Court has been or was filed with the magistrate judge is hereby rendered MOOT."

*See* Exhibit C at 2.

Given the context of these rulings, it is obvious that the Court's September 26, 2008 Order was intended to supplement Magistrate Zarefsky's April 30, 2007 order as to the nine documents submitted in camera, not to go beyond its terms. Judge Larson expressly held Magistrate Zarefsky's order was the "law of the case in this matter," and that its September 26, 2008 Order was made "pursuant to the terms" of such order. Magistrate Zarefsky's order required only a mechanical "matching up" of the documents, not an evaluation, as such is well beyond the simple role of an escrow agent. This is only bolstered by the fact the Court at no point suggested that any documents *other than the nine documents* involved in the September 17, 2007 Order be turned over to the Court for in camera review.

Pursuant to the portion of the Court's Order stating that you are "to match up the escrow documents with the privilege log entries and production documents listed in Mr. Toberoff's May 21, 2007 declaration" you are to simply match up the "escrow documents" identified by Bates numbers in the declaration with the numbered *entries* on the privilege logs identified in the declaration. Contrary to your letter it is not your permissible role or function to adjudicate

**134**

**TOBEROFF & ASSOCIATES, P.C.**

David Eisen, Esq.
October 9, 2008
Page 5

whether the privilege log entries are proper or "accurately described." Consistent with Magistrate Zarefsky's April 30, 2007 order and August 18, 2006 orders, you are neither required nor permitted to engage in a substantive evaluation of the sufficiency of the privilege logs or the privileged status of the communications.

**C.      Further Actions**

Plaintiffs have abstained from filing an *ex parte* application for relief in this matter due to the Court's December 12, 2007 order directing that no further *ex parte* applications be filed in discovery matters.  As noted in our September 30, 2008 letter to you and defendants' counsel, plaintiffs will shortly bring a motion regarding the Escrow Documents and request that you take no further action with respect to the Escrow Documents.

Finally, as I advised you on the phone, as an escrow agent, you owe a fiduciary duty to plaintiffs as well as to the defendants who have retained you and pay for your services.  *See Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.*, 27 Cal. 4th 705, 711 ("An escrow holder is an agent and fiduciary of the parties to an escrow.").  In the event that you release any privileged Escrow Documents keyed in my May 21, 2007 declaration by bates numbers to the privilege logs, plaintiffs and those third parties whose privilege has been violated will have no choice but to pursue all appropriate legal remedies.

Please feel free to telephone me with any questions regarding the above.

Very truly yours,

Marc Toberoff

cc:     Michael Bergman, Esq. (via email)
        Patrick Perkins, Esq. (via email)
        James Weinberger, Esq. (via email)

**135**

# EXHIBIT A

VIA FAX (w/o enclosures)
VIA MESSENGER

May 22, 2007

David S. Eisen, Esq.
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angles, California 90017

**Michael Bergman**
a professional corporation
mbergman@wwllp.com

Our File No. 2231.811

Re:   *Joanne Siegel and Laura Siegel Larson v. Time*
      *Warner, Inc., et al.*
      USDC Central District of CA, Case No. 04-08776 SGL (RZx)
      *Joanne Siegel and Laura Siegel Larson v. Time Warner, Inc., et al.*
      USDC Central District of CA, Case No. 04-08400 SGL (RZx)

Dear Mr. Eisen:

We have received a copy of Marc Toberoff's sworn declaration, which he served on you yesterday pursuant to Judge Zarefsky's April 30, 2007 Order, along with an accompanying cover letter setting forth Mr. Toberoff's interpretation of the Order.

While Mr. Toberoff is correct that Escrow Documents that were originally listed on the privilege logs of non-party witnesses should not be released, he is incorrect in his assertion that unlisted post-litigation documents should not be released. Mr. Toberoff represented to Judge Zarefsky that each of the Escrow Documents had been produced or had been listed on a privilege log. (*See* Transcript, enclosed herewith, at 10:17 - 11:25). Notably, he did not inform Judge Zarefsky – as he is now asserting – that there were post-litigation documents that he had neither identified on a privilege log nor produced. Based on what Mr. Toberoff expressly represented during the hearing, Judge Zarefsky entered his Order, which is unequivocal and does not make any exception for post-litigation documents: "the escrow holder, Mr. Bergman [sic], is to return to the plaintiffs any documents which are identified in the declaration as being privileged and having been identified on the privilege logs. The others can be delivered to trial counsel for defendants because they're either unprivileged, or, if they were privileged, privilege has been waived because they weren't listed on the privilege log." (*See* Transcript at 19:8-20:18). If Mr. Toberoff disagreed with the Order, he could have filed objections within 10 days, as provided by Local Rule 72-2. He chose not to do so, however, and because those documents were neither identified on a privilege log nor produced, they must be released to Defendants pursuant to Judge Zarefsky's Order.

To assist you in your review, we have compiled the documents Mr. Toberoff has identified in his declaration as having previously been produced, which we have

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
9665 WILSHIRE BLVD. NINTH FLOOR, BEVERLY HILLS, CA 90212  T: 310.858.7888 F: 310.550.7191 WWW.WWLLP.COM

331458_1.DOC

EXHIBIT __E

384

137

David S. Eisen, Esq.
May 22, 2007
Page 2

enclosed so that you can compare them to the Escrow Documents in your file. We have also enclosed the privilege logs he cites to so that you can compare the privilege entries to the Escrow Documents in your file. It is Defendants' position that any document that does not match up exactly to an identified entry on the privilege logs should not be returned to Mr. Toberoff, but should instead be produced to Defendants. We note in particular that one of the Escrow Documents that Wayne Smith placed in the "non-privileged" pile during his brief review of the documents – correspondence concerning the interest in Superman that might be owned by Plaintiff Laura Siegel's estranged step-brother, Michael Siegel – has never been produced in this litigation, and does not appear to have been listed in any privilege log. (See Declaration of Wayne M. Smith in Support of Defendants' Motion to Compel Production of Whistle-blower Documents, ¶ 9).[1] Nor does it appear to have been identified in the declaration Mr. Toberoff sent to you. We are accordingly concerned that the items listed in Mr. Toberoff's declaration as privileged precisely match the identified Escrow Documents in your possession.

Moreover, Mr. Toberoff has identified certain documents as appearing on the privilege log of Don Bulson, who is counsel for Michael Siegel (Q 40, 57-58, 75-76, 352, 400-401, 489-90, 672-673, 761-762). From the privilege log, these documents appear to be correspondence between Mr. Toberoff and Mr. Bulson. As such, on Mr. Bulson's log, the basis for withholding the documents is the common interest exception to the privilege waiver. (The propriety of Mr. Bulson's assertion of the common interest exception is the subject of a pending motion to compel in the Northern District of Ohio.) However, it must be noted that Mr. Toberoff has not identified any corresponding copies of these documents on the Siegel privilege logs, which undermines any claim of common interest. With respect to these documents, we believe that they should have been identified on both a Siegel log and the Bulson log to qualify for the common interest exception. Accordingly, these documents should be turned over as well.

In sum, Judge Zarefsky's Order requires that you turn over every Escrow Document that was not previously produced by Plaintiffs or was not previously identified on Plaintiffs' privilege logs, which includes the "un-dated defamatory cover letter" and any post-litigation communications. If you are not prepared to turn these documents over to Defendants based upon your review of the Transcript, then we request that you retain those documents to allow Defendants the opportunity to file a motion for contempt. Again, we thank you for your assistance in this matter.

---

[1] Pursuant to your request in your May 18, 2007 letter, the parties' briefs and supporting papers are enclosed herewith.

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP

385

138

David S. Eisen, Esq.
May 22, 2007
Page 3


Sincerely,

Michael Bergman

MB:jra
Enclosure
cc:    Marc Toberoff, Esq. (w/o enclosures)


WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP

331458_1.DOC

**139**

**386**

# EXHIBIT B

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No. ✓ CV 04-08400-SGL (RZx); CV 04-8776-SGL (RZx)    Date: September 17, 2007

Title: JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -v- WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS INC., a corporation; and DOES 1-10

=============================================================================

PRESENT: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes
Courtroom Deputy Clerk

Theresa Lanza
Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:

Marc Toberoff

ATTORNEYS PRESENT FOR DEFENDANTS:

Michael Bergman
Roper L. Zissu
Patrick T. Perkins

PROCEEDINGS:    ORDER RE OUTSTANDING DISCOVERY MATTERS

At the conclusion of the September 17, 2007, hearing on the parties' cross-motions for partial summary judgment in the Superman, CV-04-8400-SGL, and the Superboy, CV-04-8776-SGL, matters, which motions the Court then concurrently took under submission, the Court heard argument from counsel regarding outstanding discovery issues. Except as set forth below, discovery in these matters is **ORDERED** closed:

(1)    Consistent with the September 11, 2007, Joint Stipulation of the parties, Bryan Singer is **ORDERED** to sit for a deposition by no later than November 30, 2007;

(2)    Plaintiff Laura Siegel Larson is **ORDERED** to sit for a deposition by no later than October 9, 2007, said deposition not to exceed two hours in length;

(3)    Defendant DC Comics is **ORDERED** to produce the "reserve account documents" to plaintiffs on or before Friday, September 21, 2007;



DOCKETED ON CM

SEP 19 2007

BY_____044

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk __jh__
Time: 3/50

236    141

(4)    Defendants are **ORDERED** to produce to plaintiffs all requested "ultimates" as referenced in the September 14, 2007, Declaration of Steven Sills at ¶¶ 10-11 by Friday, September 21, 2007;

(5)    Plaintiffs ex parte application for an order modifying the Court's August 13, 2007, discovery order is **GRANTED** in part in that plaintiffs are afforded until October 9, 2007, to complete their damages-related audit of defendants Time Warner, Inc., Warner Bros Entertainment, Inc., Warner Bros Television Production, Inc., and DC Comics.

(6)    The "escrow attorney" referenced at the hearing is directed to submit by Friday, September 21, 2007, to the Court for in camera review the nine documents which plaintiffs had either not previously produced to defendants or were not listed on a privilege log in connection with this litigation.  Counsel for plaintiffs is **ORDERED** to submit a declaration on or before Friday, September 21, 2007, setting forth the grounds for any claims of privilege relating to said documents; defendants may file a response to the declaration on or before Tuesday, September 29, 2007.  The motion to compel which defense counsel informed the Court has been or was being filed with the magistrate judge is hereby rendered **MOOT**.

Finally, the trial date in the Superman matter remains January 22, 2008.  The trial date in the Superboy matter will be set thereafter by the Court.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                    2

Initials of Deputy Clerk __jh_____

Time:  3/50

142

# EXHIBIT C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JOANNE SIEGEL, ET AL,                    )   CASE NO(s): CV 04-8400-SGL(RZx)
                                         )               CV 04-8776-SGL(RZx)
                  Plaintiffs,            )
                                         )            CIVIL
        vs.                              )
                                         )   Los Angeles, California
TIME WARNER, INC, ET AL,                 )    Monday, April 30, 2007
                                         )   (10:45 a.m. to 11:28 a.m.)
                  Defendants.            )

1)    DEFENDANTS' MOTION TO COMPEL THIRD-PARTY KEVIN MARKS
  AND PLAINTIFF LAURA SIEGEL LARSON TO ANSWER QUESTIONS
                   AT DEPOSITION;

2)    DEFENDANTS' MOTION TO COMPEL THIRD PARTIES KEVIN MARKS
   AND GANG TYRE, RAMER & BROWN, INC TO PRODUCE DOCUMENTS
                  RELATING TO AUTHORITY;

       3)    DEFENDANTS' MOTION TO COMPEL PRODUCTION
             OF WHISTLE-BLOWER DOCUMENTS;

       4)    PLAINTIFFS' MOTION TO COMPEL DEFENDANTS
     TO ANSWER PLAINTIFFS' SPECIAL INTERROGATORIES

             BEFORE THE HONORABLE RALPH ZAREFSKY,
             UNITED STATES MAGISTRATE JUDGE

Appearances:   (See next page)

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

EX      10

144

2

APPEARANCES FOR:


Plaintiffs:                    MARC TOBEROFF, ESQ
                               1999 Avenue of the Stars
                               Suite 1540
                               Los Angeles, CA 90067

Defendants:                    MICHAEL BERGMAN, ESQ
                               Weissmann Wolff Bergman, et al.
                               9665 Wilshire Blvd., Suite 900
                               Beverly Hills, CA 90212

Court Reporter:                Recorded; FTR

Courtroom Deputy:              Ilene Bernal

Transcribed by:                Exceptional Reporting Services, Inc.
                               14493 S. Padre Island Drive
                               Suite A-400
                               Corpus Christi, TX 78418-5940
                               361 949-2988

145

11

Los Angeles, California; Monday, April 30, 2007; 10:45 a.m.

(Call to Order)

THE COURT:  Let's call the next case.

THE CLERK:  Item number five.  Case Number CV-04-8400-SGL-RZX, and related case, CV04-8776-SGL-RZX; *Joanne Siegel, et al. versus Time Warner, Inc., et al.*

Counsel, please make your appearances.

MR. TOBEROFF:  Good morning, your Honor.  Marc Toberoff for the plaintiffs.

THE COURT:  Good morning.

MR. BERGMAN:  Good morning, your Honor.  Michael Bergman for the defendants.

THE COURT:  Good morning.  All right, we've got four motions on.  Let's start with Plaintiff's Motion to Compel the Answers to Interrogatories.  I read the materials.  Don't need to repeat anything.

Do you wish to be heard, Mr. Toberoff?

MR. TOBEROFF:  Yes, your Honor.  I just want to highlight a couple points if I may.  Essentially, when I drafted these four Interrogatories on behalf of plaintiffs, I did so with the *Safeco* case in mind and with Federal Rule of Civil Procedure 33(a).  Essentially, each party, each plaintiff, asked one question to each of the defendants.

THE COURT:  I read them.

MR. TOBEROFF:  Okay.

4

THE COURT:  I really have -

MR. TOBEROFF:  All right.

THE COURT:  - read this material.

MR. TOBEROFF:  Okay, thank you.

So, what I do want to point out is that *Safeco*, which is now being used by the defendants to claim that, essentially, each single Interrogatory pertaining to a single RFA and asking for the basis of the RFA is actually three Interrogatories, does not stand for that proposition.

In *Safeco*, the Interrogatory in question was already divided into three Interrogatories, so the Court never addressed the question of whether the Interrogatory consists of three subparts, which is the question here.  Instead, the Court simply said that when an Interrogatory is tied to a Request for Admission response, then that counts for one Interrogatory.

And the Court even went so far to say that sometimes an Interrogatory focusing on multiple RFAs can stand for one Interrogatory as opposed to multiple Interrogatories if the RFAs are related to a common theme and logically connected to one another.  So, actually, *Safeco* has language, as we set forth in our motion, that very much supports our motion.

And finally, defendants' stonewalling response is evidenced by the fact that after we served these Interrogatories, they used this as an excuse not to answer the Interrogatories, and we've had major problems with their

5

discovery, their failure to respond to our discovery, which is the subject now of multiple motions which we would like to have avoided.

THE COURT:  All right, thank you.

Mr. Bergman?

MR. BERGMAN:  Thank you, your Honor.

Your Honor, on that last point I would like to note that when the defendants responded to these Interrogatories, we offered to do what Mr. Toberoff had offered to do when the tables were turned, and that is to have him select the Interrogatories that he wanted to have answered within the 25 limitation of Rule 33.

I'd just like to emphasize, your Honor, that the problem with these Interrogatories begins with the Request for Admission on which they're based.  As we've quoted in our moving papers, there are Requests for Admission that ask us to admit, for example -

THE COURT:  I read this, Mr. Bergman.  You don't need to reiterate it.

MR. BERGMAN:  Okay.  The other point I would like to make, Judge, is that these are not logically subsumed within each other; that there is no primary question; there is no secondary question.  Reasons are one thing; facts are another; evidence is another.

And finally, your Honor, the burdensome nature of

6

these Interrogatories is compounded by the fact that we're talking about events that occurred 70 years ago. Why didn't we admit, why did we deny, that we paid other people to work with Mr. Siegel 70 years ago? Well, that's quite a burden. Why do we deny that the Adventures of Super Boy appeared in hundreds of comic books? Facts, evidence, reasons; that's quite a burden. We believe that they're burdensome. We attempted to have Mr. Toberoff select those Interrogatories that he felt were essential, and he declined to do so.

THE COURT: All right, thank you.

MR. BERGMAN: Thank you, your Honor.

THE COURT: All right. On this motion, in the Court's view, the motion does raise issues which at least are discussed in *Safeco*. It's 183 Federal Rules Decision 669, a 1998 case from this district.

Now, to begin with, the Court has great concern about the propriety of even asking these kinds of Interrogatories, which, as defense counsel's indicated, spin off of Requests for Admissions.

Now, in the Court's view they spin off Requests for Admissions with a 'gotcha' kind of mentality, and Professors Wright and Miller have stated, and the Court agrees, Rule 36 is not, strictly speaking, a discovery device. It's a device for shortening the proof required at trial.

And the rule has its own remedy if there is a problem

7

with a Request to Admit.  The propounding party can move to determine the sufficiency of the answers or objections.  But Interrogatories which take a party's failure to unqualifiedly admit and then ask, argumentatively, for the party to justify such a failure, those are questionable discovery devices.

And beyond that, these Interrogatories do in fact, as in *Safeco*, ask more than single questions.  Even considering that questions which are related, such as a witness's name and address, for example, those are properly considered part of the same question; but asking for reasons as well as evidence as well as all facts in this Court's view does impermissibly ask for several distinct answers, and any one of them might be objectionable as overbroad, burdensome, calling for work product, and a whole host of other objections.

But for the moment, all that the Court does conclude is that the allowed number has been exceeded.

Plaintiffs' Motion to Compel is denied.

Both Requests for Sanctions are denied.

All right, let's move to what has so elegantly been called the 'whistleblower' documents and the Motion to Compel with respect to them.

It seems to me there's a lot of noise about this motion, but I don't know how much substance there is.

MR. BERGMAN:  Frankly, your Honor, I don't think there's any substance to it in the sense that it could be

150

16

8

avoided today.  It could have been avoided months ago.

Mr. Toberoff keeps taking the position that these documents have been - non-privileged documents have been produced; privileged documents have been listed in a privilege log.  All we have been saying, and what I said to Mr. Toberoff during a meet and confer, what one of my associates wrote to him in a letter, is 'show it to us'.  Identify the documents, the unprivileged documents that you have produced, by reference to the Bate stamp numbers that Mr. Quinn's office put on the document, and identify the documents which are listed on a privilege log, once again, by reference to the Bate stamp numbers that Mr. Quinn put on.  If that is done and we see that, yes, indeed, all unprivileged documents have been produced, all privileged documents have been listed, then there's no further dispute.

If, on the other hand, we see that all unprivileged documents have not been produced, well, we should be able to see those documents.  And if all of the privileged documents have not been produced or, rather, put on an exhibit list, a privilege log, that would be a waiver of the privilege as to those documents and we should be entitled to see those documents, too.

The question is: How do we resolve this?  Well, there's an easy way, and that is what we're suggesting, Judge, and what we've been suggesting from the beginning.

9

THE COURT: All right. Mr. Toberoff?

MR. TOBEROFF: Your Honor, I want to make sure the Court understands what we're talking about here, which he claims is just a simple discovery matter that should be easily resolved under Rule 34, the way you deal with Requests for Production in which you produce responsive documents and you list in the privilege log any that are privileged.

First of all, plaintiffs have done so and so have I, in full compliance with Rule 34. We're talking about here an arrival -

THE COURT: No, I know what we're talking about.

MR. TOBEROFF: Right.

THE COURT: The documents showed up at Warner Brothers -

MR. TOBEROFF: Right.

THE COURT: - and I read what Warner Brothers did with them. They segregated them into three piles; they sent them over to Mr. Quinn; Mr. Quinn Bate stamped them; he made a copy; he sent the copy to you, and now we're stuck with what to do with the ones that are left in Mr. Quinn's office. I understand what we're talking about.

MR. TOBEROFF: I understand that, your Honor. These documents are a pile about this high (indicates) -

THE COURT: Okay.

MR. TOBEROFF: - where a former attorney of mine, who

10

was terminated in November, went through not just the plaintiffs' files in this case but the files of Joe Schuster's family and other witnesses and other companies that I represent, selected documents, and, after trying to essentially steal not only the plaintiffs' clients in this case and other clients of mine by disparaging me, and after he was rejected in early December of 2005, he sent these documents to John Schulman, the general counsel -

THE COURT:  I understand all that, Mr. Toberoff.

MR. TOBEROFF:  - and two other executives.  These are documents -

THE COURT:  But that's not important to this resolution.

MR. TOBEROFF:  Well, it's important -

THE COURT:  The question is -

MR. TOBEROFF:  It's important to me.

THE COURT:  They have documents.  The question is: Have you otherwise produced them?  That's all that's at issue, isn't it?

MR. TOBEROFF:  I have, your Honor.  I have put in a declaration unequivocally that even though I'm not obligated to do so, and jump through hoops of having to respond and own up to documents stolen from my legal files, an obligation that does not apply to the defendants in this case and does not apply to parties under Rule 34, I nonetheless went through

11

every single one of those documents, which they, instead of returning the originals, returned to me with Bate stamps, checked it against our production, and found two documents that were non-privileged that hadn't been produced that consisted of letters from plaintiffs to DC Comics, which I produced.

THE COURT:  See, your declaration doesn't quite say that, Mr. Toberoff.  I read your declaration.

MR. TOBEROFF:  The intention of the declaration is to say exactly what I'm saying now; that I went through my files, not just the plaintiffs' files, which is all the motion pertains to, but all my files, all the third-party witness files -

THE COURT:  Forgive me for interrupting.  Your declaration does say that.  What your declaration doesn't say is that you went through these, let's call them 'whistleblower' documents, even though that may not be an accurate statement, you went through these whistleblower documents, and that you verified that each of the whistleblower documents either had been produced or had been listed on the privilege log.  It doesn't say that.

MR. TOBEROFF:  That is the case, your Honor, and that was certainly my intention to say that, and I'm saying that now.

THE COURT:  All right, then we can get that cleared up immediately.

12

MR. TOBEROFF: I'd be happy to take an oath and say that, because that is precisely what I did.

THE COURT: Okay.

MR. TOBEROFF: And that was definitely my intention in the declaration. They claim my declaration doesn't say that. That was certainly my intention. That's exactly what I did. And I also put in my declaration, with the utmost specificity, what documents I found that had not been produced and how I produced those documents.

THE COURT: Yes, you did that. I agree with that.

MR. TOBEROFF: But the point here, your Honor, is that there are certain procedures which plaintiffs and defendants have to follow. If the situation was reversed, where I was suddenly sent a stack of documents from the general counsel's files at Warner Brothers or from Mr. Bergman's files, and I sat on those documents, and we believe they sat on these documents from November or December of 2005, even from the date that they say, they sat on these documents, and their letters suggest this uneasy, queasy way in which they dealt with the documents where they didn't say, 'We received documents that are attorney-client privileged that are obviously from your files.' They referred vaguely to certain documents.

They retained another lawyer which they purported to say was a 'neutral', even though that lawyer is obviously not a neutral, because all his suggestions protect defendants, and

13

he's under a retainer and undoubtedly paid by the defendants.

They retained this neutral -

THE COURT: I'm sure Mr. Quinn would enjoy receiving money from you as well, Mr. Toberoff.

MR. TOBEROFF: Well, I understand, but I did not retain him. And to his credit, he never said that he was a neutral in this matter.

THE COURT: No. He's not neutral in the sense that he is retained by the defendants, but what he did, as I understand it, and there's no suggestion otherwise, is that he acted as an escrow. That is, Mr. Bergman didn't look at these documents. Trial counsel didn't look at these documents, right?

MR. BERGMAN: That's correct, your Honor.

THE COURT: The in-house counsel took these documents, probably consulted with Mr. Bergman, 'I don't know, what do we do?', the decision was made, 'Let's give them to a third party and let's try and get the Court involved'. And then there was that little problem of not following the local rules where there was an *ex parte* communication with the Court, which you pointed out in your papers here. But the procedure does not seem unreasonable to me.

MR. TOBEROFF: Let me ask this. There are rules why a police officer can't march into your house without a warrant and rifle through your house looking for things. And the

14

answer to the objection to him doing so is not, 'Well, what do you have to hide?' There's a simple procedure here. If you have nothing to hide, why can't I rifle through your house? The analogy may not be exact, but it's comparable.

This has an unseemly feel to it, because when you add up all of the supposedly sanitizing procedures, and I have great doubts that they received these documents when they said they did, and when I asked for them to substantiate when they received the documents, they had absolutely no information. And I know from my experience with big studios that they have guards and mail rooms and executives and people at their beck and call who keep track of these sorts of things meticulously. They have no evidence whatsoever to support the claim as to when they received documents.

I believe they got these documents, the cover letter said, 'This is an early Christmas present.' You don't write a letter like that in June. And so they sat on these documents for three or four months figuring, 'How can we use this theft'?, which is an outrageous act. I'm not hiding behind hyperbole. It is outrageous. If it happened to any lawyer, if it happened to Mr. Bergman, you would be outraged.

They are saying, 'How do we use this outrageous act as a tactical advantage?'

THE COURT: If they were doing all that, why would they go through this process? Why wouldn't they just -

23

157

15

MR. TOBEROFF: Because, they can't -

THE COURT: - keep the documents and spring them on you?

MR. TOBEROFF: Because they can't use the documents. They need to first sanitize it by saying, 'You need to jump through these additional hoops that are not applicable to the defendants; that would not be applicable to you or the plaintiffs, but because we have what they call a 'twist of fortune' of receiving documents stolen wholesale from your files, we are now going to take advantage of that, and we have a right to take advantage of that.'

THE COURT: But Mr. Toberoff, you tell me that everything that's not privileged has been produced except for two small items, and everything that is -

MR. TOBEROFF: We produced those items, your Honor.

THE COURT: Right. Okay. So, what huge advantage is there for the defendants to gain if what you say is true?

MR. TOBEROFF: I'm objecting to this procedure, and you are asking me what I said before. Why not illegally search your house if you have nothing to hide? What do you have to hide? I have nothing to hide.

I find this whole process frankly outrageous, and I am standing here, your Honor, and lawyers may speak this way just as a cover or to muddy the waters. I am not. I am standing here with a firm conviction that, as a matter of

principle, when they received these documents, they should have immediately picked up the phone. It was obvious these documents had been stolen from my files. It is obvious from the cover letter what had happened.

There's nothing whistleblower about a lawyer who is bound by the attorney-client privilege taking documents and communications with a client and sending them over to the opposing side in the middle of a heated litigation where each side is supposed to be able to rely on the confidential attorney-client privilege and work product doctrine. Doing that in the middle of a lawsuit, they should have picked up the phone, immediately called me and immediately returned the documents. That's not what they did.

Wayne Smith wrote in his declaration that he looked at these documents twice. First. he looked at them outside the office of John Schulman. Then he took them home with him. And although he didn't look at the documents or really review them in any substance, and there's been no supposed communications with defense counsel, he marked them 'privileged', 'non-privileged', and 'potentially privileged'. You can't do that without reviewing the substance of these documents.

And now they're pushing for me to have to account and atone, by their Bates numbers, the documents illegally stolen from my offices. And they are claiming to me that, 'Well, why not do this? Isn't it your obligation under Rule 34 to produce

17

documents?'  And my answer to that is, 'It is my obligation. I've satisfied that obligation.  I've put in a declaration, and I'm saying here and I'm willing to swear the oath that we have produced all those documents.'  More than that, we do not have to do.

And so I'm standing here on principle, your Honor, and I believe if you look closely into those principles, you'll find that it's improper for the defendants and defendants' counsel to seek to take advantage of this theft of legal files in the middle of a lawsuit.  And if it was the other way around, they would be screaming bloody murder.  And I don't believe they would be compelled to have to atone, by my Bate stamps, on documents lifted from their legal files.  And I guarantee you if I had that opportunity, considering that they have stonewalled us in discovery, I would find a great deal of useful information.

If it was the reverse and I received a package like that, I would have picked up that phone, I would have called them, and I would have returned the documents.  And that's what they should have done, and they didn't do that.  And it's outrageous, your Honor.

THE COURT:  All right.  Thank you, Mr. Toberoff.

Anything further, Mr. Bergman?

MR. BERGMAN:  Just a couple of things, your Honor.

As your Honor has probably seen from the papers,

18

Warner Brothers did exactly what the cases and the ABA 1994 opinion tells it to do.

THE COURT: I read the papers, Mr. Bergman.

MR. BERGMAN: Okay. The other point, your Honor, is, one of two things happened here. Either Mr. Toberoff is absolutely correct and this person sent documents which have been produced and which have been listed, or he is not correct, in which event there may not have been documents that should have been produced, produced. All we want to do is put an end to the issue by having him go through what is certainly not a burdensome or oppressive task of coordinating the documents produced and placed on the privilege list with the Bate stamps.

THE COURT: All right.

MR. TOBEROFF: If I may, your Honor?

THE COURT: I think we've exhausted it, Mr. Toberoff.

And I will say that I don't agree with the designation of these as 'whistleblower' documents either, Mr. Toberoff. And to the extent I have used that term, I use it only as a shorthand version of referring to the documents that are at issue. If we want to call them the 'escrow' documents, that's fine, too. I mean, I don't think it qualifies as classic whistleblower in the sense that that term is used in the law. The defendants used that in their application, and I don't think even they used it in the classic term.

But in any event, you know, I'm not making any

19

finding that these are in fact in the nature of whistleblower documents.

But in my view, I think the defendants have acted professionally, and I think they've acted reasonably. The record does establish that trial counsel has not reviewed the documents. They set up a procedure to segregate them, deposit them with an escrow, and seek a resolution of this dispute.

Now, I told you, Mr. Toberoff, that I saw a little wiggle room in your declaration. You tell me you didn't mean for there to be any. So, here's what I'm going to do. Not later than May 7th, that's a week from today, I want you to submit a declaration that does identify by the Bates numbers of the escrow documents and the corresponding Bates numbers of documents already produced, those among the escrow documents which are unprivileged and have already been produced.

So, you take the Bates numbers of the escrow documents and say, 'Here are the corresponding Bates numbers of the documents that have already been produced.' Take the Bates numbers of the escrow documents and correspond to the listings on the privilege log of the documents which have not been produced because they were privileged. All right? So, put that in your declaration.

Then the escrow holder, Mr. Bergman, is to return to the plaintiffs any documents which are identified in the declaration as being privileged and having been identified on

28

20

the privilege logs.

The others can be delivered to trial counsel for defendants because they're either unprivileged, or, if they were privileged, privilege has been waived because they weren't listed on the privilege log.

Now, is it clear what I want done?

MR. BERGMAN:  Yes.

MR. TOBEROFF:  Are you going to put this in a written order, your Honor?

THE COURT:  No, this is it.

MR. TOBEROFF:  Okay.  So you would like me to set forth, you would like me essentially to prove that I'm not lying by setting forth in a declaration -

THE COURT:  Mr. Toberoff.

MR. TOBEROFF:  - this is -

THE COURT:  Do you understand what I've ordered you to put in the declaration?

MR. TOBEROFF:  I do, your Honor.

THE COURT:  All right.  Then that's it.  We're not - You and I are not having an argument.

MR. TOBEROFF:  I'm not arguing.  I'm - Okay.

THE COURT:  All right?

MR. TOBEROFF:  I'm sorry, your Honor, if I'm upset about this.  I think most lawyers would be upset with a situation like this.

21

THE COURT: Okay. It's fine to be upset. It's not fine to argue. All right?

Mr. Bergman, do you understand what you're to do?

MR. BERGMAN: Yes, I do, your Honor.

THE COURT: All right.

All right, that leaves two motions which are related.

MR. TOBEROFF: Your Honor, how much time do we have to do this, because we're in the middle of -

THE COURT: May 7th.

The remaining two motions, in my view, are related. These are the Motions to Compel Answers to certain deposition questions by Mr. Marks and Ms. Larson, and to require Mr. Marks to produce documents relating to his authority.

Mr. Bergman, do you wish to be heard on these?

MR. BERGMAN: Yes, your Honor. I'll be very brief. Your Honor is familiar with this problem.

THE COURT: Yes.

MR. BERGMAN: To this day, we have not received an unequivocal answer as to whether Mr. Marks was authorized by the plaintiffs to convey to Mr. Schulman the statement that is contained in the October 19 letter; that is that the Siegel family has accepted.

Mr. Toberoff is going around the bush. He says that there is no issue as to Marks' authority to have conducted settlement negotiations on plaintiffs' behalf. We're not

30

164

22

questioning that.  We just want to know, because it's an essential element of what may be a dispositive counterclaim, did the Siegels authorize Mr. Marks to say to Mr. Schulman they've accepted the offer.  It's not privileged.  It's not confidential.  It's intended, by definition, to be conveyed to the other side, and we believe that we're entitled to it.  We believe that for these same reasons we're entitled to any documents that pertain to the authority.  After all, that affirmative defense still lingers on in the pleadings.  It hasn't been dismissed.  And I believe that we're entitled to resolve it one way or another as we proceed to trial.

THE COURT:  All right, thank you.

MR. BERGMAN:  Thank you, Judge.

THE COURT:  Mr. Toberoff?  Let me just ask you at the start, Mr. Toberoff.  I guess I must be confused, because I thought you had told me you were going to dismiss those affirmative defenses.

MR. TOBEROFF:  Yes, we were, your Honor, and we in fact drafted amended pleadings, and I sent them over to Mr. Bergman and they refused to stipulate to -

THE COURT:  No, I remember that.

MR. TOBEROFF:  Okay.  But after that -

THE COURT:  But after that you told me that you were going to make a motion to dismiss those.

MR. TOBEROFF:  After that we didn't make the motion

EXCEPTIONAL REPORTING SERVICES, INC

31

165

23

to dismiss.  We decided that we could just simply drop it in our joint pretrial order, and it was suggested by one of the attorneys that works for me that, to make this motion based on this simple amendment a full-blown motion to the Court, that would be unnecessary since we could drop it in the pretrial order.  That was initially pled among some multiple affirmative defenses.

THE COURT:  No, no, no, I know.  We've been over this before.

MR. TOBEROFF:  I understand, your Honor.  But the fact is that plaintiffs signed verified Interrogatory answers on the question of Mr. Marks' authority.  They said he had authority.  He obviously had authority to send the letter as their attorney in the negotiations.  We have not once in this litigation stood by or asserted the claim or defense, and again, you mentioned earlier that you don't know that it even is an affirmative defense.

THE COURT:  No, I don't think that's the way it came up.  I think Mr. Bergman said he wasn't sure if it was an affirmative defense.  That's my recollection of it.

MR. TOBEROFF:  Okay.

THE COURT:  But I could be wrong.

MR. TOBEROFF:  I think there was some mention of it in –

THE COURT:  We had a colloquy on it.

24

MR. TOBEROFF: Right. I don't think I was going by a transcript; I think I was going by something in the order. But be that as it may, we've never asserted this. They've asked, as I said, Interrogatories, verified answers, answered the question as to authority. They asked the question specifically in Laura Siegel's deposition; she answered the question specifically. I can read you the answer.

The question was, again, put in two prior motions, and for procedural reasons, because this is a retread and essentially a motion of reconsideration without being a motion of reconsideration with respect to re-deposing Laura Siegel, that's also relevant. But they've asked the question over and over again. They know the answer to the question. He had authority to send that letter. That's not what this is about.

This is about using this as a red herring or an excuse to enter and invade the sanctum of the attorney-client privilege so that they could rephrase the question of authority in legal buzz words to try and formulate, from an answer, something that they can then claim will form an agreement. That's all they're doing here.

There's no issue of whether Mr. Marks had authority to send that letter. He absolutely had the authority. We've said so over and over again. I don't believe the fact that it remains as an affirmative defense in our original complaint, filed two years ago, when we've asked them to stipulate to

EXCEPTIONAL REPORTING SERVICES, INC

33

167

25

allow us to amend it and are simply going to do this in a joint - and I will represent to the Court that we're going to do this in our joint pretrial order, we'll drop that affirmative defense, that that becomes the lynch pin to open the door to start asking questions about their communications about this authority.

The case law - Excuse me. May I just get a glass of water?

(No audible response)

(Pause)

MR. TOBEROFF: Their theory that authority is something that one intends to communicate to the other side, and therefore they can ask questions about that authority with respect to a settlement negotiation, doesn't work, because during the settlement negotiation the authority to agree to any one term or a number of terms in a complex negotiation, which this was, is necessarily linked to your settlement strategy. How much do you ask up front? How much do you settle for? All those things are linked. Just because the ultimate authority of the attorney to represent you in the settlement negotiations or to send a letter is necessarily communicated to the other side, that doesn't implicate the substance of your settlement discussions with that attorney.

THE COURT: Let me just ask you a question, Mr. Toberoff. I just want to make sure I'm clearly understanding

26

you.  Are you saying that the October - was it October 19th letter?

MR. TOBEROFF:  October 19th, 2001, yes.

THE COURT:  All right, which was signed by Mr. Marks, right?

MR. TOBEROFF:  Yes.

THE COURT:  That that represents the statement of the plaintiffs?

MR. TOBEROFF:  Yes.

THE COURT:  Okay.  All right.  Go ahead, if you have anything further.

MR. TOBEROFF:  So, I'll just give you the question that was already posed to Laura Siegel in her deposition.

THE COURT:  You don't need to read that again.

MR. TOBEROFF:  Okay.  I was going to give you her answer to show that she's answered that question.

THE COURT:  You don't need to do that.  I've seen it.

MR. TOBEROFF:  Okay.

Now, the questions that they seek to - First of all, as an initial matter, their motion with regard to Laura Siegel is improper because it constitutes a motion for reconsideration.

THE COURT:  Yeah, I read your argument on that.  I'm familiar with that.

MR. TOBEROFF:  Do you have any questions for me about

EXCEPTIONAL REPORTING SERVICES, INC

169

27

that argument?

THE COURT: I don't.

MR. TOBEROFF: Okay. They ask -

THE COURT: I really don't need the two of you to rehash what's in this (indicates).

MR. TOBEROFF: Okay.

THE COURT: And I'm holding up an eight-inch stack of papers. I really don't.

MR. TOBEROFF: All right. Well, I would just like to point out one thing to you.

THE COURT: Okay.

MR. TOBEROFF: They have a question, they have only two questions for Laura Siegel.

'Did you ever instruct Mr. Marks to communicate to the lawyers for DC Comics that there should be a correction made in this letter?'

And they put the cart before the horse, and they pre-suppose that if a communication had taken place, then therefore that was intended to be communicated to the other side, and therefore, because it was intended to be communicated to the other side, she has to answer this question.

There's no evidence that there was any such communication to the other side objecting, and therefore, their logic is flawed. Without any evidence of this third-party communication, they can't say there was any intention to

28

communicate this to the other side, and therefore you have to answer questions as to whether such communication took place.

Do you see? It's illogical. And they're using this one thought in a case which is curtailed, and we've distinguished the case, to try and open the door to the whole attorney-client privilege. They've already done this with Laura Siegel. They already made this motion. They made a motion for reconsideration. All these issues have been before the Court before, and I don't -

THE COURT: Yes, these issues do seem to have a certain familiarity to them.

MR. TOBEROFF: And I don't believe that because of this vestigial 37th affirmative defense, which we've asked could we please remove, and we didn't want to make a full-blown motion, and we haven't asserted and we've constantly restated that, no, this is not an issue, that that should be able to open the door for them to invade the attorney-client privilege.

It's clear also from their papers they do not just want to ask two questions, because they're constantly asserting 'and reasonable follow-up questions'. And to the extent the Court is inclined to grant any of this, and I don't think it should be, these things can easily be posed in Interrogatories, and in fact the cases say that these types of questions that are mixed questions of law and fact are better posed in contention Interrogatories which, if you find it necessary, we

29

would answer.

Thank you, your Honor.

THE COURT: All right. Thank you, Mr. Toberoff.

Mr. Bergman, anything further?

MR. BERGMAN: One very quick point, your Honor.

Your Honor's question to Mr. Toberoff and his response to you brought him closer than he's ever been before to where we believe he has to go. But he's just the attorney.

Throughout his argument, he kept saying that the plaintiffs gave Mr. Marks authority to send the letter. All we want to know is whether they gave him authority to say 'the family has accepted the October 16 offer'.

Thank you, your Honor.

THE COURT: All right. These two motions I'm going to take under submission. I will get a ruling out very shortly.

MR. TOBEROFF: Thank you, your Honor.

MR. BERGMAN: Thank you, sir.

THE COURT: All right, thank you.

I assume Ms. Larson is no relation to Judge Larson.

MR. TOBEROFF: No relation.

Your Honor, I'm sorry, could I just ask you to clarify, even though it's simple, because I'm emotional on this issue, obviously, and I want to make sure what we are to do in a declaration.

30

It's my understanding that we are to take the Bates numbers of the stolen documents and put in a declaration that such and such a range of numbers we have produced?

THE COURT: No.

MR. TOBEROFF: Okay. Could you please repeat it for me, because I want to make sure I'm clear.

THE COURT: For example, Bates number, let's call it 'escrow'. Let's try and take pejoratives out of it either way, all right? So I won't call them whistleblower documents; I won't call them stolen documents. I'm not denying they're stolen, I'm not saying they're whistleblower documents; I'm just trying to find a neutral term, so I'm calling it 'escrow'. Escrow is usually a neutral term. All right.

Escrow document 00004 corresponds to previously produced document 00006. Escrow document 00007 corresponds to previously produced document 00009, and so on.

MR. TOBEROFF: Okay.

THE COURT: Privilege escrow document 00015 is a privilege document which was listed on the privilege log as document such and such.

MR. TOBEROFF: Okay.

THE COURT: Privilege documents get returned. The privilege documents that were listed on the privilege log get returned. The others get sent to defense counsel.

MR. TOBEROFF: The others get sent to defense

31

counsel?

THE COURT:  From the escrow.

MR. TOBEROFF:  Right.  Even though we've produced them, but because we're saying they're not privileged, they will get sent to defense counsel.  Okay.

If we have to match it up that way, could we have a little more time to do that, your Honor, because it will take -

THE COURT:  How much time do you need?

MR. TOBEROFF:  We're in the middle of opposing a massive summary judgment motion, so as much time as I can get would be appreciated.

THE COURT:  Yes, I noticed you were in the middle of all that, because there was some question as to when these motions would be heard, and we were told that it was too difficult to hear them on the 23rd because motions needed to be filed on the 23rd.  And then they were set on the 30th, and then you stipulated to have your motions filed on the 30th.

MR. TOBEROFF:  Right.

THE COURT:  How much time do you need?

MR. TOBEROFF:  Three weeks.

THE COURT:  Three weeks?  But you've been through this already, right?  You had to to know -

MR. TOBEROFF:  They're a stack like this (indicates), and if we're matching up all the numbers, it means we've produced 2000 documents, so going through those and finding the

32

production, the 2000 documents.  Also, this doesn't just involve plaintiffs' production, and that's another question, frankly, because the motion is directed at plaintiffs, but what do we do to the extent that there are documents in the stolen documents that don't belong to plaintiffs; that they are documents of the Schusters or documents of other third parties, or documents that appear on the privilege log of Don Bolson, the attorney for Michael Siegel?

THE COURT:  Well, now, Mr. Toberoff, didn't you tell me there were only two documents that hadn't been produced that were unprivileged?

MR. TOBEROFF:  That's correct, but the ones that have been produced, we still need to match up, and the ones that were listed on the privilege log we would still need to match up.  And we've produced the two documents that haven't been produced.

THE COURT:  So, the fact that they're not documents of the plaintiffs, they might be of some other parties, that doesn't have anything to do with - You're just saying it would take longer to match them up?

MR. TOBEROFF:  No.  What I'm saying is, this motion only applies to plaintiffs.  It was a motion to compel plaintiffs to do something regarding documents that are their documents in their possession or control.  But out of an abundance of caution and to satisfy everyone, I went through

33

the documents and privilege logs, pursuant to four or five subpoenas of third parties, where I have documents pertaining to those third parties.

THE COURT: And are you saying that in the escrow documents there are some documents that came from third parties?

MR. TOBEROFF: Absolutely. Well, they're actually -

THE COURT: Excuse me. But documents that nevertheless had already been produced?

MR. TOBEROFF: Yes.

THE COURT: So you are just talking about it taking a little more time to get it done?

MR. TOBEROFF: No. I'm just talking about the fact that in matching this up, I have to match it up to the production not only -

THE COURT: I understand that. I understand that.

MR. TOBEROFF: First of all, do you want me to -

THE COURT: So it'll take three weeks you say?

MR. TOBEROFF: Well, there's another question and I'll get to it. Their motion does not apply to these other documents; it only applies to the plaintiffs.

MR. BERGMAN: Right.

MR. TOBEROFF: Because it's a motion to compel plaintiffs' production, not a motion to compel a third party's production.

34

MR. BERGMAN: Your Honor, there is also a Rule 45 subpoena that was issued to Mr. Toberoff seeking the identical documents which is included within the motion.

THE COURT: All right. You can have three weeks. So, that'll be May 21st. Match them up from whoever's files, Mr. Toberoff.

All right, anything further?

MR. BERGMAN: No, your Honor.

MR. TOBEROFF: Thank you, your Honor.

THE COURT: All right. Thank you.

Any other matters?

THE CLERK: No, that completes the calendar.

THE COURT: All right. We'll be in recess.

(This proceeding was adjourned at 11:28 a.m.)

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          May 15, 2007

TONI HUDSON

FEDERALLY-CERTIFIED TRANSCRIBER

# EXHIBIT D

Case 2:04-cy-08400-ODW-RZ Document 477-3 Filed 03/02/09 Page 74 of 102 Page
Case 2:04-cv-08400-SGL-RZ Document 58 Filed 08/18/2006 Page 1 of 6 Page
ID #:10138



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Priority X
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON, <br><br> Plaintiff, <br><br> vs. <br><br> WARNER BROS. ENTERTAINMENT INC., et al., <br><br> Defendants. | CASE NO. CV 04-8400-RSWL (RZx) <br><br> ORDER ON DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS |

This matter came before the Court on August 14, 2006 on Defendants' Motion to Compel. Defendants appeared through their attorneys, Michael Bergman and Anjani Mandavia. Plaintiffs appeared through their attorneys Marc Toberoff and Nicholas C. Williamson. The Court heard argument of counsel and took the matter under submission.

Defendants seek to compel Plaintiffs to produce documents falling within five categories, identified as Requests 52-59. In general, these categories concern writings involving certain settlement negotiations between the parties in 2001 and 2002. Plaintiffs apparently have produced documents responsive to these requests, but the documents currently sought all involve attorney-client communications, and the Defendants assert that those documents should be produced because Plaintiffs have waived the privilege.

Defendants assert that Plaintiffs have waived the privilege by putting in issue the authority of their prior counsel to negotiate a settlement. The privilege may be impliedly waived where a party to a lawsuit places into issue a matter that is normally privileged, if the gravamen of the lawsuit is so inconsistent with the continued assertion of the privilege as to compel the conclusion that the privilege has in fact been waived. *Wilson v. Superior Court,* 63 Cal. App.3d 825,134 Cal. Rptr. 130 (1976). Defendants assert the alleged settlement in a counterclaim, responding to Plaintiffs' claim to recapture their copyright. At oral argument, both sides confirmed that Plaintiffs had not *pleaded* any lack of authority when they filed the reply to the counterclaim called for by FED. R. CIV. P. 7(a). Thus, as a matter of pleading, Plaintiffs have not themselves taken steps to bring into issue a matter that is so inconsistent with maintenance of the attorney-client privilege that it requires disclosure of attorney-client communications.

Instead, Defendants argue that Plaintiffs have done so by their response and supplemental response to a request to admit. Defendants requested that Plaintiffs admit that their prior counsel was authorized to send a letter of October 19, 2001, the letter which, at oral argument, Defendants stated constituted the contract of settlement. In response to the request to admit, Plaintiffs asserted various objections, including (by apparent incorporation of introductory objections) the objection of attorney-client privilege, and then denied the request subject to those objections. In a supplemental response, Plaintiffs qualified their denial further.

From these responses, Defendants assert that Plaintiffs have denied that their prior counsel had authority to negotiate a settlement, and therefore have placed the matter in issue and necessarily have waived the privilege with respect to that issue. This argument makes the request to admit do too much work. To begin with, the response was not an unqualified denial; it was a denial accompanied by objections. Whatever the meaning of "subject to" in this context, and whatever the validity of incorporating general objections into specific responses — neither matter of which Defendants address — it is hard to read the response as a denial without limitation. And assuming that the objections

2

**181**

Case 2:04-cv-08400-ODW-RZ Document 427-3 Filed 03/02/09 Page 76 of 102 Page
Case 2:04-cv-09400-SGL-RZ Document 58 Filed 03/13/2006 Page 3 of 6 Page
ID #:10140

*are* properly stated, Defendants never moved to determine the sufficiency of the objections. *See* FED. R. CIV. P. 36(a).

More importantly, however, Defendants misconstrue the office of a request to admit. A request to admit is not a discovery device in the customary sense of "discovery." 8A WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE §2253 at 524 (1994) Rather, it is a method of short-circuiting proof for trial. Those matters which are admitted do not have to be proved otherwise. Those which are denied require proof. FED. R. CIV. P. 36(b). And if a party denies a matter he should have admitted, the remedy is to require him, upon appropriate motion, to reimburse the party who propounded the request for the expenses incurred in proving up the matter at trial. FED. R. CIV. P. 37(c); *see, e.g., Marchand v. Mercy Medical Center*, 22 F.3d 933 (9th Cir. 1994). In short, responding to a request to admit by denying the request is not the same as affirmatively placing the matter in issue, and certainly not the same as the situation where the gravamen of the action necessarily is inconsistent with maintaining the privilege.

Defendants also assert that Plaintiffs waived the privilege explicitly, by sending a copy of a letter, dated September 21, 2002, to a Vice President of DC Comics. That letter, signed by both Plaintiffs, and addressed to their then counsel, states:

> As we previously discussed with you and hereby affirm,
> we rejected DC Comics' offer for the Siegel Family interest in
> Superman and other characters sent to us by you on February 4,
> 2002. We similarly reject your redraft of the February 4, 2002
> document which you sent to us on July 15, 2002. Therefore due
> to irreconcilable differences, after four years of painful and
> unsatisfying negotiations, this letter serves as formal
> notification that we are totally stopping and ending all
> negotiations with DC Comics, Inc., its parent company AOL

**182**

Time Warner and all of its representatives and associates, effective immediately.

This letter is also notification that, effective immediately, we are terminating Gang, Tyre, Ramer & Brown, Inc., and all of your firm's partners, associates and employees as representatives of the Siegel Family interest regarding Superman, Superboy, the Spectre and all related characters and entities. We instruct you to take no further actions on our behalf.

Please return all materials regarding the above including but not limited to files, correspondence, notes and documents to us forthwith. These should be sent to Joanne Siegel at the above address.

It is a shame that four years were wasted due to DC Comics and AOL Time Warner's greed. We have no intention of publically disparaging DC or any individual in the parent company. However, should DC or its parent company, officers, attorneys, representatives or spokespersons disparage us or our rights, we will vigorously respond in kind.

Weinberger Declaration, Ex. B. Disclosure of materials previously held in confidence can waive the attorney-client privilege. Here there is no doubt that the privilege, if any exists, has been waived as to this letter. The Court does not agree that it has been waived any more broadly than that.

The first paragraph of this letter appears to refer to irreconcilable differences between Plaintiffs and Defendants, not irreconcilable differences between Plaintiffs and their counsel. The entire subject of the paragraph is the settlement negotiations, and how DC Comics' proposal is not acceptable and the underlying negotiations have not been

4

**183**

fruitful. While it is possible to read the reference to "irreconcilable differences" as a reference instead to differences with Plaintiffs' counsel, that reading is not the one supported by the context in which the statement is made.

More importantly, the letter does not open the door to an exploration of the reasons that Plaintiffs discharged their counsel, or just what the irreconcilable differences may have been, or what conversations they had with their counsel about settlement. These topics are all mentioned in the briefest of terms, as slight incidents to the overall message of the letter, which is Plaintiffs' disagreement with Defendants and Plaintiffs' decision to end negotiations. Plaintiffs have not revealed a significant portion of the communications, and that is what is required to create a waiver based on sending the communication to someone other than counsel. *See Mitchell v. Superior Court,* 37 Cal.3d 591, 602, 208 Cal. Rptr. 886, 691 P.2d 642 (1984); *Travelers Ins. Companies v. Superior Court,* 143 Cal. App. 3d 436, 444, 191 Cal. Rptr. 871 (1983); *People v. Hayes,* 21 Cal.4th 1211, 1266 (2000). Accordingly, the Court finds that Plaintiffs have not waived the privilege, other than with respect to the letter itself.

Finally, Defendants assert that the privilege log prepared by Plaintiffs is insufficient. At oral argument, Plaintiffs agreed to review the log, and verify that they had listed all recipients for any memoranda or letters referenced in the log. They also agreed to provide, not later than September 30, 2006, a supplement to the log, covering other periods of time. The only remaining issue is whether the descriptions in the log are sufficient. The Court notes that the log appears to follow the form suggested in a commonly-used treatise, W. SCHWARZER, W. TASHIMA AND J. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL, Form 11:A (Rutter 2006). Moreover, the log appears to have the same information which the Court found sufficient in *Dole v. Milonas,* 889 F.2d 885 (9th Cir. 1989); *see in re Grand Jury Investigation,* 974 F.2d 1068, 1071 (9th Cir. 1992 ). Accordingly, this Court too finds that by providing this log, the Plaintiffs have sufficiently asserted the attorney-client privilege and the work product doctrine.

///

5

**184**

In accordance with the foregoing, with the exception of the September 21, 2002 letter, Defendants' Motion to Compel is denied.

IT IS SO ORDERED.

DATED: August 18, 2006

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE

185

# EXHIBIT X

# ARNOLD & PORTER LLP

David S. Eisen
David.Eisen@aporter.com

213.243.4182
213.243.4199 Fax

44th Floor
777 South Figueroa Street
Los Angeles, CA 90017-5844

October 9, 2008

**_Via Facsimile_**

Michael Bergman, Esq.
Weissmann Wolff Bergman Coleman
 Grodin & Evall, LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, CA 90212

Marc Toberoff, Esq.
Law Offices of Marc Toberoff
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

   Re: Siegel & Larson v. Time Warner, Inc.

Gentlemen:

  I spoke last evening with Mr. Toberoff, and this letter is intended to supplement that discussion and respond to some issues raised in Mr. Toberoff's letter of today.

  First, neither Jack Quinn, this firm, nor I has suggested that we are formal escrow agents, in the legal sense of that term. We are holding the documents pending orders of the Court; we do not, in my view, owe either side to this litigation any legal duty. We expect to be paid for our time by defendants, but have not been engaged by them to perform legal services, and we have not been engaged by plaintiffs in any respect. If the parties are dissatisfied with what we are doing, I would be happy to deposit the documents with the Court under seal, but Mr. Toberoff has rejected that proposal. Hence, in my view, we are answerable only to the Court, and I am attempting to carry out the orders of the Court as best as I can. Mr. Toberoff's threats to me and my firm last night (and more vaguely in today's letter) are offensive, but they will not affect the manner in which I deal with the document situation.

**187**

# ARNOLD & PORTER LLP

Michael Bergman, Esq.
Marc Toberoff, Esq.
October 9, 2008
Page 2

In the course of my discussions with Mr. Toberoff, it became clear that there are two ways in which he differs with my reading of the Court's September 26, 2008 order:

(1) Because the Court ordered me to produce to Mr. Bergman the "nine documents," and because those documents include two, I believe, that appear on the privilege logs of third parties, I assumed the Court intended that the "match-up" of escrow documents to privilege logs not include those on third party privilege logs, and that documents on the privilege logs of third parties should be produced to Mr. Bergman. Mr. Toberoff says that my assumption is incorrect, and that with the exception of those among the "nine documents," documents on third party privilege logs are protected. Mr. Toberoff also points out that Mr. Bergman has never claimed that third party-privilege documents should be produced. I could very well have made an incorrect assumption about the Court's order, and solicit Mr. Bergman's thoughts.

(2) I stated in my letter of yesterday that I thought the match-up involved my ascertaining whether the privilege log citation contained in Mr. Toberoff's declaration accurately describes the corresponding document. I obviously did not mean that literally; what I meant was that I would see whether the document is fairly characterized in the privilege log, which essentially means that the description of date, sender, recipient and type of document is roughly what the document actually is. Mr. Toberoff disagrees that this is what I am supposed to do. Mr. Toberoff also asked what would happen, assuming I engage in the process described, in the event a cover letter is accurately described in the privilege log, but an attached legal memo, for example, is not mentioned at all. I said that while common sense should be part of the process (a legal memo attached to a transmittal to the client is obviously privileged), an attached document not referred to at all in the privilege log would not seem to pass the "match up" test.

Mr. Toberoff's position is that what I am to do is much more ministerial than this, but I am unsure of what he has in mind. Mr. Toberoff's declaration already lists escrow documents and a corresponding privilege log entry. If I am not supposed to see whether the privilege log entry is actually for the escrow document to which Mr. Toberoff's declaration refers, then what match-up could

**188**

# ARNOLD & PORTER LLP

Michael Bergman, Esq.
Marc Toberoff, Esq.
October 9, 2008
Page 3

Judge Larson be referring to? Without looking to see whether the escrow
document is the one listed on the privilege log, then it seems that Mr. Toberoff's
declaration completes the match-up process, and there is nothing at all for me
to do.

Given the awkward position I am in, it appears that I must hold on to the
documents pending further clarification from Judge Larson on those two issues
(or agreement by the two sides), except with respect to the nine documents
which the Court clearly has asked me to produce and which Mr. Toberoff does
not appear to dispute. I will produce the nine documents to Mr. Bergman next
week, upon my return from out of town depositions.

I request that Mr. Bergman get back to me on the issues raised above. If
the parties are not in agreement as to these issues, and if neither side intends
to file a motion with the Court for clarification, I will write to the Court myself.

Sincerely,

DAVID S. EISEN

# ARNOLD & PORTER LLP

777 So. Figueroa Street
Los Angeles, CA 90017

213.243-4000
213.243-4199Fax

## Fax Transmittal

**October 9, 2008**

| Recipient Name(s) | Fax Number(s) | Telephone Number(s) |
|---|---|---|
| Michael Bergman | (310) 550-7191 | (310) 858-7888 |
| Marc Toberoff | (310) 246-3101 | (310) 246-3333 |

**Sender's Name:** David Eisen

**Telephone #:** (213) 243-4182

**Timekeeper #:** 4507

**Client Matter #:** 01791.002

**Pages:** 4 (Including cover sheet)

**Recipient Notice:** If you experience difficulty receiving this fax transmission, please contact the operator at 213.243.4224

**Message:**

### PRIVILEGED AND CONFIDENTIAL

Information intended only for the use of the addressee named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, please note that any dissemination, distribution or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the above address via the U.S. Mail.

Page 1

# EXHIBIT Y

VIA FACSIMILE

October 10, 2008

David S. Eisen, Esq.
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017

Michael Bergman
mbergman@wwllp.com
310.858.7888
Our File No. 2231.811

Re:    *Joanne Siegel, etc., Laura Siegel Larson, etc. v.*
       *Time Warner Inc., et al.*
       USDC Central District of CA Case No. 04-8776 SJL (RZx);
       *Joanne Siegel, etc., Laura Siegel Larson, etc. v. Warner Bros. Entertainment*
       USDC Central District of CA Case No. CV 04-8400 SJL (RZx)

Dear David:

I am in receipt of your letter dated October 9, 2008, and I would like to respond to the questions you posed. First, my May 22, 2007 letter to you did state that "Escrow Documents that were originally listed in the privilege logs of non-party witnesses should not be released." with the exception only of the privilege logs of Don Bulson, as explained later in that letter. That is, to the extent that any of the documents listed and identified in Mr. Toberoff's declaration correspond to documents listed on the privilege logs of plaintiffs or any third parties (other than Mr. Bulson), they should not be released.

Second, Defendants agree with your interpretation of the Court's Order regarding your obligations to match-up the Escrow Documents to the pertinent privilege log entries to determine whether "the description of date, sender, recipient and type of document" corresponds to what the document actually is.

Third, the Court's Order requires you to produce the "nine documents" "forthwith," and we agree that those documents should be produced to Defendants upon your return from your out of town depositions, if not sooner.

Finally, we note that the Court held a Status Conference on Monday, October 6, 2008, and Mr. Toberoff failed to raise any of these issues or seek the Court's guidance at that time. Nonetheless, given the aggressive position Mr. Toberoff has taken with respect to the "matching up" process, if you feel that you cannot proceed on the above basis without further direction, we request that you seek

Marc Toberoff, Esq.
October 10, 2008
Page 2

guidance directly from the Court at your earliest convenience regarding your
compliance with the Court's Order.

Very truly yours,

Michael Bergman

cc:    Marc Toberoff, Esq.

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
9665 WILSHIRE BLVD. NINTH FLOOR, BEVERLY HILLS, CA 90212 T: 310.858.7888 F: 310.550.7191 WWW.WWLLP.COM
LAWYERS

322802v1

# FACSIMILE TRANSMISSION

Date:        October 10, 2008

From:        Michael Bergman

E-mail:      mbergman@wwllp.com

Pages:       __3__ (including cover)

Subject: *Joanne Siegel and Laura Siegel Larson v. Time Warner, Inc., et al.*
USDC Central District of CA, Case No. 04-08776 SGL (RZx)

*Joanne Siegel and Laura Siegel Larson v. Time Warner, Inc., et al.*
USDC Central District of CA, Case No. 04-08400 SGL (RZx)

| Recipient(s): | Fax Number(s): | Phone Number(s): |
|---|---|---|
| David Eisen | 213.243.4199 | 213.243.4000 |
| cc: Marc Toberoff | (310) 246-3101 | (310) 246-3333 |

Message:

Please see the attached.

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
9665 WILSHIRE BLVD. NINTH FLOOR, BEVERLY HILLS, CA 90212 T: 310.858.7888 F: 310.550.7191 WWW.WWLLP.COM
LAWYERS

FEDERAL TAX ADVICE DISCLAIMER

We are required by U.S. Treasury Regulations to inform you that, to the extent this message includes any federal tax advice, this message is not intended or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax penalties.

ATTORNEY-CLIENT PRIVILEGE/ATTORNEY WORK PRODUCT

This fax is intended solely for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution, disclosure, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original fax to us at the above address. Thank you.

CLIENT MATTER: 2261 311

USER ID: 4887

**194**

# EXHIBIT Z

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* ALSO ADMITTED IN NEW YORK

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

October 13, 2008

<u>Via E-Mail</u>

David Eisen, Esq.
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844

Re:    <u>Superman/Superboy Litigations, Case Nos. 04-CV-8400, 8776 SGL (RZx)</u>

Dear Mr. Eisen:

I write to respond to both your letter of October 9, 2008, and Mr. Bergman's letter of October 10, 2008, in the above-referenced matter.  As a preliminary matter, plaintiffs note your sudden statement, after holding our legal files for over two years, that your firm is <u>not</u> acting as an escrow agent and allegedly does not "owe … any legal duty" to the parties.  Plaintiffs also appreciate your admission that you are not a "neutral," as you were retained by and "expect to be paid by defendants."  Plaintiffs are quite troubled by these admissions, given that both Magistrate Zarefsky's April 30, 2007 Order and the Court's September 26, 2008 Order regarding these stolen legal files were based on defendants' *repeated misrepresentations* that your firm is acting as a true "neutral," and are holding our documents "in escrow."

Accordingly, it would be improper for you to unilaterally write to the Court for "clarification," as suggested by both your letter of October 9, 2008 and "seconded" by Mr. Bergman in his October 10, 2008 letter.  As you are an attorney retained by defendants, it is improper for you to communicate with the Court on an *ex parte* basis.  Any communication with the Court by you, as by defendants' other counsel, should be by a noticed motion.

In the past, defendants have attempted to place all of the Escrow Documents, including the numerous attorney-client communications stolen from my files, before the Court.  *See* Declaration of Michael Bergman dated September 25, 2007.  However, the Court properly declined this review. Nonetheless, your October 9, 2008 letter endorses defendants' position, stating that you "would be happy to deposit the documents with the Court under seal."  As the Court will be acting as the ultimate trier of fact in this case, it would be especially inappropriate for you to place hundreds of pages of attorney-client communications before the Court, and certainly not before giving plaintiffs the proper opportunity to oppose such a measure beforehand.

**196**

**TOBEROFF & ASSOCIATES, P.C.**

David Eisen, Esq.
October 13, 2008
Page 2

I trust that Mr. Bergman's repeated statements that documents listed in my May 21, 2007 declaration corresponding to third-party privilege logs are ***not*** to be released to defendants is sufficient to dispose of that matter.  I hope that you can now better appreciate our urgent concern and natural response to protect these attorney-client communications when you suddenly announced that you were going to release all such documents to defendants.

Plaintiffs believe that you should finally release *all* of the Escrow Documents pursuant to the basic protocol set forth in Magistrate Zarefsky's Order and recently confirmed by the Court, and not simply release to *defendants* the "nine documents," while still retaining reams of privileged communications stolen from my law offices.

In truth, the Escrow Documents, with the exception of the nine documents that the Court ordered to be reviewed in camera, should have been released 16 months ago pursuant to Magistrate Zarefsky's Order, as clearly set forth in our May 21 and May 23, 2007 letters to you.  Your sole reason for not following the Order was defendants' insistence that you engage in a substantive review of plaintiffs' privilege logs that far exceeded the Order and your role as an escrow agent.

Moreover, defendants specifically brought a motion to compel *on this very basis* and the Court *declined* it.  *See* September 17, 2007 Joint Stipulation at 20:15-22:26.  Defendants even pressed the issue at the hearing, at which time the Court made it abundantly clear that it was focused only on the nine documents *remaining* at issue, and was not interested in re-hashing this matter with respect to the other Escrow Documents:

> Mr. Perkins:  "One of the things we had asked the escrow agent to do was to take Mr. Toberoff's declaration and to go document number by document number and ensure that the documents that he identified on his declaration really were what he said they were. In other words, he identifies certain ones that had already been produced."

> The Court:  "***Let's not talk about the ones that have been done. Let's talk about the nine that we have left. I want to resolve this. We're going to move on here, counsel.***"

September 17, 2007 Transcript at 120:11-19.  The Court's September 17, 2007 minute order went on to describe defendants' motion to compel as "moot."

By letter dated September 18, 2007, plaintiffs explicitly informed you that the Court had denied defendants' motion, except to the extent of an in camera review of the nine documents, and, again, plaintiffs urged you to distribute the remaining documents pursuant to Magistrate Zarefsky's Order.  Yet, you continued to ignore this and retained the files stolen from my law offices for an additional 12 months.

The Court's recent September 26, 2008 Order was expressly based on its conclusion that Magistrate Zarefsky's Order was the "law of the case" and the Court's basic directions were thus explicitly made "pursuant to Magistrate Zarefsky's Order."  It is clear that Magistrate Zarefsky

**197**

**TOBEROFF & ASSOCIATES, P.C.**

David Eisen, Esq.
October 13, 2008
Page 3

intended to resolve this matter with a very simple protocol based on a declaration from me, accounting for all the Escrow Documents by bates numbers and distinguishing produced documents from those documents for which privilege has been *asserted* on a privilege log.

Magistrate Zarefsky's April 30, 2007 Order contemplated a routine process based on my declaration, not a substantive review of the documents listed on the privilege logs:

> "Then *the escrow holder … is to return to plaintiffs any documents which are identified in the declaration as being privileged and having been identified on the privilege logs*. The others can be delivered to trial counsel for defendants…."
> "For example, Bates number, let's call it 'escrow'…Escrow document 00004 corresponds to previously produced document 00006.  Escrow document 00007 corresponds to previously produced document 00009, and so on…Privilege escrow document 00015 is a privilege document which was listed on the privilege log as document such and such… Privilege documents get returned.  The privilege documents that were listed on the privilege log get returned.  The others get sent to defense counsel."

April 30, 2007 Transcript at 19:16- 20:3; 30:7-24.

A privilege log constitutes an assertion of privilege.  The issue before Magistrate Zarefsky and the Court regarding the stolen documents was whether privilege had been *asserted* on a privilege log, *not* whether privilege had been *properly* asserted.  Such would be the subject of a different motion to compel by defendants challenging the assertion of privilege.  Accordingly, Magistrate Zarefsky simply ordered that all documents on a privilege log be released to plaintiffs.

The comments in your letter regarding the privileged status of attachments to an attorney-client communication suggest an intention on your part to adjudicate privilege, directly or indirectly, which, of course, was never intended by Magistrate Zarefsky or the Court, and is inappropriate to your function.

Moreover, as plaintiffs have repeatedly pointed out to you, *Magistrate Zarefsky by his August 18, 2006 Order clearly and specifically upheld the sufficiency of plaintiffs' privilege logs* in response to defendants' prior motion to compel attacking plaintiffs' logs.  It would therefore be manifestly improper for you to now pass judgment on the validity of any descriptions contained in plaintiffs' logs, as suggested in your October 8, 2008 letter.

You even confirmed in your May 24, 2007 letter that Magistrate Zarefsky's April 30, 2007 Order does not provide for the second guessing of plaintiffs' privilege log entries, and refused to undertake such an analysis.  When defendants provided you with the privilege logs and documents produced, and asked you to undertake a more substantive review, you properly responded as follows:

**198**

**TOBEROFF & ASSOCIATES, P.C.**

David Eisen, Esq.
October 13, 2008
Page 4

> "In the transcript, Magistrate Judge Zarefsky does seem to announce *<u>a simple protocol for the so-called Escrow documents</u>:  documents which appear on privilege logs are protected and should not be turned over to defendants, and documents not on privilege logs are not protected and should be produced to defendants*."

The Court agrees.  Its September 26, 2008 Order expressly directs you to disburse the Escrow Documents per my May 21, 2007 declaration and Magistrate Zarefsky's April 30, 2007 Order:

> "Accordingly, *pursuant to the terms of Magistrate Judge Zarefsky's Order ...
>  the escrow agent is to match up the escrow documents with the privilege log entries and production documents listed in Mr. Toberoff's May 21, 2007, declaration*."

Thus, on two different occasions – on April 30, 2007 and September 26, 2008 – the Court has issued orders clearly directing a ministerial disbursement of the Escrow Documents pursuant to my May 21, 2007 declaration.  It is simply well past time to distribute all the Escrow Documents, releasing to defendants' attorneys the nine documents, plus the documents listed in my May 21, 2007 declaration as previously produced, and releasing to plaintiffs' attorneys the documents listed in my declaration as corresponding to the privileged logs.

You will thereby be relieved of your duties and no longer be in the middle of this unfortunate matter.  If defendants continue to object to this, they can bring a motion for reconsideration to the Court, just as plaintiffs shall bring a motion for reconsideration shortly.  However, defendants should not be permitted to "have their cake and eat it too," by obtaining the nine documents while continuing to retain, through you, the bulk of the Escrow Documents in contravention of the Order, based on claims previously rejected by the Court.

Accordingly, you should release the Escrow Documents pursuant to your original understanding of Magistrate Zarefsky's simple order, as reflected in your May 24, 2007 letter.  If defendants wish to contest plaintiffs' assertion of privilege or privilege logs, they may bring a motion.  However, defendants should no longer be permitted to delay this process or to contest or circumvent plaintiffs' assertion of privilege through you.

Very truly yours,

Marc Toberoff

cc:    Michael Bergman, Esq. (via email)
       Patrick Perkins, Esq. (via email)
       James Weinberger, Esq. (via email)

**199**

# EXHIBIT AA

10/16/2008 12:08 FAX  213 243 4188        ARNOLD & PORTER, LLP

# ARNOLD & PORTER LLP

David S. Eisen
David.Eisen@aporter.com

213.243.4182
213.243.4199 Fax

44th Floor
777 South Figueroa Street
Los Angeles, CA 90017-5844

October 16, 2008

**Delivered to Chambers via Messenger**

Honorable Judge Stephen G. Larson
United States District Court of California
Central District of California
3470 Twelfth Street
Riverside, California 92501-3000

      Re:    Siegel & Larson v. Time Warner, Inc.
             USDC Central District Court Case No. 04-08400 SGL (RZx)

Dear Judge Larson:

    I am the individual holding the so-called "escrow documents" which have been the subject of some dispute in this litigation. I am writing to request clarification of the Court's September 26, 2008 order, because the litigants disagree about its interpretation and I am not certain how to proceed.

    In addition to the "nine documents," you ordered me to produce to defendants "any escrow document not previously listed in a privilege log or as having previously been produced." You further said that I am to "match up the escrow documents with the privilege log entries and production documents listed on Mr. Toberoff's May 21, 2007 declaration." This leads to the following issues, as to which I would appreciate the Court's guidance:

    (1) Defendants' counsel has informed me his position is that escrow documents not listed on plaintiffs' privilege logs or the privilege log of Mr. Bulson must be produced. Plaintiffs' counsel has informed me his position is that documents listed on *any* privilege log must not be produced. I would request the Court's advice as to which position is correct.

    (2) With respect to the "match up" of the relevant privilege logs and Mr. Toberoff's declaration, the parties disagree with one another as to whether I am to compare the description of each document in the privilege log to the corresponding escrow document. In other words, if Mr. Toberoff's declaration states that escrow document number "X" is covered by a particular entry in a privilege log, am I to ascertain whether the escrow document and privilege log

**201**

# ARNOLD & PORTER LLP

Honorable Judge Stephen G. Larson
October 16, 2008
Page 3

and produce the document to defendants if it does not? If that is not what I am supposed to do, further instructions about the "match up" would be helpful.

(3) If the answer to (2) above is yes, then I have a second question regarding the match up process. Suppose a series of pages among the escrow documents consists of more than one document (e.g., a cover letter and an enclosed document) but the privilege log entry only references one of the documents. Under those circumstances, is the document not referenced in the privilege log deemed to be included within the confines of the privilege log protection, or not?

Pending clarification of the Court's order, in an abundance of caution, I have not produced any documents to defendants, notwithstanding the Court's instruction that I act "forthwith." Given the Court's mandate that I proceed immediately, however, I did not feel it appropriate to simply wait for a further motion by one of the parties to clear up these issues.

Finally, I apologize for the informality of this letter, but since I do not represent a party to this litigation, and time seems to be of the essence, I did not feel that a noticed motion from me would be appropriate. If the Court prefers that I bring my request for clarification in a different manner, perhaps your clerk could let me know.

Sincerely,

DAVID S. EISEN

cc:    Michael Bergman, Esq. (via fax)
       Marc Toberoff, Esq. (via fax)

**202**

# ARNOLD & PORTER LLP

777 So. Figueroa Street
Los Angeles, CA 90017

213.243-4000
213.243-4199Fax

## Fax Transmittal

October 16, 2008

| Recipient Name(s) | Fax Number(s) | Telephone Number(s) |
|---|---|---|
| Michael Bergman | (310) 550-7191 | (310) 858-7888 |
| Marc Toberoff | (310) 246-3101 | (310) 246-3333 |

**Sender's Name:** David Eisen

**Telephone #:** (213) 243-4182

**Timekeeper #:** 4507

**Client Matter #:** 01791.002

**Pages:** 3 (including cover sheet)

**Recipient Notice:** If you experience difficulty receiving this fax transmission, please contact the operator at 213.243.4224

**Message:**

## PRIVILEGED AND CONFIDENTIAL

Information intended only for the use of the addressee named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, please note that any dissemination, distribution or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the above address via the U.S. Mail.

Page 1

**203**

# EXHIBIT BB

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-08400-SGL (RZx)                                    Date:  December 4, 2008

Title:    JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -*v*-
WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
corporation; DC COMICS INC., a corporation; and DOES 1-10
===============================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                          None Present
Courtroom Deputy Clerk                              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None present                                        None present

PROCEEDINGS:    **ORDER REGARDING ESCROW HOLDER'S OCTOBER 16, 2008, LETTER
SEEKING CLARIFICATION OF COURT'S SEPTEMBER 26, 2008, ORDER**

The Court has received and reviewed the escrow holder's October 16, 2008, letter (revised)
requesting clarification of the Court's September 26, 2008, Order, as well as the parties' respective
briefs filed in response to the escrow holder's letter.  In the letter, the escrow holder asks the Court
to answer the following questions:

In addition to the 'nine documents,' you [also] ordered me to produce to
defendants 'any escrow document not previously listed in a privilege log
or as having previously been produced.'  You further said that I am to
'match up the escrow documents with the privilege log entries and
production documents listed on Mr. Toberoff's May 21, 2007,
declaration.' This leads to the following issues, as to which I would
appreciate the Court's guidance: (1) Defendants' counsel has informed
me his position is that escrow documents listed on the privilege log of
[third party] Mr. Bulson must be produced.  Plaintiffs' counsel has
informed me his position is that documents listed on Mr. Bulson's

MINUTES FORM 90                                     Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          1

205

privilege log must not be produced.  I would request the Court's advice as to which position is correct. (2) With respect to the 'match up' of the relevant privilege logs and Mr. Toberoff's declaration, the parties disagree with one another as to whether I am to compare the description of each document in the privilege log to the corresponding escrow document.

The Court's September 26, 2008, Order was meant to dispose of the <u>one</u> remaining dispute between the parties concerning the escrow documents — the plaintiffs' assertion of privilege over nine of the documents held in escrow that were listed on Mr. Toberoff's May 21, 2007, declaration as ones to which privilege had not previously been asserted during this litigation.  This declaration was created at the direction of an order Magistrate Judge Zarefsky entered on April 30, 2007, which additionally spelled out the ramifications flowing from the information disclosed in said declaration.  Specifically, Magistrate Judge Zarefsky stated:

> I want you to submit a declaration that does identify by the Bates numbers of the escrow documents and the corresponding Bates numbers of documents already produced, those among the escrow documents which are unprivileged and have already been produced. So, you take the Bates numbers of the escrow documents and say, "Here are the corresponding Bates numbers of the documents that have already been produced and correspond to the listings on the privilege log of the documents which have not been produced because they were privileged.  All right?  So, put that in your declaration.  Then the escrow holder . . . is to return to the plaintiffs any documents which are identified in the declaration as being privileged and having been identified on the privilege logs.  The others can be delivered to trial counsel for defendants because they're either unprivileged, or, if they were privileged, <u>privilege has been waived because they weren't listed on the privilege log</u>. . . .  <u>Privileged documents get returned.  The privilege documents that were listed on the privilege log get returned. The others get sent to defense counsel</u>.

(emphasis added).

As the escrow holder noted in his correspondence to the parties shortly after Magistrate Judge Zarefsky's April 30, 2007, Order, was issued: "In the transcript, Magistrate Judge Zarefsky does seem to announce a simple protocol for the so-called Escrow Documents: documents which appear on [prior] privilege logs are protected and should not be turned over to defendants, and documents not on [previous] privilege logs are not protected and should be produced to defendants." (Decl. Marc Toberoff, Ex. F).  What was a simple process, however, became complicated by "additional issues/arguments" submitted by Mr. Toberoff after the hearing concerning the scope of Magistrate Judge Zarefsky's April 30, 2007, Order.  Specifically, plaintiffs contended that certain escrow documents were privileged pursuant to a "gentleman's agreement"

MINUTES FORM 90                                    Initials of Deputy Clerk __jh_____
CIVIL -- GEN                        2

**206**

the parties had reached at the onset of the litigation concerning post-litigation communications, and that another escrow document (the cover letter attached when the escrow documents were delivered to defendants) was not previously in plaintiffs possession and contained privileged material therein.  Defendants for their part sought to litigate the propriety of the invocation of privilege contained in prior privilege logs themselves (particularly, the invocation of the common interest privilege on a log submitted by third party Don Bulson) and also sought for the escrow holder to examine the descriptions in Mr. Toberoff's declaration to see if they accurately described those escrow documents.  (Decl. Marc Toberoff, Ex. G (defense counsel at September 17, 2007, hearing, informing Court that one of the things defendants sought was for the escrow holder "to take Mr. Toberoff's declaration and to go document number by document number and ensure that the documents that he identified on his declaration really were what he said they were")).

This Court ordered the escrow holder to produce for in camera inspection the nine documents referenced by plaintiffs' newly-asserted contention of being privileged.  This was done and the parties submitted further pleadings with respect to the assertion of privilege concerning those documents.  At the same time, defendants sought to raise the additional considerations with the Court, arguments which the Court informed defense counsel it was not inclined to entertain. (Decl. Marc Toberoff, Ex. G ("The Court:  Let's not talk about the ones that have been done.  Let's talk about the nine that we have left.  I want to resolve this.  We're going to move on here, counsel. What are we going to do about these nine documents")).

On September 26, 2008, the Court issued an Order resolving what had initially been brought to the Court's attention back in September, 2007, that is, whether the escrow holder was required to turnover to defense counsel the nine documents.  The Court held that plaintiffs' new assertions of privilege were trumped by the fact that Magistrate Judge Zarefsky's Order provided that "any claim of privilege not previously asserted before that Order was deemed 'waived'"; that plaintiffs never appealed that order; and that, as a consequence, "Magistrate Judge Zarefsky's Order is now the law of the case in this matter."  Essentially, the Court's September 26, 2008, Order sought to restore the status quo ante by simply enforcing Magistrate Judge Zarefsky's April, 2007, Order. Similarly, the Court's Order did not address, nor did it seek to address, the extraneous issues being pressed by defendants, issues going beyond those addressed by Magistrate Judge Zarefsky's Order.

The Court thereupon ordered the escrow holder to perform the limited task set forth in Magistrate Judge Zarefsky's April, 2007, Order:  Compare the Toberoff declaration to the escrow documents in his possession, and turnover to defendants those for which privilege had not previously been asserted.

To answer the escrow holder's two-part question, the Court's response is as follows:

(1)  No.  The escrow documents listed on the privilege log of Mr. Bulson are not to be produced, as such production exceeds the scope of Magistrate Judge Zarefsky's April 30, 2007, Order, which was predicated on the turnover of those escrow documents to which no prior

CV 04-08400-SGL (RZx)
JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual v WARNER BROS.
ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS INC., a
corporation; and DOES 1-10
MINUTE ORDER of December 4, 2008

privilege log had listed them as privileged; Mr. Bulson listed the escrow
documents in question in his privilege log well before Magistrate Judge
Zarefsky's April 30, 2007, Order.

(2)   No.  The escrow holder is not to compare the description of each
document in Toberoff's declaration to the corresponding escrow
document to ensure the description's accuracy.  Rather, the task of
matching up or review is done only insofar as the escrow holder is
charged with carrying out the task, as set forth in Magistrate Judge
Zarefsky's April 30, 2007, Order, of locating (using the Bates stamp
legend) those documents which appear on Toberoff's May, 2007,
declaration as having previously been listed on a privilege log and
turning them over to plaintiffs, and turning over the remainder (the
aforementioned "nine escrow documents") to defendants.

**IT IS SO ORDERED**.