1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>        Plaintiffs,<br><br><br>    vs.<br><br><br>WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10,<br><br>        Defendants. | Case No. CV 04-8400 SGL (RZx)<br><br> Hon. Stephen G. Larson, U.S.D.J.<br><br>**FINAL PRE-TRIAL CONFERENCE ORDER**<br><br>**Final Pre-Trial Conference**<br>Date:  January 26, 2009<br>Time:  11:00 a.m.<br>Place:  Courtroom 1<br><br>**Trial**<br>Date:   April 21, 2009<br>Time:  9:30 a.m.<br>Place:  Courtroom 1<br><br>[Complaint filed: October 8, 2004] |
| AND RELATED COUNTERCLAIMS | |

# TABLE OF CONTENTS

1.   Parties .............................................................................................1

2.   Jurisdiction and Venue ..................................................................1

3.   Estimated Time of Trial ................................................................2

4.   Non-Jury Trial ...............................................................................2

5.   Admitted Facts ...............................................................................2

6.   Facts Stipulated Without Prejudice to Evidentiary Objections.............4

7.   Claims and Defenses .....................................................................7

     A. Claims To Be Tried ................................................................7

     B.   Defenses ...........................................................................8

8.   Discovery........................................................................................8

9.   F.R.C.P. 26(a)(3) Disclosures .......................................................8

10.  Witness Lists ..................................................................................8

11.  Pending Motions.............................................................................9

12.  Bifurcation....................................................................................16

13.  Conclusion.....................................................................................17

Following pretrial proceedings and pursuant to Rule 16, F.R.Civ.P. and L.R. 16,

**IT IS ORDERED:**

   **1.    THE PARTIES ARE:**

Plaintiff and counterclaim defendant Joanne Siegel, an individual and plaintiff and counterclaim defendant Laura Siegel Larson, an individual (collectively, "Plaintiffs").

Defendant Warner Bros. Entertainment Inc. ("Warner Bros. Entertainment"), a corporation, defendant Time Warner Inc. ("TWI"), a corporation and defendant and counterclaimant DC Comics, a general partnership (collectively, "Defendants").

Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are:

        A.    Plaintiffs' Second Amended Complaint;

        B.    Defendants' Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint; and Defendants' Counterclaims against Plaintiffs.

   **2.    FEDERAL JURISDICTION AND VENUE ARE INVOKED UPON THE FOLLOWING GROUNDS:**

This is a civil action seeking declaratory relief, accounting for profits and related claims arising out of Plaintiffs' termination notices of prior grants of copyright pursuant to the United States Copyright Act of 1976, 17 U.S.C. § 304(c). The Court has subject matter jurisdiction over the claims set forth in Plaintiffs' Second Amended Complaint pursuant to the United States Copyright Act (hereinafter, the "Copyright Act"), 17 U.S.C. § 101 et al. and 28 U.S.C. §§ 1331, 1332, 1338(a) and (b). This Court has supplemental jurisdiction over the related state claims herein under 18 U.S.C. § 1367 in that these claims form part of the same case and controversy as the federal claims herein. This Court has personal jurisdiction

over the Defendants in that Defendants are regularly doing business in the State of California and in this District, and because a substantial part of the relevant acts complained of herein occurred in the State of California and this District.  Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because a substantial part of the relevant acts that give rise to the claims herein below occurred in this district and because Warner Bros. Entertainment Inc. has its principal place of business in this district.  The facts requisite to federal jurisdiction are admitted.

### 3.    ESTIMATED TIME OF TRIAL

Plaintiffs estimate seven (7) trial days.

Defendants estimate four (4) trial days, if their motions in limine are granted.

After further consideration of the amended witness lists, and notwithstanding the Court's earlier direction, the Court has determined that each side will be allotted no more than 18 hours for their respective cases-in-chief.

### 4.    THE TRIAL IS TO BE A NON-JURY TRIAL

At least fourteen (14) days prior to the trial date each party shall lodge and serve by e-mail, fax, or personal delivery the findings of fact and conclusions of law the party expects the Court to make upon proof at the time of trial as required by L.R. 52-1 and this Court.   Notwithstanding the Court's earlier directions, no responses to the findings of fact and conclusions of law lodged by the other side are required at this time.

### 5.    THE FOLLOWING FACTS ARE ADMITTED AND REQUIRE NO PROOF:

1.      DC Comics is in the business of creating, publishing, and licensing comic book stories and characters.

2.      The November 6, 1999, Superman Film Option/Purchase agreement (Bates numbered WB004199-4231) between DC Comics and Time Warner

1   Entertainment Company, L.P. ("TWEC") was fully executed on May 9, 2002.

2       3.    The December 5, 2000, Smallville Television Agreement (Bates

3   numbered WB0135031-135051) between DC Comics and TWEC was fully executed

4   on February 12, 2001.

5       4.    The December 5, 2000, Smallville Television Agreement between DC

6   Comics and TWEC was amended by a written instrument dated September 5, 2002.

7       5.    The Batman Option Purchase Agreement dated as of May 31, 2002,

8   (Bates numbered WB004083-4120) between DC Comics and TWEC was fully

9   executed on February 3, 2004.

10       6.    Paul Levitz is the President and Publisher of DC Comics.

11       7.    Paul Levitz negotiated on behalf of DC Comics certain financial terms of

12   the Superman Option/Purchase agreement between DC Comics and TWEC dated as

13   of November 6, 1999, regarding Superman motion picture and other audiovisual

14   rights (the "Superman Film Agreement").

15       8.    Paul Levitz negotiated, on behalf of DC Comics, certain financial terms

16   of the Smallville Television Agreement between DC Comics and TWEC dated as of

17   December 5, 2000, regarding Superman television rights (the "Superman Television

18   Agreement.")

19       9.    Paul Levitz negotiated on behalf of DC Comics certain financial terms of

20   the September 5, 2002, Amendment to the Superman Television Agreement.

21       10.    The Superman Film Agreement applies to the 2006 feature motion

22   picture entitled *Superman Returns*.

23       11.    On or about May 22, 2002, Warner Bros. paid DC Comics the

24   $1,500,000 option fee pursuant to Paragraph 1(a) of the Superman Film Agreement.

25       12.    The Superman Television Agreement, as amended September 5, 2002,

26   applies to the *Smallville* television series.

27       13.    The agreement dated June 15, 1987, between DC Comics Inc. and

28   Cantharus Productions N.V. (Bates numbered WB016531-16549), applies to the

television series entitled *Superboy* (a.k.a *The Adventures of Superboy*) (1988-1992).

14.    The agreement dated September 21, 1995, between DC Comics Inc. and Warner Bros. Animation (Bates numbered WB019605-19618) applies to the animated television series entitled *Superman* (also known as *Superman: The Animated Series*) (1996-2000).

15.    The agreement dated January 1, 2000, between DC Comics Inc. and Warner Bros. Television Animation (Bates numbered WB019503-19526) applies to the animated television series entitled *Justice League* (2001-2004).

16.    The agreement dated January 1, 2004, between DC Comics and Warner Bros. Animation Inc. (Bates numbered WB019544-19566) applies to the animated television series entitled *Krypto* (2005-2006).

17.    The unexecuted draft agreement dated June 1, 2004, between DC Comics and Warner Bros. Animation Inc. (Bates numbered WB019575-19601) applies to the animated television series entitled *Legion of Super Heroes* (2006-2008).

**6.    THE FOLLOWING FACTS, THOUGH STIPULATED, SHALL BE WITHOUT PREJUDICE TO ANY EVIDENTIARY OBJECTION:**

18.    National Periodical Publications, Inc. ("National") is the successor in interest to Detective Comics, Inc.

19.    In 1976, National's name was changed to DC Comics, Inc.

20.    In 1993, DC Comics, Inc. was dissolved and converted to a New York general partnership.

21.    DC Comics has remained a New York general partnership from 1993 until the present.

22.    From 1993 until March 2003, the partners in DC Comics were WCI and Time Warner Entertainment Company, L.P. ("TWEC").

23.    In 1992 Historic Time Warner Inc. formed TWEC with certain of its affiliates, and third party investors.  The affiliated entities contributed various cable,

filmed entertainment and network programming assets to the TWEC partnership, while the non-affiliated parties made substantial capital contributions in exchange for limited partnership interests.

24.     Between 1993 and 2003 Historic Time Warner Inc. and its affiliated partners owned between approximately 70% and 75% of TWEC.  During this time TWEC held various cable, entertainment and network programming assets, including Warner Bros., Warner Bros. Television Production, HBO and Time Warner Cable, all of which were separate divisions of TWEC.

25.     In March 2003, Time Warner Inc. ("TWI") completed a restructuring of TWEC.  As a result of this restructuring, TWI acquired complete indirect ownership of TWEC's filmed entertainment and network programming assets, including Warner Bros., Warner Bros. Television Production, and certain other former divisions of TWEC.

26.     EC is a direct wholly owned subsidiary of WCI.

27.     WCI is an indirect subsidiary of TWI.

28.     Warner Bros. Entertainment is a direct wholly owned subsidiary of WCI.

29.     In connection with the restructuring of TWEC, WCI contributed its 50% interest in DC Comics to EC and TWEC distributed the assets of its content businesses (i.e. the filmed entertainment and network programming assets), including its partnership interest in DC Comics, to WCI.

30.     The partners in DC Comics are EC and WCI, each holding a one-half interest in the partnership.

31.     The 2003 TWEC restructuring resulted in the formation of a number of new corporations to hold and operate the content businesses formerly owned by TWEC. These newly formed corporations included Warner Bros. Entertainment, which succeeded to TWEC's filmed entertainment businesses.

32.     Warner Bros. Entertainment is wholly owned by WCI, which is indirectly owned by TWI.

5

FINAL PRE-TRIAL CONFERENCE ORDER

33.     Both DC Comics and Warner Bros. Entertainment are affiliates of TWI.

34.     For financial reporting purposes, DC Comics and WBEI fall within the "filmed entertainment" group of TWI companies - which also includes New Line Cinema Corporation and Castle Rock Entertainment - and for operating management purposes DC Comics reports to its ultimate corporate parent through Warner Bros. Entertainment.

35.     Because of that financial reporting structure, DC Comic's President and Publisher reports to and obtains approvals from Warner Bros. Entertainment's President and Chief Operating Officer before making significant acquisitions or certain financial decisions or investments that are outside the scope of DC Comic's customary acquisitions and investments; before implementing meaningful strategic changes; and before embarking on something substantially outside DC Comic's normal course of business.

36.     Warner Bros. began developing a Superman theatrical motion picture entitled "Superman Reborn" in 1994.

37.     The feature film "Batman" was theatrically released in the United States on June 23, 1989.

38.     The feature film "Batman Returns" was theatrically released in the United States on June 19, 1992.

39.     The feature film "Batman Forever" was theatrically released in the United States on June 16, 1995.

40.     The feature film "Batman & Robin" was theatrically released in the United States on June 20, 1997.

41.     The feature film "The Matrix" was theatrically released in the United States on March 31, 1999.

42.     The feature film "Harry Potter and The Sorcerer's Stone" was theatrically released on November 16, 2001.

43.     The feature film "Lord of the Rings: Fellowship of the Ring" was

theatrically released on December 19, 2001.

44.     The feature film "Harry Potter and the Chamber of Secrets" was theatrically released on November 15, 2002.

45.     The feature film "Lord of The Rings: The Two Towers" was theatrically released on December 18, 2002.

46.     The feature film "The Matrix Reloaded" was theatrically released in the United States on May 15, 2003.

47.     The feature film "The Matrix Revolutions" was theatrically released in the United States on November 5, 2003.

48.     The feature film "Lord of the Rings: The Return of the King" was theatrically released on December 17, 2003.

49.     The feature film "Harry Potter and the Prisoner of Azkaban" was theatrically released on June 4, 2004.

50.     The feature film "Batman Begins" was theatrically released on June 15, 2005.

51.     The feature film "Harry Potter and the Goblet of Fire" was theatrically released on November 18, 2005.

52.     The feature film "The Dark Knight" was theatrically released in the United States on July 18, 2008.

**7.     CLAIMS AND DEFENSES TO BE PRESENTED AT TRIAL:**

**A.     <u>Claims To Be Tried</u>**

Given the nature and the characterization of the property in question, the trial shall determine whether the value of the various Superman option and assignment agreements between DC Comics and TWEC, Warner Bros. Entertainment's predecessor in interest, and the amounts paid to DC Comics by TWEC (and its

successor Warner Bros. Entertainment) thereunder, reflect the fair market value of the nonexclusive rights that the Court has determined were transferred from DC Comics to TWEC (and its successor Warner Bros. Entertainment), and, if not, what accounting shall be required of Warner Bros. Entertainment to ensure an equitable result.

The Court's reference to "nonexclusive rights" reflects the Court's finding that, notwithstanding DC Comics' attempt to confer what DC Comics characterized as all of the exclusive rights to Superman, the Court has found, for the reasons set forth in detail in its Order dated March 26, 2008, that those rights were, in fact, nonexclusive rights, as further explained below in the Court's ruling on Plaintiffs' Motion in Limine No. 1.

In light of the above, Plaintiffs' motion for clarification and their ex parte application for clarification are **DENIED.**

---

[1] Even if the factual premise were correct (and it is not), plaintiffs' legal argument that a co-owner can exclusively assign away all or part of its interest in the copyright in question (the co-owner's share, not the entirety of the copyright itself owned by both co-owners) without the consent of the other co-owner is a matter of much debate, compare Gardner v. Nike, 279 F.3d 774 (9th Cir. 2002) and Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137 (9th Cir. 2008) with 2 PATRY ON COPYRIGHT § 5:103 (2008) (criticizing Ninth Circuit's decisions as leading to the creation of "a copyright Minotaur: part 1909 Act and part 1976 Act" and under the 1976 Act Congress "intended that co-owners be able to . . . transfer their proportional share in the whole without the other's permission, in which case the transferee would indeed stand in the shoes of the transferor"). The Court need not wade into that legal morass as the facts here establish that, unlike the circumstances in the decisions and treatise cited, in the option and assignment agreements defendant DC Comics held itself out as the sole owner to the entirety of the Superman copyright, and then attempted to exclusively assign all, not just its one-half co-owner proportional share, of that right to Warner Bros. Entertainment. Given that there was no intent to simply assign its proportional co-ownership interest (rather than the entirety of the copyright's audiovisual rights itself), the options and assignments are judged based on that reality, that is, what DC Comics was seeking to transfer, and not on what it could have (if it wished) transferred.

**B.**   **Defenses**

Defendants will not be asserting any affirmative defenses or counterclaims in this phase of the trial.

**8.**   **DISCOVERY**

Discovery is complete.

Defendants' motion to reopen discovery filed March 2, 2009 is **DENIED**.

**9.**   **ALL DISCLOSURES UNDER FED.R.CIV.P. 26(A)(3) HAVE BEEN MADE**

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6-1.  Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits objected to in the parties' Joint Exhibit Stipulation filed concurrently herewith.

**10.**   **WITNESS LISTS OF THE PARTIES HAVE BEEN FILED WITH THE COURT**

Only the witnesses identified in the parties' joint witness list (as amended) will be permitted to testify (other than solely for impeachment).

Neither party is intending to present evidence by way of deposition testimony (other than for cross-examination or impeachment).

**11.**   **THE FOLLOWING LAW AND MOTION MATTERS AND MOTIONS *IN LIMINE*, AND NO OTHERS, HAVE BEEN SUBMITTED, HEARD, AND DECIDED BY THE COURT, AS FOLLOWS:**

**Plaintiffs' Motions in Limine**

A.   <u>Motion in Limine No. 1</u>

Plaintiffs have moved in their first motion in limine to preclude Defendants from introducing evidence that Warner Bros. Entertainment purportedly paid DC Comics "fair market value" for Warner Bros. Entertainment's purchase of DC Comics's Superman "audiovisual," motion picture, and television rights, on the basis that such evidence is moot and irrelevant with respect to such Superman copyright interests that are now *co-owned* by Warner Bros. Entertainment and Plaintiffs, not DC Comics and Plaintiffs.

Plaintiffs' Motion in Limine No. 1 is **DENIED**.  The factual basis underlying the motion is the contention that, in licensing the Superman copyright's audiovisual rights to defendant Warner Bros. Entertainment, defendant DC Comics purported to convey "<u>DC's entire proportional copyright interest</u> in the Superman audiovisual rights . . . and the fact that such transfer was <u>exclusive as to DC</u>."  (Pls' Mot. Limine # 1 at 2 (emphasis in original)).   Plaintiffs then argue that, in such a situation, certain authorities have held that the consent of the co-owner to the copyright is not needed to render the transfer effective, which would thereby lead to the transferee effectively stepping into the shoes of the transferor.[1]  The factual premise for this argument, however, is mistaken, a result which creates a legally material difference in whether DC Comics remained (or whether Warner Bros Entertainment possibly stepped into the shoes) as a co-owner with plaintiffs to the Superman audiovisual rights at stake in this case.

As the Court noted in its March 26, 2008, Order, in the option and assignment agreements, DC Comics held itself out as being the only owner to the entirety of the Superman copyright (not as a co-owner to a jointly owned work), and then sought to exclusively transfer all of a portion of that entire copyright (the audiovisual rights) to Warner Bros. Entertainment.  See Siegel v. Warner Bros. Entertainment Inc., 542 F.Supp.2d 1098, 1143 (C.D. Cal. 2008) ("DC Comics unilaterally sought to give an exclusive license to the entirety in the Superman property's movie and television rights to WBEI post-termination"); see also Decl. Marc Toberoff in Opp. to Defs' Mot. Partial Summ. J., Ex. E at 65 ("DC hereby represents and warrants that (a) DC is the sole proprietor of all rights in the Property" (emphasis added)) & Ex. F at 94 ("Assignor represents and warrants that Assignor is the sole author and owner of the work, and of all rights herein granted and assigned" (emphasis added)).

In such a situation, the authorities provide that, should it be determined that the transferor was in fact a co-owner of the copyright so-conveyed, then the attempt to exclusively convey the entirety of the copyright (or one or more of its divisible parts) to a third party would be ineffective absent the consent of the co-owner of that copyright; instead, what would have been conveyed was, at best, a non-exclusive license leaving the transferor (here DC Comics) as a co-owner of the copyright (or portion thereof) in place.  See id. at 1143-44 (quoting 2 PATRY ON COPYRIGHT § 5:7 ("A joint author (or co-owner) may not, however, transfer all interest in the work without the other co-owner's express (and written) authorization, since that would

result in an involuntary transfer of the other joint owner's undivided interest in the whole") and citing 3 NIMMER ON COPYRIGHT § 10.03[A][7] at 10-51).

The Court itself recognized in the March 26, 2008, Order that the circumstances could be different if DC Comics had attempted simply to convey only its one-half co-ownership interest in the copyright to Warner Bros.. Id. at 1143 ("The same requirement for prior consent holds true even with respect to the wholesale transfer of exclusive licenses in subparts to a copyright, such as a license transferring all the stage rights (not just the joint owner's rights) to a novel but not the movie or literary rights" (emphasis added)).  However, that is not what occurred; therefore, plaintiffs' argument regarding that possibility is factually inapposite.  (See also Defs' Opp. to Pls' Mot Limine No. 1 at 5 ("this authority [cited to by plaintiffs] addresses the situation where a joint owner transfers just his own . . . interest in a copyright, not where he purports to transfer the entirety of exclusive rights [owned and shared by the copyright's co-owners] under that copyright")).


### B.     Motion in Limine No. 2

Plaintiffs have moved in their second motion in limine to preclude Defendants' experts, William Immerman and Richard Marks, from testifying on the grounds that, with regard to the issues to be tried on April 21, 2009, the mere conclusory opinions expressed in their expert reports and deposition testimony are not supported by sufficient facts or data and/or by any reliable or even discernable methodology.

For the reasons set forth on the record, plaintiffs' Motion in Limine No. 2 is **DENIED** without prejudice to plaintiffs' being able to voire dire defendants' experts

FINAL PRE-TRIAL CONFERENCE ORDER

1   Willim Immerman and Richard Marks at trial.  Defendants should remain mindful

2   that the expert opinions of Mr. Immerman and Mr. Marks, and the basis for said

3   opinions, are limited to what is contained in their expert reports.

4              C.      Motion in Limine No. 3

5

6       Plaintiffs have moved in their third motion in limine to preclude Defendants

7   from introducing into evidence documents and agreements produced for the first time

8   at the parties' L.R. 16-2 Meeting of Counsel because Defendants failed to comply

9   with their discovery obligations pursuant to Fed. R. Civ. P. 26.  Defendants were

10  required to supplement their Rule 26(a) disclosures as well as their document

11  production by November 21, 2008 pursuant to written agreement of the parties, but

12  willfully failed to do so.  Plaintiffs have also moved (a) to preclude Defendants'

13  percipient witnesses from testifying regarding agreements they did not negotiate,

14  draft and/or directly participate in and which were not produced prior to the agreed

15  November 21, 2008 deadline; and (b) to preclude Defendants' non-expert witnesses

16  from offering lay opinions about the purported "fairness" of the Superman

17  agreements between DC Comics and Warner Bros. Entertainment.

18

19      For the reasons set forth on the record and subject to the conditions set forth in

20  the Court's ruling on Defendants' Motion in Limine No. 4, plaintiffs' Motion in

21  Limine No. 3 is **DENIED** as it relates to the 23 agreements described in the papers

22  and discussed at the hearing.  Insofar as the other evidentiary objections raised in

23

24  plaintiffs' Motion in Limine No. 3 are concerned, it is **DENIED** without prejudice to

25  plaintiffs' being able to raise said objections  to the evidence as it is sought to be

26  introduced during trial (the propriety of said objection dependent upon the same

27  having been vocalized during the trial itself or the objection is deemed waived).  The

28

13

party seeking admission of the evidence shall bear the initial burden of production demonstrating that said evidence satisfies the particular objection being raised (be it improper disclosure, untimely production, etc.,) upon which the burden then shifts to the objecting party to demonstrate that is not the case.

### D.    Motion in Limine No. 4

Plaintiffs have moved in their fourth motion in limine to preclude Defendants from introducing irrelevant, prejudicial and/or inadmissible documents at trial, including evidence of agreements regarding intellectual properties that were not of Superman's stature as a longstanding "franchise" property at the time the agreements were entered into.

For the reasons set forth on the record, plaintiffs' Motion in Limine No. 4 is **DENIED**.

### Defendants' Motions in Limine

### A.    Motion in Limine No. 1

Defendants' first motion in limine is to limit the scope of the trial, and the evidence introduced, to the issue of whether and to what extent any relevant agreement between DC Comics and Warner Bros. Entertainment constitutes a "sweetheart deal" such that DC Comics received less than fair market value for the license, and to exclude any evidence related to the traditional alter ego elements or any other matters

In light of the Court's articulation both on the record and of this Order setting forth the issue to be tried during this phase of the case, and the discussion during the hearing on the permissible scope of what is relevant evidence related thereto, defendants' Motion in Limine No. 1 is **GRANTED**.

### B.   Motion in Limine No. 2

Defendants' second motion in limine is to exclude the testimony of certain witnesses, including senior corporate officers of Defendants (*i.e.* "apex" witnesses), none of whom were identified in Plaintiffs' Rule 26 disclosures or were deposed; and certain of Plaintiffs' "expert" witnesses who have no expertise on the issues to be tried in this phase of the trial.

After considering the arguments of counsel as well as the parties' amended witness lists submitted pursuant to the Court's January 26, 2009, minute order, the Court **DENIES** the motion with respect to Alan Horn.  The motion is **GRANTED** with respect to any apex witness not listed on plaintiffs' amended witness list.

### C.   Motion in Limine No. 3

Defendants' third motion in limine is to exclude a number of Plaintiffs' proposed exhibits as being irrelevant to the issues to be tried in this phase of the trial.

In light of the Court's articulation both on the record and in section 7 of this Order setting forth the issue to be tried during this phase of the case, and the discussion during the hearing on the permissible scope of what is relevant evidence related thereto, defendants' Motion in Limine No. 3 is **DENIED**.  Again such denial is without prejudice to defendants' being able to raise said objections to the evidence during the course of trial.

15

FINAL PRE-TRIAL CONFERENCE ORDER

### D.    Motion in Limine No. 4

Defendants' fourth motion in limine is to exclude any of Plaintiffs' exhibits first identified and produced after the exchange of the parties' Rule 16 exhibit lists on December 3, 2008, and any documents obtained by Plaintiffs through improper document subpoenas served on third parties on December 22 and 23, 2008, in violation of the discovery cut off, and over two years after discovery closed.

For the reasons set forth on the record, defendants' Motion in Limine No. 4 is **DENIED** subject to this proviso: Plaintiffs are permitted to introduce the trial testimony and documents sought in the listed sixteen third-party subpoenas, but only during their rebuttal case and only if defendants introduce in their case in chief the 23 licensing agreements referenced in Plaintiffs' Motion in Limine No. 4.

### 12.    BIFURCATION OF THE FOLLOWING ISSUES FOR TRIAL IS ORDERED:

Pursuant to the Court's March 26, 2008, order granting in part and denying in part the parties' respective motions for partial summary judgment, the Court reserved for trial Plaintiffs' "accounting" claims arising out of their termination of certain rights under copyright in literary work(s) including Superman pursuant to 17 U.S.C. 304(c), including Plaintiffs' claim that Warner Bros. Entertainment's profits from the exploitation of certain Superman copyright interests should be included in this calculation.  On October 6, 2008, the Court bifurcated these claims, with the determination of whether Plaintiffs are entitled to share in Warner Bros. Entertainment's profits to be tried first on January 20, 2009.  The remaining accounting issues are set to be tried on March 24, 2009.  On December 18, 2008, the Court continued the first trial until February 3, 2009 and kept the second trial on its originally scheduled date of March 24, 2009.  Thereafter, the Court on January 26, 2009, continued the first trial to April 21, 2009, and continued the second trial to June 9, 2009.

FINAL PRE-TRIAL CONFERENCE ORDER

**13.    CONCLUSION**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the relevant pleadings relevant to the first phase of trial on April 21, 2009 and govern the course of such trial, unless modified to prevent manifest injustice.

Dated: March 13, 2009

UNITED STATES DISTRICT COURT JUDGE