WEISSMANN WOLFF BERGMAN
  COLEMAN GRODIN & EVALL LLP
Michael Bergman (SBN 37797)
Anjani Mandavia (SBN 94092)
Adam Hagen (SBN 218021)
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212
Telephone: (310) 858-7888
Fax: (310) 550-7191

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Roger L. Zissu (Admitted *pro hac vice*)
James D. Weinberger (Admitted *pro hac vice*)
866 United Nations Plaza
New York, New York 10017
Telephone: (212) 813-5900
Fax: (212) 813-5901

PERKINS LAW OFFICE, P.C.
Patrick T. Perkins (Admitted *pro hac vice*)
1711 Route 9D
Cold Spring, New York 10516
Telephone: (845) 265-2820
Fax: (845) 265-2819

Attorneys for Defendants and Counterclaimant

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>Plaintiffs,<br><br>vs.<br><br>WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV 04-8400 SGL (RZx)<br><br>Hon. Stephen G. Larson, U.S.D.J.<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 12, 2009 ORDER AS TO McCLURE NEWSPAPER STRIPS**<br><br>Date: October 19, 2009<br>Time: 10:00 a.m.<br>Place: Courtroom 1 |

The Court should deny Plaintiffs' Motion for Reconsideration of the August 12, 2009 "Work for Hire" Order (the "Order") as to post-September 22, 1938 McClure Newspaper Strips (the "Later Strips"). Plaintiffs unjustifiably continue to seek to add to the recaptured works subject to accounting, this time by repeating their prior arguments without identifying any rule of law or issue of fact that the Order overlooked as required on reconsideration. Indeed, it is transparently obvious that Plaintiffs' motion was filed only as a counterweight to Defendants' own reconsideration motion – not because any legitimate basis exists to change the Order's holding on the work for hire status of the Later Strips. Local Rule 7-18 provides that reconsideration may be found only on the ground of a "manifest" failure to consider material facts presented to the Court, a previously unknown "material difference of fact or law" or "the emergence of new material facts or a change in the law." Rather than present arguments that go to these limited circumstances,[1] Plaintiffs rehash at a higher decibel level arguments the Court fully considered and rejected. This violates L.R. 7-18, which states that a party should not "in any manner repeat any . . . argument made in support of or in opposition to the original motion."[2] Plaintiffs' motion is thus improper and unfounded.

A. **Summary Judgment on Work for Hire Was Fully Justified**

Plaintiffs argue that the Order's determination of the work for hire status of the Later Strips was improper because, in effect, the decision was a close call and such calls should not be made on summary judgment. However, just because a

---

[1] In contrast, Defendants' co-pending motion for reconsideration asserts precisely these grounds for altering the Court's holding that the harmless error exception of the Copyright Office's termination regulations, 37 C.F.R. § 201.10, can excuse the failure to identify each work in a termination notice. Defendants' motion identifies, *inter alia*, the Court's incorrect citation of *Music Sales v. Morris*, 73 F. Supp. 2d 378 (S.D.N.Y. 1999) and disregard of Plaintiffs' late-produced Thompson & Thompson copyright search report.

[2] As another district court has artfully stated, a party seeking reconsideration "is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." *De Los Santos v. Fingerson*, 97 Civ. 3972 (MBM), 1998 WL 788781, *1 (S.D.N.Y. Nov. 12, 1998) (Mukasey, J.).

1
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION

summary judgment motion leads to a decision that is at the "outer boundaries" (Order at 66) does not mean that summary judgment is not appropriate: boundaries are still boundaries. *See, e.g., Hadfield v. McDonough*, 407 F.3d 11, 15 (1st Cir. 2005) (resolution of legal question that is a "close call" is proper on summary judgment"). So long as the question is one of *law*, not fact, summary judgment is entirely appropriate on work for hire. *See Self-Realization Fellowship Church v. Amanda Church of Self-Realization*, 206 F.2d 1322 (9th Cir. 2000) (granting summary judgment on work for hire), *Dolman v. Agee*, 157 F.3d 708, 712 (9th Cir. 1998), and *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1144 (C.D. Cal. 2007) ("*Siegel I*") (same). As the Court has previously noted, because of the extensive documentary record of undisputed relevant facts, including Siegel and Shuster's contracts and prior live testimony and fact findings held judicially relevant, the Court has been called upon to do "exactly what the Second Circuit did in its time, namely, to apply the copyright law under the 1909 Act . . . to render a legal judgment" as to the work for hire issues. *Id.* at 1137. Thus, Plaintiffs' continued insistence that work for hire is a mixed question of fact and law, *see* Pl. Br. at 2, is not well taken because it misses the point: while factual issues may arise in the work for hire context due to the nature of the instance and expense inquiry, the ultimate question is one of law. 3 *Nimmer* § 12.10[A] n.6 at 12-180.4 ("The ultimate determination whether the copyright to the work belongs to the employer or the hired party raises a question of law.") (citations omitted).

Most importantly, Plaintiffs have not pointed to *any* disputed factual issues relied upon by the Court in reaching its Order that deserve reconsideration. Unlike the situation in *Marvel Characters v. Simon*, 310 F.3d 280 (2d Cir. 2002), where Simon himself offered conflicting testimony as to the parties' work for hire agreement, here there is no conflicting testimony on work for hire – indeed, there is no live testimony at all since the witnesses are long gone and the Court is left with

only the documentary evidence.[3] *Siegel I*, 496 F. Supp. 2d at 1137. To the extent Plaintiffs want a *trial* on such evidence, it is clear that any such trial would consist of nothing more than counsel's legal argument on these same issues for a *third* time. Summary judgment was therefore appropriate and should remain undisturbed.

**B.    The Court Properly Held that the "Expense" Factor Was Met**

Plaintiffs' chief argument on reconsideration is that under the 1909 Act instance and expense test applicable to works created by independent contractors, *see Lin-Brook Builders Hardware v. Gertler,* 352 F.2d 298 (9th Cir. 1965), the Court improperly held that the "expense" prong of the test was met. Largely ignoring the Order, Plaintiffs' current motion, like their prior briefs, focuses almost entirely on the repeated mantra that Siegel and Shuster's receipt of "mere royalties" in connection with their work on the Later Strips precludes work for hire. Plaintiffs barely mention the two critical September 22, 1938 agreements, which together constituted the parties' "arrangement" that the Court repeatedly cited as a key basis for its ruling on the expense factor. Order at 59-62, 65, 66.

As the Court has recognized, the *Lin-Brook* "expense" requirement is met where a "hiring party simply pays an [employee or] independent contractor a sum certain for his or her work." Order at 28-29 (citing *Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 555 (2d Cir. 1995), *Donaldson Publ'g Co. v. Bregman, Vocco & Conn, Inc.*, 375 F.2d 639, 642-43 (2d Cir. 1967)). Plaintiffs' protestations to the contrary notwithstanding, although it has been said that the payment of royalties "generally weighs against finding a work-for-hire relationship," *Playboy*, 53 F.3d at 555, *see also Twentieth Century Fox Film Corp. v. Entertainment Distrib'g*, 429 F.3d 876, 881 (9th Cir. 2005), Order at 29, this is not conclusive or dispositive on the expense

---

[3] Defendants note that, consistent with Plaintiffs' history of bringing in new evidence after briefing was concluded or even at oral argument, Plaintiffs' Notice of Motion refers to "all oral and written evidence to be presented at the hearing . . . on this motion." (Notice at 1). Defendants presume that this is boilerplate and that Plaintiffs do not intend – again – to introduce more evidence at oral argument.

3

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

inquiry. *Warren v. Fox Family Worldwide*, 328 F.3d 1136, 1142 (9th Cir. 2003) (finding work for hire despite royalty payments) (citing *Playboy*, 53 F.3d at 555, *Picture Music,* 457 F.2d at 1216) ("[t]he absence of a fixed salary . . . is never conclusive").[4] Here, as in *Warren*, the parties' key agreements and ultimate arrangement,[5] coupled with the fact that payment of royalties was only one form of compensation provided to Siegel and Shuster,[6] establishes that the payment of royalties "is not sufficient to overcome the great weight of the contractual evidence indicating a work-for-hire relationship." *Warren*, 328 F.3d at 1142; *see* Order at 59-65. Plaintiffs' bald assertion that the Court held the expense prong met "*without explanation*" (Pl. Br. at 3 (emph. in original)) simply ignores the six prior pages of the Order, which contain the Court's extensive analysis of the question.[7]

Lastly, much of Plaintiffs' argument that the Court erred on its expense findings focuses on factual differences between this case and *Picture Music* regarding questions of creative input, Pl. Br. at 3, and who was the "driving force" behind the work, Pl. Br. at 3-4. But these points relate instead to *instance and right of control*, not expense. In short, Plaintiffs failed to show anything worthy of

---

[4] *Warren*, 328 F.3d at 1142, *Twentieth Century*, 429 F.3d at 881 and the Order at 62 n.21 all confirm that *Picture Music* states the law of the Ninth Circuit concerning the relationship between royalties and work for hire in the independent contractor context, despite Plaintiffs' characterization of the case as "old" and "cursory."

[5] "The terms in each agreement do overlap with, make reference to, and fill gaps in the other." Order at 57.

[6] As the Court held, Order at 18-19, Siegel and Shuster's overall arrangement with Detective also saw them receive per page rates, depending on the medium of exploitation. Moreover, when royalties were called for, they were not percentage compensation in the traditional sense of a percentage of McClure's sales revenue, but rather a percentage of the monies to be paid to Detective by McClure. Similarly, there was never any question of whether Detective, and thereby Siegel and Shuster, were going to receive meaningful payment – unlike the introduction of a new book, the newspapers' circulation was already established at the time. They were also being given a share of certain profits over page rates, a share which they wanted very badly and "expected to receive." *Id.* at 64.

[7] Plaintiffs also ignore the fact that Detective underwrote the overall Superman publishing business, including the costs for publication, finding a newspaper syndicator, and the expense for an office and administration. *See Twentieth Century*, 429 F.3cd at 881; Westchester Action Findings of Fact, ¶ 35.

4
**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

Case 2:04-cv-08400-ODW -RZ  Document 579   Filed 10/10/09   Page 6 of 10   Page ID
 #:13198

reconsideration in the Court's discussion of, and holding on, the expense factor as applied to the Later Strips.

### C. The *Fawcett* Court Could Not Have Held that the Strips Were Not "Work for Hire," as the Applicable Law Did Not Exist in 1951

In their next attempt to bring back the Later Strips from the consequences of their work for hire status, Plaintiffs argue weakly that Defendants are bound by the finding that McClure was the "proprietor" of the Later Strips in *National Comics Publications, Inc. v. Fawcett Publications*, 191 F.2d 594 (2d Cir. 1951) and that such holding precludes the Later Strips from being work for hire.

*Fawcett* cannot have preclusive effect on this question. As the law providing for application of the instance and expense test to independent contractors did not exist until 1965, it goes without saying that a decision from 1951 could not have determined the question. *Cf. Siegel I*, 496 F. Supp. 2d at 1128 (prior rulings and settlements could not have *res judicata* effect on copyright termination issues, since right did not exist at the time rulings were made). Moreover, the Second Circuit's decision in *Fawcett*, which reversed and remanded a decision of the Southern District – the case was ultimately settled after remand – does not represent a final judgment, which is required to give preclusive effect to any finding. *Id.* at 1124 (collecting cases). In any event, the *res judicata* effect of *Fawcett* is a red herring, as Plaintiffs are incorrect in arguing that a finding that McClure was the owner of the proprietor copyright precludes a subsequent holding that it was the owner as work made for hire (Pl. Br. at 5). This is a non-sequitur. As the noted by the Court, "proprietor" under the 1909 Act refers "not only to those who are owners by assignment, but also to 'employers who induce the creation of a work made for hire and thus own the copyright in it.'" Order at 57, n.17 (quoting *Hogarth v. Edgar Rice Burroughs, Inc.*, 62 U.S.P.Q. 2d. 1301, 1320 (S.D.N.Y.), *aff'd*, 342 F.3d 149 (2d Cir. 2003), citing *Shapiro, Bernstein & Co. v. Bryan*, 123 F.2d 697, 700 (2d Cir. 1941)). Plaintiffs' efforts to distinguish these cases as using the term "proprietor" in

the "colloquial sense," rather than as a technical term, Pl. Br. at 5-6, n. 10, are baseless as both decisions reference the term as used in the 1909 Act. As such, *Fawcett* is not inconsistent with the Order on the question of work for hire, even if the Court *were* bound by its holding.

### D. The Order is Consistent with the Parties' "Arrangement," as Evidenced by their Agreements and Conduct

Finally, Plaintiffs argue that the Order is inconsistent with the evidence, namely, the September 22, 1938 agreement between McClure, Detective and Siegel and Shuster. (Pl. Br. at 6.) But this is simply another rerun of their prior failed argument that such agreement establishes a joint venture under New York law between the contracting parties and that this negates work for hire. (*Id.* at 6-7).

Once again, Plaintiffs ignore the key evidence, artificially dissecting the parties' "arrangement" and discussing solely the McClure agreement as if it were a free-standing document. In so doing they pay no heed to the second September 22, 1938 agreement governing the employment relationship between Detective, on the one hand, and Siegel and Shuster on the other. Under the Court's extensive analysis of the parties' "arrangement," it is clear that these agreements are to be considered together, not as separate events. *See* note 5, *supra*. Rather than focus, as does the Court, on the parties' overall, business relationship, Plaintiffs revert to their favorite tactic of arguing that the question of joint venture has previously been decided to Defendants' detriment, this time by the district court in *Fawcett*. Pl. Br. at 6-7 & n.13 (reasoning that because the Second Circuit did not reverse the lower court's findings on joint venture, such finding is binding here).

This argument fails, on two counts. First, the Second Circuit's decision in *Fawcett* clearly states that it did not accept the district court's findings on joint venture as the basis for its decision:

> The judge, apparently without suggestion from either party, construed this agreement to be a 'joint venture,' and for that reason held that 'McClure's' failure to affix the 'required' notices to the 'strips' had the same effect upon the copyrights in suit as though 'McClure' were the 'proprietor.' We agree

6

with the result, but because we think that 'McClure' was indeed the 'proprietor' of the copyrights, and **for that reason we do not find it necessary to decide whether the contract constituted a 'joint venture,'**-incidentally one of the most obscure and unsatisfactory of legal concepts. *Fawcett*, 191 F.2d at 599 (emph. added). To argue, as have Plaintiffs, that this represents an endorsement of the district court's joint venture finding, is frivolous.

Second, as noted above, the district court's decision in *Fawcett* was *reversed and remanded* by the Second Circuit, and the case was subsequently settled out-of-court. As such, neither this Court nor any other is bound by any non-final district court ruling. *See Siegel I*, 496 F. Supp. 2d. at 1124. Plaintiffs cite *Ortega v. O'Connor*, 50 F.3d 778 (9th Cir. 1995) and *Mutual Life Ins. v. Hill*, 193 U.S. 551 (1901), for the proposition that a reversal by an appellate court is an adjudication of matters expressly discussed and decided. But both of those cases involved matters where the appealing party had not challenged the holding in question. Here, the issue was decided *sua sponte* by the district judge and apparently challenged on appeal by Detective. The Court of Appeals, however, decided not to address the question because *it was not necessary to the holding of the case*, further debunking any theory that the joint venture holdings of the reversed district court opinion could have any preclusive effect here. *See Mercantile & General Reinsurance Co. v. Colonial Assurance Co.*, 556 N.Y.S.2d 183 (N.Y. Sup. Ct. 1989) (resolution of issue must have been necessary to support a valid and final judgment on the merits in order to have preclusive effect). *Cf. Siegel I*, 496 F. Supp. 2d at 1124.

## CONCLUSION

Plaintiffs' motion consists of nothing more than a rehash of their prior arguments and briefs. Nothing in their memorandum even remotely suggests a "manifest" failure to consider material facts presented to the Court, a previously unknown "material difference of fact or law" or "the emergence of new material facts or a change in the law" as required for reconsideration under L.R. 7-18. As such, Plaintiffs' motion should be denied.

DATED: October 9, 2009

Respectfully submitted,

By: _____
Michael Bergman

**PROOF OF SERVICE**
1013A(3) C.C.P. Revised 5/1/88

STATE OF CALIFORNIA      )
                         ) ss.
COUNTY OF LOS ANGELES    )

    I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 9665 Wilshire Boulevard, Suite 900, Beverly Hills, California 90212. On the date shown below, I served the foregoing document described as: **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 12, 2009 ORDER AS TO MCCLURE NEWSPAPER STRIPS** on the interested parties in said action, and by placing a true copy thereof enclosed in sealed envelopes, addressed as follows:

Marc Toberoff, Esq.
Nicholas C. Williamson, Esq.
Law Offices of Marc Toberoff
2049 Century Park East, Ste. 2720
Los Angeles, CA 90067
Fax: (310) 246-3101

\_\_\_\_ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Beverly Hills, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**XX** **(PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the offices of the addressee.

\_\_\_\_ **(BY FACSIMILE)** I caused a copy of such document(s) to be transmitted to the offices of the addressee(s) via facsimile transmission at the facsimile number(s) listed above.

Executed on **October 9, 2009** at Beverly Hills, California.

**XX** **FEDERAL**     I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

                                                                    *Ticci Alridge*