```
 1                UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3                       EASTERN DIVISION

 4                             - - -

 5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                             - - -

 7  JOANNE SIEGEL and                  )
    LAURA SIEGEL LARSON,               )
 8                    Plaintiffs,      )
                                       )
 9           vs.                       )  No. CV 04-08400-SGL
                                       )
10  WARNER BROTHERS ENTERTAINMENT INC.;)
    TIME WARNER, INC.; DC COMICS;      )
11  and DOES 1-10,                     )
                      Defendants.      )  Motions
12  _____)

13

14
                 Reporter's Transcript of Proceedings
15
                       Riverside, California
16
                     Monday, October 19, 2009
17
                            11:03 A.M.
18

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
              Federal Official Court Reporter
24            3470 12th Street, Rm. 134
              Riverside, California  92501
25                  (951) 274-0844
                WWW.THERESALANZA.COM
```

```
 1
     APPEARANCES:
 2

 3   On Behalf of Plaintiffs:

 4
                         LAW OFFICES OF MARC TOBEROFF
 5                       BY:  Marc Toberoff
                         BY:  Nicholas C. Williamson
 6                       2049 Century Park East,
                         Suite 2720
 7                       Los Angeles, California  90067
                         310-246-3100
 8

 9
     On behalf of Defendants/Counterclaimant:
10

11                       WEISSMANN WOLFF BERGMAN COLEMAN
                          GRODIN & EVALL LLP
12                       BY:  Michael Bergman
                         BY:  Anjani Mandavia
13                       9665 Wilshire Boulevard,
                         Ninth Floor
14                       Beverly Hills, California  90212
                         310-858-7888
15

16
     On Behalf of DC Comics:
17
                         PERKINS LAW OFFICE, P.C.
18                       BY:  Patrick T. Perkins
                         1711 Rt. 9D
19                       Cold Spring, New York  10516
                         845-265-2820
20

21

22

23

24

25
```

Monday, October 19, 2009                              CV 04-08400-SGL

I N D E X

Page

MOTIONS......................................... 4

Monday, October 19, 2009                    CV 04-08400-SGL

```
 1      Riverside, California; Monday, October 19, 2009; 11:03 A.M.
 2                                -oOo-
 3          THE CLERK:  Calling calendar item number eight, case
 4  number CV 04-084000-SGL, Joanne Siegel, et al, versus Warner       11:03
 5  Brothers Entertainment Inc., et. al.
 6          May we have counsel please come forward and state
 7  your appearances for the record.
 8          MR. BERGMAN:  Michael Bergman for the defendants.
 9          MR. TOBEROFF:  Marc Toberoff for the plaintiffs.
10          MR. WILLIAMSON:  Nicholas Williamson for plaintiffs.        11:03
11          MS. MANDAVIA:  Anjani Mandavia for defendants.
12          MR. PERKINS:  Patrick Perkins for defendants.
13          THE COURT:  Good morning to you all.
14          We have several motions before the Court.  We have
15  the competing motions for reconsideration, one brought by the      11:03
16  defense, one brought by the plaintiffs.  I also have the
17  responses to the order to show cause for the appointment of a,
18  quote, appointed expert or special master.
19          Let's take up the motions for reconsideration first,
20  and then the Court will address not only the OSC issue but         11:04
21  further proceedings in the case post this Court's departure
22  from the bench; so let's begin with the motions for
23  reconsideration, and the one that I want to focus on is the
24  defense motion for reconsideration.
25          Mr. Bergman?                                                11:04
```

1        **MR. BERGMAN:**  Thank you, your Honor.

2        **THE COURT:**  I have read your papers.  I appreciate

3   your perspective.  It's not a clear case, one way or the other,

4   to this Court.  I understand that the Court is kind of charting

5   new waters, as it were, in this particular area.

6             Part of it is that the two cases that you rely on

7   most forcefully, Burroughs and Music City {sic}, the analysis

8   is not what I would call in-depth.  The court, in both those

9   cases, did make reference to the requirement for the

10  termination notice.  In the case of Tarzan, that they weren't

11  specified and, therefore, that was a problem.  But it's not

12  like there was really an exhaustive analysis of what are the

13  outer limits of the harmless error analysis?

14            The other factor is you focus on the subsection of

15  the regulation which lists examples of harmless error, but it's

16  also clear that is not an exhaustive list.  And to adopt the

17  rule that Warner Brothers seems to be urging the Court to adopt

18  would suggest that the list, the illustrative list, is

19  exhaustive.

20       **MR. BERGMAN:**  I agree with Your Honor that the list

21  that is contained in E-2 is not exhaustive.

22       **THE COURT:**  So then my question to you is, how do we

23  frame a harmless error analysis that goes beyond that?

24       **MR. BERGMAN:**  I believe, Your Honor, that we begin

25  and end with the admonition that's contained in B-2 of 201.10;

1  namely -- and this is a quote just excising irrelevant
2  language -- "a notice of termination must include a clear
3  identification of the title of each work to which the notice of
4  termination applies."
5        Must include.  It's imperative.  It's a word that              11:06
6  bespeaks of necessity; obligation.  You must follow the law.
7        **THE COURT:**  I certainly get that.
8        But if that's the interpretation, the understanding,
9  then what room is there for harmless error analysis?
10       **MR. BERGMAN:**  Well, the guide to the harmless error        11:07
11 analysis lies, I believe, within the regulation itself, because
12 the regulation makes it clears that there are some requirements
13 that are mandatory and others that are not necessarily so.
14       And there are numerous examples, Your Honor.
15       While the notice must include the title of the work,           11:07
16 it only has to include the registration number of the work if
17 it is, quote, possible and practical.
18       **THE COURT:**  But then it wouldn't be error, if, let's
19 say, it was not practical to include the registration number.
20 It really would not be subjecting it to a harmless error            11:07
21 analysis because it would not be error at all.
22       Do you understand what I'm saying?
23       **MR. BERGMAN:**  I believe it would be an example of
24 what the copyright office considers to be a harmless error.
25       Another example, Your Honor, it must include a clear          11:08

```
 1   identification of the title, but the identification of the
 2   grant need only be reasonable.
 3           In other words, once again, differentiating between
 4   the standard of adherence.  Although the heirs are required by
 5   B-7 to provide certain specified information, the regulation       11:08
 6   requires that you only have to supply such information as is
 7   currently available.
 8           When you look at those examples and you look at the
 9   various examples that are expressly stated in E-2, you begin to
10   get a picture of the overall scheme.  But the overall scheme       11:08
11   has other requirements.  The must-include requirement, the
12   notion of 'what is a clear identification', the statute goes to
13   great lengths to say what a clear identification is.  It
14   requires a complete and unambiguous statement of facts in the
15   notice itself, without incorporation by reference of               11:09
16   information and other documents or records.
17           THE COURT:  Is there any legal support for what you
18   are telling me right now?  I mean, specific.
19           I've read Burroughs a hundred times at this point.
20   I'm talking, is there any analysis -- with the analysis that      11:09
21   you are presenting to the Court, is there a district court,
22   somebody, somewhere, that has articulated this?
23           MR. BERGMAN:  Your Honor, I've made the same search
24   that Your Honor has, and I have not found anything of that
25   nature at all, which is an interesting point in and of itself.    11:09
```

| | | |
|---|---|---|
| 1 | For example, Burroughs, whatever the depth of its | |
| 2 | analysis, represents a clear rule:  You either identify the | |
| 3 | work, or the termination is ineffective with respect to that | |
| 4 | work. | |
| 5 | **THE COURT:**  But the district courts there had five | 11:10 |
| 6 | different alternative theories for rejecting the preliminary | |
| 7 | injunction.  The error was trying to stop the Tarzan movie; | |
| 8 | there were five different arguments made; the Second Circuit | |
| 9 | upheld without making any clear specific reference. | |
| 10 | That's a lot to hang that hat on. | 11:10 |
| 11 | **MR. BERGMAN:**  While I understand, Your Honor, that | |
| 12 | they did not go into an extensive analysis, the holding is | |
| 13 | clear; and that holding has been in existence for almost | |
| 14 | 30 years.  The copyright office has not looked at it and said, | |
| 15 | Well, we better change a regulation because that's not what we | 11:10 |
| 16 | intended. | |
| 17 | I believe the statute reflects precisely what was | |
| 18 | intended when it states that a document, the notice, must | |
| 19 | include an identification. | |
| 20 | It's very hard, Your Honor, to make that rule somehow | 11:11 |
| 21 | into a harmless error, when a harmless error is defined as | |
| 22 | something which does not materially affect the validity of the | |
| 23 | notice. | |
| 24 | Well, how can something which the statute requires | |
| 25 | must be included, the omission of which does not materially | 11:11 |

```
 1  affect the adequacy of the notice?
 2          It's almost a misnomer.
 3          THE COURT: Lets refocus on the wording of the
 4  regulation:  Harmless errors in a notice that do not materially
 5  affect the adequacy of the information required to serve the        11:11
 6  purposes of section 304(C).
 7          MR. BERGMAN: Yes, sir.  And the purpose of section
 8  304(C) --
 9          THE COURT: Is to provide notice.
10          MR. BERGMAN: -- is an orderly termination pursuant          11:12
11  to the statute.
12          THE COURT: Let me ask you this:  How much of the
13  total universe of Superman works were papered by the notice?
14          MR. BERGMAN: Far too many.  There were 15,000, of
15  which only three were terminable.                                   11:12
16          THE COURT: And we have two weeks of newspaper strips
17  that slipped through the cracks.
18          MR. BERGMAN: Well, Your Honor, that assumes a
19  conclusion.
20          I don't say it slipped through the cracks; I say it        11:12
21  was omitted.
22          THE COURT: Intentionally.
23          MR. BERGMAN: Intentionally or not.
24          The statute says it must be included.  And there's a
25  reason for that that goes beyond the termination notice and        11:12
```

1  that goes beyond the grantee, because the termination provision
2  is simply one part of the overall copyright scheme.
3          The statute provides that when you terminate,
4  effectively, a work, that is recorded; and then from that point
5  on, every time the studio or a publisher or anyone else gets a        11:13
6  copyright report, looks at the record, if it's been terminated,
7  it's right there.  If it has not been identified in the
8  termination notice, it never shows up in the records of the
9  copyright office; so when someone is looking at those records,
10 trying to find out whether a work has been terminated or not,         11:13
11 there's no way they can discern that.
12         The notice that you must give to the grantee serves a
13 dual purpose to serve the public, and the copyright statute
14 recognizes that.
15         **THE COURT:**  Certainly, the public.  To the extent         11:13
16 that it serves the purpose of notifying the public, the public
17 certainly had a clear idea of what was going on here, given the
18 catchall language.
19         **MR. BERGMAN:**  A good idea?
20         I'm not sure that's true at all.  I don't think that          11:14
21 people recognize how extensive or how superficial the attack on
22 the Superman copyright is.  I've followed all of the secondary
23 authorities and the blogs and all of that that follow this
24 case, and they basically misinterpret it; certainly, the
25 entertainment trade papers do.                                        11:14

1        The catchall phrase, Your Honor, to which you've
2   placed some, not all, but some importance, when you look at the
3   language of the catchall, it's absurd.  Each and every other
4   work that embodies any character, story element, or indicia
5   reasonably associated with Superman or Superman's stories.   11:15
6   What does that tell you as to whether the 12 early strips have
7   been terminated?
8        It tells you nothing; it invites an examination of a
9   70-year span.
10       The whole purpose of the statute is to provide out in   11:15
11  the open a notice, unequivocal, which must include the
12  identification of the work.
13       **THE COURT:**  Very good.
14       Thank you, counsel.
15       **MR. BERGMAN:**  Thank you, Your Honor.   11:15
16       **THE COURT:**  Mr. Toberoff, I'll hear from you now on
17  this.
18       **MR. TOBEROFF:**  Thank you, Your Honor.
19       In our initial motion, defendants made much hay of
20  the fact that the regulations provide near examples, and they   11:15
21  claim those examples were exclusive.  In their reply, they
22  admitted they were not exclusive.
23       In fact, in giving the examples in section E-2 of the
24  regulation, 201.10E2, they state, quote, without prejudice to
25  the general rule provided in E-1.  The general rule, they are   11:16

```
 1  referring to the harmless error rule.
 2          If it's a general rule, it means by definition that
 3  the register of copyrights anticipates that a court will apply
 4  that general rule on a case-by-case basis.
 5          THE COURT:  I agree with you, and I think counsel is       11:16
 6  forced to concede that.
 7          But his point that I'd like you to address is -- and
 8  I think it's probably the best point they have -- is that as
 9  opposed to the various requirements where there is some
10  equivocation, there is this singular requirement that is          11:16
11  unequivocal in terms of identifying the title, and that is the
12  point that he is insisting upon; that is the point that
13  Burroughs and Music Pictures picks up on, however limited the
14  analysis.
15          MR. TOBEROFF:  I could distinguish Burroughs and -- I     11:16
16  think it's Music Sales.
17          THE COURT:  They are very distinguishable, and I have
18  that in mind.
19          MR. TOBEROFF:  I'll address that point.
20          First of all, the termination notices, the title of       11:17
21  the newspaper strips is all the same:  It's Superman.  There's
22  no issue about constructive notice.  When you go to the
23  web site of the copyright office and you type in "Superman,"
24  you immediately see the termination notices.  You type in any
25  title having anything to do with Superman, you immediately come   11:17
```

```
```

1  up with the termination notices.
2          There's no constructive notice problem in this case,
3  nor would any -- first of all, you have the licensee rule where
4  licensees, when you have a co-ownership situation, would not
5  even have to account, let alone stop exploiting the work, but
6  nobody is simply going to exploit those first handful of
7  Superman newspaper strips without the other rights in question
8  here.
9          There's no pragmatic or practical problem here with
10 constructive notice.  If you type in the registration number --
11 a renewal registration number will work -- the termination
12 notices do not come up.  They come up under broad titles like
13 Superman.
14         The purpose of the harmless error rule is obvious:
15 Not to invalidate terminations based on inadvertent mistakes in
16 the drafting of a termination notice, which is exactly what
17 happened here.
18         **THE COURT:**  How do I know it was inadvertent?
19         **MR. TOBEROFF:**  By the clear, unequivocal statement in
20 the catchall provision in the termination notice saying that
21 this is intended to terminate all works portraying Superman;
22 and to the extent any works are left out, it says -- and I can
23 read you the quote -- it says, that was involuntary and
24 unintended.
25         So lest there be any doubt from the 546 pages of

1   works from the listing of hundreds of the newspaper strips from
2   listing every single grant of Superman, or even potential
3   grants that were not even grants, like the 1975 agreement, and
4   lest there be any doubt that the intention was to terminate all
5   of the newspaper strips, the termination notice says so as                11:19
6   clear as a bell.
7              So here, there is no real question, as the Court
8   pointed out as to whether the defendants had actual notice.
9   They knew there was an intent to terminate.  They are using
10  this as a technicality to invalidate the termination notices as          11:19
11  to one of the few things the Court has ruled is not work for
12  hire and that's exactly what the harmless error rule is meant
13  to avoid.
14             As far as Burroughs, we found some very interesting
15  things.  We dug deeper into the case.  It turns out the                   11:19
16  omission of the five works was not inadvertent, as in this
17  case.  The omission of the five works was because they were not
18  subject to termination.
19             The termination in the Burroughs case applied to the
20  termination of a 1923 grant.  Four of the works of the five              11:20
21  that were omitted were published after the 1923 grant, so they
22  weren't even subject to termination.
23             In addition the relevant termination windows that
24  would apply to those four omitted works do not fall within the
25  window of that termination notice; that leaves one other early          11:20

1  work, and I think it was the second Tarzan book.  The second
2  Tarzan book was published in a magazine, in an All Star Weekly;
3  then it was published in a book form after that.
4           We went down to the Los Angeles public library where
5  they have the actual volumes containing the registration
6  numbers, and all of those initial serials were registered for
7  copyright.  We then looked up the renewals.  None of them were
8  registered.  We did the same for the book.  The original book
9  was registered for copyright; the renewal wasn't registered.
10 Which leads one to believe that that initial work was in the
11 public domain.
12          If you examine Zissu's declaration, although it's
13 artfully drafted, he admits -- he says in paragraph eight of
14 the declaration, he says, quote, the notice of termination at
15 issue in Burroughs included only 35 works that the heirs could
16 correctly list in the notice as being subject to termination.
17          That's pretty much an admission that in that case it
18 was not inadvertent; that he knew those were not subject to
19 termination and they were not listed in the notice.  That means
20 that any comments in the Burroughs court regarding harmless
21 error is moot, because if they are not subject to termination
22 in the first place, whether or not they listed them in the
23 notice is moot.
24          The Music Sales Corp. Versus Morris, which is a lower
25 court case, a southern district case, they point to verbiage of

1   the court mentioning, saying, "However, you must list the
2   work," citing Burroughs.  That was an attempt by the Southern
3   District to pay tribute to the Second Circuit decision in
4   Burroughs, but to also distinguish that case from Burroughs.
5        At issue in that case was not the omission of a work    11:22
6   from a notice; the notice did not fail to include all relevant
7   works.  At issue was a very vague, broad grant language that
8   the Court said, just looking at the grant language itself, this
9   would not reasonably identify the grant; but given the fact
10  that the Court under the facts of that case believed that the   11:22
11  defendants had actual notice, it ruled that was harmless error.
12  Exactly what you did here, Your Honor.
13        **THE COURT:**  I'm mindful of your argument, counsel.
14        Very good.
15        I'll issue an opinion on this in the next couple of    11:22
16  weeks and I'll certainly take a careful look at both side's
17  arguments again.
18        I don't need to hear anything further on the
19  plaintiff's motion for reconsideration.  The Court is prepared
20  to move forward on that; that leaves these two OSCs, or the one    11:23
21  OSC and the two responses.
22        The Court has made no secret of the fact that it was
23  less than overwhelmed by the experts in the last trial.  I
24  think there is wisdom in having someone appointed that will
25  offer an objective assessment as we proceed with the next    11:23

1  trial.  The Court offered four names; three were objected to by
2  one or both sides; only one name was not objected to by either
3  side.
4           I'm mindful of the concerns being expressed by the
5  parties, though, about the appointment.  Given that this case                11:23
6  will within the next two weeks be transferred to another
7  district judge, and given the impact that such an appointment
8  would have on the shape of the trial, I think I'm going to
9  defer any such appointment to the judge who's going to be
10 inheriting the case; and it's going to be Judge Mariana                      11:24
11 Pfaelzer who will be taking over both the Superman and the
12 Superboy cases as soon as I've ruled on these motions.
13          I've set out, both in my order following the trial,
14 as well as in the OSC order, my thinking with respect to that
15 appointment, and I'll simply defer to her decision as to                     11:24
16 whether or not she wants to proceed with that, and we'll leave
17 it at that.  But I'll definitely take care of these two motions
18 for reconsideration within the next couple of weeks before I
19 leave the bench.
20          I did want to say that, in looking back over nine                   11:24
21 years on the federal bench and literally the thousands of cases
22 that have crossed my desk, there's always a handful that you go
23 forward remembering, and this is certainly one of them, and
24 it's a tribute, counsel, to all of you.  It's been an
25 extraordinary pleasure to work with you these last several                   11:25

Monday, October 19, 2009                                CV 04-08400-SGL

1    years on this case.  It has been as fascinating and as exciting
2    a case as I could have imagined to have worked on.  You have
3    raised issues and litigated issues that are extraordinarily
4    cutting edge in the way that you've developed the arguments,
5    and you've been extraordinarily professional with the Court,                    11:25
6    and I greatly appreciate that.
7              You have not held back on any punches, but that means
8    you've done your duty.  You've represented Warner Brothers and
9    DC Comics extraordinarily well.  And Mr. Toberoff, I'm sure the
10   heirs are extremely pleased with how zealously you and your                     11:25
11   colleagues have represented their interests.
12             I wish you all the best of luck.
13             I do think that ultimately this case needs to resolve
14   itself, because I think, as I've expressed previously, it has
15   consumed, obviously, a lot in terms of fees.  And I understand                  11:26
16   that it's complicated, given the interrelationships and, of
17   course, we have the pending termination coming up in 2013 of
18   other rights related to Superman.  But I do encourage you to
19   continue to keep that in mind.
20             Thank you for the privilege of working with you on                    11:26
21   this case.  And I'll get these orders out within the next
22   couple of weeks.
23             **MR. BERGMAN:**  Thank you, your Honor.
24             It's been a privilege to be before you.
25             **MR. TOBEROFF:**  Thank you, your Honor.                             11:26

Monday, October 19, 2009                                    CV 04-08400-SGL

1      **THE CLERK:**  Court stands in recess.

6                           CERTIFICATE

8  I hereby certify that pursuant to section 753, title 28, United States Code, the foregoing is a true and correct transcript of the stenographically recorded proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

12  _____            _____
    THERESA A. LANZA, CSR, RPR                        Date
13  Federal Official Court Reporter

Monday, October 19, 2009                              CV 04-08400-SGL