Marc Toberoff (State Bar No. 188547)
Nicholas C. Williamson (State Bar No. 231124)
Keith G. Adams (State Bar No. 240497)
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California, 90067
Telephone: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

Attorneys for Plaintiffs Joanne Siegel
and Laura Siegel Larson

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>    Plaintiffs and Counterdefendants,<br><br>vs.<br><br>WARNER BROS. ENTERTAINMENT INC., TIME WARNER INC., DC COMICS and DOES 1-10,<br><br>    Defendants and Counterclaimant. | Case No. CV 04-8400 ODW (RZx)<br>Case No. CV 04-8776 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**PLAINTIFFS' OBJECTION AND RESPONSE TO DC COMICS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO STATEMENT OF DEFENDANTS' POSITION IN ADVANCE OF THE SEPTEMBER 27, 2010 HEARING**<br><br>Trial Date: None Set |
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>    Plaintiffs and Counterdefendants,<br><br>vs.<br><br>TIME WARNER INC., WARNER COMMUNICATIONS INC., WARNER BROS. ENTERTAINMENT INC., WARNER BROS. TELEVISION PRODUCTION INC., DC COMICS and DOES 1-10,<br><br>    Defendants and Counterclaimant. | |

Under the transparent guise of supposedly providing yet another case management proposal, Defendants continue to blatantly violate the Local Rules by improperly making arguments and citing cases regarding motions that they previously had the full opportunity to brief and, indeed, did fully brief. To support this improper conduct, Defendants pretend that the Court's constructive comments in chambers opened the door to this sort of "free-for-all," when the Court did no such thing. As previously shown, Defendants' case management suggestions have nothing to do with "efficiency," but are designed to strategically subvert the Court's resolution of key issues that "cut to the chase" and thereby threaten Defendants' position. Defendants argue that "there should be a rational and methodical process for resolving these open issues." There is. On February 21, 2008, Defendants and Plaintiffs filed a stipulation seeking leave to brief "additional issues," which "substantially affect the conduct of the [accounting] trial and the parties' pre-trial preparations." Docket No. 289 at 2:11-12. The Court granted such leave and set a specific briefing schedule, including a generous 80-page limit for opening briefs and 50-page limit for response briefs. Docket Nos. 328, 332. Of that motion, Judge Larson focused on "work for hire" issues; the remainder of the motion is before the Court and ripe for decision. Docket No. 602 at 16:8-23.

### 1.     Defendants' Improper Apportionment Briefing Is Misleading

Defendants' "apportionment" arguments are little more than an attempt to re-open approximately 260 pages of closed briefing that they are now unhappy with, on the basis of vague references to inapplicable cases. For instance, Defendants cite to the *copyright infringement* case, *Mattel v. MGA Entm't, Inc.*, __ F.3d __, 2009 U.S. App. LEXIS 29187, at *10 (9th Cir. July 22, 2010), for their claim that "apportionment" supposedly applies to an accounting between co-owners. *Mattel* never reached the issue of an "apportionment" of profits; the term nowhere even appears in the Ninth Circuit's decision. The language misleadingly quoted by Defendants was used in overruling an injunction transferring all of the infringer's

1
PLAINTIFFS' OBJECTION AND RESPONSE TO DC COMICS' RESPONSE AND STATEMENT

derivative copyrights.  *Mattel*, 2009 U.S. App. LEXIS 29187, at *10.  Plaintiffs seek no such thing.  Moreover, *Mattel* was a copyright infringement action, so even if "apportionment" had been applied, this *supports* Plaintiffs' position that "apportionment" belongs to federal copyright infringement jurisprudence, not to state law, which governs accountings between co-owners like the Siegels and DC.  *See* Docket No. 602 at 3:14-16; *Oddo v. Reis*, 743 F.2d 630, 633 (9th Cir. 1984) (accounting between co-owners governed by state law).

Defendants' arguments as to the state-law principles to be applied in an accounting are also severely untimely, as they had a full and fair opportunity to fully brief those issues over two years ago.  Defendants now cite for the first time an inapplicable sixty-year-old case that they could easily have been cited then, *Black v. Black,* 91 Cal. App. 2d 328 (1949).[1]  The rule is that a co-owner is "not ordinarily entitled to [contribution or] compensation for services rendered in the care and management of the property," and that co-owners share equally in profits.  B.E. Witkin *et al.*, *Summary of California Law*, § 270 (9th Ed. 1990).  *See also Combs v. Ritter*, 100 Cal.App.2d 315, 317 (1950).

Defendants also misleadingly imply that Judge Larson ruled that "apportionment" applies when he expressly did not.  This issue was one of the "open" issues (a.k.a. "additional issues) that, pursuant to above referenced stipulation and Court order, the parties had fully briefed.  Of these, Judge Larson ruled on the work-for-hire issues and but did not get to "the remaining issues raised in the parties' briefs."  *Siegel* II, 658 F. Supp. 2d 1036, 1095 n.27 (C.D. Cal. 2009).

Defendants recycle their argument that the Siegels "recaptured a small portion of the Superman rights."  First, author's heirs, like the Siegels, recapture works of authorship under the Copyright Act's termination provisions, not discrete slivers of "rights."  Second, Defendants gloss over the fact that, in addition to other works, the

---

[1] In *Black* a co-owner was not obliged to account for revenues from his own "capital, labor and skill," because he was in "sole and exclusive" possession of the property, and the other co-owner had not "demanded possession."  *Id.* at 334.  Here, Plaintiffs have unequivocally demanded co-possession through their terminations and claims for relief.

2
PLAINTIFFS' OBJECTION AND RESPONSE TO DC COMICS' RESPONSE AND STATEMENT

Siegels recaptured the first Superman story in *Action Comics*, No. 1, which, like the pilot of a TV series, contained the core elements and format for the subsequent Superman stories; and recaptured the first two weeks of the Superman newspaper strips, which contained Superman's famous origin story from the planet Krypton. It is axiomatic that the Superman stories that followed (many of which were also co-authored by Siegel and Shuster) were ***derivative*** of these original works of authorship. Defendants may try to, but cannot, evade the fact that *Action Comics*, No. 1 contained most of the key Superman elements known around the world.[2]

Without detracting from DC's skill in marketing Superman, Superman's success is bound up with Siegel and Shuster's creative storytelling that immediately caught the public's imagination, because the same DC marketing machine applied to hundreds of comic-book characters that, unlike Superman, are virtually unknown today. These are the creative qualities that the Copyright Act protects and that its termination right rewards in giving authors and their families a chance to finally reap the financial benefits of such creativity. *See Classic Media, Inc. v. Mewborn* ("*Mewborn*"), 532 F.3d 978, 984 (9th Cir. 2008); H.R. Rep No. 105-452, 105th Congress, 2d Sess. ("H.R. Rep. 105-452"), at 8 (1998).

### 2. The Promotional Announcement ("Ad")

Defendants again misrepresent the record to have this Court reconsider decisions that have already been fully briefed and decided *twice* before. The unauthenticated copy of the alleged Ad now submitted by Defendants differs markedly from the document they first submitted, as "Exhibit C" to the Declaration of Michael Bergman in Support of Defendants' Motion for Partial Summary Judgment, filed April 30, 2007, based on which they argued: "the ads…speak for themselves"

---

[2] These include, without limitation: Superman's origins from an exploding distant planet, his colorful costume, crest, super-strength and super-senses, Superman's mission as a "champion of the oppressed," his dual identity as Clark Kent, "their" love triangle with Lois, and Clark and Lois' jobs as big city crime reporters under a gruff editor. Docket No. 293, Exhibit 1. The recaptured Superman strips contain Superman's origin story from the doomed planet Krypton, his father Jor-L, his mother Lara, and the infant Superman's escape to Earth. *See Siegel* II, 658 F. Supp. 2d 1036, Appendum A.

3
PLAINTIFFS' OBJECTION AND RESPONSE TO DC COMICS' RESPONSE AND STATEMENT

and "no special 'lens'" is required. *See* Defendants' Reply in Support of Summary Judgment, filed June 25, 2007, at 44:18-20. When the Court ruled that the content of the black and white Ad is divorced from the Superman storyline or character and is therefore extremely limited, Defendants moved for reconsideration and submitted a digitally enhanced, high contrast 11" x 17" poster size copy of a different Ad, but the Court expressly rejected this manipulation. *Siegel* I, 542 F. Supp. 2d 1098, 1126 (C.D. Cal. 2008); Toberoff Decl., Ex. I. Defendants now present an unauthenticated *third* version of the Ad, unmoored from any motion, which is a reduced version of the enhanced 11" x 17" Ad expressly rejected by the Court. Toberoff Decl., Ex. I at 1-3.

This leads to Defendants' second misstatement of the record. After the Court rendered its initial decision regarding the Ad, Plaintiffs brought a motion for clarification. Docket No. 300-01. However, this motion did not request a further ruling as to the Ad's limited content; it asked that the Court confirm that the Ads, <u>as purely derivative of *Action Comics*, No. 1</u>, cannot limit Plaintiffs' recaptured copyrights in *Action Comics,* No. 1 as a matter of law. *Id*. Whereas Defendants' motion for reconsideration as to the Ad's content was denied *with prejudice*, Plaintiffs' simultaneous motion for clarification was denied *without prejudice*. Toberoff Decl., Ex. I at 1, 3. In fact, the Court suggested that Plaintiffs append these arguments to the parties' upcoming "open" issues briefing, which Plaintiffs did. *Id.*, Ex. I at 3. *See* Docket No. 339. Plaintiffs' motion on this *legal issue* is still before the Court. Docket No. 339 at 58:23-74:17

In their opposition to Plaintiffs' pending request for clarification, Defendants did not submit *any* version of the Ad, because the Ad's content had already been decided in two Court orders and was no longer at issue. Toberoff Decl., Ex. I at 3. Defendants are apparently now making an ad hoc *second* motion for reconsideration (without adhering to the Local Rules) of this issue, twice decided against them.

///

///

4
PLAINTIFFS' OBJECTION AND RESPONSE TO DC COMICS' RESPONSE AND STATEMENT

| | | |
|---|---|---|
| DATED: September 10, 2010 | TOBEROFF & ASSOCIATES, P.C. | |
| | By _____ | |
| | Marc Toberoff | |
| | Attorneys for Plaintiffs Joanne Siegel and Laura Siegel Larson | |

PLAINTIFFS' OBJECTION AND RESPONSE TO DC COMICS' RESPONSE AND STATEMENT