Marc Toberoff (CA State Bar No. 188547)
  mtoberoff@ipwla.com
Nicholas C. Williamson (CA State Bar No. 231124)
  nwilliamson@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> WARNER BROS. ENTERTAINMENT INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, <br><br> Defendants. | Case No. CV 04-08400 ODW (RZx) <br><br> **THIRD AMENDED COMPLAINT FOR**: <br> [1] DECLARATORY RELIEF RE: TERMINATION, 17 U.S.C. §304(c); <br> [2] DECLARATORY RELIEF RE: PROFITS; <br> [3] DECLARATORY RELIEF RE: USE OF "S" CREST; and <br> [4] ACCOUNTING FOR PROFITS. <br><br> <u>DEMAND FOR JURY TRIAL</u> |

DC COMICS,

        Counterclaimant,

    vs.

JOANNE SIEGEL, an individual;
and LAURA SIEGEL LARSON, an
individual,

        Counterclaim Defendants.

Plaintiffs JOANNE SIEGEL and LAURA SIEGEL LARSON (hereinafter the "Plaintiffs"), by and through their attorneys of record, hereby allege as follows:

## JURISDICTION AND VENUE

1.    This is a civil action seeking declaratory relief, and an accounting for profits and related claims arising out of Plaintiffs' termination of prior grants of copyright in and to the original character and work known as "Superman" and subsequent "Superman" works pursuant to the United States Copyright Act of 1976, 17 U.S.C. § 304(c), and defendants' willful misconduct with respect thereto.

2.    This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to the United States Copyright Act (hereinafter, the "Copyright Act"), 17 U.S.C. § 101 *et al.* and 28 U.S.C. §§ 1331, 1332, 1338(a) and (b).

3.    This Court has supplemental jurisdiction over the related state claims herein under 18 U.S.C. § 1367 in that these claims form part of the same case and controversy as the federal claims herein.

4.    This Court has personal jurisdiction over the defendants in that defendants are regularly doing business in the State of California and in this

2

1  District, and because a substantial part of the relevant acts complained of herein

2  occurred in the State of California and this District.

3       5.    Venue is proper in the United States District Court for the Central

4  District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a)

5  because a substantial part of the wrongful acts that give rise to the claims herein

6  below occurred in this district and because WARNER BROS.

7  ENTERTAINMENT INC. has its principal place of business in this district.

8  **PARTIES**

9       6.    Plaintiff JOANNE SIEGEL (hereinafter "Joanne Siegel") is an

10  individual and citizen of and resides in the State of California, in the County of

11  Los Angeles, and is and at all times has been a citizen of the United States.

12  Joanne Siegel is the widow of famed comic book creator Jerome (a.k.a. "Jerry")

13  Siegel.

14       7.    Plaintiff LAURA SIEGEL LARSON (hereinafter "Laura Siegel")

15  is an individual and a citizen of and resides in the State of California, in the

16  County of Los Angeles, and is and at all times has been a citizen of the United

17  States.  Laura Siegel is the daughter of Jerome Siegel.

18       8.    Plaintiffs are informed and believe and based thereon allege that

19  defendant WARNER BROS. ENTERTAINMENT INC. (hereinafter "Warner

20  Bros.") is a corporation organized and existing under the laws of the State of

21  Delaware, which has its principal place of business in Los Angeles County,

22  California.  Warner Bros. is a wholly owned subsidary of Time Warner Inc.

23       9.    Plaintiffs are informed and believe and based thereon allege that

24  Defendant DC COMICS (hereinafter "DC") is a general partnership organized

25  and existing under the laws of the State of New York, which has its principal

26  place of business in the State of New York; and that DC regularly conducts

27  significant business in the State of California and in the County of Los Angeles.

28  DC is also a wholly owned subsidary of defendant Warner Bros.  (Warner Bros.

3

and DC are sometimes collectively referred to hereinafter as the "Defendants"; and each reference to Defendants shall also refer to each Defendant).

10.    Plaintiffs are informed and believe and based thereon allege that on or about September 30, 1946, the New York corporations, Detective Comics, Inc., Superman, Inc., All American Comics, Inc., Jolaine Publications, Inc., Wonderwoman Publishing, Inc., Hop Harrigan Enterprise, Inc., Gainlee Publishing Co., Inc., J.R. Publishing Co., Inc., Worlds Best Comics, Inc. and Trafalgar Printing Co., Inc. were consolidated into the New York corporation National Comics Publications, Inc., the name of which was later changed to National Periodical Publications, Inc., and eventually to DC Comics, Inc.; and further that DC, and Warner Bros., and/or each of them, are the alleged successor(s)-in-interest to National Periodical Publications, Inc.

11.    Plaintiffs are informed and believe and based thereon allege that Time Warner Inc. (hereinafter "Time Warner") is a corporation organized and existing under the laws of the State of Delaware, which has its corporate headquarters in the State of New York, and that Time Warner regularly conducts significant ongoing business in the State of California and in the County of Los Angeles.  Time Warner is the parent company of both Warner Bros. and DC.[1]

12.    Plaintiffs are informed and believe and based thereon allege that Defendant DC never, or rarely, exploits "Superman," independently of its controlling parent company, Warner Bros.; that even relatively linear functions such as "Superman" licensing are not handled directly by DC, but are exploited exclusively through Warner Bros.; that the agreements and other arrangements between Defendants Warner Bros. and DC regarding "Superman" are not "arms length" agreements, serve primarily Warner Bros.' interests, and thus, do not

---

[1] Plaintiffs have omitted Time Warner Inc. as a party pursuant to the Court's May 19, 2009 and July 8, 2009 orders.  Plaintiffs respectfully reserve all rights to appeal such rulings and to reinstate Time Warner in the event the orders are reversed.

1 reflect the appropriate market values of the copyrights to "Superman," at issue
2 herein.

3      13.    Plaintiffs are informed and believe and based thereon allege that
4 Defendants Warner Bros. and DC are, and at all times material hereto were, the
5 alter-egos of each other and there exists and has existed at all times material
6 hereto a unity of interest and ownership among such Defendants such that any
7 separateness has ceased to exist in that Defendants, and/or each of them, used
8 assets of the other Defendants, and/or each of them, for its and/or their separate,
9 individual purposes, and caused valuable assets, property, rights and/or interests
10 to be transferred to each other without adequate consideration.

11      14.    Plaintiffs are informed and believe and based thereon allege that
12 the fictitiously named Defendants captioned hereinabove as Does 1 through 10,
13 inclusive, and each of them, were in some manner responsible or legally liable
14 for the actions, damages, events, transactions and circumstances alleged herein.
15 The true names and capacities of such fictitiously named defendants, whether
16 individual, corporate, associate, or otherwise are presently unknown to
17 Plaintiffs, and Plaintiffs will amend this Complaint to assert the true names and
18 capacities of such fictitiously named Defendants when the same have been
19 ascertained.  For convenience, each reference herein to a named Defendant shall
20 also refer to the Doe Defendants and each of them.

21      15.    Plaintiffs are informed and believe and based thereon allege that
22 each of the Defendants was the agent, partner, servant, employee, or employer
23 of each of the other Defendants herein, and that at all times herein mentioned,
24 each of the Defendants was acting within the course and scope of such
25 employment, partnership and/or agency and that each of the Defendants is
26 jointly and severally responsible for the damages hereinafter alleged.

27                **FACTS COMMON TO ALL CLAIMS FOR RELIEF**
28      16.    In 1933 Jerome Siegel conceived the original idea of a cartoon strip

5

featuring a unique man of superhuman strength and powers who would perform feats of great importance for the public good. Siegel conceived, in essence, the first "superhero" -- an original concept which embodied our nation's ideals at the World's darkest hour, became a cultural icon and spawned, what is today, a booming industry. Jerry Siegel entitled his character -- "Superman."

17. In or about 1934, Jerome Siegel authored twenty-four days (four weeks) of "Superman" comic strips intended for newspaper publication, a synopsis of comic strips for weeks two, three and four, a paragraph previewing future "Superman" exploits and a nine page synopsis covering approximately two months of daily "Superman" newspaper comic strips (at six days per week). Plaintiffs are informed and believe and based thereon allege that these works, though originally unpublished, were thereafter included or incorporated in the early "Superman" comic strips thereafter published from on or about April 18, 1938 to April 13, 1943 (collectively, referred to hereinafter as the "Initially Unpublished Works").

18. In or about 1934, Jerome Siegel and the artist, Joe Shuster (hereinafter collectively, "Siegel and Shuster") co-authored *fifteen* daily "Superman" comic strips, consisting of one week (six days) of completely inked daily "Superman" comic strips and three additional six day weeks of "Superman" comic strips in penciled form (the "1934 Superman Comic Strip"). "Superman" was submitted by Siegel and Shuster to numerous publishers over the next few years.

19. Although "Superman" was not picked up for publication for some time, Siegel and Shuster did get other features they created into print with the Nicholson Publishing Company including "Henri Duval" and "Dr. Occult." In a letter dated October 4, 1935, the company's owner Malcolm Wheeler-Nicholson, wrote to Mr. Siegel expressing an interest in publishing "Superman" in comic book form but Siegel and Shuster rejected his offer. Nicholson

6

became involved with a new comic magazine company, Detective Comics, Inc. (hereinafter, "Detective Comics") and two Siegel and Shuster features, "Slam Bradley" and "Spy," which appeared in "Detective Comics No. 1."

20.  On or about December 4, 1937, Siegel and Shuster, as independent contractors, entered into an agreement with Detective Comics (the "1937 Agreement") to continue to produce the comic magazine features, "Slam Bradley" and "The Spy," which agreement provided, in part, that any new and additional features which Siegel and Shuster produced for use in a comic magazine were to be first submitted to Detective Comics which reserved the right to accept or reject same within sixty days.

21.  One of the early entities to which Siegel had submitted "Superman" was The McClure Newspaper Syndicate.  In or about early 1938, the head of the syndicate sought Siegel's permission to forward Siegel and Shuster's 1934 Superman Comic Strip material to Detective Comics for potential publication in its contemplated new magazine, "Action Comics."  By this time, "Superman" and his miraculous powers had already been completely developed by Siegel and Shuster.

22.  In or about January–February 1938, when Detective Comics expressed interest to Siegel and Shuster in publishing their 1934 Superman Comic Strip in a magazine, Siegel and Shuster cut and pasted their aforementioned 1934 Superman Comic Strip into more than ninety separate panels ("Revised 1934 Superman Comic Strip"), so as to render their newspaper strip more suitable for a magazine layout.

23.  The "Superman" material described hereinabove, which was the independent, original creation of Siegel and Shuster, contained virtually all of the signature elements and characters of the "Superman" mythology and constituted the formula for the continuing "Superman" series to come.  It depicted and narrated the origin of the "Superman" character, and contained a

7

complete delineation of the literary and pictorial representation of "Superman," including without limitation, his habits, character, superhuman powers, appearance, costume, secret identity and attributes, and the sphere of public good "Superman" was to enhance.

24. By an instrument dated March 1, 1938 (hereinafter, the "1938 Grant"), which had been prepared by Detective Comics, Siegel and Shuster agreed to the publication of their Revised 1934 Superman Comic Strip by Detective Comics in consideration for the sum of $10 per page for this thirteen page installment equal to a total of $130.

25. Thereafter, Detective Comics published Siegel and Shuster's "Revised 1934 Superman Comic Strip" in the "June, 1938" issue of "Action Comics No. 1," which was issued for sale on April 18, 1938.

26. Action Comics No. 1 and the predecessor materials created solely by Siegel and Shuster contained the essential elements of "Superman" which continue to this day, including without limitation, Superman's origin from the distant planet, his "back-story" (sent to Earth as an infant in a spaceship by his scientist father), his core physical and mental traits, his mission as a champion of the oppressed to use his great powers to benefit humankind, his secret identity as newspaper reporter, "Clark Kent," his relationship with other key characters such as the newspaper editor from whom he takes his assignments and his romantic interest in Lois, who rebuffs Clark as a coward, while romantically inclined towards "Superman."

27. Action Comics No. 1 was followed by further issues published at regular intervals, with each subsequent issue containing additional "Superman" material created by Siegel and Shuster.

28. Between on or about March, 1938 and on or about September, 1938, Siegel and Shuster continued to create "Superman" strips, stories and continuities.

8

29.     On or about September 22, 1938, Detective Comics, Siegel and Shuster entered into an agreement with The McClure Newspaper Syndicate (hereinafter, the "1938 McClure Agreement") regarding the newspaper syndication of a "Superman" comic strip.

30.     On or about September 22, 1938, Detective Comics and Siegel and Shuster therefore entered into an agreement (hereinafter, the "1938 Agreement") which for the first time provided that Detective Comics would thereby "employ and retain" Siegel and Shuster to do the "artwork and continuity" for five comic strips, including "Superman."

31.     Prior to September 22, 1938, Siegel and Shuster solely created six comic book issues of "Superman," published as Action Comics Nos. 1 through 6. Of these, Action Comics Nos. 1 through 5 had been published prior to September 22, 1938; and Action Comics No. 6 was published four days later on September 26, 1938.

32.     Action Comics No. 1 is not a "work made for hire." Action Comics Nos. 2-6, which were thereafter created by Siegel and Shuster prior to their entering into the 1938 Agreement, are also not "works made for hire."

33.     On or about December 19, 1939, Detective Comics and Siegel and Shuster entered into a supplemental agreement (hereinafter, the "1939 Agreement") which raised Siegel and Shuster's per page compensation rate for the increasingly popular "Superman" comic strip.

34.     Plaintiffs are informed and believe and thereon allege that the "Superman" works created by Siegel and Shuster after they entered into the 1938 Agreement with Detective Comics were also not "works made for hire." The 1938 Agreement for the first time used the term "employ and retain" with respect to Siegel and Shuster's subsequent work on "Superman," yet Siegel and Shuster were never employees of Detective Comics. Siegel and Shuster operated their own independent comic book production business. Without

9

limitation, Siegel and Shuster were not paid a salary, but were consistently paid on a "per page" basis, and only for materials actually delivered by them to Detective Comics and published by Detective Comics.  Plaintiffs are further informed and believe and thereon allege that in compensating Siegel and Shuster, Detective Comics did not withhold or deduct payroll, social security and other taxes normally deducted from employee salaries; Detective Comics did not provide employee benefits to Siegel and Shuster; Siegel and Shuster worked from their own premises (not Detective Comic's premises); determined their own hours and days of work; supplied, used and paid for their own instrumentalities, tools and materials; and hired and paid for their own employees who worked at Siegel and Shuster's instance and expense, under Siegel and Shuster's direction and full control.

35.    In or about 1947, Siegel and Shuster filed an action in the Supreme Court of the State of New York, County of Westchester against National Comics Publications, Inc. (hereinafter, the "1947 Action" ) to determine the validity of the contracts between National Comics Publications, Inc.'s predecessors –in– interest and Siegel and Shuster with respect to "Superman."  Pursuant to a stipulation of the parties the action was referred for decision to an Official Referee of the New York Supreme Court.  After trial of the action the Official Referee rendered an opinion dated November 1, 1947.  On April 12, 1948, the Official Referee signed detailed findings of fact and conclusions of law and entered an interlocutory judgment upholding the contracts in some respects, to which notices of appeal were filed by all said parties.  Settlement negotiations ensued, resulting in a stipulation of settlement between said parties executed on or about May 19, 1948 (hereinafter, the "1948 Stipulation"), and the entry in the New York Supreme Court of a final consent judgment dated May 21, 1948.

36.    In or about the early 1970's, a dispute arose between Siegel and Shuster and National Periodical Publications, Inc. regarding the renewal

copyright to "Superman," resulting in Siegel and Shuster's filing of an action
against National Periodical Publications, Inc. in the United States District Court
for the Southern District of New York for a declaration that Siegel and Shuster
were entitled to the renewal copyright to "Superman."  The District Court held
in <u>Jerome Siegel and Joseph Shuster v. National Periodical Publications, Inc. et
al.</u>, 364 F. Supp. 1032 (1973) that the initial "Superman" comic strip, published
in Action Comics No. 1, is a "work for hire" within the meaning of the
Copyright Act, 17 U.S.C. § 26, and that, in any event, the various agreements
between the parties, prior to the action, transferred the renewal copyright in this
material to Detective Comics.

37.    On appeal, the United States Court of Appeals for the Second
Circuit held in <u>Jerome Siegel and Joseph Shuster v. National Periodical
Publications, Inc. et al.</u>, 509 F.2d 909 (2nd Cir. 1974), that the District Court
erred in finding that Superman was a "work for hire" under the Copyright Act,
17 U.S.C. § 26, and that "Superman" and his miraculous powers were created
by Siegel and Shuster long before any employment relationship with Detective
Comics.  The Second Circuit nonetheless held that the Official Referee's
determination in the 1947 Action that Siegel and Shuster had transferred all
rights in "Superman" to Detective Comics implicitly included a determination
that Siegel and Shuster had transferred the renewal copyright in "Superman" to
Detective Comics; and that this determination was binding under the doctrine of
*res judicata.*

38.    On or about December 23, 1975, Siegel and Shuster entered into an
agreement with Warner Communications Inc. (hereinafter the "1975
Agreement") the alleged parent company of National Periodical Publications,
Inc., which provided for (i) annual payment of $20,000 to Siegel and Shuster
each for their respective lifetimes, plus medical benefits to Siegel and Shuster
each; and (ii) that Siegel and Shuster would be given credit on certain

11

"Superman" publications and derivative works as the "creators" of Superman, in exchange for Siegel and Shuster's acknowledgement that Warner Communications, Inc. was the exclusive owner of all right, title and interest in and to "Superman." (The 1937 Agreement, the 1938 Grant, the 1938 McClure Agreement, the 1938 Agreement, the 1939 Agreement, the 1948 Stipulation and the 1975 Agreement described hereinabove are hereinafter sometimes referred to collectively as the "Alleged Grants.")

39.    On April 3, 1997, Plaintiffs, Joanne Siegel and Laura Siegel, served by first class mail, postage prepaid, notices of termination, as permitted by the Copyright Act, 17 U.S.C. § 304(c) (hereinafter, the "Termination Notices") on each of the Defendants and a number of their subsidiaries, licensees and affiliates, terminating the Alleged Grants of the renewal copyright to (i) the copyrightable "Superman" character, (ii) the 1934 Superman Comic Strip and the Revised 1934 Superman Comic Strip, both published as/in Action Comics No. 1, (iii) the material published as/in Action Comics Nos. 1-6 (statutory copyright to Action Comics No. 6 was secured on September 26, 1938), (iv) the material published as/in Action Comics Nos. 7- 61 (statutory copyright to Action Comics No. 61 was secured on April 13, 1943), and/or (v) subsequent works involving "Superman," all as set forth in the Notices of Termination (hereinafter sometimes referred to collectively as the "Works").

40.    Plaintiffs are informed and believe and based thereon allege the Initially Unpublished Works set forth in the Termination Notices were incorporated or included in Works published thereafter, to which the Termination applies.

41.    Plaintiffs are further informed and believe and based thereon allege that the copyrights to all the Works were duly renewed.

42.    The Notices of Termination were drafted, served on Defendants and filed with the United States Copyright Office, all in full compliance with

12

the Copyright Act, 17 U.S.C. § 304(c), and the regulations promulgated thereunder by the Register of Copyrights, 37 C.F.R. § 201.10 (2003). (Plaintiffs' aforesaid exercise of their termination rights under 17 U.S.C. § 304(c) regarding "Superman" is sometimes hereinafter referred to as the "Termination").

43.   As the original co-author of each Work Jerome Siegel owned an undivided fifty percent (50%) of the copyright of each Work prior to any alleged transfer or assignment of any such Work pursuant to any Alleged Grant.

44.   The Notices of Termination terminated on April 16, 1999 (hereinafter, the "Termination Date") all prior grants or purported grants of the renewal copyrights in and to each and/or all the Works for their extended renewal terms (hereinafter, sometimes referred to individually and collectively as the "Recaptured Copyrights"), including, but not limited to, the Alleged Grants.

45.   On April 16, 1999, the Termination Date, Plaintiffs re-gained ownership to Jerome Siegel's undivided fifty percent (50%) copyright interest in and to each and/or all the Works for their extended renewal terms.  In accordance with 17 U.S.C. § 304(c), and as set forth in the Notices of Termination, Jerome Siegel's surviving son, Michael Siegel, is also entitled to share in the proceeds from this recaptured interest.

46.   Defendants have acknowledged that the Notices of Termination are effective.  Defendants have further admitted that Plaintiffs thereby co-own the copyright(s) to at least the original "Superman" elements authored by Siegel and Shuster; and that Defendants have a duty to account to Plaintiffs for Defendants' exploitation of such copyright(s).

47.   On April 16, 1997, in response to the service of the Notices of Termination, John A. Schulman, Executive Vice President and General Counsel of Defendant Warner Bros., wrote a letter to Joanne Siegel, stating in relevant part:

13

1         "As to the Notices of Termination, I wasn't surprised

2         at their arrival...After the effective date of the

3         termination, there will still remain 14 years of

4         copyright protection left to the joint copyright holders

5         of the original Superman elements.  Those are what we

6         should share."

7     48.    Similarly, on October 10, 1997, Paul Levitz, President and

8 Publisher of Defendant DC Comics, wrote a letter to Plaintiffs, stating in

9 relevant part:

10         "The [Superman] rights involved are non-exclusive;

11         they are shared with DC.  Since both you and DC

12         would have these rights, we would each have the

13         obligation to pay the other for using those rights if you

14         did not re-grant them to DC."

15     49.    Yet, on April 15, 1999, one day before the Termination Date,

16 Defendant DC, by its attorneys (Fross Zelnick, *et al*) sent a letter to the

17 Plaintiffs' attorney, Arthur J. Levine, frivolously denying the validity of the

18 termination with respect to *any* "Superman" copyrights, stating in relevant part:

19         "[Y]ou are hereby put on notice that DC Comics

20         rejects both the validity and scope of the notices and

21         will vigorously oppose any attempt by your clients to

22         exploit or authorize the exploitation of any copyrights,

23         or indeed, any rights at all, in Superman."

24     50.    Defendant DC's April 15, 1999 letter constituted a thinly veiled

25 threat that if Plaintiffs ever attempted to exploit *any* of their recaptured

26 copyright interests in "Superman," Defendants would engage in a campaign of

27 intimidation, including, but not limited to, instituting frivolous litigation against

28 Plaintiffs and using Defendants' enormous market power to restrict Plaintiffs'

ability to exploit their Recaptured Copyright interests.  Given that Time Warner is one of the largest media companies in the world with over $38 billion in annual revenues, Defendants' threats had a devastating and chilling effect on Plaintiffs' freedom to exploit the copyright interests they had properly regained under the Copyright Act, 17 U.S.C. § 304(c), thereby damaging Plaintiffs and causing them great emotional distress.

51.   In the nearly 9 ½ years since the Termination Date, none of the Defendants has ever accounted to the Plaintiffs for any proceeds or profits whatsoever from their ongoing exploitation of "Superman" and the jointly owned Recaptured Copyrights.

## FIRST CLAIM FOR RELIEF

(Declaratory Relief Re:  Termination, 17 U.S.C. § 304(c) - Against All Defendants)

52.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 51 inclusive, as though fully set forth herein.

53.   By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between Plaintiffs and Defendants under Federal copyright law, 17 U.S.C. §§ 101 *et seq.*, concerning their respective rights and interests in and to the copyright to various "Superman" works, for which Plaintiffs desire a declaration of rights.

54.   Plaintiffs contend and Defendants deny that:

a.   The Notices of Termination terminated on April 16, 1999 all prior grants, assignments or transfers of copyrights for the extended renewal term in and to each and/or all of the Works (as defined in paragraph 39 hereinabove) to any of the Defendants and other parties duly served with the Notices of Termination, including their predecessors-in-interest; and

b.   As of the effective Termination Date, April 16, 1999, Plaintiffs owned and continue to own an undivided fifty percent (50%) of the

15

1   Recaptured Copyrights to each and/or all the Works for their renewal terms.

2       55.    A declaration of the Court is necessary pursuant to the Declaratory

3   Judgment Act, 28 U.S.C. §§ 2201 et seq., so that the parties may know their

4   respective rights and obligations with respect to the Termination and the

5   copyright interests thereby recaptured by Plaintiffs.

6                    **SECOND CLAIM FOR RELIEF**

7      (Declaratory Relief Re:  Profits from Recaptured Copyrights - Against All

8                           Defendants)

9       56.    Plaintiffs re-allege and incorporate by reference paragraphs 1

10   through 55 inclusive, as though fully set forth herein.

11       57.    By reason of the foregoing facts, an actual and justiciable

12   controversy has arisen and now exists between Plaintiffs and Defendants

13   concerning how Profits from Recaptured Copyrights should be defined for

14   purposes of Defendants and Plaintiffs accounting to one another as joint owners

15   of the Recaptured Copyrights.

16       58.    Plaintiffs contend and Defendants deny that:

17           a.    Profits include Defendants' revenues from the post - April

18   16, 1999 exploitation of the Recaptured Copyrights in foreign territories, when

19   such exploitation results from the predicate exercise *in the United States* of any

20   right(s) under the Recaptured Copyrights by any Defendant, their licensees or

21   assigns;

22           b.    There should be no *apportionment* of Profits since Plaintiffs

23   are entitled to fifty percent (50%) of such Profits as *joint owners* of the

24   Recaptured Copyrights;

25           c.    Alternatively, *apportionment*, if any, should apply only to

26   profits from the exploitation of the Recaptured Copyrights in *derivative works*

27   *created by a Defendant*, but not to profits from mere *licensing* of the Recaptured

28   Copyrights.  Any such apportionment should weigh heavily in Plaintiffs' favor,

16

since the value of the "Superman" franchise exploited by the Defendants ("Superman Franchise") is largely attributable to the unique "Superman" mythology protected by the Recaptured Copyrights.  The Superman Franchise capitalizes on the success of, and is hardly distinguishable from, the underlying Recaptured Copyrights co-owned by Plaintiffs;

      d.    Profits include profits from any merchandise or other derivative works created, produced or manufactured on or after the Termination Date, April 16, 1999, notwithstanding that the underlying licensing agreement for such exploitations may have been executed prior thereto;

      e.    Profits are not limited to the Profits of Defendant DC, Warner Bros.' wholly owned subsidiary, but include the Profits of Defendant Warner Bros., as well; and

      f.    In determining Profits, deductible costs should include only reasonable costs directly attributable to the exploitation of the Recaptured Copyrights, of the type customarily deducted in arms' length agreements to exploit copyrights of comparable value, all in compliance with Generally Accepted Accounting Principles ("GAAP").

59.    A declaration of the Court is necessary pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* so that the parties may know their respective rights and obligations with respect to Profits from the exploitation of the Recaptured Copyrights after the Termination Date.

## **THIRD CLAIM FOR RELIEF**

(Declaratory Relief Re:  Use of the "Superman" Crest - Against All Defendants)

60.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 59 inclusive, as though fully set forth herein.

61.    By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between Plaintiffs and Defendants concerning whether Plaintiffs are entitled, after the Termination Date, to

17

commercially exploit the "Superman" crest comprised of a large red "S" centered on a broad triangular yellow field, first appearing (as part of "Superman's" costume, centered on and highlighting Superman's "V" shaped muscular chest) in the 1934 Superman Comic Strip and the 1934 Revised Superman Comic Strip created by Siegel and Shuster and published as Action Comics No. 1, and in only slightly revised form in subsequent Works (hereinafter the "Superman Crest"); and whether Defendants' duty to account, as non-exclusive joint owners of such Recaptured Copyrights, includes Profits from the licensing of this crest.

62.     Defendants allege a trademark interest in a "Superman" shield (hereinafter the "Superman Shield" and/or "Superman Trademark") which is also comprised of a large red "S" on a broad triangular yellow field, first appearing in later Works, as part of "Superman's" costume, centered on and highlighting Superman's "V" shaped muscular chest, with the upper corners of the triangular crest slightly cropped.

63.     Plaintiffs contend and Defendants deny that:

a.     The Recaptured Copyrights include the copyright to the "Superman" crest comprised of a large red "S" centered on a broad triangular yellow field, first appearing as part of "Superman's" costume, centered on and highlighting Superman's "V" shaped muscular chest, in the 1934 Superman Comic Strip and the Revised 1934 Superman Comic Strip published as Action Comics No. 1, and appeared in subsequently published Works in only slightly revised form (hereinafter the "Superman Crest").

b.     Defendants' alleged Superman Trademark design arose directly from, and is substantially identical to, Siegel and Shuster's copyrighted Superman Crest;

c.     Defendants receive significant proceeds and value from the utilization and copying of the Superman Crest and/or substantially identical

18

1  Superman Shield for which Defendants must account to Plaintiffs;

2          d.      In turn, Plaintiffs should likewise be allowed to exercise

3  their rights under copyright with respect to the Superman Crest, including

4  without limitation the right to commercially exploit the Superman Shield in

5  merchandise;

6          e.      Defendants, in any event, cannot use the alleged Superman

7  Trademark or any other purported trademark interest regarding "Superman" to

8  prevent, hinder or restrain Plaintiffs' use, exercise or exploitation of their rights

9  under the Copyright Act in any of the jointly owned Recaptured Copyrights.

10         64.    A declaration of the Court is necessary pursuant to the Declaratory

11 Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, so that the parties may know their

12 respective rights and obligations with respect to the Superman Crest and the

13 Superman Shield.

### FOURTH CLAIM FOR RELIEF

(Accounting for Profits - Against All Defendants)

16         65.    Plaintiffs re-allege and incorporate by reference paragraphs 1

17 through 64 inclusive, as though fully set forth herein.

18         66.    On or after the Termination Date, April 16, 1999, Defendants

19 and/or each of them have licensed and/or commercially exploited and will

20 continue to license or exploit the Recaptured Copyrights, including without

21 limitation, *via* merchandising, publishing, and derivative motion picture and

22 television programming.

23         67.    As result of such licensing and/or commercial exploitation of the

24 Recaptured Copyrights on or after April 16, 1999, Defendants and/or each of

25 them have received and will continue to receive substantial Profits, fifty percent

26 (50%) of which is payable to Plaintiffs as the joint owner of the Recaptured

27 Copyrights.

28         68.    Defendant Warner Bros. has acted and continues to act in most

19

instances as the effective joint-owner and licensor (as opposed to licensee) of the Recaptured Copyrights; and, as such, Warner Bros., along with the other Defendants, owes a duty to account to Plaintiffs.

69.    To date, the Profits received by Defendants and/or each of them from such licensing and/or commercial exploitation on or after April 16, 1999 is estimated to be in excess of $50 million, however the exact sums actually received and to be received by Defendants and/or each of them, are unknown to Plaintiffs at this time, for these amounts can be properly determined only by an accounting.

70.    Plaintiffs have demanded an accounting by Defendants on a continuing basis of all amounts received by them and/or payable to them from such licensing and other commercial exploitation on or after April 16, 1999, and that Defendants pay Plaintiffs their fifty percent (50%) share of all such Profits.

71.    In nearly 9 ½ years since the Termination Date, Defendants have, nonetheless, never accounted to or paid any Profits whatsoever to Plaintiffs.

72.    Plaintiffs at no time waived their rights to receive their share of such Profits, nor have Plaintiffs at any time consented to the use and exploitation of the Recaptured Copyrights in the United States or any foreign territories.

73.    Plaintiffs are entitled to an ongoing accounting from Defendants regarding all amounts received, realized by or payable to Defendants on or after April 16, 1999 from the licensing and any other commercial exploitation of the Recaptured Copyrights and "Superman Franchise," and to the payment by Defendants to Plaintiffs of fifty percent (50%) of all such Profits.

WHEREFORE, Plaintiffs pray for relief as follows:

## PRAYER FOR RELIEF

### ON THE FIRST CLAIM FOR RELIEF

74.    For a declaration as follows:

20

a.    That pursuant to the Copyright Act, 17 U.S.C.§ 304(c), Plaintiffs validly terminated on April 16, 1999 all prior grants, assignments or transfers to any of the Defendants and any of their predecessors-in-interest, of the renewal copyrights in and to each and/or all of the Works; and

b.    That, as of the Termination Date, Plaintiffs owned and continue to own fifty percent (50%) of the aforesaid Recaptured Copyrights.

<u>ON THE SECOND CLAIM FOR RELIEF</u>

75.    For a declaration as follows:

a.    That as joint owners of the Recaptured Copyrights, Plaintiffs are entitled to an accounting for Profits received or payable to the Defendants;

b.    That Profits include Defendants' revenues from the post - April 16, 1999 exploitation of the Recaptured Copyrights in territories outside of the United States whenever such exploitation is based on the predicate exercise *in the United States* of any right(s) in and to the Recaptured Copyrights by any Defendant, their licensees or assigns;

c.    That there should be no *apportionment* of Profits since Plaintiffs are entitled to fifty percent (50%) of such Profits as joint owners of the Recaptured Copyrights;

d.    Alternatively, that apportionment should apply only to profits from the exploitation of the Recaptured Copyrights in *derivative works created by a Defendant*, but not to profits from *licensing* of the Recaptured Copyrights;

e.    That apportionment, if any, should weigh strongly in Plaintiffs' favor, since the value of the Superman Franchise is largely attributable to the unique "Superman" character and other elements created by Siegel and Shuster and protected by the Recaptured Copyrights, in a percentage that the court may deem just and proper;

f.    That Profits include profits from any merchandise or other derivative works created, produced or manufactured on or after the Termination

21

1  Date, April 16, 1999, notwithstanding that underlying licensing for such

2  exploitation may have occurred prior thereto;

3          g.    That Profits include the Profits of Defendants DC, Warner

4  Bros. and Time Warner, their subsidiaries and divisions; and

5          h.    That in determining Profits, only reasonable costs directly

6  attributable to the exploitation of the Recaptured Copyrights, of the type

7  customarily deducted in arms' length agreements to exploit copyrights of

8  comparable value to the Recaptured Copyrights, should be deducted from gross

9  revenues, all in compliance with GAAP.

10  <u>ON THE THIRD CLAIM FOR RELIEF</u>

11      76.    For a declaration as follows:

12          a.    That by the Termination, Plaintiffs recaptured a fifty percent

13  (50%) interest in the copyright to the Superman Crest created by Siegel and

14  Shuster;

15          b.    That Defendants' Superman Shield design arose directly

16  from, and is substantially identical to, the copyrighted Superman Crest created

17  by Siegel and Shuster;

18          c.    That Defendants must account to Plaintiffs for fifty percent

19  (50%) of the proceeds they receive from the licensing or other exploitation of

20  the Superman Crest and/or Superman Shield;

21          d.    That Plaintiffs, as co-owners of the copyright in and to the

22  Superman Crest, likewise are permitted to license or otherwise exploit the

23  Superman Crest, subject to a duty to account to Defendants for any such

24  exploitation; and

25          e.    That Defendants cannot use their alleged trademark in the

26  Superman Shield or any other alleged trademark interest with respect to

27  "Superman" to prevent, hinder or restrain Plaintiffs' use, exercise or

28  exploitation of Plaintiffs' rights under the Copyright Act in the jointly owned

22

1  Recaptured Copyrights.

2  ON THE FOURTH CLAIM FOR RELIEF

3  77.   For an accounting by the Defendants, jointly and severally, of any

4  and all proceeds from the licensing and any other exploitation of the Recaptured

5  Copyrights or Superman Franchise on or after the Termination Date, April 16,

6  1999;

7  78.   For 50% of any and all proceeds from the licensing and any other

8  exploitation of the Recaptured Copyrights or "Superman Franchise" on or after

9  April 16, 1999 pursuant to such accounting; and

10  79.   For the imposition of a constructive trust for the benefit of

11  Plaintiffs on all sums received and to be received by the Defendants, jointly or

12  severally, derived from the licensing and any other exploitation of the

13  Recaptured Copyrights or "Superman Franchise" on or after April 16, 1999.

14  ON ALL CLAIMS FOR RELIEF

15  80.   For Plaintiffs' costs of suit;

16  81.   For interest at the highest lawful rate on all sums awarded Plaintiffs

17  other than punitive damages;

18  82.   For reasonable attorneys' fees; and

19  83.   For such other and further relief as the Court may deem just and

20  proper.

21

22  Dated: January 31, 2011          TOBEROFF & ASSOCIATES, P.C.

23

24                                   Marc Toberoff
                                     Attorneys for Plaintiffs,
25                                   JOANNE SIEGEL and LAURA
                                     SIEGEL LARSON
26

27

28

23

Third Amended Complaint for Declaratory Relief and Accounting

## JURY TRIAL DEMANDED

Plaintiffs hereby request a trial by jury on each claim for relief alleged in the Complaint for which trial by jury is allowable.

Dated:  January 31, 2011                    TOBEROFF & ASSOCIATES, P.C.

_____
Marc Toberoff
Attorneys for Plaintiffs,
JOANNE SIEGEL and LAURA
SIEGEL LARSON

24

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is: 2049 Century Park East, Suite 2720, Los Angeles, California 90067.

4

5

On February 3, 2011, I served the attached documents described as

6

**THIRD AMENDED COMPLAINT**

7

as follows:

8

[ ]   :BY MAIL:

9

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. I placed _____ the original _X_ a true copy thereof enclosed in sealed envelope(s) addressed as follows:

10

11

12

13

[X]   :BY HAND:

14

As follows: I delivered to the address listed below by hand the documents listed herein.

15

Daniel M. Petrocelli, Esq.
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

16

17

18

[X]   :(FEDERAL) – I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

19

20

I declare under penalty of perjury that the foregoing is true and correct.

21

EXECUTED on February 3, 2011, in Los Angeles, California.

22

23

Nicholas C. Williamson

24

25

26

27

28