1   Marc Toberoff (State Bar No. 188547)
      *mtoberoff@ipwla.com*
2   Nicholas C. Williamson (State Bar No. 231124)
      *nwilliamson@ipwla.com*
3   Keith G. Adams (State Bar No. 240497)
      *kgadams@ipwla.com*
4   TOBEROFF & ASSOCIATES, P.C.
    2049 Century Park East, Suite 3630
5   Los Angeles, California, 90067
    Telephone:   (310) 246-3333
6   Fax:         (310) 246-3101

7   Attorneys for Plaintiff,
    Laura Siegel Larson

8
                    **UNITED STATES DISTRICT COURT**
9
           **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**
10

| | |
|---|---|
| 11 JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, | Case No: CV 04-8400 ODW (RZx) |
| 12 | Hon. Otis D. Wright II, U.S.D.J. |
| 13              Plaintiffs, | **ANSWER TO SECOND AMENDED COUNTERCLAIMS** |
|     vs. | Complaint filed:  October 8, 2004 |
| 14 | Trial Date:  None Set |
| 15 WARNER BROS. ENTERTAINMENT INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, | |
| 16 | |
| 17              Defendants. | |
| 18 DC COMICS, | |
| 19              Counterclaimant, | |
| 20     vs. | |
| 21 | |
| 22 JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, | |
| 23 | |
| 24              Counterclaim Defendants. | |
| 25 | |

26

27

28

Plaintiffs and counterclaim defendants JOANNE SIEGEL and LAURA SIEGEL LARSON (hereinafter the "Plaintiffs"),[1] by their attorneys of record, hereby answer the counterclaims ("Counterclaims") of defendant DC Comics ("DC" or "Counterclaimant"):

1.      Plaintiffs admit only that DC is engaged in the business of licensing comic books.  Plaintiffs, at present, lack knowledge or information sufficient to admit the truth of the remaining allegations contained in paragraph 1 of the Counterclaims and on that basis deny same.

2.      Plaintiffs admit only that Joanne Siegel was an individual and citizen of the State of California, in the County of Los Angeles, that Joanne Siegel was the widow of author Jerome Siegel ("Siegel"), the individual who, without limitation, originated, created and authored the "Superman" character, premises, themes, setting, back-story, key supporting characters, and the first and many subsequent "Superman" stories, but Plaintiffs otherwise deny the allegations in paragraph 2 of the Counterclaims.

3.      Admitted.

4.      Plaintiffs admit only that Defendants purport to assert that this Court has subject matter jurisdiction and supplemental jurisdiction over the Counterclaims as alleged in paragraph 4 but otherwise deny the allegations in paragraph 4 of the Counterclaims.

5.      Admitted.

6.      Plaintiffs admit only that "The Reign of the Superman" written by Siegel with art by Joseph Shuster ("Shuster") was published in 1933 in a magazine entitled "Science Fiction" and that this material shared little, if any, similarity to various subsequent Superman material which Siegel created with art by Shuster but

---

[1] Joanne Siegel died on February 12, 2011.  Joanne's Siegel's daughter, defendant Laura Siegel Larson, is named in her mother's will as the executor of her estate, and has directed that this Answer to Second Amended Counterclaims be filed on behalf of Joanne Siegel's estate, pending a motion to substitute party under F.R.C.P. 25(a).

1  Plaintiffs otherwise deny the allegations in paragraph 6 of the Counterclaims.

2  7.    Plaintiffs admit only that Siegel created and wrote and Shuster drew art

3  for  several variations of "Superman" including a 1933 version known as "The

4  Superman" and other versions between 1933 and 1938 known as "Superman" (all

5  created and written by Siegel and some drawn by Shuster) and that these works

6  included but were not limited to the works listed in subparagraphs (a)-(e) in the

7  fourth sentence of paragraph 7 of the Counterclaims, but Plaintiffs otherwise deny the

8  allegations in paragraph 7 of the Counterclaims.

9  8.    Plaintiffs admit only that between 1933 and 1938, Jerome Siegel and

10  Joseph Shuster ("Siegel and Shuster") submitted certain Superman works to certain

11  prospective publishers and newspaper syndicates; but Plaintiffs otherwise deny the

12  allegations contained in paragraph 8 of the Counterclaims.

13  9.    Admitted.

14  10.    Plaintiffs admit only that on or about December 4, 1937, Siegel and

15  Shuster, as independent contractors, entered into an agreement with Detective

16  Comics, Inc. ("DCI") (the "December 4, 1937 Agreement") to continue to produce

17  the comic magazine features "Slam Bradley" and "The Spy" for a period of two years

18  which agreement provided, in part, that any new and additional features which Siegel

19  and Shuster produced for use in a comic magazine were to be first submitted to DCI

20  which reserved the right to accept or reject same within sixty days; but Plaintiffs

21  otherwise deny the allegations in paragraph 10 of the Counterclaims and respectfully

22  refer the Court to the 1937 Agreement as evidence of the contents thereof.

23  11.    Plaintiffs admit only the first sentence of paragraph 11; and that a third

24  party provided DCI with the "Superman" comic strips created and written by Siegel

25  and drawn by Shuster in a newspaper syndication format (the "1934 Superman

26  Comic Strip") and that DCI expressed interest in publishing this work in a thirteen

27  page comic magazine, but Plaintiffs otherwise deny the allegations in paragraph 11 of

28  the Counterclaims, including but not limited to, in so far as that Siegel and Shuster

alone and of their own accord cut and pasted their 1934 newspaper strips into panels and added a few transitional panels so as to convert from a newspaper to a magazine format (the "Revised 1934 Superman Comic Strip"); but Plaintiffs otherwise deny the allegations in paragraph 11 of the Counterclaims and respectfully refer the Court to Siegel and Shuster's 1934 Superman Comic Strip and Revised 1934 Superman Comic Strip as evidence of the contents thereof.

12.    Plaintiffs admit only that in an agreement with DCI dated March 1, 1938 (the "March 1, 1938 Agreement"), concerning a strip entitled "Superman," Siegel and Shuster sold to DCI the "strip, all good will attached thereto and exclusive right to the use of the characters and story, continuity and title to the strip … and … not to employ said characters or story in any other strips … by their names contained therein…."; but Plaintiffs otherwise deny the allegations in paragraph 12 of the Counterclaims and respectfully refer the Court to the March 1, 1939 Agreement as evidence of the contents thereof.

13.    Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Counterclaims and on that basis deny the same.

14.    Plaintiffs admit only that DCI published the Revised 1934 Superman Comic Strip in "Action Comics No. 1" bearing the cover date, June, 1938, but otherwise deny the allegations in paragraph 14 of the Counterclaims.

15.    Plaintiffs admit only that in addition to the Siegel and Shuster material published by DCI in "Action Comics No. 1," Siegel and Shuster created further original "Superman" material and stories; that on or about September 22, 1938, in conjunction with Siegel and Shuster entering into an agreement with The McClure Newspaper Syndicate concerning new "Superman" material created by Siegel and Shuster specifically for McClure newspaper strips, Siegel and Shuster entered into an agreement with DCI ( the "September 22, 1938 DCI Agreement") which stated that "[DCI] are the exclusive owners of the comic strips known by the titles "Superman,"

"Slam Bradley," "Spy," "Radio Squad," and "Federal Men" and to the rights to publish comics carrying the titles and characters contained therein and continuity thereof" and further stated that Siegel and Shuster had "been doing the artwork and continuity" for comics including  "Superman"  and that "[w]e wish you to continue to do said work and hereby employ and retain you for said purposes"; but Plaintiffs otherwise deny the allegations in paragraph 15 of the Counterclaims and respectfully refer the Court to the September 22, 1938 DCI Agreement as evidence of the contents thereof.

16.     Admitted.

17.     Denied.

18.     Plaintiffs admit only that on or about November 30, 1938, Siegel wrote to DCI (the "Superboy Summary") expressing his conception of a new comic "strip named SUPERBOY, which would relate the adventures of Superman as a youth … [which] would be very much different from the SUPERMAN strip inasmuch as SUPERBOY would be a child and the type of adventures very much different …" and that DCI did not publish a "Superboy" comic at that time; but Plaintiffs otherwise deny the allegations in paragraph 18 of the Counterclaims and respectfully refer the Court to the Superboy Summary as evidence of the contents thereof.

19.     Plaintiffs admit only that "Superman No. 1" was solely created by Siegel and Shuster, and that it had a cover date of Summer 1939, but Plaintiffs otherwise deny the allegations in paragraph 19 of the Counterclaims.

20.     Plaintiffs admit only that on or about December 19, 1939, Siegel and Shuster entered into an agreement with DCI (the "December 19, 1939 Agreement") which modified the September 22, 1938 DCI Agreement by increasing Siegel and Shuster's compensation for the Superman comic strip material independently created by Siegel and Shuster from $10 per page to $20 per page, and granted Siegel and Shuster "5% of all net proceeds which may be derived by" DCI from the commercial exploitation of "Superman" outside of comic books and newspaper syndication such

as radio, motion pictures and toys, and which stated that DCI "are the sole and exclusive owners of the comic strip entitled 'SUPERMAN'"; but Plaintiffs otherwise deny the allegations in paragraph 20 of the Counterclaims and respectfully refer the Court to the December 19, 1939 Agreement as evidence of the contents thereof.

21.     Plaintiffs admit only that on or about December, 1940, Siegel solely authored a complete, thirteen page, original "Superboy" story ("Superboy Story"); that in the event his story was published as a comic book, Siegel suggested in a promotional prologue to the story that there should be a box stating: "So many faithful followers of today's leading adventure comic strip, SUPERMAN, wrote in demanding the adventures of Clark Kent as a youth that the creation of this newest and most promising magazine comic strip character was inevitable! And so here he is at last … the answer to your requests … America's outstanding boy hero: SUPERBOY!!"; and that in the event his story was published as a comic book, Siegel further suggested a promotional epilogue in a box stating: "And so was launched the career of SUPERBOY, youthful Champion of Righteousness!  In later years he was to become the mighty figure known as SUPERMAN!  But the story of SUPERBOY'S amazing and often humorous adventures is a series of astonishing narratives in itself …!  Don't miss a single adventure of the comic page's newest sensation: SUPERBOY!!"; but Plaintiffs otherwise deny the allegations in paragraph 21 of the Counterclaims and respectfully refer the Court to Siegel's Superboy Story as evidence of the contents thereof.

22.     With respect to the allegations in the first sentence of paragraph 22, Plaintiffs admit only that on November 18, 1944 DCI issued for sale "More Fun Comics No. 101" with a cover date of January-February 1945 which contained the first Superboy comic story published by DCI, but Plaintiffs otherwise deny the allegations in this first sentence of paragraph 22 of the Counterclaims.  Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 22 and on that basis deny the same, and Plaintiffs

deny the allegations in the third sentence of paragraph 22 of the Counterclaims.

23.     Plaintiffs admit only that in 1947 Siegel and Shuster brought suit against National Comics Publications, Inc., DCI's purported successor, in the New York Supreme Court in Westchester County (the "Westchester Action"), that the Westchester Action was, in part, the culmination of a dispute between only Siegel (not Siegel and Shuster) and National over DCI's publication of Siegel's "Superboy," and that in addition to a number of other remedies such as an accounting, Siegel and Shuster also sought in the Westchester Action to rescind the March 1, 1938 Agreement and the September 22, 1938 DCI Agreement based on DCI's alleged fraud and repeated breaches of such agreements; but Plaintiffs otherwise deny the allegations in paragraph 23 of the Counterclaims and respectfully refer the Court to the complaint in the Westchester Action as evidence of the contents thereof.

24.     Plaintiffs admit only that after trial of the Westchester Action the court issued an opinion ("Westchester Opinion") in which it found that DCI acted illegally in publishing Superboy on the grounds that the court "[could] not accept [DCI's] view that Superboy was in reality Superman" and that "Superboy was a separate and distinct entity"; and found that the March 31, 1938 Agreement transferred to DCI Siegel and Shuster's rights in Superman and that the September 22, 1938 DCI Agreement should not be rescinded; but Plaintiffs otherwise deny the allegations in paragraph 24 of the Counterclaim and respectfully refer the Court to the Westchester Opinion as evidence of the contents thereof.

25.     Plaintiffs deny that an appeal was ever actually taken by the defendants in the Westchester Action and Plaintiffs have insufficient knowledge or belief to admit the truth of the allegation that the Westchester Action Interlocutory Judgment was temporarily stayed pending appeal, and on that basis deny this allegation as well, but Plaintiffs otherwise admit the allegations in paragraph 25.

26.     Plaintiffs admit only that the parties to the Westchester Action entered into a stipulation dated May 19, 1948 (the "1948 Stipulation") and that the court

issued a consent judgment dated May 21, 1948 (the "1948 Consent Judgment"), but Plaintiffs otherwise deny the allegations in paragraph 26 of the Counterclaims and respectfully refer the Court to the 1948 Stipulation and 1948 Consent Judgment as evidence of the contents thereof.

27.    Plaintiffs admit only that Siegel and Shuster filed an action against National Periodical Publications ("National") in the United States District Court for the Southern District of New York for a declaration as to whether or not they had granted to National's alleged predecessor the renewal copyright to Superman; that the District Court's decision was published in *Siegel v. National Periodical Publications, Inc.,* 364 F. Supp. 1032 (S.D.N.Y. 1973) wherein the court broadly interpreted the grant of "all rights" in Superman in the agreements in question as intended to grant the copyright to Superman for the renewal term; and that the district court's decision was appealed by Siegel and Shuster to the United States Court of Appeals for the Second Circuit and its decision was published in *Siegel v. National Periodical Publications, Inc.,* 508 F.2d 909 (2nd Cir. 1974), but Plaintiffs otherwise deny the allegations in paragraph 27 of the Counterclaims and respectfully refer the Court to said published opinions as evidence of the contents thereof.

28.    Plaintiffs admit only that in *Siegel v. National Periodical Publications, Inc.,* 508 F.2d 909 (2nd Cir. 1974), the Court of Appeals affirmed that National owned the original "Superman" copyright for the renewal term based on the *res judicata* effect of the 1947 Westchester Action, and that Siegel and Shuster did not appeal the Second Circuit's decision, but Plaintiffs otherwise deny the allegations in paragraph 28 of the Counterclaims and respectfully refer this Court to the Second Circuit's published opinion as evidence of the contents thereof.

29.    Plaintiffs admit only that Siegel and Shuster signed an agreement with Warner Communications, Inc., dated December 23, 1975 (the "December 23, 1975 Agreement"), wherein it alleged it was the parent company of National, and that the December 23, 1975 Agreement, amongst many other terms and conditions, contains

the language quoted in paragraph 29 of the Counterclaims, but Plaintiffs otherwise deny the allegations in paragraph 29 of the Counterclaims and respectfully refer this Court to the December 23, 1975 Agreement as evidence of the contents thereof.

30.     Plaintiffs admit only the first sentence of paragraph 30 of the Counterclaims and that under the December 23, 1975 Agreement annual payments were to be made to Joanne Siegel only if Mr. Siegel died before December 21, 1985 (Mr. Siegel died January 28, 1996), but Plaintiffs otherwise deny the allegations in paragraph 30 of the Counterclaims and respectfully refer the Court to the December 23, 1975 Agreement as evidence of the contents thereof.

31.     Plaintiffs admit only that in "Action Comics No. 1" Superman is depicted as, without limitation: having been born on a distant planet, sent to Earth aboard a rocket ship, and as having, among other traits, extraordinary physical abilities, including but not limited to, and by way of example, superhuman strength, the ability to leap 1/8 of a mile, the power of superhuman speed, to run faster than a locomotive train, the power of invulnerability, to withstand injury from bullets, knives, etc, and that, without limitation, Superman is a heroic figure in a distinctive costume who uses his extraordinary physical and mental abilities to fight crime, champion the oppressed and benefit mankind; that Superman is the "secret identity" of a mild-mannered bespectacled newspaper reporter, known as Clark Kent, who works for a newspaper originally called "The Daily Star," but later changed to "The Daily Planet"; but Plaintiffs otherwise deny the allegations in paragraph 31 of the Counterclaims and respectfully refer the Court to "Action Comics No. 1" as evidence of the contents thereof.

32.     Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of the Counterclaims and on that basis Plaintiffs deny the same.

33.     Plaintiffs deny the allegations in the last sentence of paragraph 33 of the Counterclaims, and with respect to the remaining allegations in paragraph 33,

1    Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of

2    such allegations and on that basis deny same.

3          34.    Denied.

4          35.    Plaintiffs admit only that Superman's original crest or shield appearing

5    in "Action Comics No. 1" was comprised of a large inverted triangle in the color

6    yellow bearing, in the middle, the letter "S" in the color red, and that over the years

7    this was slightly modified to a large inverted triangle in the color yellow (with its

8    upper corners cropped and outlined in the color red) bearing in the middle, the letter

9    "S" in the color red, and that this "S" crest or shield was conceived and presented by

10   Siegel and Shuster as a strong symbol of the Superman character they created; but

11   Plaintiffs otherwise deny the allegations in paragraph 35 of the Counterclaims.

12         36.    Plaintiffs admit that DC has registered numerous works featuring

13   Superman with the Register of Copyrights, but otherwise lack knowledge or

14   information sufficient to form a belief as to the truth of the allegations in paragraph

15   36 of the Counterclaims and on that basis deny same.

16         37.    Denied.

17         38.    Denied.

18         39.    Denied.

19         40.    Plaintiffs lack knowledge or information sufficient to form a belief as to

20   the truth of the allegations contained in paragraph 40 of the Counterclaims and on

21   that basis Plaintiffs deny same.

22         41.    Denied.

23         42.    Plaintiffs admit only the allegations in the first sentence of paragraph 42

24   of the Counterclaims, except Plaintiffs lack knowledge or information sufficient to

25   form a belief as to whether the April 8, 1997 date is accurate and on that basis deny

26   same; and Plaintiffs admit only the allegations in the second sentence of paragraph 42

27   of the Counterclaims, but Plaintiffs deny the characterization of the terminations as

28   "purported" and deny the allegations in the third sentence of paragraph 42 of the

9

ANSWER TO SECOND AMENDED COUNTERCLAIMS

Counterclaims.

43.    Plaintiffs admit only that Plaintiffs' seven Notices of Termination relating to "Superman" ("Superman Notices") terminated under 17 U.S.C. § 304(c) the seven grants set forth in paragraph 42 of the Counterclaims regarding Siegel and Shuster's original "Superman" material, "Action Comics No. 1" and underlying thousands of additional works all as listed in the Superman Notices; but Plaintiffs otherwise deny the allegations in paragraph 43 of the Counterclaims and respectfully refer the Court to the Superman Notices as evidence of the contents thereof.

44.    Denied.

45.    Plaintiffs admit only that Plaintiffs' four Notices of Termination of Transfer relating to "The Spectre" ("Spectre Notices") terminated under 17 U.S.C. § 304(c) the four grants set forth in paragraph 45 of the Counterclaims insofar as any such grant conveyed Siegel's copyright interest in "The Spectre"; but Plaintiffs otherwise deny the allegations in paragraph 45 of the Counterclaims and respectfully refer the Court to the Spectre Notices as evidence of the contents thereof.

46.    Plaintiffs admit only that the "Spectre Notices" terminated under 17 U.S.C. § 304(c) alleged grants of Siegel's copyright interest in "The Spectre," and that the Spectre Notices listed hundreds of works involving "The Spectre," including the works set forth in paragraph 46 of the Counterclaims ("Spectre Works"); but Plaintiffs otherwise deny the allegations in paragraph 46 of the Counterclaims and respectfully refer the Court to the Spectre Notices as evidence of the contents thereof.

47.    Plaintiffs admit only that DC's counsel sent a letter to Plaintiffs' counsel dated April 16, 1997; that sometime thereafter DC requested that the parties enter into a confidentiality agreement, and that DC's counsel also sent Plaintiffs' counsel a letter dated November 5, 1997 which, in part, contained the language quoted in paragraph 47, but Plaintiffs otherwise deny the allegations in paragraph 47 of the Counterclaims and respectfully refer the Court to the above letters as evidence of the contents thereof.

48.     Plaintiffs admit only that Plaintiffs and DC entered into a confidentiality agreement dated December 17, 1997 ("Confidentiality Agreement"), that DC, by its counsel, sent a letter dated December 18, 1997 to Plaintiffs' counsel which discussed issues it believed were relevant to a proposed purchase of all rights arising out of Siegel's authorship of "Superman," but did not set forth the terms of such proposed purchase; which letter stated, in part, among many other things that "there is a substantial legal issue as to the effectiveness of your clients' termination of DC's interests in the Superman Comic.  Nonetheless DC's offer assumes … that your client's termination and their rights therein are valid and that such termination was effective"; and that on June 19, 1998, Plaintiffs' counsel sent a letter to DC's counsel which requested detailed information regarding the profit definitions and historical revenues of DC and any Time-Warner company from the exploitation of "Superman"; but Plaintiffs otherwise deny the allegations in paragraph 48 of the Counterclaims and respectfully refer the Court to the above letters as evidence of the contents thereof.

49.     Denied.

50.     Plaintiffs admit only that on April 15, 1999, one day before the effective termination date set forth in Plaintiffs' Superman Notices, DC, by its counsel, for the first time purported to deny the validity of the Superman Notices, but Plaintiffs otherwise deny the allegations in paragraph 50 of the Counterclaims and respectfully refer the Court to the April 15, 1999 letter as evidence of the contents thereof.

51.     Plaintiffs admit only that on or about April 30, 1999, the law firm of Gang, Tyre, Ramer & Brown ("Gang, Tyre") wrote a letter to DC Comics indicating that it was then representing Plaintiffs; that DC Comics provided $228,172.65 to Plaintiffs as a non-refundable advance against monies owed by Defendants to Plaintiffs due to the "Superman Notices," and that the parties thereafter engaged in confidential negotiations pursuant to the Confidentiality Agreement, but Plaintiffs otherwise deny the allegations in paragraph 51 of the Counterclaims.

52.     Plaintiffs admit only that Kevin Marks of Gang, Tyre wrote a letter to DC's counsel dated October 19, 2001 outlining initial terms of a proposed agreement for which many other material terms had not yet been offered or agreed upon; but Plaintiffs otherwise deny the allegations in paragraph 52 of the Counterclaims insofar as the allegations mischaracterize the truth by, without limitation, excluding the complete contents and the context of Kevin Marks' October 19, 2001 letter, and Plaintiffs respectfully refer the Court to this letter as evidence of the contents thereof.

53.     Plaintiffs admit only that DC Comics' counsel wrote a letter dated October 26, 2001 to Plaintiffs' counsel and that on or about February 1, 2002 DC's counsel sent to Plaintiffs' counsel a proposed written agreement containing many new material terms not contained in DC/Warner Bros. Entertainment's original proposal, and terms that differed from and/or substantially diluted the terms negotiated; but Plaintiffs otherwise deny the allegations in paragraph 53 of the Counterclaims and respectfully refer the Court to this letter and this proposed agreement as evidence of the contents thereof.

54.     Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54 of the Counterclaims and on that basis Plaintiffs deny the same.

55.     Plaintiffs admit only that Plaintiff Joanne Siegel wrote a letter dated May 9, 2002 to Richard Parsons, the Co-Chief Operating Officer of AOL Time Warner, Inc. ("Time Warner") objecting to DC/Warner Bros. Entertainment's proposed written agreement as containing "new, outrageous demands that were not in the[ir] proposal," but Plaintiffs otherwise deny the allegations in paragraph 55 of the Counterclaims.

56.     Plaintiffs admit only that Plaintiffs sent a letter dated September 21, 2002 to DC terminating all negotiations with DC and Time Warner, but Plaintiffs otherwise deny the allegations in paragraph 56 of the Counterclaims.

57.     Plaintiffs admit only that they served DC, Warner Bros. Entertainment

Inc. ("Warner Bros.") and Time Warner with a Notice of Termination of Transfer which related specifically to "Superboy" ("Superboy Notice"); that the Superboy Notice terminated, effective November 17, 2004, the two grants of copyright in "Superboy," the 1948 Stipulation and the 1975 Agreement, and identified many works containing the character "Superboy, " but Plaintiffs otherwise deny the allegations in paragraph 57 of the Counterclaims.

58.    Plaintiffs admit only that the Superboy Notice terminated the aforesaid grants regarding Siegel's Superboy Summary and Superboy Story as published in the comic book "More Fun Comics No. 101," and many additional titles, but Plaintiffs otherwise deny the allegations in paragraph 58 of the Counterclaims and respectfully refer the Court to the Superboy Notice as evidence of the contents thereof.

59.    Plaintiffs admit only that the Superboy Notice contains, in part, the language quoted in paragraph 59 of the Counterclaims, but Plaintiffs otherwise deny the allegations in paragraph 59 of the Counterclaims and respectfully refer the Court to the Superboy Notice as evidence of the contents thereof.

60.    Plaintiffs admit only that the Superboy Notice states that Jerome Siegel is the sole author of the first and original "Superboy" works, all as set forth in the Superboy Notice, but Plaintiffs otherwise deny the allegations in paragraph 60 of the Counterclaims and respectfully refer the Court to the Superboy Notice as evidence of the contents thereof.

61.    Plaintiffs admit only that the Superboy Notice lists the WB "Smallville" television series as a work derived from Jerome Siegel's original "Superboy" copyright(s) and thus affected by Plaintiffs full recovery of such copyright(s) on the effective date of termination set forth in the Superboy Notice; that "Smallville," like Superboy, features the life and relationships of Clark Kent as a youth going to school in a small rural town in the American heartland (named "Smallville" in the comic book "Superboy No. 1") and that this derivative television series naturally contains certain minor supporting characters not created by Jerome Siegel.  Plaintiffs lack

knowledge or information sufficient to form a belief as to the truth of the allegation that "Smallville" contains "storylines wholly original to the series" and on that basis deny the same.  Plaintiffs otherwise deny the allegations in paragraph 61 of the Counterclaims and respectfully refer the Court to the Superboy Notice as evidence of the contents thereof.

62.    Plaintiffs admit only that on or about June 17, 2004, Ari Emanuel, a talent agent and founder of the Endeavor Talent Agency, sent a letter to Warner Bros. confirming that since "Smallville" is derived from "Superboy," DC Comics and Warner Bros. would be prohibited after November 17, 2004, the effective date of the Superboy Notice, from producing and exploiting new derivative "Smallville" episodes; but Plaintiffs otherwise deny the allegations in paragraph 62 of the Counterclaims and respectfully refer the Court to Mr. Emanuel's letter as evidence of the contents thereof.

63.    Plaintiffs admit only that by letter dated August 4, 2004, Marc Toberoff, Plaintiffs' attorney of record, reiterated that since "Smallville" is derived from "Superboy," DC Comics and Warner Bros. would be prohibited after November 17, 2004, the effective date of the Superboy Notice, from producing and exploiting new derivative "Smallville" episodes, but Plaintiffs otherwise deny the allegations in paragraph 62 of the Counterclaims and respectfully refer the Court to Mr. Toberoff's letter as evidence of the contents thereof.

64.    Admitted.

65.    Plaintiffs admit only that Plaintiffs filed the within action on October 8, 2004, and that on October 22, 2004 Plaintiffs filed a different action (Civil Case No. 04-08776) regarding ownership of the "Superboy" copyright which was assigned to the Honorable Ronald S.W. Lew, but Plaintiffs otherwise deny the allegations in paragraph 65 of the Counterclaims.

## FIRST COUNTERCLAIM

66.    Plaintiffs re-allege and incorporate by reference paragraphs 1-65

inclusive, as though fully set forth herein.

67.	Plaintiffs admit only that DC purports to assert that the Superman Notices and/or the Superboy Notice are ineffective for the purported reasons set forth in DC's Counterclaims, but Plaintiffs deny such assertions and otherwise deny the allegations in paragraph 67 of the Counterclaims.

68.	Denied.

69.	Denied.

70.	Admitted.

71.	Plaintiffs admit only that DC's counsel sent a letter dated April 15, 1999, the day before the effective date of the Superman Notices, purporting to reject the scope and validity of the Superman Notices, including but not limited to the Superman Notice which terminated the 1975 Agreement, to the extent, if any, that it granted or purported to grant any of Siegel's "Superman" copyright interests, but Plaintiffs otherwise deny the allegations in paragraph 71 of the Counterclaims, and respectfully refer the Court to this letter as evidence of the contents thereof.

72.	Plaintiffs admit only that DC's counsel sent a letter dated August 29, 2004, shortly before the effective date of the Superboy Notice, purporting to reject the scope and validity of the Superboy Notice, which, without limitation, terminated the December 23, 1975 Agreement, to the extent, if any, that it granted or purported to grant any of Jerome Siegel's "Superboy" copyright interests, but Plaintiffs otherwise deny the allegations in paragraph 72 of the Counterclaims, and respectfully refer the Court to this letter as evidence of the contents thereof.

73.	Denied.

74.	Denied.

75.	Denied.

76.	Denied.

77.	Plaintiffs admit only that Plaintiffs' Superboy Notice terminated the grant of Siegel's copyright in his Superboy Summary and Superboy Story as

published in "More Fun Comics No. 101" in 1944, and that the Notice lists many additional published titles which feature or relate to "Superboy," but Plaintiffs otherwise deny the allegations in paragraph 77 of the Counterclaims.

78.     Denied.

79.     Denied.

80.     Plaintiffs admit only that 17 U.S.C. § 304(c) permits the termination of grants of copyrights subsisting in either their first or renewal term as of January 1, 1978, but Plaintiffs otherwise deny the allegations in paragraph 80 of the Counterclaims.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Plaintiffs admit only that Plaintiffs deny the allegations in paragraphs 65-87 to the extent denied hereinabove, but Plaintiffs otherwise deny the allegations contained in paragraph 88 of the Counterclaims.

89.     Plaintiffs admit only that a declaration of the Court in this action is necessary, but otherwise deny the allegations contained in paragraph 89 of the Counterclaims.

## SECOND ALTERNATIVE COUNTERCLAIM

90.     Plaintiffs re-allege and incorporate by reference paragraphs 1-89 inclusive, as though fully set forth herein.

91.     Plaintiffs admit only that one day before the effective date of the Superman Notices, DC's counsel, by letter to Plaintiffs' counsel, dated April 15, 1999, purported to reject the Superman Notices, but Plaintiffs otherwise deny the

allegations in paragraph 91 of the Counterclaims.

92.   Plaintiffs admit only that after April 16, 1999, Warner Bros., Time Warner and DC have, without limitation, failed to account to Plaintiffs for their share of profits from the exploitation of the original "Superman" copyrights, but Plaintiffs otherwise deny the vague and ambiguous allegations in paragraph 92 of the Counterclaims.

93.   Denied.

94.   Denied.

95.   Plaintiffs admit only that Plaintiffs deny the allegations in paragraphs 89-94 to the extent denied hereinabove, but Plaintiffs otherwise deny the allegations contained in paragraph 94 of the Counterclaims.

96.   Plaintiffs admit that a declaration of the Court is necessary, but otherwise deny the allegations contained in paragraph 96 of the Counterclaims.

## THIRD ALTERNATIVE COUNTERCLAIM

97.   Plaintiffs re-allege and incorporate by reference paragraphs 1-96 inclusive, as though fully set forth herein.

98.   Denied.

99.   Denied.

100.  Denied.

101.  Denied

## FOURTH ALTERNATIVE COUNTERCLAIM

102.  Plaintiffs re-allege and incorporate by reference paragraphs 1-101 inclusive, as though fully set forth herein.

103.  Denied.

104.  Admitted.

105.  Plaintiffs admit that DC seeks a judicial declaration, but Plaintiffs otherwise deny the allegations in paragraph 105 of the Counterclaims.

# FIFTH ALTERNATIVE COUNTERCLAIM

106.   Plaintiffs re-allege and incorporate by reference paragraphs 1-65 inclusive, as though fully set forth herein.

107.   Plaintiffs admit that the Superman Notices and Superboy Notice are effective and that DC alleges a purported fifth alternative counterclaim, but Plaintiffs otherwise deny the allegations in paragraph 107 of the Counterclaims.

108.   Plaintiffs admit that DC makes purported contentions in its purported fifth alternative counterclaim but Plaintiffs otherwise deny the allegations in paragraph 108 of the Counterclaims.

109.   Plaintiffs admit that 37 C.F.R. § 201.10, promulgated by the U.S. Copyright Office under the 1976 Copyright Act, requires, in the context of and subject to the other provisions of 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10, that a notice of termination identify "each work to which the notice of termination applies," but Plaintiffs otherwise deny the allegations in or inferences of paragraph 109 of the Counterclaims.

110.   Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110 of the Counterclaims and on that basis Plaintiffs deny the same.

111.   Denied.

112.   Denied.

113.   Denied.

114.   Plaintiffs admit only that the Superman Shield appeared in certain prior works derived from Siegel's Superman works, but Plaintiffs otherwise deny the allegations in paragraph 114 of the Counterclaims.

115.   Denied.

116.   Denied.

117.   Denied.

118.   Denied.

ANSWER TO SECOND AMENDED COUNTERCLAIMS

119.   Plaintiffs admit only that certain works derived from "Action Comics No. 1" contain additional copyrightable elements not present in "Action Comics No. 1," such as new villains, but Plaintiffs otherwise deny the allegations in paragraph 119 of the Counterclaims.

120.   Denied.

121.   Plaintiffs admit only that Siegel's Superboy Summary and Superboy Story contain, in part, the language quoted in paragraph 121 of the Counterclaims, but Plaintiffs otherwise deny the allegations in paragraph 121 of the Counterclaims, and respectfully refer the Court to the Superboy Summary and Superboy Story as evidence of the contents thereof.

122.   Denied.

123.   Denied.

124.   Denied.

125.   Denied.

126.   Plaintiffs admit that "More Fun Comics No. 101" contained both artwork and storyline, but Plaintiffs otherwise deny the allegations in paragraph 126 of the Counterclaims, and respectfully refer the Court to "More Fun Comics No. 101" as evidence of the contents thereof.

127.   Denied.

128.   Denied.

129.   Denied.

130.   Denied.

131.   Denied.

132.   Denied.

133.   Denied.

134.   Plaintiffs admit only that Plaintiffs deny the allegations in paragraphs 106-133 to the extent denied hereinabove, but Plaintiffs otherwise deny the allegations contained in paragraph 134 of the Counterclaims.

135.   Plaintiffs admit that a declaration of the Court in this action is necessary, but otherwise deny the allegations contained in paragraph 135 of the Counterclaims.

## SIXTH ALTERNATIVE COUNTERCLAIM

136.   Plaintiffs re-allege and incorporate by reference paragraphs 1-65 and 106-135 inclusive, as though fully set forth herein.

137.   Denied.

138.   Plaintiffs admit that a declaration of the Court in this action is necessary, but otherwise deny the allegations contained in paragraph 138 of the Counterclaims.

139.   Plaintiffs admit that a declaration of the Court in this action is necessary, but otherwise deny the allegations contained in paragraph 139 of the Counterclaims.

## PRAYER FOR RELIEF

140.   With respect to the relief requested in paragraph 1 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

141.   With respect to the relief requested in paragraph 2 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

142.   With respect to the relief requested in paragraph 3 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

143.   With respect to the relief requested in paragraph 4 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

144.   With respect to the relief requested in paragraph 5 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

145.   With respect to the relief requested in paragraph 6 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to

any of the relief requested in said paragraph.

146.    With respect to the relief requested in paragraph 7 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

147.    The Counterclaims, and each purported counterclaim alleged therein, fail to allege facts sufficient to state a claim upon which relief sought or any relief could be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Estoppel)

148.    The Counterclaims, and each purported counterclaim alleged therein, are barred, in whole or in part, by the doctrine of estoppel.

## THIRD AFFIRMATIVE DEFENSE

### (Laches)

149.    The Counterclaims, and each purported counterclaim alleged therein, are barred, in whole or in part, by the equitable doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

150.    The Counterclaims, and each purported counterclaim alleged therein, are barred, in whole or in part, by the equitable doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

### (Waiver)

151.    The Counterclaims, and each purported counterclaim alleged therein, are barred by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

### (Acquiescence)

152.    The Counterclaims, and each purported counterclaim alleged therein, are

barred by the doctrine of acquiescence.

## SEVENTH AFFIRMATIVE DEFENSE

### (Bad Faith)

153.   Counterclaimant is barred from obtaining any relief from its Counterclaims because Counterclaimant has acted in bad faith for improper purposes with respect to the subject matter of the Counterclaims.

## EIGHTH AFFIRMATIVE DEFENSE

### (Incorporation of Complaint)

154.   Plaintiffs hereby incorporate each of the allegations and claims for relief contained within Plaintiffs' complaint filed herein.

## NINTH AFFIRMATIVE DEFENSE

### (Reservation of Right to Amend)

155.   The Counterclaims, and each purported counterclaim therein, fail to state the claims for relief with sufficient particularity to permit Plaintiffs to discern and raise all appropriate defenses and Plaintiffs therefore reserve their rights to amend or supplement this answer with additional defenses.

## TENTH AFFIRMATIVE DEFENSE

### (Unknown Defenses)

156.   The answering Plaintiffs believe, and based upon such information and belief allege, that the Plaintiffs may have additional affirmative defenses available to them, which are not now fully known and which these answering Plaintiffs are not fully aware. The Plaintiffs accordingly reserve the right to assert any additional affirmative defenses after the same have been ascertained.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

157.   The Counterclaims, and each purported counterclaim therein, are barred, in whole or in part, by the equitable doctrine of unjust enrichment.

## TWELFTH AFFIRMATIVE DEFENSE

### (Illegality)

158.    Counterclaimant is not entitled to any relief with respect to any of the
Counterclaims to the extent of any illegality of any matters set forth in the
Counterclaims.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Violations of Law)

159.    Counterclaimant has violated one or more laws which thereby eliminate
or reduce any and all relief requested in the Counterclaims.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Against Public Policy)

160.    Any contract alleged in the Counterclaims which is contrary to public
policy is unenforceable and/or any relief requested in the Counterclaims which is
contrary to public policy should not be granted.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Comply With FRCP)

161.    Plaintiffs are not required to separately admit or deny each averment
contained in each paragraph of the Counterclaims due to Counterclaimant's failure to
comply with Rules 8(a) and 8(e) of the Federal Rules of Civil Procedure.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Plaintiffs' Compliance with 17 U.S.C. §304(c))

162.    The termination of the grants of copyright in "Superman" and
"Superboy" pursuant to Plaintiffs' Notices of Termination were effective due to
Plaintiffs' compliance with 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Plaintiffs' Termination Notices Not Invalidated By Technical Errors)

163.    Under 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10, Plaintiffs'
Termination Notices are not invalidated or curtailed due to technical errors or

omissions, if any, since Plaintiffs' intent to terminate all prior grants by Siegel of his copyright interests in "Superman," "Superboy" and other works is made clear to Counterclaimant in the Termination Notices timely served on Counterclaimant.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Termination Interests Under 17 U.S.C. § 304(c) Cannot Be Waived)

164.   Plaintiffs could not have waived or effectively waived, directly or indirectly, any of their termination rights or interests because such rights or interests under 17 U.S.C. § 304(c) persist "notwithstanding any agreement to the contrary" and cannot be waived.

## NINETEENTH AFFIRMATIVE DEFENSE

### (1948 Consent Judgment Not A Copyright Grant)

165.   The Consent Judgment dated May 21, 1948 need not have been terminated by Plaintiffs pursuant to 17 U.S.C. § 304(c) to regain Siegel's copyright interests because the Consent Judgment does not constitute a grant or assignment of a copyright interest in "Superman," "Superboy" or any other work authored by Siegel.

## TWENTIETH AFFIRMATIVE DEFENSE

### (1948 Consent Judgment Not an Operative Agreement)

166.   The Consent Judgment dated May 21, 1948 need not have been terminated by Plaintiffs pursuant to 17 U.S.C. § 304(c) to regain Siegel's copyright interests because it is not an operative agreement or grant of any copyright interest(s); the Consent Judgment merely recites which parties own which copyrights pursuant to a prior grant(s), namely the May 19, 1948 Stipulation, the operative grant which was duly terminated by Plaintiffs' termination notices pursuant to 17 U.S.C. § 304(c).

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (1975 Agreement Not a Copyright Grant)

167.   The December 23, 1975 Agreement between Counterclaimant's alleged predecessor Warner Communications, Inc. and Siegel and Shuster did not grant or assign any copyright interest of Jerome Siegel to Warner Communications, Inc.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (No Assignment of Copyright Under 17 U.S.C. §204(a))

168.   Plaintiffs did not assign their copyright interests in "Superman," "Superboy" or any other work, recovered as a result of Plaintiffs' exercise of their termination rights under 17 U.S.C.§ 304(c), because, without limitation, no written assignment of any such copyright interests was executed by Plaintiffs as required by 17 U.S.C. §204(a).

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Failure to List Ad Does Not Affect Superman Termination)

169.   Plaintiffs' "Superman" Termination Notices and "Superboy" Termination Notice are not invalidated or curtailed by failing to list an advertisement(s), allegedly depicting the cover of "Action Comics No. 1," if any, since Plaintiffs properly gave notice of their termination of the underlying *grant(s)* of the original "Superman" and "Superboy" copyrights pursuant to 17 U.S.C. § 304(c) and Plaintiffs' Termination Notices identified "Action Comics No. 1" and "More Fun Comics No. 101," respectively.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Not Works For Hire)

170.   The "Superman" works created by Jerome Siegel and/or by Siegel and Shuster, the "Superboy" works created by Jerome Siegel and any other works by Jerome Siegel and/or Joseph Shuster referred to in the Counterclaims do not constitute works-for-hire.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### ("Additional Action Comics No. 1" Material Is
### De Minimus and Terminable)

171.   The purported "Additional Action Comics No. 1 Material" referred to in the Counterclaims is *de minimus* and, in any event, was subject to Plaintiffs' termination under 17 U.S.C. §304(c) since any such material was not work-for-hire.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

**(Counterclaimant Cannot Exploit New Derivative Works)**

172.   Counterclaimant cannot exploit new derivative works based on copyrights that Plaintiffs have recovered pursuant to 17 U.S.C. §304(c) and/or based on works derived from such recovered copyrights.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Trademarks Cannot Restrain Plaintiffs' Use of Its Copyrights)**

173.   Counterclaimant cannot use its purported trademark(s) to restrain Plaintiffs' use or exploitation of their copyright interests under the United States Copyright Act.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

**(Use of "Superman" Shield Is a Use Of**

**Plaintiffs' "Superman" Crest Copyright)**

174.   Plaintiffs are entitled to an accounting by Counterclaimant for its licensing or other exploitation of the "Superman Shield" because such constitutes an exploitation of the copyright in Siegel and Shuster's "Superman Crest" which, at a minimum, is co-owned by Plaintiffs.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

**("Superman" Has Changed Very Little Since Its Creation)**

175.   "Superman" has changed very little over the years since its original creation and development by Siegel and Shuster.

**THIRTIETH AFFIRMATIVE DEFENSE**

**(Apportionment Is Not Applicable To Licensing)**

176.   The doctrine of apportionment while at times applicable to the exploitation of derivative works should not be applied to Counterclaimant's receipt of passive licensing fees with respect to "Superman" and other works.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

**(Any Apportionment Should Weigh In Plaintiffs' Favor)**

ANSWER TO SECOND AMENDED COUNTERCLAIMS

177.   "Superman" is one of those few copyrightable characters wherein the character, itself, *is* the story being told and, as such, any apportionment of profits from the exploitation of "Superman" should weigh heavily in Plaintiffs' favor. Likewise, "Superboy" is one of those few copyrightable characters wherein the character, itself, is the story being told and, as such, any apportionment of profits from the exploitation of "Superboy" should weigh heavily in Plaintiffs' favor.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (No Statute of Limitations Applicable To 17 U.S.C. §304(c) Termination)

178.   Since Plaintiffs complied with the timing, notice and other prerequisites to the termination of prior copyright grants under 17 U.S.C. §304(c), no statute of limitations runs against Plaintiffs' Superman Terminations or Superboy Termination, nor is the statute of limitations nonetheless triggered by Counterclaimant's frivolous denial of the validity of such  terminations.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Statute of Limitations Has Not Run Due To Tolling Agreement)

179.   To the extent, if any, a statute of limitations or other time based defense is applicable to Plaintiffs' terminations, such statute has not run, and such time based defenses are ineffective, due to the "Tolling Agreement" executed by Counterclaimant and Plaintiffs dated April 20, 2000; and Counterclaimant has breached such Tolling Agreement by nonetheless asserting herein that Plaintiffs' Superman Terminations are barred by the statute of limitations.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

### (Confidentiality Agreement)

180.   Plaintiffs are not required to separately admit or deny each averment contained in the Counterclaims relating to confidential negotiations between the parties due to the confidentiality agreement between Counterclaimant and Plaintiffs dated December 17, 1997, and Counterclaimant's breach of such confidentiality agreement.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

### (Rule 408 of the FRE)

181.   Plaintiffs are not required to separately admit or deny each averment contained in the Counterclaims relating to conduct or statement made in settlement negotiations between the parties since such is inadmissible under Rule 408 of the Federal Rules of Evidence.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Payments Not Received By Joanne Siegel

### Under December 23, 1975 Agreement)

182.   The December 23, 1975 Agreement provided that Joanne Siegel was to receive payments only if Jerry Siegel died before December 21, 1985; and Mr. Siegel did not die until January 28, 1996.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (Beyond Scope of Authority)

183.   Plaintiffs' attorneys lacked authority and/or exceeded the scope of their authority with respect to the purported settlement agreement alleged by Counterclaimant.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Statute of Frauds)

184.   The purported settlement agreement alleged by Counterclaimant is barred by the Statute of Frauds.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

### (No Settlement Agreement Consummated)

185.   Plaintiffs did not execute a written settlement agreement with Counterclaimant, nor otherwise approve all material terms and conditions of a settlement agreement with Counterclaimant.  When Counterclaimant finally presented Plaintiffs with all material terms of Counterclaimant's settlement offer or counter-offer in the first draft of a written agreement, such was rejected by Plaintiffs,

ANSWER TO SECOND AMENDED COUNTERCLAIMS

in large part, because it contained many unacceptable material terms that had never been proposed by Counterclaimant, nor agreed to by Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment on the Counterclaims as follows:

1.    That all the Counterclaims be dismissed;

2.    That Counterclaimant takes nothing by its Counterclaims;

3.    That judgment be entered in favor of Plaintiffs on all counts;

3.    That Plaintiffs be awarded costs of suit;

4.    That Plaintiffs be awarded attorneys' fees incurred in defense of the Counterclaims as permitted by Section 505 of the United States Copyright Act;

5.    That Plaintiffs be awarded such other and further relief, both general and special, as the Court may deem just and proper.

Dated:  March 3, 2011                          RESPECTFULLY SUBMITTED,

                                               _____
                                               Marc Toberoff
                                               TOBEROFF & ASSOCIATES, P.C.

                                               Attorneys for Plaintiff
                                               Laura Siegel Larson

ANSWER TO SECOND AMENDED COUNTERCLAIMS

1

### JURY TRIAL DEMANDED

2

Plaintiffs hereby request a trial by jury on each claim for relief alleged in the

3

Counterclaims.

4

Dated:  March 3, 2011                                RESPECTFULLY SUBMITTED,

5

_____

6

Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.

7

8

Attorneys for Plaintiff
Laura Siegel Larson

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28