Marc Toberoff (State Bar No. 188547)
   mtoberoff@ipwla.com
Nicholas C. Williamson (State Bar No. 231124)
   nwilliamson@ipwla.com
Keith G. Adams (State Bar No. 240497)
   kgadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California, 90067
Telephone:   (310) 246-3333
Fax:            (310) 246-3101

Attorneys for Plaintiff,
Laura Siegel Larson

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> WARNER BROS. ENTERTAINMENT INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, <br><br> Defendants. | Case No: CV 04-8400 ODW (RZx) <br><br> Hon. Otis D. Wright II, U.S.D.J. <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF A PARTIAL JUDGMENT UNDER FED. R. CIV. P. 54(B) AND FOR STAY OF REMAINING CLAIMS PENDING APPEAL** <br><br> Complaint filed:  October 8, 2004 <br> Trial Date:  None Set <br><br> Date:    March 21, 2011 <br> Time:    1:30 p.m. <br> Place:   Courtroom 11 |
| DC COMICS, <br><br> Counterclaimant, <br><br> vs. <br><br> JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Counterclaim Defendants. | |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................2

   I.    JUDGMENT SHOULD BE ENTERED UNDER RULE 54(b) ........................................................................................2

        A.    Whether a "Claim" Has Been Resolved Under Rule 54(b) Depends on Whether the Claim is Severable................2

        B.    As Amended, the First Claim Has Been Fully Decided........4

            1.    The First Claim is Severable .......................................4

            2.    The Purported "Undecided Issues" Are Red Herrings ......................................................................5

        C.    Judicial Efficiency Strongly Supports the Entry of Judgment ........................................................................9

            1.    Rule 54(b) Judgments Are Routinely Granted and Upheld........................................................................9

            2.    The First Claim's Legal/Factual Issues Are Distinct........................................................................9

            3.    Defendants' "Accounting" Detour is No Solution........................................................................10

            4.    A 54(b) Judgment Will Streamline the *DC Comics* Case ................................................................11

            5.    A Rule 54(b) Judgment Will Promote Settlement ...............................................................11

   II.    THIS ACTION SHOULD BE STAYED PENDING AN APPEAL................................................................................12

CONCLUSION..................................................................................12

1

# <u>TABLE OF AUTHORITIES</u>

2

## <u>Federal Cases</u>                                                                **Pages**

3

4
*Adidas Am., Inc. v. Payless Shoesource, Inc.*,
166 Fed. Appx. 268 (9th Cir. 2006)....................................................................4

5
*Brown v. Dunbar*,
376 Fed. Appx. 786 (9th Cir. 2010)..................................................................11

6

7
*Budinich v. Becton Dickinson & Co.*,
486 U.S. 196 (1998)...........................................................................................8

8
*Cadillac Fairview/Calif., Inc. v. U.S.*,
41 F.3d 562 (9th Cir. 1994) ...............................................................................9

9

10
*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
819 F.2d 15195 (9th Cir. 1987) .........................................................................3

11
*Curtiss-Wright Corp. v. General Electric Co.*,
446 U.S. 1 (1980)........................................................................................... 2-3

12

13
*Dependable Hwy Express, Inc. v. Navig. Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007) .........................................................................12

14
*Depuydt v. FMC Corp.*,
1994 U.S. App. LEXIS 25256 (9th Cir. Sept. 7, 1994).....................................3

15

16
*Durkin v. Shea & Gould*,
92 F.3d 1510 (9th Cir. 1996) ...........................................................................11

17
*Gordon v. Vincent Youmans, Inc.*,
358 F.2d 261 (2d Cir. 1965) ..............................................................................5

18

19
*Gregorian v. Izvestia*,
871 F.2d 1515 (9th Cir. 1989) ...........................................................................3

20
*Hogan v. Consol. Rail Corp.*,
961 F.2d 1021 (2d Cir. 1992) .........................................................................3, 9

21

22
*Int'l Asso. of Bridge, etc., Local Union 75 v. Madison Industries, Inc.*,
733 F.2d 656 (9th Cir. 1984) .............................................................................8

23
*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) .............................................................................3

24

25
*RD Legal Funding Funding, LLC v. Erwin & Balingit, LLP*,
2010 U.S. Dist. LEXIS 34807 (S.D. Cal. Apr. 8, 2010).....................................8

26
*Rodrigue v. Rodrigue*,
218 F.3d 432 (5th Cir. 2000) .............................................................................5

27
*Siegel v. Warner Bros. Ent. Inc.*,
542 F. Supp. 2d 1098 (C.D. Cal. 2008) .................................................. *passim*

28

*Siegel v. Warner Bros. Ent. Inc.,*
658 F. Supp. 2d 1036 (C.D. Cal. 2009) ..................................................... *passim*

*Siegel v. Warner Bros. Ent. Inc.,*
690 F. Supp. 2d 1048 (C.D. Cal. 2009) ..........................................................5, 15

*W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Research Assocs., Inc.,*
975 F.2d 858 (Fed. Cir. 1992) .............................................................................3

*Wolf v. Banco Nacional de Mexico, S.A.,*
721 F.2d 660 (9th Cir. 2005) ...............................................................................8

**<u>Federal Statutes and Rules</u>**

Federal Rule of Civil Procedure 54(b)...................................................... *passim*

17 U.S.C. § 304 ................................................................................................1, 4

# **INTRODUCTION**

Plaintiffs' First Claim has been fully adjudicated, and judgment should be entered pursuant to F.R.C.P. 54(b).  The First Claim seeks **_only_** a declaration that Plaintiffs' notices of termination ("Termination") were valid, and that Plaintiffs co-own those Superman works recaptured under the Termination as of April 16, 1999.  Docket No. 644 ("TAC"), ¶ 74.  This claim required that the Court determine: (1) that the Termination complied with section 304(c) of the Copyright Act, and (2) the Superman works recaptured by the Termination.  The Court indisputably did both.  It determined that the Termination was valid as to the following Superman works:  the landmark first Superman story published in *Action Comics*, No. 1, as well as *Action Comics,* No. 4, *Superman,* No. 1 (pages 3-6), and the first two weeks of the Superman newspaper strips.  *Siegel v. Warner Bros. Ent. Inc.,* 542 F. Supp. 2d 1098, 1130, 1145 (C.D. Cal. 2008); 658 F. Supp. 2d 1036, 1063-83 (C.D. Cal. 2009).

Defendants' opposition is erroneously premised on the fiction that to decide the First Claim, the Court must adjudicate the copyrightable literary *elements* in these various works and in other supposed works that were *not* "terminated," such as mere "promotional announcements."  Docket No. 655 ("Opp.") at 1, 5-8.  However, a simple reading of the First Claim demonstrates that it does not ask for or require this.  Defendants also do not dispute or address Plaintiffs' main arguments:  (1) that any errors in the complex "work-for-hire" determinations underlying the First Claim decisions (of which both parties sought reconsideration), and errors in deciding Defendants' alleged affirmative defenses, for which they also seek reconsideration, would require a re-trial of all the "accounting" claims; (2) that DC's First through Fourth counterclaims have been fully adjudicated; and (3) that the Ninth Circuit has reversed the entry of a Rule 54(b) judgment only in the rarest of instances.

Defendants' thin opposition to a Rule 54(b) judgment is nothing more than an attempt to delay the inevitable Ninth Circuit decision on *the* key issue – the validity of the Termination.  Defendants' arguments as to "inexcusable delay" and promises

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL FINAL JUDGMENT

of completing a trial by "this Summer" ring hollow in light of their prior statements to the Court as to the grave complexities of the accounting issues, and their dilatory conduct throughout this case.  Plaintiffs have no reason to delay their receipt of money damages, but Defendants might.

During the fifteen months that this case has been before this Court, Defendants have only filed contradictory "case management" statements and opposed Plaintiffs' motions.  First, in December 2009, Defendants, like Plaintiffs, represented to the Court that seven fully-briefed accounting issues (the "Additional Issues") must be decided to provide a legal framework for the accounting trial.  Docket No. 602 at 16. Then, in a complete about-face, Defendants insisted in August 2010 and again in November 2010 (Docket Nos. 617, 623, 631) that the Additional Issues should not be decided now, and that, instead, Defendants should render *their* version of an accounting, without the Court's guidance.  Such "studio accounting" will delay and obfuscate the legal issues, as Defendants' "version" will only serve their positions, which gave rise to the Additional Issues in the first place.  Three times the Court did not accept this one-sided proposal, advocated yet again.  Tellingly, since 1999, when the Termination became effective, or 2008, when it was declared valid, Defendants have not lifted a finger on such accounting.  Defendants' illusory "accounting" and other arguments provide no just reason to deny Plaintiffs' Rule 54(b) motion.

## ARGUMENT

## I.    JUDGMENT SHOULD BE ENTERED UNDER RULE 54(b)

### A.    Whether a "Claim" Has Been Resolved Under Rule 54(b) Depends on Whether the Claim is Severable

As set forth in Plaintiffs' motion, to be eligible for judgment under Rule 54(b), there must be "an ultimate disposition of an individual claim entered in the course of a multiple claims action," and "no just reason" to delay appellate review until the conclusion of the entire case.  *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7-8 (1980).  This is by no means a "narrow" exception.  Opp. at 3.  Since the

1  precise parameters of a "claim" "elude[] the grasp like quicksilver … the solution for

2  Rule 54(b) purposes lies in a more pragmatic approach focusing on severability and

3  efficient judicial administration."  *Continental Airlines, Inc. v. Goodyear Tire &*

4  *Rubber Co.* ("*Continental*"), 819 F.2d 1519, 1525 (9th Cir. 1987).  "[C]laims

5  certified for appeal do not need to be separate and independent from the remaining

6  claims, so long as resolving the claims would 'streamline the ensuing litigation.'"

7  *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009) (citations omitted).[1]

8        As the Ninth Circuit explained, a 54(b) judgment can be entered on claims

9  even if the court is not "certain that any one of them was finally adjudicated below."

10  *Continental*, 819 F.2d at 1524.  Thus, "if a [claim] presents substantially different

11  legal and factual questions from other [claims], it will qualify as a claim under Rule

12  54(b)."  *Depuydt v. FMC Corp.,* 1994 U.S. App. LEXIS 25256, at *3 (9th Cir. Sept.

13  7, 1994) (citing *Gregorian v. Izvestia*, 871 F.2d 1515, 1519 (9th Cir. 1989)).

14        *Continental* provides an excellent example of what can constitute an "ultimate

15  disposition" of a "claim" for Rule 54(b) purposes.  There, an aircraft builder

16  instituted a declaratory relief action against an airline and a parts manufacturer after a

17  crash.  *Id.* at 1522.  The Court granted summary judgment to the builder based on a

18  contract clause barring claims "as to the loss of the aircraft" itself, but "left open

19  potentially full recovery in both of [the] ultimate areas of loss (damage to the airplane

20  and liability to passengers)."  *Id.* at 1525.  The Ninth Circuit nonetheless held this to

21  constitute complete resolution of a claim under Rule 54(b), because the decided

22  issues "were sufficiently severable factually and legally from the remaining matters,"

23  and "the district court effectively narrowed the issues, shortened any subsequent trial

24  by months, and efficiently separated the legal from the factual questions."  *Id.*

25  ///

26

27  _____

    [1] The argument that "[t]he threshold requirement …is that *final judgment* has been entered

28  on an entire claim" (Opp. at 3) is nonsensical.  It could hardly be a requirement for entry of
    judgment under Rule 54(b) that a "final judgment" already be entered.  Defendants tellingly
    ignore the *Ninth Circuit's* flexible approach to a "claim," and rely on non-9th-Circuit cases
    such as *W.L. Gore* (Fed. Circuit) (Opp. at 3) and *Hogan* (Second Circuit) (Opp. at 8).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL FINAL JUDGMENT

**B.  As Amended, the First Claim Has Been Fully Decided**

**1.  The First Claim is Severable**

As amended, the First Claim requests (TAC, ¶ 74) *only* a declaration:

> a.  That pursuant to the Copyright Act, 17 U.S.C. § 304(c), Plaintiffs validly terminated on April 16, 1999 all prior grants, assignments or transfers to any of the Defendants and any of their predecessors-in-interest, of the renewal copyrights in and to each and/or all of the Works; and
>
> b.  That, as of the Termination Date, Plaintiffs owned and continue to own fifty percent (50%) of the aforesaid Recaptured Copyrights.

Defendants never address Plaintiffs' main argument that the legal and factual issues decided in the First Claim do not overlap with the legal and factual issues of the remaining accounting claims.  *See Adidas Am., Inc. v. Payless Shoesource, Inc.*, 166 Fed. Appx. 268 (9th Cir. 2006) (54(b) judgment granted as severable claims "involve [a] factually and legally distinct issue").  The legal and factual issues pertinent to the First Claim and the First through Fourth counterclaims entail Siegel and Shuster's creation of original Superman works in the 1930's that were not "works for hire"; their pre-1978 copyright grants; the Termination's compliance with the Copyright Act; and Defendants' alleged defenses to the Termination.  In stark contrast, the legal and factual issues relevant to the Second through Fourth [Accounting] Claims are DC's profits from post-April 16, 1999 Superman derivative works; whether such profits should be "apportioned," and if so, an analysis of the literary elements in the recaptured works relevant to such apportionment; what changes to a pre-1999 derivative work qualify it as a post-1999 derivative work; and whether Defendants' trademarks dilute Plaintiffs' copyright profits.  Defendants can point to **no** overlapping legal or factual issue between the First Claim and the other claims.

Defendants' opposition is based solely on their erroneous premise that to determine the validity of the Termination under the First Claim as to Superman works, a Court must adjudicate the copyrightable "elements" in each work.  Opp. at 5.  That makes no sense, as no copyright ownership decision would be complete until a Court articulated every element of the subject work – every character, plotline,

setting, and theme in a book, or every harmony, lyric, and melody in a song.

This is not the law.  A 54(b) judgment can readily be entered on a claim for copyright co-ownership of a work, even if the copyrightable elements of the work were not adjudicated.  *See Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 262 (2d Cir. 1965) (accepted Rule 54(b) judgment on copyright co-ownership claim, while related "monetary" claims remained undecided); *Rodrigue v. Rodrigue*, 218 F.3d 432, 434 (5th Cir. 2000) (same).  Defendants strain to distinguish *Gordon* and *Rodrigue* on the basis that "the district court completely and finally decided the copyright ownership claim" in those cases.  Opp. at 8.  Yet, in both *Gordon* and *Rodrigue,* the trial court did <u>not</u> adjudicate the "elements" of the works; instead, the courts determined whether the parties co-owned the copyrights, as here.  *Gordon*, 358 F.2d (determining "composition" ownership in an accounting action without discussion of elements); *Rodrigue*, 218 F.3d at 433-34 (resolving copyright ownership of paintings, with the only description of their subject matter being that some depicted a "blue dog").

## 2. The Purported "Undecided Issues" Are Red Herrings

<u>Dicta/Ads:</u>  Contrary to Defendants' claims, neither the "Ads" issue of "[t]he impact, if any, [of] Defendants' pre-Action Comics No. 1 'promotional announcements'" (Opp. at 4), nor the issue of whether the "Court's rulings listing the copyrightable elements in *Action Comics No. 1*" were "dicta" (Opp. at 5) are part of the First Claim.  Instead, both issues relate to the "elements" of the recaptured works.  Docket No. 648 at 11-13.  Moreover, as the pending motions on these issues are "for reconsideration" of the Court's decisions, it cannot be argued that these issues were not decided.  Docket No. 301.  Previously, Defendants strenuously argued that ***both*** issues were already decided.  *See* Docket No. 348 at 4 ("Ads"), 44 ("Dicta").

Defendants' Opposition now relies on the Court's October 13, 2010 Order that denied Plaintiffs' prior Rule 54(b) motion *without prejudice*.  Opp. at 4.  That Order, based on the Second Amended Complaint ("SAC"), held that the Ads issue should be

1   decided before the Court "**declare[s] the parties' respective rights … *as Plaintiffs'***

2   ***claim for declaratory relief seeks***" (Docket No. 630 at 2) (emphasis added).[2]

3   Defendants had argued that the following subsections in the SAC's First Claim

4   required further adjudication of the Ads, but these were deleted from the Third

5   Amended Complaint:

6          c.    That Defendants control only fifty percent (50%) of the Recaptured
           Copyrights, and thus, as of the Termination Date, had/have no authority to
7          confer *exclusive* licenses or grants with respect to any element of the
           "Superman" mythology protected by the Recaptured Copyrights; and
8          d.    That Plaintiffs are entitled to fifty percent (50%) of any and all Profits
           from the exploitation of, or attributable to, in whole or in part, any aspect of
9          the Recaptured Copyrights.

10  Docket No. 378, ¶ 83.  Arguably, prior subsections (c) and (d) might have entailed

11  the Ads issue, in determining if Defendants could confer "exclusive licenses or

12  grants" regarding the Ads or in determining "aspects of the Recaptured Copyrights."

13  However, this is no longer an issue as sub-sections (c) and (d) do not appear in the

14  First Claim.  The remaining First Claim sub-sections (a) and (b) simply ask for a

15  declaration as to the Superman "works" recaptured, and neither ask nor require the

16  court to further adjudicate the contents of the Ads or to resolve the Dicta issue.[3]

17        Defendants' erroneous argument that "Plaintiffs concede the Ads issue bears

18  directly 'on the scope of Plaintiffs' recaptured copyrights'" (Opp. at 4) is thus moot.

19  Moreover, the full quote refers to "[t]he impact, *if any*" of the Ads (Docket No. 602

20  at 16:9), which does not establish such impact or that the Ads issue relates to the First

21  Claim.  The argument is also improper, as the "Joint Status Report" quoted from

22  expressly states that "neither party will be prejudiced by the descriptions of the

23  claims, defenses, and arguments presented herein."  *Id.* at 1, n.1.

24        Defendants' argument that this motion seeks "reconsideration" is also

25  illogical.[4]  The Court's October 13 order denied Plaintiffs' Rule 54(b) motion as to

26  _____

27  [2] Notably, this Court did **not** hold that the Dicta issue needed to be decided before the First Claim would be complete.  Docket No. 630 at 2.

    [3] In desperation, DC relies on inoperative language in the Termination itself, but this is not pertinent to a Rule 54(b) motion which focuses on the actual relief sought in the First Claim.

28  [4] This argument is hypocritical given Defendants' arguments in this case and the *Superboy*

6

the *Second* Amended Complaint *without prejudice*.  Plaintiffs were granted leave to file a *Third* Amended Complaint, which modified the First Claim.  This motion is based on the revised language of the Third Amended Complaint, which simply focuses on the validity of the Termination and the works thereby recaptured.

<u>Mixed-Trademark Use and S-Shield Logo Issue</u>:  First, this issue is expressly contained in Plaintiffs' Third Claim, not First Claim.  *See* TAC, ¶¶ 60-64.  It addresses the point that in an accounting, Defendants cannot divert profits attributable to the S-shield or Superman logo, as these are covered by copyright.  Defendants bizarrely argue that this issue needs to be decided because the parties must "quantify the value" of Plaintiffs' rights (Opp. at 6), which is not part of **any** claim, and certainly not the First Claim.  Defendants again improperly quote from the Joint Status Report to misleadingly argue that "plaintiffs conceded" that the "issue … needs to be decided."  *Id*.  In reality, Plaintiffs stated that this accounting issue only needed to be decided prior to the *accounting* trial.  Docket No. 602 at 16.

<u>Superboy</u>:  Defendants also misleadingly argue that there are "more than 1,325 Superboy works listed in [the] Superman Termination on which the Court has never ruled."  Opp. at 6.  This is not true.  The Court held that the Termination could only recapture works that were copyrighted within a "five year window" beginning on "April 16, 1938" (*Siegel*, 542 F. Supp. 2d at 1118) – *i.e.,* until April 16, **1943**.  The Court then determined the "work for hire" status of all works within that window.  *Siegel,* 542 F. Supp. 2d 1098, 690 F. Supp. 2d 1048.  Superboy was first published in late 1944 and each of the "1,325 Superboy works" Defendants cite were copyrighted on or *after* November 18, **1944** and thus, per the Court's decision, were not recaptured by the Superman Termination.  *See* Docket No. 655, Exs. A-B.  The Court clearly decided all works recaptured by the Termination, completing the First Claim.

Defendants also misleadingly argue that "plaintiffs acknowledge … one of the

---

case that the Court has the inherent power to reconsider orders despite L.R. 7-18.  *See* Docket No. at 307 at 13-14 (DC argues the Court has inherent "authority to reconsider its interlocutory Order …. in addition to the particular circumstances addressed by Local Rule 7.18"); Case No. 04-CV-8776, Docket No. 103 at 11-12 (same), Dock. No. 111 at 3 (same).

first orders of business in this case is for the Court to determine" two Superboy issues.  Opp. at 6 (citing Docket No. 602 at 23:3-6).  As Defendants well know, that relates to the separate Superboy action (04-CV-8776 ODW (RZx)), not this one.  The Court rejected Defendants' motion to consolidate the cases in 2005.  Docket No. 30.

"Other Issues":  Defendants claim that their "statute-of-limitations and settlement defenses" are "grounds to challenge Plaintiffs' First Claim."  Opp. at 6-7. Both issues were conclusively decided against Defendants.  *Siegel*, 542 F. Supp. 2d at 1134-36, 1137-39.  Defendants have alluded to motions for *reconsideration* on these topics for months (*see, e.g.,* Docket No. 623 at 5:18-26, No. 631 at 10:3-6), but have taken no action.  As these issues were completely decided, they cannot bar a 54(b) judgment.  In fact, Defendants' open desire to "appeal" these decisions favors entry of judgment and appeal to the Ninth Circuit now – not burdening this Court with endless re-litigation of decided issues.[5]

Remedies:  Defendants attempt to muddy the waters by arguing that Plaintiffs' general requests for "interest" and "attorneys fees" at the end of the complaint mean that judgment cannot be entered.  Opp. at 7.  However, under clear Supreme Court and Ninth Circuit precedent, a dispute over attorney's fees does <u>not</u> affect whether a judgment is final.  *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199–203 (1998). ("[A]n unresolved issue of attorney's fees … does not prevent judgment on the merits from being final"); *Int'l Asso. of Bridge, etc., Local Union 75 v. Madison Industries, Inc.*, 733 F.2d 656, 659 (9th Cir. 1984) ("[A] judgment … is final and appealable even though a request for attorney's fees is unresolved.").[6]

---

[5] To cloud this motion, Defendants also vaguely claim an "issue" as to "the originality of certain elements in *Action Comics No. 1*" (Opp. at 5), but offer no further explanation.

[6] The unpublished district court case relied on by Defendants, *RD Legal Funding Funding, LLC v. Erwin & Balingit, LLP*, 2010 U.S. Dist. LEXIS 34807, at *3-4 (S.D. Cal. Apr. 8, 2010), ignored this precedent, and rested on the distinguishable ground that "any appeals in this action could easily present similar factual and legal issues, and likely would result in a duplication of effort."  *Wolf v. Banco Nacional de Mexico, S.A.,* 721 F.2d 660, 662 (9th Cir. 2005), relied on by Defendants, is also inapposite.  Contrary to Defendants' assertion, *Wolf* did <u>*not*</u> concern a "Rule 54(b) judgment," but rather a vague and improper judgment that did not specify whether it disposed of the entire case or merely a single claim.

8

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL FINAL JUDGMENT

**C.    Judicial Efficiency Strongly Supports the Entry of Judgment**

**1.    Rule 54(b) Judgments Are Routinely Granted and Upheld**

The First Claim and DC's related counterclaims are clearly severable, have been fully decided, and are a proper basis for a Rule 54(b) judgment.  Despite Defendants' repeated "warnings" that the Ninth Circuit might not accept a Rule 54(b) judgment, they do not dispute that the Ninth Circuit only reverses the entry of a Rule 54(b) judgment in the rarest of instances (*i.e.,* three times in one hundred since 2000, and only one of which was on substantive grounds).  Defendants point to 40 cases where "an *entire claim* was resolved" (Opp. at 8) – precisely what has occurred here.

In practice, Rule 54(b) motions are commonly granted.  *See* Docket No. 648, Appendix I (collecting cases).  The sheer number of cases brought to the Ninth Circuit under Rule 54(b) rebuts Defendants' "narrow exception" argument that "Rule 54(b) must be reserved for the unusual case" (Opp. at 7), which cites a ***dissenting*** opinion in *Cadillac Fairview/Calif., Inc. v. U.S.*, 41 F.3d 562, 567 (9th Cir. 1994) (Kleinfeld, J., dissenting), where the majority *approved* a 54(b) judgment.[7]

**2.    The First Claim's Legal/Factual Issues Are Distinct**

Defendants cite **no** legal or factual issues that overlap between the First Claim and the accounting claims.  Instead, Defendants vaguely argue, as before, that the First Claim is "intertwined" with the accounting claims, which is not the Rule 54(b) test.  Moreover, their stated basis for this argument is gone.  Defendants previously based their "intertwining" argument on superfluous language in the SAC's First Claim that Plaintiffs were "entitled to fifty percent (50%) of any and all Profits" from Superman derivative works.  *See* Docket No. 378 at ¶ 83; No. 624 at 9-11.  With leave of this Court, that language was *removed* from the Third Amended Complaint. ///

---

[7] DC also argues that Rule 54(b) requires "that the efficiencies to be gained *far outweigh* the prejudice inherent in permitting a piecemeal appeal" (Opp. at 8), citing *Hogan v. Consol. Rail Corp.,* 961 F.2d 1021, 1025 (2d Cir. 1992).  However, that (i) is unsupported by *Hogan*, which restates the familiar standard that a Rule 54(b) motion "should be granted where there are 'interests of sound judicial administration,' and efficiency to be served," and (ii) is not the law in the Ninth Circuit, as set forth *supra*.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL FINAL JUDGMENT

### 3.    Defendants' "Accounting" Detour is No Solution

Defendants seek to delay the appeal of the First Claim through a unilateral accounting, outside a legal framework first established by the Court.  Opp. at 10-11.  This is not a basis to deny Plaintiffs' Rule 54(b) motion.  ***First,*** this does nothing to rebut the efficiency advantages of a Rule 54(b) judgment, which Defendants cannot dispute.  The remaining "accounting" claims are directly affected by (but legally and factually separate from) the complex "work for hire" and other decisions underlying the First Claim.  If there are ***any*** errors, there will have to be, without a 54(b) judgment and Ninth Circuit guidance, a re-trial of the complex accounting claims.

***Second,*** Defendants' unilateral accounting is unmoored from this action and contradicts their prior statements to the Court.[8]  Plaintiffs' Second through Fourth Claims are for declaratory relief to set the legal framework for an accounting and trial, not for a "Hollywood accounting" from Defendants.  Defendants nonetheless proposed their "accounting" agenda three times to the Court, which wisely declined to accept it.  *See* Docket Nos. 617, 623 at 3-6, 631 at 10-12.

***Third,*** there is no way the "accounting" trial will be completed by "summer," as Defendants misleadingly represent.  Opp. at 11.  Defendants vaguely propose:  (i) that they "expect" to render a unilateral accounting "by the end of May [2011]" (*id.*), which will then need to be reviewed by Plaintiffs' experts and will inevitably lead to adjudication of the same and further disputed accounting issues;[9] (ii) that both expert discovery and fact discovery (which closed in April 2007) be re-opened and re-taken; (iii) that the Court then decide the briefed seven "Additional Issues" and other issues intended to provide a legal framework for such accounting to begin with; and (iv) that

---

[8] Defendants cannot escape the fact that they previously agreed in stipulations and represented to this Court that the most logical course was for the Additional Issues to be decided *before* an accounting. *See* Docket Nos. 290, 352, 356, 480 at 4 ("Issues go[] to fundamental and foundational questions"), 556 at 1 (same), 587 at 7-9 ( "[I]ssues that will materially impact the analysis of how much 'is owed from DC Comics to the plaintiffs;'" "critical issues that will impact the parties' preparation for and presentation at trial").

[9] Defendants gratuitously state that the parties' mediations regarding the accounting issues have been "invaluable" (Opp at 11), but, to date, not a single issue has been resolved.

an accounting trial be held which, according to Defendants, requires a "work by work" apportionment  analysis of thousands of individual Superman comics and pieces of merchandising.  *See* Docket No. 631 at 7-12.  Defendants' "cart before the horse" proposal is destined, if not intended, to cloud and delay this case.

### 4.    A 54(b) Judgment Will Streamline the *DC Comics* Case

Defendants make much ado of the fact that Plaintiffs did not seek a Rule 54(b) judgment until August 2010.  As Plaintiffs previously explained (Docket No. 641 at 4), the efficiency of a Rule 54(b) judgment became clear once Defendants made clear their intent to re-litigate the entire First Claim, in both the recent *DC Comics* action (May 2010) and this action (August 2010).

It is indisputable that if a Rule 54(b) judgment is entered, then the collateral estoppel or issue preclusion doctrine will bind DC in the *DC Comics* action on all common issues.  *See Durkin v. Shea & Gould*, 92 F.3d 1510, 1515 (9th Cir. 1996) ("[I]ssue preclusion bars relitigation of issues in subsequent suits based on a different cause of action involving a party to the prior litigation."); *Brown v. Dunbar,* 376 Fed. Appx. 786, 787 (9th Cir. 2010) (approving "orders [that] found preclusive the partial final judgment under [Rule] 54(b)").[10]  Even though the Siegel and Shuster Terminations are distinct, they involve the same Superman works, co-authored by Siegel and Shuster, and the same copyright grants by Siegel and Shuster, and thus many of the identical issues.  This is no better demonstrated than by the *DC Comics* complaint, which repeats nearly all of DC's purported defenses (*e.g*., "work for hire," settlement) adjudicated against them in this case.[11]  Entry of judgment on the First Claim would promote finality and preclude re-litigation of many identical issues.

### 5.    A Rule 54(b) Judgment Will Promote Settlement

Defendants argue that an "accounting" will promote settlement by determining

---

[10] Faced with this clear preclusive effect, Defendants resort to citing out-of-context statements from an old discovery motion. Opp. at 12-13.

[11] *Compare* Docket No. 637-2, Ex. I ("DC FAC"), ¶¶ 140-41, 145-46 *with Siegel I*, 542 F. Supp. 2d at 1126-30, *Siegel II*, 658 F. Supp. 2d at 1063-68, 1083 (work for hire issues); DC FAC ¶¶ 142-44 *with Siegel I*, 542 F. Supp. 2d at 1118-26 (termination of the "Ads"); FAC, ¶¶ 140-41 *with Siegel II*, 658 F. Supp. 2d at 1061 (unpublished Superman works).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL FINAL JUDGMENT

1  "the value of plaintiffs' rights" – *i.e.*, the value of the "accounting" claims.  Opp. at

2  11.  However, Defendants fail to address Plaintiffs' argument that the ***validity*** of the

3  Termination, and thus the Shuster estate's mirror-image termination, is a much more

4  central economic concern to the parties than the "accounting."[12]  This is because, by

5  October 2013, Defendants will be required, in order to continue to exploit the

6  Superman franchise, to obtain a new license from the Siegels and the Shuster estate,

7  consistent with Superman's reasonable market value.

8  **II.    THIS ACTION SHOULD BE STAYED PENDING AN APPEAL**

9         Defendants lastly contend that, even if a Rule 54(b) judgment is entered, "there

10  would be no justification for staying the accounting."  Opp. at 13.  To the contrary, it

11  would not make sense to have an "accounting" trial during an appeal of the

12  underlying decisions, because any errors would necessitate a re-trial – a key reason

13  for entry of the 54(b) judgment.  Defendants' claim that a stay will prejudice them,

14  arguing that they will need a license from the Siegels/Shuster estate to exploit new

15  Superman movies after October 2013 (Opp. at 13), makes no sense.  Such a post-

16  2013 license is based on the Termination's *validity*, not the accounting claims, which

17  have no effect on their need for this license.  Defendants' cites are also inapposite.

18  *See Dependable Hwy Express, Inc. v. Navig. Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir.

19  2007) (stay "[f]orc[ed] the company to enter into arbitration in a foreign country").

20                                **CONCLUSION**

21         The Court should grant Plaintiffs' motion and enter a Rule 54(b) judgment.

22   Dated:  March 7, 2011                    RESPECTFULLY SUBMITTED,

23                                            _____

24                                            Marc Toberoff
                                             TOBEROFF & ASSOCIATES, P.C.

25                                            Attorneys for Plaintiff

26                                            Laura Siegel Larson

27  _____

28  [12] Whereas Plaintiffs strenuously dispute Defendants' claim that "the impending accounting
will yield only a modest recovery" (Opp. at 2) given the Superman character and mythos
contained in the recaptured works, Defendants' statement only ***supports*** Plaintiffs'
argument that the fair value of a post-October 2013 license dwarfs the accounting damages.