DANIEL M. PETROCELLI (S.B. #097802)
 dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
 mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
 cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for the DC Comics Parties

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL,<br><br>Plaintiff,<br><br>v.<br><br>WARNER BROS. ENTERTAINMENT INC., DC COMICS, and DOES 1-10,<br><br>Defendants and Counterclaimants.<br><br>LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL,<br><br>Plaintiff,<br><br>v.<br><br>TIME WARNER INC., WARNER COMMUNICATIONS INC., WARNER BROS. ENTERTAINMENT INC., WARNER BROS. TELEVISION PRODUCTION INC., DC COMICS, and DOES 1-10,<br><br>Defendants and Counterclaimants. | Case No.  CV 04-8400 ODW (RZx)<br>Case No.  CV 04-8776 ODW (RZx)<br><br>**DEFENDANT DC COMICS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT IN THE *SIEGEL* SUPERMAN AND SUPERBOY CASES**<br><br>DECLARATION OF DANIEL M. PETROCELLI, [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, [PROPOSED] ORDER, AND [PROPOSED] FINAL JUDGMENTS FILED CONCURRENTLY HEREWITH<br><br>The Hon. Otis D. Wright II<br><br>**Hearing Date**:  March 11, 2013<br>**Hearing Time**:  1:30 p.m.<br>**Courtroom:**     11 |

1    PLEASE TAKE NOTICE that on March 11, 2013, at 1:30 p.m., or as soon
2    thereafter as counsel may be heard by the above-entitled court, located in
3    Courtroom 11 at 312 North Spring Street, Los Angeles, California 90012, the DC
4    Comics parties (DC Comics, Warner Bros. Entertainment Inc., Warner
5    Communications Inc., Warner Bros. Television Production Inc., and Time Warner
6    Inc.) (collectively, "DC") will and hereby do move pursuant to Federal Rule of
7    Civil Procedure 56 for summary judgment in the two *Siegel* Superman and
8    Superboy cases, Case Nos. CV-04-8400 (Superman), CV-04-8776 (Superboy).
9    This motion is made following multiple conferences of counsel, including on
10   February 6, 2013, pursuant to Central District Local Rule 7-3.

11      In both the Superman and Superboy cases, DC's Fourth Counterclaim seeks a
12   declaration that Larson transferred her Superman and Superboy copyrights to DC
13   pursuant to a 2001 settlement agreement, and that the parties are bound by the terms
14   of that agreement.  In 2008, the prior judge in this case, the Hon. Stephen Larson,
15   held on summary judgment that no settlement agreement was reached.  Case No.
16   04-8400, DN 293; Case No. 04-8776, DN 174.  Last month, the Ninth Circuit
17   reversed that ruling and held, as a matter of law, that DC and Larson entered into a
18   settlement agreement on October 19, 2001, the terms of which are set forth in a
19   signed, six-page letter from Larson's former attorney, Kevin Marks.  *Larson v.*
20   *Warner Bros. Entm't, Inc.*, 2012 WL 6822241 (9th Cir. Jan. 10, 2013).  The court
21   further held that the agreement constituted a valid copyright transfer.  *Id*. at *1.

22      The Ninth Circuit's binding ruling compels judgment in DC's favor on its
23   Fourth Counterclaim in both *Siegel* cases; renders DC's remaining counterclaims in
24   the cases moot (meaning they should be dismissed without prejudice); and requires
25   denial of Larson's claims in the cases (meaning they should be dismissed with
26   prejudice).  The Ninth Circuit requested that this Court resolve these questions on
27   remand, and the Court can and should do so now, and bring these two long-running
28   cases to an end.

This motion is based on this Notice of Motion and Motion and accompanying Memorandum of Points and Authorities; the concurrently filed Declaration of Daniel M. Petrocelli (cited herein as "Petrocelli Decl."); the concurrently filed Statement of Uncontroverted Facts and Conclusions of Law (cited herein as "SUF"); the concurrently filed Proposed Order; the concurrently filed Proposed Final Judgment in the *Siegel* Superman case; the concurrently filed Proposed Final Judgment in the *Siegel* Superboy case; and all exhibits, files, and records on file in this action, matters of which judicial notice may be taken, and such additional submissions and argument as may be presented at or before the hearing on this motion.

Dated: February 7, 2013

Respectfully submitted,

By: /s/ Daniel M. Petrocelli
Daniel M. Petrocelli
Attorneys for DC

## I. INTRODUCTION

After nearly a decade of litigation, the *Siegel* Superman (CV 04-8400) and *Siegel* Superboy cases (CV 04-8776) can now come to an end. In 1997, the Siegel heirs served copyright termination notices on DC, seeking to terminate Jerry Siegel's copyright grants in Superman and Superboy. After years of negotiations, DC and the Siegels entered into a settlement agreement on October 19, 2001, under which, *inter alia*, the Siegels transferred all of their rights in Superman and Superboy to DC, in exchange for millions of dollars. But the Siegels repudiated that agreement in 2002 and entered into a business deal with Marc Toberoff. Laura Siegel Larson and her now-deceased mother, Joanne Siegel (collectively, "Larson"), then filed two lawsuits against DC seeking to show she still owned Superman and Superboy copyrights. DC counterclaimed in both cases for declarations that the 2001 settlement agreement was valid and Larson transferred her copyrights to DC. Judge Larson (since resigned) granted summary judgment against DC on these claims, holding the parties never reached a binding agreement.

Last month, the Ninth Circuit reversed Judge Larson's ruling. It held that DC and Larson entered into a binding settlement agreement on October 19, 2001, in which DC promised her valuable consideration and she, in turn, *inter alia*, transferred any copyrights that may have been recaptured to DC. The Ninth Circuit remanded the case to this Court to reconsider DC's Third and Fourth Counterclaims—which are based on the 2001 settlement agreement.

DC's Fourth Counterclaim, asserted in both cases, sought a declaration that the settlement agreement was enforceable and that DC owns all of the Superman and Superboy copyrights on which Larson sued. The judicial declaration DC seeks under these Fourth Counterclaims should now enter in both *Siegel* cases, and the remaining claims in both lawsuits (both Larson's claims and DC's counterclaims) can now be dismissed. This includes DC's Third Counterclaims for breach of contract, which DC agrees can be dismissed without prejudice, if DC prevails on its

Fourth Counterclaims, and the Proposed Judgments it has submitted are entered. In short, these cases are over. Any attempt by Larson to resuscitate them is futile.

## II. Statement of Facts

### A. Background

In 1997, Laura Siegel Larson (and her mother, Joanne) served copyright termination notices on DC seeking to recapture copyrights in Superman and Superboy works. DC disputed the validity of the notices and spent the next four years negotiating a compromise with Larson's lawyer, Kevin Marks. DC made a settlement offer to Larson and her family on October 16, 2001, and three days later, Marks sent DC a letter confirming that Larson and her family had "'accepted D.C. Comics offer.'" *Larson v. Warner Bros. Entm't, Inc.*, 2012 WL 6822241, at *1 (9th Cir. Jan. 10, 2013). Marks' October 19 letter documented the agreement's material terms in six, single-spaced pages, and he thanked DC for its "'help and patience in reaching this monumental accord.'" *Id.*; Case No. 04-8400, DN 644 ¶¶ 39, 49.

Larson thereafter went into business with Marc Toberoff, denied the existence of the October 2001 agreement, and served an additional copyright termination notice seeking to recapture rights in Superboy, even though Superboy works had been included in her 1997 notices and the October 2001 settlement agreement. SUF 1; Case No. 04-8400, DN 163 at 89 n.1 (1997 notice: "This Notice of Termination applies to each and every work … reasonably associated with SUPERMAN… such as, … Superboy"); Case No. 04-8776, DN 54 at 83-140.

Larson filed two lawsuits against DC seeking to enforce her termination notices. In the Superman case (No. 04-8400), she asserted four claims, seeking:

1) a declaration that in 1999 she had recaptured a 50% interest in certain Superman copyrights by virtue of her 1997 termination notice and that she continues to own that interest (First Claim);
2) a declaration as to the profits she was entitled to from the allegedly recaptured Superman copyrights (Second Claim);

- 2 -

DC'S MOTION FOR SUMMARY JUDGMENT

3) a declaration that in 1999 she had recaptured a 50% copyright interest in the Superman shield which she continues to own (Third Claim); and

4) an accounting of DC's post-termination Superman profits (Fourth Claim).

Case No. 04-8400, DN 644. (Larson originally asserted, but then dismissed, other claims for unfair competition under the Lanham Act and California law. DN 376.)

DC filed counterclaims in the Superman case seeking:

1) a declaration that Larson's "Superman notices and the Superboy notice are ineffective" because, *inter alia*, they were untimely and did not terminate all of Siegel's prior grants to DC (First Counterclaim);

2) a declaration that Larson's claims were time-barred (Second Counterclaim);

3) damages for Larson's breach of the October 19, 2001, settlement agreement (Third Counterclaim);

4) a declaration that, by virtue of the "binding and enforceable" 2001 settlement agreement, Larson "transferred or [is] contractually obligated to transfer to DC Comics, worldwide and in perpetuity, any and all rights, title, and interest, including all United States copyrights, which [she] may have in the Superman Works" (Fourth Counterclaim);

5) a declaration limiting the scope of the Superman termination notices in the event it was found to be valid (Fifth Counterclaim); and

6) a declaration concerning the principles to be applied in any accounting, again assuming the termination was held to be valid (Sixth Counterclaim).

*Id.*, DN 646.

Larson asserted five claims in the Superboy case (No. 04-8776) for:

1) an injunction preventing DC from infringing the Superboy copyrights she said she recaptured by her November 2002 termination notice, and also damages and an order requiring destruction of any infringing works (First Claim);

1    2) a declaration that, by virtue of the 2002 termination notice, she owned and
2        does own 100% of certain Superboy copyrights; that the *Smallville*
3        television series is derivative of Superboy; and that DC may not exploit
4        any new *Smallville* or Superboy derivative works on or after the
5        termination date in her notice, or November 17, 2004 (Second Claim);
6    3) an injunction under the Lanham Act requiring DC to ascribe copyright
7        ownership in Superboy merchandise to Larson (Third Claim);
8    4) damages and an injunction requiring DC to ascribe copyright ownership
9        in Superboy merchandise to Larson (Fourth Claim); and
10   5) an injunction preventing DC from exploiting new Superboy derivative
11       works after November 17, 2004, and requiring DC to credit Jerome Siegel
12       as the creator of Superboy on all such works.

Case No. 04-8776, DN 43. DC contested these claims and raised the same six counterclaims it asserted in the Superman case. *Id.*, DN 44.

On March 26, 2008, Judge Larson issued a partial summary judgment order in both the Superman and Superboy cases. He rejected DC's Third and Fourth Counterclaims that the parties had entered into a binding settlement agreement in 2001, but found that the majority of disputed works sought by Larson in her First Claim were non-terminable works-for-hire owned by DC. Case No. 04-8400, DN 293; Case No. 04-8776, DN 174. Larson sought an interlocutory appeal of these rulings, Case No. 04-8400, DN 671; 674, and DC cross appealed.

**B.     The Ninth Circuit's January 10, 2013, Ruling**

On appeal, DC asked the Ninth Circuit to "ent[er] [] judgment [in its favor] on all claims [in the *Siegel* Superman case] on the basis of an October 2001 settlement agreement." 9th Cir. Appeal Nos. 11-55863, 56034, DN 31-1 at 5. On January 10, 2013, the Ninth Circuit unanimously reversed Judge Larson's March 2008, summary judgment order. *See Larson v. Warner Bros. Entm't, Inc.*, 2012 WL 6822241 (9th Cir. Jan. 10, 2013). The court began its opinion by noting that

"[t]he central issue" on DC's settlement-related counterclaims was "whether the parties reached a binding settlement agreement during their negotiations over the rights to Superman in 2001 and 2002." *Id*. at *1.

The Court answered that question in the affirmative, explaining that Judge Larson "failed to address whether the October 19, 2001, letter from [Kevin Marks to DC] constituted an acceptance of terms negotiated between the parties, and thus was sufficient to create a contract." *Id.* The court explained, *id*.:

> <u>We hold, as a matter of law, that the October 19, 2001 letter *did* constitute such an acceptance.</u>  [fn. 2:]  Larson, in her brief, states this question should be resolved as a matter of law.  [Citations omitted.] The October 19, 2001, letter itself plainly states that the heirs have "accepted D.C. Comics offer of October 16, 2001in respect of the 'Superman' and 'Spectre' properties.  The terms are as follows…." What follows is five pages of terms outlining substantial compensation for the heirs in exchange for DC's continued right to produce Superman works.  The letter ends with Larson's attorney thanking DC's attorney for his "help and patience in reaching this monumental accord."  Further, although it is the objective, and not subjective, understandings of the parties that determine whether they reached an agreement, extrinsic evidence of the parties' actions may be used to determine whether the oral offer referred to in the letter had, in fact, been made. *Cf. Wedeck v. Unocal Corp.*, 69 Cal. Rptr. 2d 501, 507-08 (Cal. Ct. App. 1997).  Statements from the attorneys for both parties establish that the parties had undertaken years of negotiations, that they had resolved the last outstanding point in the deal during a conversation on October 16, 2001, and that the letter accurately reflected the material terms they had orally agreed to on that day.
>
>   We reject Larson's arguments that either state or federal law precludes a finding that such a contract could have been created by the October 19, 2001, letter.  California law permits parties to bind themselves to a contract, even when they anticipate that "some material aspects of the deal [will] be papered later." *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1038 (9th Cir. 2011); *Harris v. Rudin, Richman & Appel*, 87 Cal. Rptr. 2d 822, 828 (Cal. Ct. App. 1999).  This principle applies notwithstanding the lack of an express reference to an intended future agreement, as long as the terms of any contract that may have been formed are sufficiently definite that a court could enforce them (as is undoubtedly the case here). *Facebook*, 640 F.3d at 1038 (noting the minimal requirements to form an enforceable contract, and that California law does not require express delegation regarding potential missing terms of a contract); *Patel v. Liebermensch*, 197 P.3d 177, 182-83 (Cal. 2008).  That *Facebook* involved a contract signed by

both parties does not render it any less controlling here; under California's statute of frauds, the only signature that is required is that of the party against whom a contract is sought to be enforced. *See Ulloa v. McMillin Real Estate & Mortg., Inc.*, 57 Cal. Rptr. 3d 1, 4-5 (Cal. Ct. App. 2007); *see also* 1 B.E. Witkin, *Summary of California Law, Contracts* § 359 (10th ed. 2005). Nor is 17 U.S.C. § 204(a) a bar to the validity of any such contract; that statute expressly permits an agreement transferring ownership of a copyright to be signed by a "duly authorized agent" of the copyright owner, and Larson does not contest that the heirs' attorney was such an agent. (Emphases added).

The Ninth Circuit reversed Judge Larson's grant of summary judgment against DC and "direct[ed] the district judge to reconsider DC's third and fourth counterclaims in light of our holding that the October 19, 2001, letter created an agreement." *Id*. at *2. It further noted: "Because a judgment on those claims in DC's favor would appear to render moot all of the other questions in this lawsuit, we decline to address these other issues at this time." *Id*. Larson did not petition for rehearing, and the Ninth Circuit issued its mandate on February 4, 2013.

**II.  Summary Judgment Is Warranted On DC's Fourth Counterclaim In The *Siegel* Superman And Superboy Cases, And DC's Remaining Counterclaims In Those Cases Are Moot And Can Be Dismissed.**

On remand, this Court is bound by the Ninth Circuit's mandate. *See* FED. R. APP. P. 41(c), and Committee Note to 1998 Amendment thereto. "When matters are decided by an appellate court, its rulings, unless reversed by it or by a superior court, bind the lower court." *Ins. Grp. Comm. v. Denver & R.G.W.R.R.*, 329 U.S. 607, 612 (1947). Summary judgment is appropriate where there is "no genuine issue as to any material fact," and the only issue is one of law. FED. R. CIV. P. 56(a); SCHWARZER, TASHIMA & WAGSTAFFE, CAL. PRACTICE GUIDE: FED. CIV. PROCEDURE BEFORE TRIAL §§ 14:3, 14:207 (2012).

**A.  Summary Judgment Is Warranted On DC's Fourth Counterclaim.**

The Ninth Circuit's ruling compels judgment in DC's favor on its Fourth Counterclaims in both *Siegel* cases. The claims ask the Court for a declaration stating that under the October 2001, settlement agreement, Larson "transferred or

- 6 -

DC'S MOTION FOR SUMMARY JUDGMENT

[is] contractually obligated to transfer to DC Comics, worldwide and in perpetuity, any and all rights, title, and interest, including all United States copyrights, which [she] may have in the Superman Works." Case No. 04-8400, DN 646 ¶ 103(a); Case No. 04-8776, DN 44 ¶ 103(a).

The Ninth Circuit held that the October 2001 settlement agreement—the terms of which require Larson to "transfer all of [her] rights in the 'Superman' and 'Spectre' properties (including 'Superboy'), resulting in 100% ownership to D.C. Comics," SUF 1— "created an agreement" "as a matter of law," *Larson*, 2012 WL 6822241, at *1. The Ninth Circuit rejected Larson's arguments that the 2001 deal did not contain all the necessary material terms, and the Ninth Circuit also held that the contract satisfied all of the requirements for a valid copyright transfer under the Copyright Act. *Id.* On remand, Larson is bound by these holdings. *Supra* at 6.

In accordance with the Ninth Circuit's ruling, and as set forth in DC's two proposed judgments filed herewith, the Court should enter judgment in DC's favor on its Fourth Counterclaims and declare that Larson transferred her Superman and Superboy copyrights to DC by virtue of the October 2001 settlement agreement.[1]

### B. DC's Five Remaining Counterclaims Are Moot.

DC's other counterclaims are all rendered moot by the Ninth Circuit's ruling on DC's case-determinative settlement defense. DC's First, Second, Fifth, and Sixth Counterclaims all seek relief that was only applicable *if* the parties did not reach a binding settlement agreement in 2001. DC's First Counterclaims dispute the validity of Larson's termination notices; its Fifth Counterclaims dispute the termination notices' scope; its Second Counterclaims are a now moot statute-of-

---

[1] In the parties' meet-and-confer discussions preceding this motion, Larson's counsel was deliberately opaque about what defenses she would assert, saying no more than she was reserving "all contractual and declaratory relief arguments." Petrocelli Decl. ¶ 2; Ex. A. DC will address any such arguments, as needed, on reply. Defendants played a similar game when opposing DC's summary judgment motion in the *Pacific Pictures* case, *id*. Ex. C at 27 (DC's reply brief addressing this tactic), and the Court rightly rejected it, *id*. Ex. D at 40 (opinion; collecting cases).

1  limitations defense; and its Sixth Counterclaims concern accounting principles that
2  were only relevant if the termination was declared valid. *Supra* at 3-4.
3        DC's Third Counterclaims (requesting damages for Larson's breach of the
4  2001 settlement agreement) will also be mooted if the Court enters judgment on its
5  Fourth Counterclaims, as DC requests above. Instead of damages for breach, DC
6  will seek its attorney's fees under the Copyright Act and its Fourth Claim in these
7  cases, and will seek damages against Toberoff in the related *Pacific Pictures* case.
8  Toberoff challenged DC's ability to seek those attorney's fees consistent with the
9  SLAPP statute. 9th Cir. Appeal No. 11-56934, DN 8 at 27; 37-1 at 37-38. The
10 Ninth Circuit rejected his SLAPP appeal and, with it, such arguments. *Id.*; *DC*
11 *Comics v. Pacific Pictures Corp.*, 2013 WL 120807 (9th Cir. Jan. 10, 2013).

**III. Summary Judgment Is Warranted On Larson's Claims In The *Siegel* Superman And Superboy Cases.**

      As the Ninth Circuit noted "appear[ed]" to be the case, it is *indeed* the case that "a judgment [in] DC's favor" on its settlement counterclaim "render[s] moot all of the other questions in this lawsuit," including Larson's claims for relief. *Larson*, 2012 WL 6822241, at *2. Her four claims in the Superman case all hinge on the validity of her termination notice and her continued ownership of the allegedly recaptured Superman copyrights. *Supra* at 2-3. Larson traded any rights she had in Superman to DC, as part of the October 19, 2001, agreement. By that agreement's express terms, Larson assigned to DC all of her rights and interests in Superman:

> "The Property" means all Superman, Superboy and related properties (including, for example, Supergirl, Steel, Lois & Clark and Smallville), and the Spectre property, and includes all pre- and post-termination works (including the so-called Superman library), characters, names and trademarks relating to the Property. . . .
>
> The Siegel Family would transfer all of its rights in the "Superman" and "Spectre" properties (including "Superboy"), resulting in 100% ownership to D.C. Comics, as between the Siegel Family and D.C. Comics.

SUF 1.

Larson's five claims in the Superboy case are equally barred. Her First Claim—seeking an injunction to prevent copyright infringement, *supra* at 3—requires that she owned the Superboy rights. "Only the copyright owner, or the owner of exclusive rights under the copyright, as of the time the acts of infringement occur, has standing to bring an action for infringement of such rights." *Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1159 (C.D. Cal. 2010); *Maljack Prods. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996). Larson's claim that an infringement resulted from DC's exploitation of "new derivative works or products based on the 'Superboy' mythology," "*on or after November 17, 2004*," Case No. 04-8776, DN 43 ¶ 68, is barred by the 2001 settlement agreement, which specifically provides: "The Siegel Family would transfer all of its rights in the 'Superman' and 'Spectre' properties (including 'Superboy')." SUF 1.

Larson's Second through Fifth Claims similarly fail, because all four expressly assume she owns the Superboy copyrights, *supra* at 4—again, rights the Ninth Circuit held she transferred to DC in October 2001, *id.* at 5-6.

## IV.  Conclusion

DC's motion for summary judgment should be granted, and its proposed judgments in the *Siegel* Superman and Superboy cases should enter immediately.

Dated:  February 7, 2013

Respectfully Submitted,
O'MELVENY & MYERS LLP

By:  /s/ Daniel M. Petrocelli
 Daniel M. Petrocelli
 Attorneys for DC

OMM_US:71281420